UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re Bayou Hedge Fund Litigation         :    06 MDL 1755 (CM) (MDF)
                                                            :
------------------------------------------------------------x
                                                            :
This Document Relates To:                       :
Broad-Bussel Family Limited Partnership, et al.  :
                                                            :
v.                                                         :    06 Civ. 3026 (CM) (MDF)
                                                            :
Bayou Group, LLC, et al.,                      :
                                                            :    **Electronically Filed**
------------------------------------------------------------x


**DEFENDANT JAMES G. MARQUEZ'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO STAY THE PROCEEDINGS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..............................................................2

A FACT SPECIFIC INQUIRY DEMONSTRATES THAT A STAY OF THE
PROCEEDINGS IS NECESSARY IN ORDER TO PROTECT MR. MARQUEZ'S
RIGHT AGAINST SELF-INCRIMINATION.........................................................................4

    1.    The Identity Of Issues Supports the Grant Of A Stay.......................................5

    2.    This Pre-Indictment Application Is Equally As Pressing As Those Circumstances Where An Indictment Has Issued ...................................................................7

    3.    The Broad-Bussel Plaintiffs Will Not Be Prejudiced By The Stay ..................9

    4.    The Burden On Mr. Marquez Is Significant And Highly Prejudicial .............11

    5.    The Court's Interests Do Not Require A Different Result ..............................12

    6.    A Stay Of The Proceedings Will Not Affect The Public Interest...................13

CONCLUSION ..........................................................................................................................14

## TABLE OF AUTHORITIES

### CASES

*In re Adelphia Communications Securities Litigation*, 2003 U.S. Dist. LEXIS 9736 (E.D. Pa. 2003) .................................................................................................................... 6, 9, 12

*American Express Business Finance Corporation, successor to Sierracities.com, Inc. v. RW Professional Leasing Services Corp., et al.*, 225 F. Supp. 2d 263 (E.D.N.Y. 2002) ............... 4

*In the Matter of the Complaint of J.E. Brenneman Co., Inc.*, 2003 U.S. Dist. LEXIS 4433 (E.D. Pa. 2003) .................................................................................................................. 10, 11

*Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985) ......................................................... 5, 6, 7, 8, 13

*Kashi v. Gratsos*, 790 F.2d 1050 (2d Cir. 1986) ....................................................................... 7

*Par Pharmaceutical, Inc. Securities Litigation*, 133 F.R.D. 12 (S.D.N.Y. 1990) .......................... 7

*R.J.F. Fabrics, Inc. v. U.S.*, 651 F. Supp. 1437 (Ct. Int'l Trade 1986) .......................................... 8

*Securities & Exchange Comm'n v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) .................................................................................................................................. 4

*Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134 (S.D.N.Y. 1995) .............................................................. 4, 7

*U.S. v. $557,933.89, More Or Less*, 1998 U.S. Dist. LEXIS 22252 (E.D.N.Y. 1998) (unpublished decision) ................................................................................................................ 8

*U.S. v. Certain Real Property and Premises Known as 1344 Ridge Road, Laurel Hollow, Syosset, New York, et al.*, 751 F. Supp. 1060 (E.D.N.Y. 1989) ............................................... 6, 9

*U.S. v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, NY*, 55 F.3d 78 (2d Cir. 1995) ................................................................................................ 5, 8

*Volmar Distributors, Inc. v. The New York Post Co., Inc., et al.*, 152 F.R.D. 36 (S.D.N.Y. 1993) ............................................................................................................................. 5, 10, 13

*Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1998 ) ................................................................................................................................ 6, 8

*Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979) ............................ 8, 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re Bayou Hedge Fund Litigation              :    06 MDL 1755 (CM) (MDF)
                                                            :
------------------------------------------------------------x
                                                            :
This Document Relates To:                      :
Broad-Bussel Family Limited Partnership, et al. :
                                                            :
v.                                                          :    06 Civ. 3026 (CM) (MDF)
                                                            :
Bayou Group, LLC, et al.,                      :
                                                            :    **Electronically Filed**
------------------------------------------------------------x

### DEFENDANT JAMES G. MARQUEZ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY THE PROCEEDINGS

Defendant James G. Marquez respectfully submits this memorandum of law in support of his motion to stay the proceedings against him in this action, pending final determination by the Office of the United States Attorney for the Southern District of New York ("U.S.A.O.") regarding its criminal investigation of Mr. Marquez.

