a.    that the Bayou Hedge Funds' reported financial results, rates of return and asset valuations were accurate and represented Bayou's true financial position, operations and results;

b.    that the accounting for the profits and losses of the Bayou Hedge Funds conformed to GAAP;

c.    that the Bayou Hedge Funds' were being independently and properly audited and that Bayou's purported auditor, defendant Richmond-Fairfield, was legitimate and independent when, in fact, it was simply a sham company set up by Bayou's CFO, defendant Marino;

d.    that between at least in or about the fall of 2003 through in or about May 2005, the Bayou Defendants entered and attempted to enter into private financial transactions using money from the Bayou Hedge Funds without properly or timely disclosing to Class member investors the actual nature of those transactions;

e.    that in or about the spring of 2004, the Bayou Defendants secretly ceased all trading for the Bayou Hedge Funds, liquidated all investments in the Bayou Hedge Funds, and withdrew all of the remaining monies from Bayou and the Bayou Hedge Funds' bank accounts at Citibank, with Citibank's approval, without being authorized to do so and without informing the members of the Class;

f.    that from at least in or about July 1996 through in or about August 2005, the Bayou Defendants fraudulently induced members of the Class to contribute in excess of $450 million to the Bayou Hedge Funds at least significant portions of which the Bayou Defendants then wrongfully converted for their own personal use; and

69

g.      that Bayou and the Bayou Hedge Funds were being operated properly when, in fact, Bayou and the Bayou Hedge Funds were essentially being operated as a fraud and Ponzi scheme on Plaintiffs and the Class.

125.    Further, the Bayou Defendants knowingly or recklessly disregarded that numerous representations made in the reports regarding the Bayou Hedge Funds that they disseminated to Class member investors were false and misleading and failed to timely and accurately disclose the true facts, also in violation of the Connecticut Uniform Securities Act.

126.    Plaintiffs and the Class did not know that the Bayou Defendants' statements were untrue and that the Bayou Defendants had made material omissions of fact and could not, in the exercise of reasonable diligence, have timely uncovered the truth.

127.    As a direct and proximate result of the Bayou Defendants' violations of the Connecticut Uniform Securities Act, Plaintiffs and the members of the investor Class acquired interests in the Bayou Hedge Funds at artificially inflated prices, were fraudulently induced to continue holding those interests, and were damaged thereby in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

**(For Violation of the Connecticut**
**Unfair Trade Practices Act Against the**
**Bayou Defendants and the Hennessee Defendants)**

128.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

129.    Plaintiffs and the Class bring this claim for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*, against the Bayou Defendants and the Hennessee Defendants.

130.    At all times relevant, the Bayou Defendants and the Hennessee Defendants were engaged in the conduct of trade or commerce pursuant to the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a.

131.    In connection with the acquisition of interests in the Bayou Hedge Funds by Plaintiffs, the Class and the respective members of the Hennessee Subclass, the Bayou Defendants, directly or indirectly, engaged in unfair trade practices by, among other things: (1) employing misleading devices, schemes and artifices; (2) making untrue statements of material fact and withholding material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; and (3) converting for their own use or otherwise wrongfully dissipating the Class' invested funds in the Bayou Hedge Funds, all as set forth more fully above.

132.    In connection with their financial consulting and advisory services to the respective members of the Hennessee Subclass, defendants Lee Hennessee and Charles Gradante, directly or indirectly, engaged in unfair trade practices by, among things: (1) employing misleading devices, schemes and artifices; (2) making untrue statements of material fact and withholding material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; and (3) misrepresenting the services that they rendered to the Hennessee Subclass, all as set forth more fully above.

71

133.  The misconduct of the Bayou Defendants and the Hennessee Defendants was done intentionally or as a result of their own gross negligence or recklessness, and was immoral, unethical, oppressive and unscrupulous and offended public policy and established concepts of fairness.

134.  As a direct and proximate result of their misconduct, the Bayou Defendants and the Hennessee Defendants violated the Connecticut Unfair Trade Practices Act. Plaintiffs and the respective members of the Class and the Hennessee Subclass were damaged thereby in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### (For Conversion Against the Bayou Defendants)

135.  Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

136.  Plaintiffs and the Class bring this claim for conversion against the Bayou Defendants.

137.  During the Class Period, Plaintiffs and other members of the Class transferred hundreds of millions of dollars to the Bayou Defendants as investments in the Bayou Hedge Funds.

138.  Plaintiffs and the Class have, actually or constructively, requested the return of their investments and all other related interest, profits, income or other appreciation.

139.  The Bayou Defendants have not returned to Plaintiffs and the Class these proceeds, but have instead deprived Plaintiffs and the Class of their rightful investment proceeds. For example, defendant Israel and Marino received millions of dollars from the Bayou Hedge

72

Funds based on the phoney profits reported by the Bayou Hedge Funds, which were falsely generated by Israel and Marino themselves.

140.   The Bayou Defendants were not authorized to withhold and withdraw Plaintiffs' and the Class' original investments and other monies.

141.   The Bayou Defendants' unauthorized withholding and misappropriation of Plaintiffs' and the Class' original investments and other monies was a substantial, direct and proximate cause of damages suffered by Plaintiffs and the Class.

142.   By reason of the foregoing, the Bayou Defendants have committed conversion of Plaintiffs' and the Class' property and are liable for the substantial damages caused thereby in an amount to be established at trial.

## FIFTH CLAIM FOR RELIEF

### (For Theft Against the Bayou Defendants)

143.   Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein.

144.   Plaintiffs and the Class bring this claim for statutory theft, under Conn. Gen. Stat. § 52-564, against the Bayou Defendants.