### PRELIMINARY STATEMENT

The U.S.A.O.'s investigation of Mr. Marquez arises out of his early involvement with certain Bayou entities, named among the multitude of Bayou Defendants identified in the Amended Class Action Complaint (the "Amended Complaint"). The criminal investigation is ongoing.

As set forth in the Amended Complaint, the Broad-Bussel plaintiffs' investment in this case was in December 2003 – long after Mr. Marquez had ceased any association with the Bayou entities or their principals Samuel Israel and Daniel Marino. Further, the Amended Complaint asserts that plaintiffs invested in the Bayou Super Fund, an entity with which Mr. Marquez had

no association whatever. However, because the putative class period identified in the Amended Complaint commences in 1996, and because the Amended Complaint recites Mr. Marquez's involvement with Bayou entities as the basis for its claims against him, this proceeding arises directly out of the same subject matter as the criminal investigation of which Mr. Marquez is a target. Under these circumstances, where Mr. Marquez is a marginal defendant in this civil action, but a target of an ongoing criminal investigation, the factors weigh heavily in favor of protecting his rights under the United States Constitution by staying the proceedings pertaining to him pending a final resolution of the pending criminal investigation.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 29, 2005, the two principals of the Bayou Defendants, Samuel Israel and Daniel Marino, pled guilty to federal charges in the Southern District of New York in connection with their management of the Bayou Defendant entities. Affidavit of Doreen Klein, Esq., sworn to April 27, 2006 ("Klein Affidavit"), ¶ 2.

On or about November 17, 2005, the plaintiffs filed a putative Class Action Complaint in the District Court for the District of Connecticut in an action entitled *Broad-Bussel Family LP, et al. v. Bayou Group LLC, et al.*, D. Conn., 3:05-cv-01762. The plaintiffs served the Summons and Complaint on Mr. Marquez on January 10, 2006 and Mr. Marquez filed a Notice of Appearance on January 30, 2006. Klein Affidavit, ¶ 3.

In the interim, on or about January 5, 2006 the plaintiffs moved before the Judicial Panel on Multidistrict Litigation (the "MDL Panel"), requesting that the MDL Panel transfer to the District of Connecticut three lawsuits then pending in other federal courts in Connecticut, New York and Indiana, in order to consolidate the four actions before the federal court for the District of Connecticut. The three lawsuits are: *Jewish Federation of Metropolitan Chicago v. Bayou*

*Management, LLC, et al.*, D. Conn., C.A. No. 3:05-1401, *DePauw University v. Hennessee Group LLC, et al.*, S.D. Indiana, C.A. No. 2:05-249, and *Thomas Gleason v. Bayou Management, LLC, et al.*, S.D.N.Y., C.A. No. 7:05-8532.  None of the three names Mr. Marquez as a defendant.  Klein Affidavit, ¶ 4.

On March 6, 2006 the plaintiffs filed the Amended Complaint.  On or about March 22, 2006 counsel for Mr. Marquez and counsel for the plaintiffs agreed to extend Mr. Marquez's time to answer or otherwise respond to the Amended Complaint until May 8, 2006, the date previously set by the court for certain co-defendants to move to dismiss the Amended Complaint.  Klein Affidavit, ¶ 5.

By order filed on April 18, 2006 the MDL Panel directed that the four actions be transferred to this Court.  Klein Affidavit, ¶ 6.

The Amended Complaint, which spans 100 pages, alleges that the class period is December 31, 1996 through August 25, 2005 (Amended Complaint ¶1).  The allegations against Mr. Marquez comprise essentially the following:  Mr. Marquez is identified as one of the "aider/abettor defendants" and an alleged "principal and co-founder of Bayou Securities and the Bayou Hedge Funds" (Amended Complaint ¶31); Mr. Marquez is identified in quoted portions of a "'suicide note and confession'" written by co-defendant Marino (¶¶71, 72[a] through [c]); and Mr. Marquez is accused of participating in the formation of an accounting firm for the purpose of concealing the fraud (¶107[d]).  Klein Affidavit, ¶ 7.