145.   In engaging in unauthorized withholdings of Plaintiffs' and the Class' original investments and other monies related to the Bayou Hedge Funds, the Bayou Defendants intended to and did, in fact, deprive Plaintiffs and the Class of their property.

146.   By reason of the foregoing, the Bayou Defendants have committed statutory theft of Plaintiffs' and the Class' property and are liable for the substantial damages caused thereby in

73

an amount to be established at trial. Under Conn. Gen. Stat. § 52-564, the Bayou Defendants are liable to Plaintiffs and the Class in an amount treble their damages.

## SIXTH CLAIM FOR RELIEF

### (For Breach of Fiduciary Duty Against the Bayou Defendants and the Hennessee Defendants)

147.     Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

148.     Plaintiffs and the Class bring this claim for breach of fiduciary duty against the Bayou Defendants and the Hennessee Defendants.

149.     The Bayou Defendants were fiduciaries of Plaintiffs and the Class by virtue of their acts in soliciting, receiving, managing and controlling the investments that Class members made to the Bayou Hedge Funds; by holding themselves out as professional and reputable investment managers; and because of their superior knowledge concerning hedge fund investments generally and the Bayou Hedge Funds specifically. Plaintiffs and the Class reasonably reposed trust and confidence in the integrity and fidelity of the Bayou Defendants in connection with the investments that Class members made in the Bayou Hedge Funds.

150.     The Hennessee Defendants were fiduciaries of plaintiff Broad-Bussel Family and the members of the Hennessee Subclass by virtue of their status as financial and investment advisors; by having been entrusted with plaintiffs Broad-Bussel Family and the Hennessee Subclass' confidential and proprietary financial and investment information; by their acts in soliciting and advising plaintiff Broad-Bussel Family and members of the Hennessee Subclass in their investments in the Bayou Hedge Funds; by their acts and omissions in investigating, monitoring and managing plaintiff Broad-Bussel Family's and the Hennessee Subclass'

74

investments in the Bayou Hedge Funds; by holding themselves out as professional and reputable experts in the field of hedge fund investments and as financial advisors; and by virtue of their superior knowledge concerning hedge fund investments generally and the Bayou Hedge Funds specifically. Plaintiff Broad-Bussel Family and the members of the Hennessee Subclass reasonably reposed trust and confidence in the integrity, fidelity and adequacy of the Hennessee Defendants' business practices, including but not limited to the Hennessee Defendants' purported due diligence and monitoring of Bayou and the Bayou Hedge Funds.

151.    As fiduciaries, the Bayou Defendants and the Hennessee Defendants owed Plaintiffs and other similarly situated Class members duties of loyalty, due care and fair dealing, including, *inter alia*:  to protect the interests of the Class and Hennessee Subclass; to refrain from doing any act injurious to, or which would deprive the Class and Hennessee Subclass of, any profit or advantage; to provide members of the Class and Hennessee Subclass with accurate and materially complete information; and to not elevate their own interests ahead of Plaintiffs and other similarly situated members of the Class.

152.    The Bayou Defendants violated their fiduciary duties to Plaintiffs and the members of the Class by, *inter alia*:  engaging in multiple acts of fraud in the management and operations of the Bayou Hedge Funds; making numerous material Misrepresentations and Omissions of fact regarding the Bayou Hedge Funds; and wrongfully converting Plaintiffs' and the Class' property for the use of the Bayou Defendants, all as alleged more fully above.

153.    The Hennessee Defendants violated their fiduciary duties to plaintiff Broad-Bussel Family and the members of the Hennessee Subclass by, *inter alia*:  failing to perform proper due diligence and ongoing monitoring for Hennessee Subclass members' investments in

75

the Bayou Hedge Funds; ignoring or failing to uncover and timely disclose to Hennessee

Subclass member investors the Red Flags identified above; and failing to properly update

Hennessee Subclass members regarding their investments in the Bayou Hedge Funds, all as

alleged more fully above.

154.    As a direct and proximate result of the Bayou Defendants' and the Hennessee

Defendants' breaches of fiduciary duties, Plaintiffs and members of the Class and the Hennessee

Subclass were damaged in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### (For Negligence Against All Defendants)

155.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set

forth herein, except for allegations related to fraud.

156.    Plaintiffs and the Class bring this claim against all of the Defendants.

157.    During the Class Period, all of the Defendants owed a duty of reasonable care to

the members of the Class and Hennessee Subclass in regard to those investors' investments in

the Bayou Hedge Funds. In particular, the Bayou Defendants had a duty, among other things:  to

act as reasonable financial managers of the Class' Bayou Hedge Fund investments; to provide

the Class with accurate and materially complete information; and to avoid acting or failing to act

in a manner that would foreseeably injure Bayou investor Class members.  Aider/Abettor

Defendants Marquez and Fotta had a duty, *inter alia*, to properly operate Bayou, and Citibank

had a duty to not transfer to defendant Israel personally millions of dollars in proceeds which it

knew or ignored were fiduciary investment funds beneficially owned by Class member investors.

The Hennessee Defendants had a duty, among other things:  to act as reasonable financial

76

advisors to the Hennessee Subclass; perform proper due diligence and monitoring of the Bayou Hedge Funds; properly investigate and timely alert Hennessee Subclass members to the Red Flags alleged above; and timely advise Hennessee Subclass members of any material developments regarding their investments in the Bayou Hedge Funds, all as alleged more fully above.