The plaintiff Broad-Bussel Family alleges that it first entered into a Subscription Agreement with Bayou on December 21, 2003 (Amended Complaint ¶57).  All of the events that directly concerned the Broad-Bussel Family occurred subsequent to that time

-3-

(*e.g*. Amended Complaint ¶¶ 57, 62, 64 through 68). The Amended Complaint does not aver when the Michelsohn Plaintiffs invested with Bayou. Klein Affidavit, ¶ 8.

## ARGUMENT

### A FACT SPECIFIC INQUIRY DEMONSTRATES THAT A STAY OF THE PROCEEDINGS IS NECESSARY IN ORDER TO PROTECT MR. MARQUEZ'S RIGHT AGAINST SELF-INCRIMINATION

Courts have the right to "stay civil proceedings, postpone civil discovery or impose protective orders and conditions 'when the interests of justice seem to require such action . . . .'" *Securities & Exchange Comm'n v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980) (citation omitted). "Courts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." *Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995). The factors that should be weighed in determining whether to grant a stay include:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Trustees*, 886 F. Supp. at 1139; *American Express Business Finance Corporation, successor to Sierracities.com, Inc. v. RW Professional Leasing Services Corp., et al.*, 225 F. Supp.2d 263, 264-65 (E.D.N.Y. 2002).

-4-

While recognizing the careful balancing that a trial court must undertake in order to afford civil litigants the "reasonable opportunity to litigate a civil case fully," the Second Circuit nonetheless cautions that "exercise of Fifth Amendment rights should not be made unnecessarily costly." *U.S. v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 83-84 (2d Cir. 1995). Mindful of that concern, the Second Circuit has urged trial courts to "explore all possible measures in order to 'select that means which 'strikes a fair balance . . . and . . . accommodates both parties.'" *4003-4005 5th Ave.,* 55 F. 3d at 84 (citations omitted). The sensitivity to Fifth Amendment rights requires a fact based analysis that "will necessarily vary from case to case." *Id*. Among the approaches explicitly endorsed by the Second Circuit is a stay of the civil action itself or, alternatively, a stay of discovery, until parallel criminal proceedings have concluded. *Id*. Consideration of the six factors that guide the courts in this careful analysis demonstrates that, on the facts of this case, a stay of the proceedings is appropriate.

1. **The Identity Of Issues Supports the Grant Of A Stay**

Those circumstances where the civil and criminal actions involve the same subject matter present the strongest case for granting a stay as to either civil proceedings themselves, or the discovery they engender. *Volmar Distributors, Inc. v. The New York Post Co., Inc., et al.*, 152 F.R.D. 36, 38 (S.D.N.Y. 1993) ("The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter."); *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. 1985) ("A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter. . . ."); *U.S. v. Certain Real Property and Premises*

*Known as 1344 Ridge Road, Laurel Hollow, Syosset, New York, et al.*, 751 F. Supp. 1060, 1062 (E.D.N.Y. 1989) (same, citing *Brock*).

Indeed, "[t]he similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay." *In re Adelphia Communications Securities Litigation*, 2003 U.S. Dist. LEXIS 9736, *8 (E.D. Pa. 2003). *See Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F. Supp.2d 523, 527 (D.N.J. 1998 ) ("The similarity of issues has been termed 'the most important issue at the threshold' in determining whether or not to grant a stay.") (*quoting* Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203 (1989)).

Here, the issues underlying both this action and the criminal investigation are not just similar – they are identical (although the investigation of Mr. Marquez is more circumscribed because of his more limited involvement with the Bayou entities). The Amended Complaint is explicit that the claims against Mr. Marquez are based upon his alleged aiding and abetting of the two Bayou principals, Israel and Marino, who have already pled guilty to criminal charges arising out of their fraudulent activities in connection with the Bayou entities.