158.    The Bayou Defendants violated their duties to the Class by, among other things, engaging in numerous improper acts and practices and making numerous and material Misrepresentations and Omissions regarding the financial results, operations and conditions and the business practices of the Bayou Hedge Funds.  Among other things, the Bayou Defendants' Misrepresentations and Omissions included issuing false reports regarding the Bayou Hedge Funds' rates of return and total value; false reports of Class members' accumulated profits and net asset valuations in the Bayou Hedge Funds; false reports that the Bayou Hedge Funds were being independently and truthfully audited; and false reports regarding the propriety of the Bayou Defendants' operations when, in fact, the Bayou Defendants had wrongfully converted or otherwise dissipated hundreds of millions of dollars from the investments made by the Class in the Bayou Hedge Funds.

159.    The Aider/Abettor Defendants violated their duties to the Class in that, *inter alia*:

a.    Defendants Marquez and Fotta were principals of the Bayou Defendants and directly controlled the dissemination of the Bayou Defendants' Misrepresentations and Omissions.  In addition, Marquez was directly involved in orchestrating the Bayou Defendants' misconduct beginning at least as early as 1998 and oversaw the operations of Bayou Securities and thereby directly or indirectly participated in the wrongdoing.  Defendant Richmond-Fairfield

was a sham accounting firm created by the Bayou Defendants to render false audit opinions for

Bayou and the Bayou Hedge Funds in order to conceal the misconduct of the Bayou Defendants.

Defendant Eqyty Research received monies that were misappropriated from the Bayou Hedge

Funds and Bayou Securities. Defendant Faust Rabbach & Oppenheim and defendant

Oppenheim violated their duties to the Class by serving as counsel for Bayou during all or some

of the Class Period, and by directly or indirectly participating in planning, orchestrating and/or

executing, approving or ignoring the alleged fraud, including but not limited to the creation and

operation of several of the Bayou Defendants, several of whom maintained their principal place

of business directly at the Faust, Rabbach & Oppenheim offices in New York. In return for their

wrongful participation in allowing the Bayou Defendants to negligently misrepresent and omit to

disclose material facts concerning the Bayou Hedge Funds, Aider/Abettor Defendants Marquez,

Fotta, Richmond-Fairfield, Eqyty Research, Faust Rabbach & Oppenheim and Oppenheim

directly or indirectly received monetary compensation from Bayou which included monies that

rightfully belonged to Plaintiffs and the members of the Class.

        b.     As alleged more fully above, defendant Citibank aided and abetted the

Bayou Defendants' misconduct by, among other things, allowing defendant Israel to wrongfully

deplete five Bayou bank accounts in or about July 2004. More particularly, Citibank assisted

defendant Israel in withdrawing and converting some $161 million of Bayou's then remaining

funds, and in actually transferred those funds to one or more of Israel's *personal accounts* in

foreign and other banks.

        160.    The Hennessee Defendants were grossly negligent in violating their respective

duties to plaintiff Broad-Bussel Family and the members of the Hennessee Subclass by failing to

properly advise Hennessee Subclass members and monitor their investments in the Bayou Hedge Funds. Among other things, the Hennessee Defendants ignored or failed to uncover numerous Red Flags concerning the Bayou Defendants' misconduct and failed to timely advise members of the Hennessee Subclass of material adverse information regarding Bayou, all as alleged more fully above.

161.    Defendants Lee Hennessee and Gradante also owed a duty of care to plaintiff Broad-Bussel Family and other members of the Hennessee Subclass because they personally rendered financial advisory services to plaintiff Broad-Bussel Family and other Hennessee Subclass members; solicited plaintiff Broad-Bussel Family and other Hennessee Subclass members to retain them for such financial advisory services; personally recommended that plaintiff Broad-Bussel Family and other Hennessee Subclass members not only invest in the Bayou Hedge Funds, but also liquidate other existing investments and redirect such funds as investments in the Bayou Hedge Funds; and continued to recommend that plaintiff Broad-Bussel Family and other Hennessee Subclass members maintain and even increase their Bayou investments despite the presence of the numerous Red Flags which the Hennessee Defendants either knew or ignored and failed to timely and properly disclose. In addition, defendants Lee Hennessee and Gradante are also personally liable to plaintiff Broad-Bussel Family and the members of the Hennessee Subclass because they undertook specific acts in connection with the Bayou investments they recommended to the Hennessee Subclass, examples of which include the following:

a.      Defendants Lee Hennessee and Gradante were responsible for personally investigating, among other things, defendant Richmond-Fairfield and actually knew or should

79

have known well before the August 2005 collapse of the Bayou Hedge Funds that Bayou's

supposedly independent auditor, Richmond-Fairfield, was registered solely in the name of

Bayou's CFO, defendant Marino. Nevertheless, Lee Hennessee and Gradante failed to disclose

this highly material fact to plaintiff Broad-Bussel Family and the other Hennessee Subclass

members. Moreover, Lee Hennessee and Gradante failed to properly supplement their

investigation of Richmond-Fairfield and timely and properly advise the Hennessee Subclass after

they learned or should have learned that defendant Richmond-Fairfield was registered solely in

the name of Marino.

       b.     Defendants Lee Hennessee and Gradante also investigated personally

defendant Israel's employment history, reportedly including by speaking directly with Leon

Cooperman -- the head of Omega Advisors, a New York money management firm.

Nevertheless, Lee Hennessee and Gradante *failed to properly uncover basic information* and

disclose to plaintiff Broad-Bussel Family and the members of the Hennessee Subclass that Israel

had materially misstated his prior employment history and credentials, including for example,

that Israel was not a "head trader" at Omega Advisors, all as set forth more fully above. To the

contrary, according to recent media reports, the truth was that Israel was simply "an order taker"

and that "Israel was not a fundamental stock picker, and he had no trading authority at Omega."

       c.     Defendants Lee Hennessee and Gradante also failed to properly

investigate and advise plaintiff Broad-Bussel Family and the other members of the Hennessee

Subclass regarding the Westervelt Action, as alleged more fully above. In particular, defendants

Lee Hennessee and Gradante were specifically aware of the serious allegations of wrongdoing

alleged in the Westervelt Action but failed to investigate properly those proceedings and advise

plaintiff Broad-Bussel Family and the other members of the Hennessee Subclass. Indeed, after

the Westervelt Action was ordered into NASD arbitration, defendants Lee Hennessee and

Gradante *simply and incorrectly assumed* that such action would lead the NASD to fully

"scrutinize Bayou's books", thereby relieving the Hennessee Defendants of any obligation to

further investigate or even alert plaintiff Broad-Bussel Family and other members fo the

Hennessee Subclass regarding the highly material facts alleged in the Westervelt Action.