Therefore, despite the fact that Mr. Marquez had no involvement with the Bayou entities at the time of the Broad-Bussel plaintiffs' investment (and it is unclear from the Amended Complaint whether he was involved at the time of the Michelsohn plaintiffs' investment), his alleged early involvement is at the heart of the civil case against him and will be the explicit focus of discovery. This is precisely the same subject matter of the investigation of Mr. Marquez by the U.S.A.O. Any effort to proceed with the civil case

directly and necessarily implicates Mr. Marquez's Fifth Amendment right against self-incrimination. Accordingly, this factor unequivocally weighs in favor of granting a stay of the civil proceeding.

**2. This Pre-Indictment Application Is Equally As Pressing As Those Circumstances Where An Indictment Has Issued**

To be sure, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *Par Pharmaceutical, Inc. Securities Litigation*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *Trustees*, 886 F. Supp. at 1139 ("stays will generally not be granted before an indictment is issued"). Consistent with the fact specific nature of the balancing test, however, that is not a hard and fast rule. Indeed, the Second Circuit itself endorsed the decision of a trial court to stay a civil litigation until after the U.S.A.O. announced that it had declined to prosecute the civil defendant. *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986). The defendant's due process claim in *Kashi* arose in a separate context – the defendant claimed that the trial court should have extended the stay even further, until after the statute of limitations had lapsed and he was safe from criminal prosecution. However, the import of the Court's decision for this analysis is unchanged; that is, that a defendant need not be the subject of an indictment before seeking a stay to protect himself from the danger of self-incrimination. For that reason, "[t]he fact that an indictment has not yet been returned – while it may be a factor counseling against a stay of civil proceedings – does not make consideration of the stay motion any less appropriate." *Brock*, 109 F.R.D. at 120, n.2.

Consistent with this proposition, courts in this Circuit and others have granted pre-indictment stays in order to preserve the civil defendant's Fifth Amendment right

-7-

against self-incrimination. *See, e.g.*, *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1089 (5th Cir. 1979) (error to deny plaintiff's pre-indictment motion for a protective order in plaintiff's civil case where plaintiff effectively asked court to stay further discovery for approximately three years) (cited with approval by Second Circuit in *4003-4005 5th Ave., supra*, 55 F.3d at 84); *U.S. v. $557,933.89, More Or Less*, 1998 U.S. Dist. LEXIS 22252, *13 (E.D.N.Y. 1998) (unpublished decision) (court grants stay of discovery in excess of one year in civil forfeiture, pending lapse of statute of limitations applicable to criminal offense); *Walsh Securities*, 7 F. Supp.2d at 527 (action for civil damages arising out of allegedly fraudulent real estate transactions; court notes that "[a]lthough no indictments have been returned, this action presents a strong case for a stay"; court grants stay of all interrogatories and depositions until date specified by court); *Brock*, 109 F.R.D. at 121 (court grants stay of discovery pending outcome of criminal investigation); *R.J.F. Fabrics, Inc. v. U.S.*, 651 F. Supp. 1437, 1441 (Ct. Int'l Trade 1986) (court grants government's application for pre-indictment stay of action; fact that government is the movant "is not necessarily fatal to its application for a stay" and court notes its that, while plaintiff company opposed the stay, court was concerned "with putting principals of the plaintiff to the choice of actively participating in the civil case, to the detriment of their possible criminal defense; or alternatively . . . refusing to participate in the civil case, thereby injuring its chances for success").

      Here, concerns about possible criminal prosecution are neither speculative nor remote. Mr. Marquez's attorneys have been engaged in ongoing discussions with the U.S.A.O. in connection with the criminal investigation. Klein Affidavit, ¶ 9.