Defendants Lee Hennessee's and Gradante's failure to further investigate Bayou in light of the

Westervelt Action is particularly inexcusable given that they knew or ignored that the NASD's

jurisdiction was limited. Indeed, the NASD has stated that it never looked at Bayou's hedge-

fund books because it only had jurisdiction over Bayou's NASD-registered brokerage

operations.

162.    It was foreseeable that Defendants' wrongful conduct would cause Plaintiffs and

the members of the Class and the Hennessee Subclass to suffer damages.

163.    Defendants' negligence and gross negligence were substantial, direct and

proximate causes of damages suffered by Plaintiffs and members of the Class and Hennessee

Subclass.

164.    By reason of the foregoing, the Defendants are liable to the Plaintiffs and

members of the Class and Hennessee Subclass for the substantial damages they caused in an

amount to be established at trial.

## EIGHTH CLAIM FOR RELIEF

### (For Commercial Bad Faith Against Defendant Citibank)

165.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein.

166.    Plaintiffs and the Class bring this claim for commercial bad faith against defendant Citibank.

167.    As alleged more fully above, defendant Citibank wrongfully participated in the Bayou Defendants' misconduct by, among other things, allowing defendant Israel to deplete five Bayou bank accounts in or about July 2004 and by permitting defendant Israel to withdraw and convert some $161 million of Bayou's then remaining funds directly to Israel's own personal accounts in foreign and other banks.  Accordingly, defendant Citibank owed and breached a duty of commercial good faith to Class members because, *inter alia*, it knew or ignored that the transferred proceeds were fiduciary funds beneficially owned by Plaintiffs and other Class member investors.  Indeed, defendant Citibank knew or ignored that these proceeds were beneficially owned by Plaintiffs and other Class member investors because many of those Class members initially had sent their Bayou investment funds directly to Citibank for Bayou to manage properly.

168.    Defendant Citibank's knowing participation in the Bayou Defendants' misconduct amounted to commercial bad faith.

169.    Defendant Citibank's commercial bad faith was a substantial, direct and proximate cause of damages suffered by Plaintiffs and the Class.

82

170.    By reason of the foregoing, defendant Citibank is liable to the Plaintiffs and the Class for the substantial damages they caused in an amount to be established at trial.

## NINTH CLAIM FOR RELIEF

### (For Breach of Contract Against the Bayou Defendants and Defendant Hennessee Group)

171.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

172.    Plaintiffs and the Class bring this claim for breach of contract against the Bayou Defendants and the Hennessee Group. In addition, although Bayou Management is the actual contracting party in the Subscription Agreements and the Operating Agreements entered by Class members for the Bayou Hedge Funds, defendants Israel and Marino so dominated and ignored the corporate form of all of the Bayou Defendants as alleged more fully above, that the Bayou Defendants should be deemed one entity and liable as additional contracting parties for purposes of this claim.

173.    The Bayou Defendants entered into, and duly executed, the Subscription Agreements for one or more of the Bayou Hedge Funds with members of the Class. In accordance with the terms of those agreements, Plaintiffs and other members of the Class made an investment in one or more of the Bayou Hedge Funds in accordance with the terms of the Operating Agreement applicable to the specific Bayou Hedge Fund.

174.    The material terms of the Operating Agreements were uniform across the several Bayou Hedge Funds in that, among other things, all such contracts required that the Bayou Defendants:  maintain proper and complete records and books; account fully and accurately for

83

all transactions and other matters; compute all profits and losses of the Bayou Hedge Funds in accordance with GAAP; and maintain proper internal controls.

175.    The Bayou Defendants materially breached the foregoing contractual obligations by materially falsifying the books and records of the Bayou Hedge Funds, reporting phoney profits and valuations, failing to adhere to GAAP, failing to maintain proper internal accounting controls and procedures, and improperly operating the Bayou Hedge Funds, all as alleged more fully above.

176.    Similarly, plaintiff Broad-Bussel Family and members of the Hennessee Subclass entered into contracts with defendant Hennessee Group for financial advisory and related services.

177.    In connection with those agreements, defendant Hennessee Group advised and recommended that plaintiff Broad-Bussel Family and the members of the Hennessee Subclass invest in one or more of the Bayou Hedge Funds.

178.    Defendant Hennessee Group materially breached its contractual obligations to plaintiff Broad-Bussel Family and the members of the Hennessee Subclass by failing to properly perform the advisory, due diligence and monitoring services in accord with its contractual obligations.  For example, the Hennessee Group failed to investigate, among other things: Bayou's prior and pending litigations; conflicts of interests in Bayou's business practices; the independence and authenticity of Bayou's purported auditor; Bayou's actual financial condition, operations and results; and the accuracy and truthfulness of Israel's resume and Bayou's company history and past regulatory violations, all as alleged more fully above.

84

179.    As a direct and proximate result of the Hennessee Group's contractual breaches, plaintiff Broad-Bussel Family and the members of the Hennessee Subclass invested in and remained invested one or more of the Bayou Hedge Funds and suffered damages thereby, including but not limited to their investment in the Bayou Hedge Funds and the fees they paid directly or indirectly to defendant Hennessee Group in connection therewith.