Therefore, unlike those cases where courts are reluctant to grant a stay because the scope of the movant's potential criminal exposure is unknown or the danger of self-incrimination is minimal, this case presents a situation where the subject matter is clear, the scope of Mr. Marquez's potential exposure is well-defined and the risk is actual and not speculative. *See 1344 Ridge Road*, 751 F. Supp. at 1063 (where possibility that unindicted co-defendant might be forced to incriminate herself in responding to civil forfeiture action was neither "fanciful" or "imaginary", stay of discovery should extend to her as well as indicted defendant). Under these circumstances, the absence of an indictment against Mr. Marquez is not a barometer of whether his Fifth Amendment right against self-incrimination is at risk. As such, the status of the criminal investigation in this particular fact specific analysis weighs in favor of granting the stay.

### 3.     The Broad-Bussel Plaintiffs Will Not Be Prejudiced By The Stay

"In evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim." *Adelphia*, 2003 U.S. Dist. LEXIS at *10-*11 (citations omitted). In this case, the plaintiffs are hard-pressed to argue that they are interested in proceeding expeditiously with the claims against Mr. Marquez. First, the mere fact that the plaintiffs chose to incorporate their claims in a putative class action rather than commencing suit solely on their own behalf necessarily complicates and prolongs these proceedings. And, having come before District Court of Connecticut in the posture of class representatives, the plaintiffs then moved before the MDL Panel to consolidate three other cases with their own. While from a tactical standpoint a plaintiff may desire to have the added leverage of class members and additional actions pending against the defendants, these

-9-

actions create a more complex litigation than would otherwise result from a lawsuit designed to vindicate an individual claim.

Notably, in *In the Matter of the Complaint of J.E. Brenneman Co., Inc.*, 2003 U.S. Dist. LEXIS 4433 (E.D. Pa. 2003), the court stayed the depositions of the civil defendants in that case, where the defendants faced criminal charges, reasoning that an immediate resolution of the plaintiff's case was not likely. The court noted that there were multiple claims brought by and against the plaintiff in both state and federal courts, and, further, that granting the stay would not strip the plaintiff of its ability to proceed with the litigation. Similarly, here the putative class action which names Mr. Marquez as a defendant is complex and has a multitude of defendants. Granting a stay to protect Mr. Marquez's Fifth Amendment rights will hardly prejudice plaintiffs' ability to proceed with the remainder of the litigation, which affords ample opportunity for discovery from the remaining defendants.

Nor are speculative concerns of the plaintiff enough to outweigh the very real risk of Mr. Marquez being forced to forfeit his right against self-incrimination. For example, in *Volmar Distributors*, this Court rejected as speculative the plaintiffs' contention that postponing discovery might jeopardize their ability to collect any judgment they might obtain against the defendants. The Court reasoned that, "even if defendants' resources are 'scarce,' plaintiffs have not demonstrated how forcing defendants to litigate both the civil and criminal cases simultaneously would help plaintiffs." 152 F.R.D. at 40, n.6. *See also Brenneman*, 2003 U.S. Dist. LEXIS at *8 (in granting stay of defendants' depositions, court noted that there was "little risk that the defendants, both of whom are healthy, will become gravely ill in the near future.")

This factor, then, too, weighs in favor of granting the stay of these proceedings as to Mr. Marquez.

**4.        The Burden On Mr. Marquez Is Significant And Highly Prejudicial**

As demonstrated above, there is extensive overlap of the subject matter in the civil litigation and in the criminal investigation, to the point where the issues are largely congruent. As such, Mr. Marquez is faced with the very realistic possibility of having to choose between waiving his Fifth Amendment rights during the pendency of this case or asserting the privilege and with the attendant damage to his defense of this case. In *Wehling*, where the party at risk was the plaintiff in the civil action, the Fifth Circuit found this draconian choice so compelling that it held that the trial court had abused its discretion in denying the plaintiff's motion for a protective order and in dismissing the plaintiff's lawsuit, and approved a three-year hiatus in the lawsuit in order to permit the plaintiff to assert his Fifth Amendment right against self incrimination in a parallel criminal proceeding. The court noted that, "[a]lthough a three-year hiatus in the lawsuit is undesirable from the standpoint of both the court and the defendant, permitting such inconvenience seems preferable at this point to requiring plaintiff to choose between his silence and his lawsuit." 608 F.2d at 1089. The Fifth Circuit was solicitous of the plaintiff's constitutional right in circumstances where the plaintiff himself created the conflict by initiating a lawsuit. These circumstances require no less, where Mr. Marquez had no hand in creating the conflict.