180.    The contractual breaches of Bayou Defendants and defendant Hennessee Group were a substantial, direct and proximate cause of damages suffered by plaintiff Broad-Bussel Family and members of the Class and Hennessee Subclass.

181.    By reason of the foregoing, the Bayou Defendants and defendant Hennessee Group are liable to the plaintiff Broad-Bussel Family and the members of the Class and Hennessee Subclass for the substantial damages they caused in an amount to be established at trial.

## TENTH CLAIM FOR RELIEF

### (For Breach of the Implied Covenant of Good Faith and Fair Dealing Against the Bayou Defendants and Defendant Hennessee Group)

182.    Plaintiff and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

183.    Plaintiffs and the Class bring this claim for breach of the implied covenant of good faith and fair dealing against the Bayou Defendants and defendant Hennessee Group. In addition, although Bayou Management is the actual contracting party in the Class member Subscription Agreements and the Operating Agreements for the Bayou Hedge Funds, defendants Israel and Marino so dominated and ignored the corporate form of all of the Bayou Defendants

85

as alleged more fully above, that the Bayou Defendants should be deemed one entity and liable as additional contracting parties for purposes of this claim.

184. The Bayou Defendants were obligated to act in good faith, to deal fairly, and to adhere to the terms and spirit of the Subscription Agreements and Operating Agreements for the respective Bayou Hedge Funds entered into with Plaintiffs and the Class, as the common law has long recognized that an implied covenant of good faith and fair dealing exists between parties to a contract. These obligations included, among other things, accurate and timely disclosure to Plaintiffs and the Class of the actual business practices and financial results, operations and condition of Bayou and the Bayou Hedge Funds, so that the true value of the Bayou Hedge Funds, and consequently the full consideration to which Class members were actually entitled, could be determined fairly and in good faith.

185. Defendant Hennessee Group was obligated to act in good faith, to deal fairly, and to adhere to the terms and spirit of the investment advisory agreements it entered into with members of the Hennessee Subclass, as the common law has long recognized that an implied covenant of good faith and fair dealing exists between parties to a contract. These obligations included, among other things, proper and timely financial advisory services and proper due diligence and monitoring of Bayou and the investments in the Bayou Hedge Funds made by plaintiff Broad-Bussel Family and the members of the Hennessee Subclass.

186. The Bayou Defendants breached their implied covenant of good faith and fair dealing that accompanied their performance and obligations under those contracts by misrepresenting and omitting to disclose material facts concerning the actual business practices and financial results, operations and condition of Bayou and the Bayou Hedge Funds, and by

misrepresenting and misappropriating Class member funds in connection therewith, all as
alleged more fully above.

187.    Defendant Hennessee Group breached its implied covenant of good faith and fair
dealing that accompanied its performance of, and obligations under, the investment advisory
agreements it entered into, respectively, with plaintiff Broad-Bussel Family and the members of
the Hennessee Subclass, through its failure to properly perform the advisory, due diligence and
monitoring services in accord with the spirit of its contractual obligations.  Among other things,
defendant Hennessee Group failed to investigate Bayou's prior and pending litigations, conflicts
of interests in Bayou's business practices, the independence and authenticity of Bayou's
purported auditor, the actual financial condition, operations and results of Bayou, the accuracy
and truthfulness of Israel's resume and Bayou's company history, and Bayou's past regulatory
violations, all as alleged more fully above.

188.    The breaches of the implied covenant by the Bayou Defendants and defendant
Hennessee Group were a substantial, direct and proximate cause of the damages suffered by
Plaintiffs and the members of the Class and Hennessee Subclass.

189.    By reason of the foregoing, the Bayou Defendants and defendant Hennessee
Group are liable to the Plaintiffs and the respective members of the Class and Hennessee
Subclass for the substantial damages they caused in an amount to be established at trial.

## ELEVENTH CLAIM FOR RELIEF

### (For Violations of §§ 206 and 215 of the Investment Advisers Act of 1940 Against Defendant Hennessee Group)

190.    Plaintiff Broad-Bussel Family and the Hennessee Subclass reallege each of the
foregoing allegations as if fully set forth herein, except for allegations related to fraud.

87

191.   Plaintiff Broad-Bussel Family and the Hennessee Subclass bring this claim for violation of §§ 206 and 215 of the Investment Advisers Act, 15 U.S.C. § 80b-6 and 15 U.S.C. § 80b-15, against defendant Hennessee Group.

192.   Defendant Hennessee Group offered advisory services in connection with recommending and advising investments in the Bayou Hedge Funds, and served as a registered investment advisor under the Investment Advisers Act.

193.   Defendant Hennessee Group served as an "investment adviser" to plaintiff Broad-Bussel Family and the Hennessee Subclass pursuant to the Investment Advisers Act.

194.   As a fiduciary pursuant to the Investment Advisers Act, defendant Hennessee Group was required to provide services to plaintiff Broad-Bussel Family and the Hennessee Subclass in a manner in accordance with the federal fiduciary standards set forth in § 206 of the Investment Advisers Act, 15 U.S.C. § 80b-6, governing the conduct of investment advisers. Section 206 provides that: "It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly –

(1)   to employ any device, scheme, or artifice to defraud any client or prospective client;

(2)   to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;

        *              *              *              *

(4)   to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative ....