**5.    The Court's Interests Do Not Require A Different Result**

Concededly, it may create some difficulties for this Court to carve out a separate schedule charting out the course of the claims against for Mr. Marquez only. However, the reasoning of the District Court for the Eastern District of Pennsylvania in *Adelphia* is instructive in illustrating why a stay of the proceedings with respect to Mr. Marquez may ultimately lead to judicial economy. In *Adelphia*, the court stayed consolidated securities class actions based upon an ongoing criminal case against some of the defendants. In granting the stay, the court reasoned as follows:

> The Court has an interest in efficiently managing its caseload. . . . In this case, granting a stay promotes judicial efficiency. First, without a stay, the civil defendants will likely assert their Fifth Amendment rights, causing the court to decide a number of privilege issues during civil discovery. In contrast, if the civil actions are stayed until the conclusion of the criminal proceedings, then these rulings will no longer be necessary. . . . Moreover, if the indicted defendants assert the privilege throughout the litigation, then it will be "difficult or impossible to fairly apportion liability because of the different factual record among the defendants." . . . Additionally, criminal convictions against any of the civil defendants will likely encourage them to settle the civil suits, thereby eliminating the need to litigate some issues in the civil cases. Thus, staying the civil actions preserves judicial resources and streamlines some of the complexities of the consolidated securities actions. As a result, this factor weighs in favor of staying the civil actions.

2003 U.S. Dist. LEXIS at *15 (citations omitted).

The court in *Adelphia* stayed the proceedings as to all parties. Here, Mr. Marquez seeks only a stay for those claims asserted against him. Nonetheless, the concerns expressed by the *Adelphia* court bear upon this Court's consideration of its own docket, for not only does this case give rise to the same issues concerning the assertion of the privilege but, should the criminal investigation involving Mr. Marquez be resolved, it would similarly streamline the case as to him.

**6.     A Stay Of The Proceedings Will Not Affect The Public Interest**

In this case, a stay of the proceedings will have no impact on the public interest. As articulated by the court in *Brock*, when it granted a stay of discovery in a case involving claims that the civil defendants had mismanaged a pension fund, "[p]ossible mismanagement of a pension fund simply does not present the same danger to the public interest as violations that other courts have found to warrant denial of a motion for a stay." 109 F.R.D. at 120. The *Brock* court contrasted those cases where a stay was denied on the ground that it might permit the "'dissemination of false or misleading information by companies to members of the investing public," and where the FDA was attempting to prevent the distribution of misbranded drugs, which it characterized as involving a "tangible threat of immediate and serious harm to the public at large." *Id*. In contrast, the court reasoned, the desire for civil relief in the form of money damages, while serious indeed, does not cause any irreparable injury if civil discovery is stayed. *Id. See Volmar*, 152 F.R.D. at 40 (civil action asserting antitrust violations is not a case where a stay of discovery would cause immediate and serious harm to a compelling public interest).

Accordingly, a stay of these proceedings as to Mr. Marquez will not affect the public interest.

-14-

## **CONCLUSION**

For the foregoing reasons, defendant James G. Marquez respectfully requests that the Court stay further proceedings in this action pertaining to him.

 

/s/ Thomas D. Goldberg
Thomas D. Goldberg (TG 7251)
Stanley A. Twardy, Jr. (ST 9589)
Terence J. Gallagher (TG 5781)
Doreen Klein (DK 4982)
DAY, BERRY & HOWARD LLP
One Canterbury Green
Stamford, Connecticut 06901
tel. (203) 977-7300
fax. (203) 977-7301
E-mail: tdgoldberg@dbh.com

and

875 Third Avenue
New York, New York 10022
tel. (212) 829-3600
fax. (212) 829-3601

*Attorneys for Defendant*
*James G. Marquez*

-15-

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2006, a copy of Defendant James G. Marquez's Memorandum of Law in Support of Motion to Stay the Proceedings was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

       /s/ Doreen Klein
Doreen Klein (DK 4982)