88

195.    Defendant Hennessee Group breached its fiduciary duties owed to plaintiff Broad-Bussel Family and the Hennessee Subclass by engaging in a deceptive contrivance, scheme, practice and course of conduct pursuant to which it knowingly and/or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud or deceit, upon plaintiff Broad-Bussel Family and the Hennessee Subclass.  As detailed above, defendant Hennessee Group engaged in a deceptive offering and performance of investment advisory services for plaintiff Broad-Bussel Family and the Hennessee Subclass.  Among other things, the Hennessee Group touted that it performed proper due diligence and ongoing monitoring in connection with the Bayou investments it recommended to plaintiff Broad-Bussel Family and the Hennessee Subclass.  Indeed, plaintiff Broad-Bussel Family and the Hennessee Subclass specifically contracted with the Hennessee Group to receive those services, and paid the Hennessee Group compensation in connection therewith.  Far from performing properly such due diligence and monitoring services, the Hennessee Group failed to adequately perform such investment advisory services in recommending Bayou investments, and also ignored numerous Red Flags of the Bayou Defendants' misconduct which should have been recognized and timely disclosed by the Hennessee Group to plaintiff Broad-Bussel Family and the Hennessee Subclass. Notwithstanding its failure to perform properly such investment advisory services, the Hennessee Group billed and received substantial fees from plaintiff Broad-Bussel Family and the Hennessee Subclass in connection therewith.

196.    The Hennessee Group's multiple breaches of its fiduciary duties owed to plaintiff Broad-Bussel Family and the Hennessee Subclass, and other misconduct in deceiving plaintiff Broad-Bussel Family and the Hennessee Subclass violated the Investment Advisors Act.

197.    As a direct and proximate result of defendant Hennessee Group's breaches, plaintiff Broad-Bussel Family and the Hennessee Subclass invested in and maintained investments in one or more of the Bayou Hedge Funds and suffered damages thereby, including but not limited to their investment in the Bayou Hedge Funds and the fees they paid directly or indirectly to defendant Hennessee Group in connection therewith.

198.    The Hennessee Group's violations of the Investment Advisors Act were a substantial, direct and proximate cause of damages suffered by plaintiff Broad-Bussel Family and the Hennessee Subclass.

199.    By reason of the foregoing, defendant Hennessee Group is liable to plaintiff Broad-Bussel Family and the Hennessee Subclass for violation of the Investment Advisors Act. Accordingly, the investment advisory agreements entered into by plaintiff Broad-Bussel Family and the other members of the Hennessee Subclass on the one hand, and by the Hennessee Group on the other, are subject to rescission, and defendant Hennessee Group is liable to make restitution to plaintiff Broad-Bussel Family and the Hennessee Subclass for the fees and other compensation such Hennessee Subclass members paid under those agreements to the full extent allowable under the Investment Advisors Act. At a minimum, Broad-Bussel Family and the Hennessee Subclass are entitled to recoup the prior advisory fees they paid to the Hennessee Group, and set-off any present or future fees they may owe Hennessee Group, on account of Hennessee Group's violations of the Investment Advisors Act, as alleged more fully above.

## TWELFTH CLAIM FOR RELIEF

### (For Aiding and Abetting Fraud Against
### the Aider/Abettor Defendants)

200.    Plaintiffs reallege each of the foregoing allegations as if fully set forth herein.

201.    Plaintiffs and the Class bring this claim for aiding and abetting fraud against the Aider/Abettor Defendants.

202.    The Aider/Abettor Defendants participated in a common plan or course of conduct, in conjunction with the Bayou Defendants and each other, that was designed to commit a fraud upon Plaintiffs and the Class.

203.    Each of the Aider/Abettor Defendants participated in the alleged fraudulent course of conduct through active participation, aid, encouragement and/or ratification of the fraudulent misconduct alleged above, for its/his/her own benefit, and did so having known of that fraud, or but for its/his/her gross negligence or recklessness should have known of the fraudulent nature of that course of conduct, in particular as follows, all as alleged more fully above:

        a.    Defendants Marquez and Fotta were principals of the Bayou Defendants and directly controlled the dissemination of the Bayou Defendants' Misrepresentations and Omissions. In addition, Marquez was directly involved in orchestrating the Bayou Defendants' misconduct beginning in at least 1998 and oversaw the operations of Bayou Securities and thereby directly or indirectly participated in the wrongdoing. Defendant Richmond-Fairfield was a sham accounting firm created by the Bayou Defendants to render false audit opinions for Bayou and the Bayou Hedge Funds in order to conceal the misconduct of the Bayou Defendants. Defendant Eqyty Research received monies that were misappropriated from the Bayou Hedge Funds and Bayou Securities. In return for their wrongful participation in allowing the Bayou Defendants to misrepresent and omit to disclose material facts concerning the Bayou Hedge Funds, the Aider/Abettor Defendants Marquez, Fotta, Richmond-Fairfield and Eqyty Research

91

received monetary compensation directly or indirectly from monies that rightfully belonged to Plaintiffs and the Class.

      b.    As alleged more fully above, defendant Faust Rabbach & Oppenheim and defendant Oppenheim aided and abetted the Bayou Defendants' fraud by serving as counsel for Bayou during all or some of the Class Period, and by directly or indirectly participating in planning, orchestrating and/or executing, approving or ignoring the alleged fraud, including but not limited to the creation and operation of several of the Bayou Defendants.

      c.    Also as alleged more fully above, defendant Citibank aided and abetted the Bayou Defendants' fraudulent scheme by, among other things:  allowing defendant Israel to wrongfully deplete five Bayou bank accounts in or about July 2004; permitting defendant Israel to withdraw and convert at least $161 million of Bayou's then remaining funds; and actually transferring those funds to Israel's *personal accounts* in foreign and other banks.

204.    Plaintiffs and the Class were injured by the violations of the Aider/Abettor Defendants alleged above.  The Aider/Abettor Defendants are therefore jointly and severally liable to Plaintiffs and the Class for all damages incurred resulting therefrom in an amount to be proven at trial.

**THIRTEENTH CLAIM FOR RELIEF**

**(For Aiding and Abetting Breach of Fiduciary Duty
Against the Aider/Abettor Defendants)**

205.    Plaintiffs reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

206.    Plaintiffs and the Class bring this claim for aiding and abetting breach of fiduciary duty against the Aider/Abettor Defendants.

92

207.    Each of the Aider/Abettor Defendants participated in an alleged course of conduct that aided and abetted numerous breaches of fiduciary duties that were committed by the Bayou Defendants, all as alleged more fully above.

208.    Each of the Aider/Abettor Defendants actively participated in the Bayou Defendants' misconduct and aided, encouraged and/or ratified such misconduct for its/his/her own benefit, including more particularly as follows, all as more fully alleged above:

a.    Defendants Marquez and Fotta were principals of the Bayou Defendants and directly controlled the dissemination of the Bayou Defendants' Misrepresentations and Omissions. In addition, Marquez was directly involved in orchestrating the Bayou Defendants' misconduct beginning in at least 1998 and oversaw the operations of Bayou Securities and thereby directly or indirectly participated in the wrongdoing. Defendant Richmond-Fairfield was a sham accounting firm created by the Bayou Defendants to render false audit opinions for Bayou and the Bayou Hedge Funds in order to conceal the misconduct of the Bayou Defendants. Defendant Eqyty Research received monies that were misappropriated from the Bayou Hedge Funds and Bayou Securities. In return for their wrongful participation in allowing the Bayou Defendants to misrepresent and omit to disclose material facts concerning the Bayou Hedge Funds, the Aider/Abettor Defendants Marquez, Fotta, Richmond-Fairfield and Eqyty Research received monetary compensation directly or indirectly from monies that rightfully belonged to Plaintiffs and the Class.

b.    As alleged more fully above, defendant Faust Rabbach & Oppenheim and defendant Oppenheim aided and abetted the Bayou Defendants' breaches of fiduciary duties by serving as counsel for Bayou during all or some of the Class Period, and by directly or indirectly

93

participating in planning, orchestrating and/or executing, approving or ignoring the alleged breaches of fiduciary duty, including but not limited to the creation and operation of several of the Bayou Defendants.

       c.     As alleged more fully above, defendant Citibank aided and abetted the Bayou Defendants' misconduct by, among other things:  allowing the defendant Israel to wrongfully deplete five Bayou bank accounts in or about July 2004; permitting defendant Israel to withdraw and convert at least $161 million of Bayou's then remaining funds; and actually transferring those funds to Israel's *personal accounts* in foreign and other banks.

     209.    Plaintiffs and the Class were injured by the violations of the Aider/Abettor Defendants alleged above.  The Aider/Abettor Defendants are therefore jointly and severally liable to Plaintiffs and the Class for all damages incurred resulting therefrom in an amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF

### (For Aiding and Abetting Negligence
### Against the Aider/Abettor Defendants)

     210.    Plaintiffs reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

     211.    Plaintiffs and the Class bring this claim for aiding and abetting negligence against the Aider/Abettor Defendants.

     212.    Each of the Aider/Abettor Defendants participated in the Bayou Defendants' misconduct and either knew, or but for their negligence and/or gross negligence should have known, of the false and misleading information that the Bayou Defendants were providing to investors and others regarding the Bayou Hedge Funds.

213.    Each of the Aider/Abettor Defendants participated in the alleged fraudulent course of conduct through active participation, aid, encouragement and/or ratification of the negligent misrepresentations and omissions alleged above, for its/his/her own benefit, including in particular as follows, all as more fully alleged above:

a.    Defendants Marquez and Fotta were principals of the Bayou Defendants and directly controlled the dissemination of the Bayou Defendants' Misrepresentations and Omissions. In addition, Marquez was directly involved in orchestrating the Bayou Defendants' misconduct beginning in at least 1998 and oversaw the operations of Bayou Securities and thereby directly or indirectly participated in the wrongdoing. Defendant Richmond-Fairfield was a sham accounting firm created by the Bayou Defendants to render false audit opinions for Bayou and the Bayou Hedge Funds in order to conceal the misconduct of the Bayou Defendants. Defendant Eqyty Research received monies that were misappropriated from the Bayou Hedge Funds and Bayou Securities. In return for their wrongful participation in allowing the Bayou Defendants to misrepresent and omit to disclose material facts concerning the Bayou Hedge Funds, the Aider/Abettor Defendants Marquez, Fotta, Richmond-Fairfield and Eqyty Research received monetary compensation directly or indirectly from monies that rightfully belonged to Plaintiffs and the Class.

b.    As alleged more fully above, defendant Faust Rabbach & Oppenheim and defendant Oppenheim aided and abetted the Bayou Defendants' negligence by serving as counsel for Bayou during all or some of the Class Period, and by directly or indirectly participating in planning, orchestrating and/or executing, approving or ignoring the alleged

negligence, including but not limited to the creation and operation of several of the Bayou Defendants.

        c.    As alleged more fully above, defendant Citibank substantially facilitated the Bayou Defendants' wrongdoing by, among other things: allowing the Bayou Defendants to wrongfully deplete five Bayou bank accounts in or about July 2004; permitting defendant Israel to withdraw and convert at least $161 million of Bayou's then remaining funds; and actually transferring those funds to Israel's *personal accounts* in foreign and other banks.

214.    Plaintiffs and the Class were injured by the violations of the Aider/Abettor Defendants alleged above.  The Aider/Abettor Defendants are therefore jointly and severally liable to Plaintiffs and the Class for all damages incurred resulting therefrom in an amount to be proven at trial.

### FIFTEENTH CLAIM FOR RELIEF

### (For Unjust Enrichment and Restitution Against All Defendants)

215.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

216.    Plaintiffs and the members of the Class bring this claim against all of the Defendants.

217.    Plaintiffs and the members of the Class directly or indirectly entered into fiduciary, legal and/or other business or other relationships with the Defendants as alleged above.

218.    Plaintiffs and the members of the Class and the Hennessee Subclass conferred compensation and other financial benefits upon Defendants in various forms of direct and

indirect fees, compensation and other charges for services that were to be rendered in connection with the management and operations of the Bayou Hedge Funds. In particular, the Bayou Defendants and defendant Marquez received fees, commissions, salaries and bonuses in connection with the management and operations of the Bayou Hedge Funds; defendant Faust Rabbach & Oppenheim and defendant Oppenheim received monies in the form of legal fees and/or other payments from Class member investment proceeds in connection with services as counsel and agents for Bayou during all or some of the Class Period; defendant Citibank received fees and other benefits in connection with its banking services to the Bayou Hedge Funds and defendant Israel; defendants Eqyty Research and Fotta received fees in connection with assisting in operating Bayou and purported stock research; and the Hennessee Defendants received fees and commissions in connection with recommending the Bayou Hedge Funds as investments for Plaintiffs and the respective members of the Hennessee Subclass. All of the foregoing benefits were requested, voluntarily accepted, and retained by Defendants with knowledge of the material facts.

219.    Defendants derived benefits from their relationships with Plaintiffs and the members of the Class. Through their inequitable conduct, Defendants obtained fees, compensation and other emoluments and benefits which they did not properly earn or were rightfully entitled to, and Defendants have thus been unjustly enriched. It would be inequitable for the Defendants to retain such fees, compensation and other benefits they derived from plaintiff Broad-Bussel Family and the members of the Class and Hennessee Subclass in connection the Bayou Hedge Funds without repaying to members of the Class and the Hennessee Subclass the value thereof.

97

220. By reason of the foregoing, Defendants have been unjustly enriched in an amount to be proven at trial which, in justice and fairness and in the alternative to the extent not duplicative of any of the other claims for relief requested herein, and/or to the extent Plaintiffs and the members of the Class and Hennessee Subclass are for any reason denied relief on account of the other claims set forth herein, should be paid over to the Plaintiffs and the other members of the Class and Hennessee Subclass.

## BASIS OF ALLEGATIONS

Plaintiffs have made the foregoing allegations, other than those concerning themselves, based upon the investigation of Plaintiffs' counsel which, among other things, included a review of various media reports and press releases concerning the Defendants and other persons and entities; public and other documents concerning the financial and business operations, condition and results of Defendants and other persons and entities; state and other regulatory filings regarding Defendants and other persons and entities; on-line databases and other computer research; court filings and proceedings in other litigations, including but not limited to the criminal charges against, and guilty pleas entered by, defendants Israel and Marino; and a review of other documents and information. Plaintiffs believe that additional evidentiary support will exist for their allegations after they are afforded a reasonable opportunity for discovery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the proposed Class and Hennessee Subclass, pray for the following relief:

1. declaring this action to be a class action properly maintained on behalf of the Class under Rules 23(a), (b)(1)(A), (b)(1)(B) and (b)(3) of the Federal Rules of Civil Procedure

98

and certifying plaintiff Broad-Bussel Family and the Michelsohn Plaintiffs as the Class representatives thereof;

    2.    declaring that the Hennessee Subclass is properly certified as a subclass under Federal Rules 23(a) and 23(b)(3), and that plaintiff Broad-Bussel Family is certified as the representative of the Hennessee Subclass;

    3.    finding that Defendants committed the misconduct and violations alleged;

    4.    awarding Plaintiffs and the members of the Class and the Hennessee Subclass damages, including but not limited to compensatory, treble and punitive damages, together with interest thereon, to the maximum extent permitted by law;

    5.    awarding Plaintiffs and the members of the Class and the Hennessee Subclass their costs and expenses of this litigation, including but not limited to reasonable attorneys' fees, experts' fees and other costs and disbursements;

    6.    directing that all funds traceable to the Bayou Hedge Funds be placed in a constructive trust and distributed ratably to Plaintiffs and the members of the Class and the Hennessee Subclass consistent with such investors' damages; and

    7.    awarding plaintiff Broad-Bussel Family and the other members of the Hennessee Subclass rescission of the investment advisory agreements they entered into with defendant Hennessee Group and the return of all fees and other compensation plaintiff Broad-Bussel Family and the other members of the Hennessee Subclass paid to the Hennessee Group in connection therewith in accordance with the Investment Advisors Act, and/or that the fees which plaintiff Broad-Bussel Family and the other members of the Hennessee Subclass paid to the

Hennessee Group be subject to recoupment and/or set-off to the full extent permitted by law in connection with the violations alleged herein; and

8.      awarding Plaintiffs and the members of the Class and the Hennessee Subclass such other and further relief as may be just and proper in the circumstances.

### JURY DEMAND

Plaintiffs, individually and on behalf of the Class and the Hennessee Subclass, demand a trial by jury of all claims and issues so triable.

Dated: March 6, 2006

KOSKOFF, KOSKOFF & BIEDER, P.C.
William M. Bloss, Esq.
Neal A. DeYoung, Esq.
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
Fax: (203) 368-3244

Attorneys for Plaintiffs Marie-Louise Michelsohn,
Michelle Michelsohn and Herbert Blaine Lawson, Jr.


BERGER & MONTAGUE, P.C.
Merrill G. Davidoff, Esq.
Lawrence J. Lederer, Esq.
Lane L. Vines, Esq.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604

Attorneys for Plaintiff Broad-Bussel Family
Limited Partnership

100