UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BAYOU HEDGE FUND INVESTMENT LITIGATION | MDL No. 1755 (CM) |
| THIS DOCUMENT RELATES TO: | |
| BROAD-BUSSEL FAMILY LIMITED PARTNERSHIP, MARIE LOUISE, MICHELSOHN, MICHELLE MICHELSOHN, and HERBERT BLAINE LAWSON, JR., Individually and on Behalf of All Other Persons and Entities Similarly Situated, Plaintiffs, - against - BAYOU GROUP LLC, et al., Defendants. | No. 06 Civ. 3026 (CM) **ELECTRONICALLY FILED** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT CITIBANK, N.A.'S RULE 12(b)(6) MOTION TO DISMISS**

Benjamin R. Nagin (BN 0539)
Catherine B. Winter (CW 3053)
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Mark B. Blocker
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
(312) 853-7036 (fax)

John K. Van De Weert
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Counsel for Defendant Citibank, N.A.*

# TABLE OF CONTENTS

**INTRODUCTION** ........ 1

**STATEMENT OF FACTS** ........ 4

**ARGUMENT** ........ 5

I. PLAINTIFFS' NEGLIGENCE CLAIM (COUNT VII) FAILS BECAUSE CITIBANK OWED NO DUTY TO NON-CUSTOMERS, INCLUDING PLAINTIFFS ........ 5

II. THE COMMERCIAL BAD FAITH CLAIM (COUNT VIII) FAILS BECAUSE PLAINTIFFS CANNOT ALLEGE ACTUAL KNOWLEDGE OF UNDERLYING WRONG ........ 7

III. THE AIDING AND ABETTING CLAIMS (COUNTS XII, XIII & XIV) SHOULD BE DISMISSED BECAUSE CITIBANK HAD NO ACTUAL KNOWLEDGE OF THE MISCONDUCT AND DID NOT SUBSTANTIALLY ASSIST IN THE MISCONDUCT ........ 9

A. Plaintiffs Have Not Alleged Actual Knowledge ........ 10

B. Plaintiffs Have Not Alleged Substantial Assistance ........ 11

IV. THE UNJUST ENRICHMENT CLAIM (COUNT XIV) SHOULD BE DISMISSED ........ 14

V. ALL OF PLAINTIFFS' CLAIMS ARE BARRED BECAUSE THEIR EXCLUSIVE REMEDY FOR CHALLENGING THE PROPRIETY OF A WIRE TRANSFER IS UNDER UCC ARTICLE 4A. ........ 15

A. Background And Structure Of Article 4A ........ 15

1. Background of Article 4A ........ 15

2. Structure of Article 4A ........ 17

B. Exclusivity Of Article 4A ........ 18

C. Plaintiffs' Common Law Claims Are Inconsistent With Article 4A And Therefore Should Be Dismissed ........ 19

D. Courts Have Routinely Rejected Similar Attempts To Avoid Article 4A ........ 20

**CONCLUSION** ........ 23

# TABLE OF AUTHORITIES

## CASES

Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, 731 F.2d 112 (2d Cir. 1984) ......... 12

Alden Automobile Parts Warehouse, Inc. v. Dolphin Equipment Leasing Corp., 682 F.2d 330 (2d Cir. 1982) ........................................................................ 14

Aleo International, Ltd. v. Citibank, N.A., 160 Misc. 2d 950, 612 N.Y.S.2d 540 (N.Y. Supr. 1994)..........................................................................18, 21

Banque Arabe et Internationale d'Investissement v. Maryland National Bank, 57 F.3d 146 (2d Cir. 1995).......................................................................... 12

Banque Worms v. BankAmerica International, 77 N.Y.2d 362, 570 N.E.2d 189, 568 N.Y.S.2d 541 (1991) ...................................................................... 7, 16

Centre-Point Merchant Bank Ltd. v. American Express Bank Ltd., 913 F. Supp. 202 (S.D.N.Y. 1996) ...........................................................................18, 21

Conder v. Union Planters Bank, N.A., 384 F.3d 397 (7th Cir. 2004) .............................. 6

Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220 (4th Cir. 2002)................................. 6

Estate of Freitag v. Frontier Bank, 118 Wash. App. 222, 75 P.3d 596 (2003) ...........21, 22

Johnson v. Chase Manhattan Bank, 98 Civ. 8173 (RMB), 2000 U.S. Dist. LEXIS 5587 (S.D.N.Y. Apr. 27, 2000).......................................................................... 6

Latallo Establissement v. Morgan Guaranty Trust Co. of N.Y., 155 A.D.2d 214, 553 N.Y.S.2d 686 (1st Dep't 1990)......................................................11, 14

Lombard v. Booz Allen & Hamilton, Inc., 280 F.3d 209 (2d Cir. 2002) ......................... 5

Nigerian Nat'l Petroleum Corp. v. Citibank, N.A., 98 Civ. 4960 (MBM), 1999 U.S. Dist. LEXIS 11599 (S.D.N.Y. July 29, 1999) ............................................ 8, 13

OSRecovery, Inc. v. One Group International, Inc., 229 F.R.D. 456 (S.D.N.Y. 2005)...................................................................................................... 6

Peoples Westchester Sav. Bank v. FDIC, 961 F.2d 327 (2d Cir. 1992)......................... 11

Regatos v. North Fork Bank, 257 F. Supp. 2d 632 (S.D.N.Y. 2003) .........................17, 20

Renner v. Chase Manhattan Bank, 98 Civ. 926 (CSH), 2000 U.S. Dist. LEXIS 8552 (S.D.N.Y. June 14, 2000)....................8, 9, 11

Renner v. Chase Manhattan Bank, 98 Civ. 926 (CSH), 1999 U.S. Dist. LEXIS 978 (S.D.N.Y. Feb. 2, 1999).................... 6

In re Rickel & Associate, Inc. (Rickel & Associate, Inc. v. Smith), 272 B.R. 74 (Bankr. S.D.N.Y. 2002).................... 14

Ryan v. Hunton & Williams, 99 Civ. 5938 2000 U.S. Dist. LEXIS 13750 (E.D.N.Y. Sept. 20, 2000) .................... 2, 7, 8, 10, 11, 13

Schlegel v. Bank of America, N.A., 628 S.E.2d 362 (Va. 2006) .................... 21

In re Sharp International Corp. (Sharp International Corp. v. State Street Bank & Trust Co.), 403 F.3d 43 (2d Cir. 2005) ....................10, 12, 13

Sheerbonnet, Ltd. v. American Express Bank, Ltd., 951 F. Supp. 403 (S.D.N.Y. 1995)....................18, 21

Tzaras v. Evergreen Int'l Spot Trading, Inc., 01 Civ. 10726 2003 U.S. Dist. LEXIS 2707 (S.D.N.Y. Feb. 25, 2003) .................... 6

Williams v. Bank Leumi Trust Co., 96 Civ. 6695 (LMM), 1997 U.S. Dist. LEXIS 7538 (S.D.N.Y. May 30, 1997).................... 13

**STATUTES**

Conn. Gen. Stat. § 42a-4A-101 et seq. ... 16

Fed. R. Civ. P. 12(b)(6) ... 1, 4

N.Y. Banking L. § 9 ... 11

N.Y. U.C.C. Art. 4-A ... 16

N.Y. U.C.C. § 4-A-102 ... 17

N.Y. U.C.C. § 4-A-103 ... 17

N.Y. U.C.C. § 4-A-104 ... 17

N.Y. U.C.C. § 4-A-202(1) ... 17

N.Y. U.C.C. § 4-A-202(2) ... 18

N.Y. U.C.C. § 4-A-507(1) ... 5

Defendant Citibank, N.A. ("Citibank"), by its undersigned counsel, submits this Memorandum of Law in Support of its Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

Plaintiffs are unfortunate victims of the collapse of a family of hedge funds known as the Bayou Funds ("Bayou Funds" or the "Funds"), in which they were investors. As has been widely reported in the press, in the Fall of 2005 investors learned that the Bayou Funds had essentially been operated as a Ponzi scheme by the principals of the Funds, Samuel Israel III and Daniel E. Marino. To prevent detection of their fraud, Israel and Marino, among other things, provided phony account statements to investors and created their own auditing firm to provide false audit reports of the Bayou Funds' financial status. These fraudulent actions apparently left the Bayou Funds insolvent, rendering investors' investments worthless. Israel and Marino have now pled guilty to multiple criminal charges relating to their fraudulent operation of the Bayou Funds.

In the wake of this fraud, Plaintiffs have filed this putative class action lawsuit against not just Marino and Israel, but also various other persons and entities directly connected to the Bayou Funds, and certain third-party advisors whom they claim recommended investments in the Bayou Funds. But in their zeal to recover their investments, plaintiffs have also chosen to assert claims against Citibank, whose only alleged connection to these unfortunate events is that some of the entities connected with the Bayou Funds (the "Bayou Depositors") had bank accounts at a Citibank branch. Indeed, the only substantive allegation against Citibank is that, in July 2004 – more than a year before the Funds collapsed – Citibank processed wire transfers, as requested by the Funds' principals, by which monies were moved from the Bayou Depositors' accounts at Citibank to allegedly private accounts at a German bank. (Am. Compl. ¶ 3).

Plaintiffs apparently contend that Citibank should have independently determined whether these wire transfers were appropriate and then refused to process them.

The law, however, does not impose a duty on Citibank to act as an independent investigator of the propriety of a depositor's authorized wire transfers, and thus there is no basis for a claim against Citibank. Indeed, a federal district court in New York dismissed a very similar case filed against a bank for fraud committed by its depositors in Ryan v. Hunton & Williams, 99 Civ. 5938 (JG), 2000 U.S. Dist. LEXIS 13750 (E.D.N.Y. Sept. 20, 2000). In Ryan, plaintiffs were the victims of a fraudulent Ponzi scheme operated by a partner at the Hunton & Williams law firm. Unable to obtain recovery from the fraudster, plaintiffs sued Chemical Bank, which held deposit accounts used by the fraudster to run the scheme. They alleged that the bank was aware of a number of warning signs or "red flags" that indicated the fraud, but nevertheless continued to process the bank transactions that facilitated the fraud. Id. at *2. The court granted Chemical Bank's Rule 12(b)(6) motion, on a number of grounds: the court concluded that the bank had no duty to warn others of its depositor's activities, id. at *17, had no actual knowledge of the fraud, id. at *26 & *33, and did not "substantially" assist the fraud, id. at *31.

These same grounds apply with equal force in this case and likewise require dismissal of the claims against Citibank. Plaintiffs' claims are predicated on the notion that Citibank owed a duty to Bayou investors to determine whether the funds in the Bayou Depositors' bank accounts were investor funds, and then to police any transactions from the Bayou Depositors' Citibank accounts that might have affected those funds. But this predicate is false, as the Ryan case shows. It is well-settled that Citibank owed duties only to its depositors, the Bayou Depositors, and owed no duties to investors in the Bayou Funds. Once a depositor demands that funds be wired to another bank, a bank has no basis to police the *bona fides* of that

request. Absent some sort of actual knowledge that the funds would be used for fraudulent purposes such that the bank was somehow a part of the fraud – and there are no such allegations (nor could there be) here – there is simply no duty on the part of a bank to the customers of its depositor. Because all of plaintiffs' claims against Citibank are based on this erroneous premise, all of the claims should be dismissed.

Plaintiffs' claims should also be dismissed because they are barred by Article 4A of the Uniform Commercial Code (the "UCC"), which governs funds transfers. Courts have held that common law claims that seek to impose obligations that are inconsistent with the provisions of Article 4A are barred, and that a claimant's exclusive remedy is a claim under Article 4A. Here, plaintiffs' claims are inconsistent with Article 4A because they seek to impose a duty on Citibank to investigate the propriety of any wire transfer, even though section 202 of Article 4A provides that Citibank's only obligation is to determine whether a funds transfer is authorized. Thus, plaintiffs' exclusive remedy for Citibank's alleged conduct is a claim under Article 4A, and such a claim cannot succeed because the allegations of the complaint make clear that the wire transfers at issue were authorized by the principals of the Bayou Funds. For this additional reason, all claims against Citibank should be dismissed.

For these reasons, and as further explained below, all of the claims asserted by plaintiffs against Citibank in their Amended Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

Plaintiffs were investors in the Bayou Funds. (Am. Compl. ¶¶ 15, 16). The Bayou Funds were a family of hedge funds based in Connecticut, and the principals were Messrs. Israel and Marino. (Id. ¶¶ 1, 17-23). In August 2005, the principals of the Bayou Funds announced they were closing the Funds, and those principals have pled guilty to criminal charges in connection with the collapse of the Bayou Funds. (Id. ¶ 2).

Citibank is a national bank headquartered in New York City. (Id. ¶ 35). Prior to July 2004, Citibank held a number of deposit accounts for the Bayou Depositors at a branch in Bronxville, New York. (Id. ¶¶ 35.a, 77). Plaintiffs allege that, in or about July 2004, at Israel's direction, Citibank allowed the Bayou Depositors to withdraw $161 million from their Citibank accounts, and transferred the funds to an account in Israel's name at Deutsche Postbank in Germany. (Id. ¶¶ 35.c, 76). Plaintiffs allege that Citibank was aware that the funds held at Citibank were "Class member fiduciary investment dollars." (Id. ¶ 80).

Of the 15 counts in their Amended Complaint, six of them are brought against Citibank: negligence (Am. Compl. Count VII, ¶¶ 155-164), commercial bad faith (Am. Compl. Count VIII, ¶¶ 165-170), aiding and abetting fraud (Am. Compl. Count XII, ¶¶ 200-204), aiding and abetting breach of fiduciary duty (Am. Compl. Count XIII, ¶¶ 205-209), aiding and abetting negligence (Am. Compl. Count XIV, ¶¶ 210-214), and unjust enrichment and restitution (Am.

---

[1] This statement of facts is based on the allegations of the Amended Complaint, which are assumed to be true solely for purposes of this Fed. R. Civ. P. 12(b)(6) motion. Citibank denies the allegations of the Amended Complaint, and specifically denies that it is liable to any of the plaintiffs in any amount. A copy of plaintiffs' Amended Class Action Complaint, originally filed in the District of Connecticut and transferred to this Court by the Judicial Panel on Multidistrict Litigation, is attached as Exhibit 1 to the Declaration of John K. Van De Weert, filed herewith.

Compl. Count XV, ¶¶ 215-20). As set forth below, all of these claims are deficient as a matter of law, and should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS' NEGLIGENCE CLAIM (COUNT VII) FAILS BECAUSE CITIBANK OWED NO DUTY TO NON-CUSTOMERS, INCLUDING PLAINTIFFS.

The fundamental problem with plaintiffs' attempt to impose liability on Citibank in this case is that Citibank owed no duty to plaintiffs. Nowhere is this problem more evident than in plaintiffs' attempt to assert a negligence claim, because the existence of a duty owed by the defendant to the plaintiff is a required element of a negligence claim. E.g. Lombard v. Booz Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002) (applying New York law). Here, plaintiffs have not – and cannot – allege that Citibank owed any such a duty to plaintiffs.

Plaintiffs claim that Citibank "had a duty not to transfer to defendant Israel personally millions of dollars in proceeds which it knew or ignored were fiduciary investment funds beneficially owned by Class member investors." (Am. Compl. ¶ 157). This allegation amounts to a claim that Citibank should have ignored a request from the authorized principal of its depositor, the Bayou Depositors, to transfer funds. In essence, plaintiffs are claiming that Citibank owed duties to non-customers, i.e., the investors in the Funds, to determine whether the monies being transferred were investor funds and, if they were, to then determine whether Citibank believed that such a transfer was appropriate and in the best interests of investors.

The law does not impose any such duty on Citibank. New York law applies in this case because the Bayou Depositors maintained their accounts at a Citibank branch in New York State. See N.Y. U.C.C. § 4-A-507(1)(a) ("The rights and obligations between the sender of a payment order and the receiving bank are governed by the law of the jurisdiction in which the

receiving bank is located."). It is well-settled under New York law that "a bank does not owe a duty of care to a non-customer." Tzaras v. Evergreen Int'l Spot Trading, Inc., 01 Civ. 10726 (LAP), 2003 U.S. Dist. LEXIS 2707, *17 (S.D.N.Y. Feb. 25, 2003); Johnson v. Chase Manhattan Bank, 98 Civ. 8173 (RMB) (RLE), 2000 U.S. Dist. LEXIS 5587, *15 (S.D.N.Y. Apr. 27, 2000) ("The general rule is that a bank does not owe a duty to a non-customer third-party"); Renner v. Chase Manhattan Bank, 98 Civ. 926 (CSH), 1999 U.S. Dist. LEXIS 978, *39-40 (S.D.N.Y. Feb. 2, 1999) (bank did not owe duty of care to non-customer plaintiff). This rule is recognized in other jurisdictions as well. Conder v. Union Planters Bank, N.A., 384 F.3d 397, 400 (7th Cir. 2004) (banks do not "have a general duty of care to noncustomers"); Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 225 (4th Cir. 2002) ("a bank does not owe a duty of care to a non-customer with whom the bank has no direct relationship"); OSRecovery, Inc. v. One Group Int'l, Inc., 229 F.R.D. 456, 459 (S.D.N.Y. 2005).

Here, Citibank's customers were the Bayou Depositors (Am. Compl. ¶ 35.a), not the investors in the Bayou Funds. Although plaintiffs allege that the monies within the deposit accounts were "fiduciary proceeds beneficially owned by class members," they do not allege – nor could they – that any of the plaintiffs were Citibank's customers with respect to the Bayou Depositors' accounts, or that any of the plaintiffs held any direct interest in the accounts. Rather, the funds were in bank accounts belonging to the Bayou Depositors, to which the plaintiffs had chosen to entrust their money for investment purposes. Because the plaintiffs were non-customers with respect to the Bayou Depositors' accounts, Citibank owed no duty to the plaintiffs.

Nor is it surprising that the law does not impose such a duty on banks. If the law were otherwise, every time a customer wanted to make a withdrawal from its account, Citibank

would have to make an independent investigation to determine (1) whether the funds on deposit were beneficially owned by others, and (2) whether, in the opinion of the bank, every withdrawal was appropriate and permissible. But the need to conduct such investigations would cause enormous delays in the payments of withdrawal requests and bring the banking system to a grinding halt. This is especially true in the case of wire transfers, which are supposed to allow for quick and efficient means of transferred funds. See, e.g., Banque Worms v. BankAmerica Int'l, 77 N.Y.2d 362, 372, 570 N.E.2d 189, 195, 568 N.Y.S.2d 541, 547 (1991). The banking system simply could not function if the law imposed the sort of policing function that plaintiffs' claim imagines, which is why banks do not have any such duty to non-customers, and thus Count VII should be dismissed.

## II. THE COMMERCIAL BAD FAITH CLAIM (COUNT VIII) FAILS BECAUSE PLAINTIFFS CANNOT ALLEGE ACTUAL KNOWLEDGE OF UNDERLYING WRONG.

Count VIII, for commercial bad faith, should be dismissed because plaintiffs have not and cannot allege that Citibank had actual knowledge of the underlying fraud. Under New York law, a plaintiff can only succeed on a bad faith claim if he can show that "the 'bank acts dishonestly – where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself becoming a participant in the fraudulent scheme.'" Ryan, 2000 U.S. Dist. LEXIS 13750 at *31 (quoting Prudential-Bache Sec., Inc. v. Citibank, N.A., 73 N.Y.2d 263, 275, 539 N.Y.S.2d 699, 706, 536 N.E.2d 1118, 1125 (1989)). Because the complaint does not make any such allegations, Count VIII should be dismissed.

Nearly identical claims have been dismissed at the pleading stage. For example, in Ryan, plaintiffs alleged that an officer of the defendant bank had "suspected that [the accounts] where a vehicle for fraudulent activity" from the time the accounts were opened, and had referred them to the "in-house fraud investigative unit." Id. at *4. Nevertheless, in spite of

its suspicions, the bank (and its officers) "specifically approved multiple wire transfers that resulted in the theft of investors funds." Id. at *6. The Ryan court dismissed the commercial bad faith claim, because the standard of actual knowledge was not satisfied:

> At most, the plaintiffs have alleged that Chemical negligently failed to monitor the accounts adequately and close them promptly. However, pleading "'merely a lapse of wary vigilance or even suspicious circumstances which might well have induced a prudent banker to investigate'" is insufficient to state a claim of commercial bad faith.

Ryan, 2000 U.S. Dist. LEXIS 13750 at *31-32 (quoting Renner v. Chase Manhattan Bank, 98 Civ. 926 (CSH), 2000 U.S. Dist. LEXIS 8552, *53 (S.D.N.Y. June 14, 2000) (quoting Nigerian Nat'l Petroleum Corp. v. Citibank, N.A., 98 Civ. 4960 (MBM), 1999 U.S. Dist. LEXIS 11599, *24 (S.D.N.Y. July 29, 1999)).

Similarly, in the Renner decision cited by Ryan, the court dismissed a commercial bad faith claim because the defendant bank and its employee were not alleged to have had actual knowledge of the fraud. In Renner, plaintiff had been persuaded to invest his money in the "Townsend Fund," and his investment was held in an account at Chase bank. Chase initially rejected a proposed transaction from that account because it suspected fraud, but subsequently approved wire transfers out of the account. 2000 U.S. Dist. LEXIS 8552 at *26-27. Despite the fact that at least some of the transfers caused funds to be sent to an account of one of the fraudsters' common law wife, id. at *22, the court nevertheless refused to infer that the bank and its employee had actual knowledge of fraud, and rejected the notion that the bank had any duty to alert non-customer Renner (who was not the accountholder) of its suspicions. There was no allegation that any of the transactions were not authorized by the accountholder, and the court held that Chase had no "duty … to obtain authorization from Renner, a non-customer, before approving transactions from the Townsend Fund account." Id. at *37.

The facts alleged here are indistinguishable from the ones alleged in Ryan and Renner, and so this Court should likewise dismiss the commercial bad faith claim. Plaintiffs have not, and cannot, allege that Citibank had *actual knowledge* of the fraud allegedly being conducted by the Bayou Funds and their principals. Plaintiffs do not even allege that Citibank had any suspicions that there was any wrongdoing (and even if they could, such allegations alone would be insufficient). Rather, the only purported basis for this claim against Citibank is that it allegedly allowed Mr. Israel, one of the Bayou Funds' principals, to transfer money to an account at a German bank that was allegedly in Israel's personal name. (Am. Compl.¶¶ 35.c, 76-81). As in Renner, these allegations do not give rise to an inference of *actual knowledge* of fraud, and nothing short of actual knowledge will suffice to state a claim:

> As most, Renner is entitled to the inference that Morelli [the bank officer] should have known that there was the possibility of fraud. But what Morelli should have known is irrelevant. The law is only interested in what he actually knew, and Plaintiff has failed to demonstrate that the amended complaint adequately alleges that Morelli knew about the fraudulent scheme.

Renner, 2000 U.S. Dist. LEXIS 8552 at *23.

Because plaintiffs have not alleged that Citibank had actual knowledge of the fraud purportedly being perpetrated on them, the commercial bad faith claim should be dismissed.

## III. THE AIDING AND ABETTING CLAIMS (COUNTS XII, XIII & XIV) SHOULD BE DISMISSED BECAUSE CITIBANK HAD NO ACTUAL KNOWLEDGE OF THE MISCONDUCT AND DID NOT SUBSTANTIALLY ASSIST IN THE MISCONDUCT.

Plaintiffs purport to bring three aiding and abetting claims against Citibank: aiding and abetting fraud (Count XII), aiding and abetting breach of fiduciary duty (Count XIII), and aiding and abetting negligence (Count XIV). As to the last claim, for aiding and abetting negligence, Citibank is aware of no authority for such a claim under New York (or any other)

law.[2] In any event, all three aiding and abetting claims fail because plaintiffs have not alleged (A) that Citibank had *actual knowledge* of the underlying wrongdoing, or (B) that Citibank *substantially assisted* in the wrongdoing. Both facts are essential elements of a claim for aiding and abetting fraud and aiding and abetting breach of fiduciary duty. See Ryan, 2000 U.S. Dist. LEXIS 13750 at *24 (elements of aiding and abetting fraud are "(i) the existence of a violation by the primary wrongdoer; (ii) knowledge of this violation by the aider and abettor; and (iii) proof that the aider and abettor substantially assisted in the primary wrong"); In re Sharp Int'l Corp. (Sharp Int'l Corp. v. State Street Bank & Trust Co.), 403 F.3d 43, 49 (2d Cir. 2005) (elements of aiding and abetting breach of fiduciary duty are (i) "a breach by a fiduciary of obligations to another, of which the aider and abettor had actual knowledge," (ii) "that the defendant knowingly induced or participated in the breach," and (iii) "that plaintiff suffered damage as a result of the breach" (internal quotations and citations omitted)).

**A. Plaintiffs Have Not Alleged Actual Knowledge.**

As demonstrated above in connection with plaintiffs' commercial bad faith claim, plaintiffs have not adequately alleged that Citibank had actual knowledge of the underlying wrongdoing by the Bayou Funds and their principals. (Supra at § II). Indeed, the complaint's only specific allegation is that Citibank allegedly knew that Israel was transferring monies from the Bayou Depositors' accounts to accounts in Israel's own name at a German bank. (Am. Compl.¶¶ 35.c, 76-81).[3] That fact alone does not establish knowledge of Israel's purported fraud

[2] To the extent that a claim for aiding and abetting negligence can be stated under New York law, it would presumably require the same elements of other aiding and abetting claims: i.e., actual knowledge of the underlying wrongdoing and substantial assistance therein. Neither element is met here.

[3] Although Citibank specifically denies that it had any knowledge that the account into which the funds were transferred were personal accounts of Israel, that fact is irrelevant for purposes of this motion.

or breach of fiduciary duty. Courts have routinely held that, even if the nature of the transfer was suspicious, "[a]llegations that [the bank] suspected fraudulent activity … do not raise an inference of actual knowledge of … fraud." Ryan, 2000 U.S. Dist. LEXIS 13750 at *26).

In any case, New York law protects a bank when it follows the instructions of the authorized persons designated by the account holder. Thus, if a corporate officer draws a check on a corporation's bank account, payable to himself or herself, the bank may pay the check and is not deemed to have notice of a possible defense (of embezzlement or self-dealing) to the payment of the check. N.Y. Banking L. § 9. As noted by the Renner court, in analyzing the bank's obligations to the beneficial owner of funds, "'the bank has no greater obligation under the statute than to follow the instructions of the legal signatory….'" 2000 U.S. Dist. LEXIS 8552 at *39-40 (quoting Peoples Westchester Sav. Bank v. FDIC, 961 F.2d 327, 332 (2d Cir. 1992)). Indeed, "'a depository bank is mandated to obey the commands of an authorized depositor.'" Id. at *42 (quoting Latallo Establissement v. Morgan Guaranty Trust Co. of N.Y., 155 A.D.2d 214, 218, 553 N.Y.S.2d 686, 689 (1st Dep't 1990)).

In short, the allegations of the Amended Complaint do not support the conclusion that Citibank had actual knowledge of the underlying fraud, breach of fiduciary duty, or negligence, and for this reason alone, plaintiffs' aiding and abetting claims should be dismissed.

### B. Plaintiffs Have Not Alleged Substantial Assistance.

Another necessary element of an aiding and abetting claim is that the alleged aider and abettor provided "substantial assistance" in the underlying wrong. The Second Circuit defined the term "substantial assistance" in the Sharp Int'l case:

> Substantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur. … The mere inaction of an alleged aider and abettor constitutes substantial

> assistance only if the defendant owes a fiduciary duty directly to the plaintiff.

403 F.3d at 50 (internal quotations and citations omitted). Neither of these definitions is satisfied here. First, there is no allegation that Citibank affirmatively assisted or concealed any alleged breach. Second, plaintiffs cannot rely on Citibank's alleged inaction to establish "substantial assistance" because plaintiffs have not alleged, nor could they, that Citibank owed them the requisite fiduciary duty. The relationship between a bank and its depositor is not a fiduciary relationship, see, e.g., Banque Arabe et Internationale d'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 158 (2d Cir. 1995) ("banking relationships are not viewed as special relationships giving rise to a heightened duty of care"); Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, 731 F.2d 112, 122 (2d Cir. 1984) (relationship of bank and depositor "is that of debtor and creditor," not that of a fiduciary), and therefore plaintiffs can hardly claim that the relationship between investors in a depositor and the depositor's bank somehow establishes any sort of fiduciary relationship.

Plaintiffs make a conclusory statement, in paragraph 81.b of the Amended Complaint, that funds were "held by Citibank as a fiduciary for the benefit of Plaintiffs and the members of the Class…." (Am. Compl. ¶ 81.b). This conclusory allegation, though, cannot overcome the established law holding that a depositor-bank relationship is not a fiduciary one. Moreover, this conclusory statement is belied by the other allegations of the Complaint, alleging that "Citibank served as a principal banker *for Israel and the Bayou Hedge Funds*." (Am. Compl. ¶ 35.a (emphasis added)). Thus, plaintiffs admit that Citibank's banking relationship was with the Bayou Depositors, not with the individual investors in the Funds. As a result, Citibank owed no duty – and certainly no fiduciary duty – to the individual investors in the Bayou Funds. The fiduciaries to the plaintiffs were the principals of the Bayou Funds, to whom

the plaintiffs had entrusted their money for investment purposes. Just as Citibank had no power or duty to police the investment strategies of the investment managers chosen by the plaintiffs, it had no duty to protect them from fraud or misconduct of the fund managers. Notably, in a tacit concession that Citibank was not a fiduciary for them, plaintiffs do not allege a claim for breach of fiduciary duty against Citibank.

Moreover, ordinary banking activities do not constitute the requisite substantial assistance. As the Ryan court noted, "[t]he affirmative acts of opening the accounts, approving various transfers, and then closing the accounts on the basis of suspected fraud, without more, do not constitute substantial assistance." Ryan, 2000 U.S. Dist. LEXIS 13750 at *28. "The mere fact that participants in a fraudulent scheme 'use accounts at [a bank] to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability.'" Nigerian Nat'l, 1999 U.S. Dist. LEXIS 11599 at *26-27 (quoting Williams v. Bank Leumi Trust Co., 96 Civ. 6695 (LMM), 1997 U.S. Dist. LEXIS 7538, *14 (S.D.N.Y. May 30, 1997)). As the Second Circuit has explained, even

> a company in a position to thwart or expose a breach of fiduciary duty may protect its interests by doing neither, sitting tight, and being quiet. … [S]ilence and forbearance did not assist the fraud *affirmatively*.

Sharp Int'l, 403 F.3d at 52.

Here, even assuming all of the complaint's allegations to be true, the only "action" allegedly taken by Citibank was to execute wire transfers requested by Israel, who was a principal of the Bayou Funds. Merely permitting these wire transfers fails the test of "substantial assistance" for at least two reasons. First, the complaint alleges only *inaction* by Citibank, in failing to stop the transfer, rather than action. As Citibank had no duty to act, its inaction is *per se* insufficient to establish "substantial assistance." Second, the only transactions allegedly

permitted by Citibank were wire transfers: ordinary banking transactions. Such transfers are also *per se* insufficient to meet the standard of "substantial assistance," especially given the fact that a refusal to authorize such a wire transfer could have rendered Citibank liable for disobeying the authorized orders of its depositor. See Latallo Establissement, 155 A.D.2d at 218, 553 N.Y.S.2d at 689 ("a depository bank is mandated to obey the commands of an authorized depositor").

## IV. THE UNJUST ENRICHMENT CLAIM (COUNT XIV) SHOULD BE DISMISSED.

Plaintiffs also claim that Citibank (and all of the other defendants) are liable for unjust enrichment or restitution, purportedly because of various fees that Citibank may have received from the Bayou Depositors for acting as their bank during some period. (Compl. ¶ 218). Essentially, plaintiffs are asking the Court to order Citibank to refund the fees it collected from the Bayou Depositors for the banking services that it provided.

Unjust enrichment has no application to these alleged facts. Under New York law, the elements of a claim for unjust enrichment "are (1) a benefit to the defendant (2) at the plaintiff's expense which (3) in 'equity and good conscience' should be restored." In re Rickel & Assoc., Inc. (Rickel & Assoc., Inc. v. Smith), 272 B.R. 74, 96 (Bankr. S.D.N.Y. 2002). Here, the "benefit" allegedly conferred on Citibank was fees for banking services. There is no allegation that Citibank failed to perform those services. And the fees were paid by the Bayou Depositors, not plaintiffs, in the ordinary course of a banking relationship between Citibank and the Bayou Depositors. "Equity and good conscience" do not require that Citibank, having performed those services for the Bayou Depositors, refund the fees to plaintiffs, who never paid the fees in the first place.

As stated by the Second Circuit in Alden Auto Parts Warehouse, Inc. v. Dolphin Equipment Leasing Corp., 682 F.2d 330, 333 (2d Cir. 1982), "recovery is ordinarily denied as against a third person who, as a result of a mistake in a transaction between two other persons,

received a payment from one of them in good faith in the ordinary course of business and for a valuable consideration." (internal quotations omitted). Here, Citibank received fees from the Bayou Depositors in the ordinary course of business in exchange for the banking services it provided. The fact that the Bayou Funds separately defrauded plaintiffs does not support an unjust enrichment claim for the fees lawfully charged and received by Citibank. Thus, Count XIV should be dismissed.

## V. ALL OF PLAINTIFFS' CLAIMS ARE BARRED BECAUSE THEIR EXCLUSIVE REMEDY FOR CHALLENGING THE PROPRIETY OF A WIRE TRANSFER IS UNDER UCC ARTICLE 4A.

Even assuming, *arguendo*, that plaintiffs have properly pleaded the basis for any of their common law claims, those claims should still be dismissed because plaintiffs' exclusive remedy for the sort of claims they are asserting here is found in Article 4A of the UCC. Article 4A governs "funds transfers," which includes wire transfers, and spells out a bank's obligations when processing a funds transfer. Courts have held that common law claims that are inconsistent with the specific duties spelled out in Article 4A are not cognizable. Here, the basis for each of plaintiffs' claims is that Citibank wrongfully processed certain wire transfers by failing to make an independent assessment as to whether the wire transfers were appropriate. (Am. Compl. ¶¶ 3, 35.c, 78-79). However, these claims are inconsistent with Article 4A because that article provides (in section 202) that a bank's only obligation is to determine whether a wire transfer is authorized, not to determine whether it is otherwise appropriate or fraudulent. Thus, plaintiffs' common law claims should be dismissed as inconsistent with Article 4A.

### A. Background And Structure Of Article 4A.

#### 1. Background of Article 4A.

During the 1970s and 1980s, electronic funds transfers (commonly known as "wire transfers") became a primary means by which businesses and financial institutions moved

money. Banque Worms, 77 N.Y.2d at 369, 570 N.E.2d at 193, 568 N.Y.S.2d at 545. Because electronic fund transfers differed in numerous respects from traditional payment instruments, such as checks, the New York State Legislature decided that wire transfers should be governed by their own specific set of rules. As a result, in 1990, the New York State Legislature adopted Article 4A to govern wire transfers and added it to New York Uniform Commercial Code; the new Article became effective on January 1, 1991. Banque Worms, 77 N.Y.2d at 371, 570 N.E.2d at 195, 568 N.Y.S.2d at 547.

The New York Court of Appeals has recognized that the purpose of Article 4A is to assure and protect "[n]ational uniformity in the treatment of electronic funds transfers," the "speed, efficiency, [and] certainty" of funds transfers, and "finality in electronic fund wire transactions." Banque Worms, 77 N.Y.2d at 372, 570 N.E.2d at 195, 568 N.Y.S.2d at 547.[4] As the Court noted in Banque Worms, "a major policy issue facing the drafters of UCC article 4A was determining how the risk of loss might be best allocated, while preserving a unique price structure." 77 N.Y.2d at 370, 570 N.E.2d at 194, 568 N.Y.S.2d at 546. In particular, funds transfers (governed by Article 4A) allow for movement of money that is "faster and more efficient[] than by traditional payment instruments," and "at a relatively low cost…." Id. at 369-70, 570 N.E.2d at 194, 568 N.Y.S.2d at 546. In order to preserve those benefits, and recognizing the potential for "significant liability as a result of losses occasioned by mistakes and errors," Article 4A was developed as "a body of unique principles of law that would address every aspect of the electronic funds transfer process and define the rights and liabilities of all parties involved in such transfers." Id. at 370, 371, 570 N.E.2d at 194, 195, 568 N.Y.S.2d at 546, 547.

[4] New York's enactment of Article 4A is at N.Y. U.C.C. Art. 4-A. Connecticut has also enacted Article 4A, at Conn. Gen. Stat. § 42a-4A-101 et seq.

**2. Structure of Article 4A.**

Article 4A "applies to funds transfers defined in section 4-A-104." N.Y. U.C.C. § 4-A-102. Section 4-A-104 defines "funds transfers" as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." N.Y. U.C.C. § 4-A-104(1). As this definition makes clear, a "funds transfer" is initiated by a "payment order," which is an instruction from the person making the payment to a "receiving" or "intermediary" bank to transfer funds to the bank account of the beneficiary, normally in the beneficiary's bank. N.Y. U.C.C. § 4-A-103. In the jargon of Article 4-A, the originator is "the sender of the first payment order in a funds transfer." N.Y. U.C.C. § 4-A-104.

In Regatos v. North Fork Bank, 257 F. Supp. 2d 632, 639 n.12 (S.D.N.Y. 2003), the Court provided the following example to explain the operation of Article 4A. Suppose X, who has a bank account at Bank A, instructs the bank to pay $1,000,000 to Y's account in Bank B. This instruction is known as a "payment order" under Article 4A. With respect to this payment order, X is the sender, Y is the beneficiary, and Bank A is the receiving bank. Bank A then executes this payment order by instructing Bank B to pay $1,000,000 to Y's account. This execution instruction also constitutes a "payment order" in which Bank A is the sender, Bank B is the receiving bank, and Y is the beneficiary. This series of two "payment orders" constitutes a single "funds transfer" from X to Y.

One of the primary purposes of Article 4A is to determine whether each payment order is authorized, because the default rule is that the bank will bear the loss of any unauthorized funds transfer. Regatos, 257 F. Supp. 2d at 640. There are two means by which a bank can determine if a payment order is authorized. One means is spelled out in section 202(1), and provides that a transaction is authorized by the sender "if [the person identified as the sender] authorized the order or is otherwise bound by it under the law of agency." N.Y. U.C.C.

§ 4-A-202(1). The other means is spelled out in section 202(2), and involves the use of a commercially reasonable "security procedure." N.Y. U.C.C. § 4-A-202(2). As the foregoing makes clear, though, the receiving bank's only obligation is to determine whether a payment order is authorized, and if it is authorized, it can execute the payment order without fear of liability. This facilitates the speed and efficiency of the wire transfer system, which would be seriously compromised if banks were forced to investigate transactions – out of fear of their own liability – before allowing them to go forward.

**B. Exclusivity Of Article 4A.**

Courts have recognized that Article 4A provides the exclusive remedy for any claims that involve the execution of a wire transfer, and therefore displaces any common law claims that interfere with the rules governing fund transfers under Article 4A:

> The Comment to UCC 4-A-102 states that the provisions of article 4-A "are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article."

Aleo Int'l, Ltd. v. Citibank, N.A., 160 Misc. 2d 950, 951, 612 N.Y.S.2d 540, 541 (N.Y. Supr. 1994) (quoting the Official Comment to UCC § 4A-102 (N.Y. U.C.C. § 4-A-102)). Although courts have found that Article 4A is not a "'hermetic legal seal' over funds transfers," they have made clear that the provisions of Article 4A are exclusive in "'any situation covered by the particular provisions of the Article.'" Centre-Point Merchant Bank Ltd. v. American Express Bank Ltd., 913 F. Supp. 202, 206 (S.D.N.Y. 1996) (quoting Sheerbonnet, Ltd. v. American Express Bank, Ltd., 951 F. Supp. 403, 408 (S.D.N.Y. 1995)).

**C. Plaintiffs' Common Law Claims Are Inconsistent With Article 4A And Therefore Should Be Dismissed.**

The wire transfers at issue in the complaint are plainly "funds transfers" within the meaning of Article 4A; thus, plaintiffs cannot assert any common law claim that seeks to impose obligations inconsistent with the provisions of Article 4A. But recognition of plaintiffs' claims here would be plainly inconsistent with Article 4A, and section 202 in particular, because all of their claims are predicated on the notion that Citibank wrongfully executed a wire transfer. Plaintiffs' claims against Citibank all arise from the central allegation that Citibank allowed a funds transfer from the Bayou Depositors' accounts at Citibank to accounts elsewhere in Mr. Israel's name: particularly an alleged $120 million wire transfer from Citibank to a German bank, and an alleged "$32 million wire transfer reportedly somewhere within the United States…." (Am. Compl. ¶ 79). But as explained above, section 202 of Article 4A provides specific rules for determining when a customer's payment order is valid and effective, and plaintiffs' claims here seek to impose a wholly inconsistent obligation – namely, to conduct an investigation into the propriety of the payment order. Because this additional obligation is wholly inconsistent with the limited obligation imposed by section 202, plaintiffs may not pursue their common law claims; their exclusive remedy is an action under Article 4A.

Plaintiffs' challenge to the propriety of the wire transfers – and Citibank's authority to follow the orders given to it – goes directly to heart of the subject matter regulated by Section 4A-202: the circumstances in which an order for a funds transfer (a "payment order" in the words of Article 4A) is "authorized" or "effective." Article 4A creates specific rules for determining whether a funds transfer is authorized, following the law of agency or security procedures agreed to by the parties. Plaintiffs are not free to re-write those rules, under the guise of common law claims, and to impose liability on Citibank under those re-written rules. Any

claim relating to the authorization of a fund transfer, except a specific claim under Article 4A, is therefore barred by Article 4A. Thus, for this additional reason, all six counts alleged against Citibank should be dismissed. Nor can plaintiffs go forward on any Article 4A claim. There is no allegation in the Amended Complaint – nor could there be – that the payment instructions followed by Citibank were not duly issued on behalf of the Bayou Depositors in accordance with Article 4A.

Furthermore, the obligations plaintiffs seek to impose on Citibank – the obligation to determine the propriety of a wire transfer – are wholly inconsistent with the purposes of Article 4A. See Regatos, 257 F. Supp. 2d at 643 (Article 4A should be construed "to give purpose to its underlying policies"). As noted above, one of the primary purposes of Article 4A is to promote the speed, efficiency, and low cost of funds transfers; the goal is to permit nearly immediate movement of funds. However, if plaintiffs are successful in imposing upon banks the obligation to make an independent assessment of the *propriety* of every wire transfer before processing, not only will the speed and efficiency of the system be impaired as banks spend time investigating each wire transfer, but such investigations could bring the banking system to a halt. The need to conduct such investigations would also needlessly raise the cost of the funds transfers to compensate banks for the need to make such investigations. These outcomes are completely at odds with the purposes of Article 4A.

**D. Courts Have Routinely Rejected Similar Attempts To Avoid Article 4A.**

Courts have routinely rejected similar attempts to use common law claims to end-run the specific obligations imposed by Article 4A. For example, in Aleo, the court rejected a negligence claim against Citibank because it acted in accordance with Article 4A in initiating, and failing to cancel, a funds transfer. The court held that Citibank's duties with respect to the funds transfer were governed by Article 4A, and a negligence claim could not be used to impose

duties beyond the requirements of Article 4A. 160 Misc. 2d at 951, 612 N.Y.S.2d at 541. Likewise, the federal district court in Centre-Point dismissed claims regarding allegedly fraudulent payment orders, holding that "[s]ince there are specific Article 4-A provisions concerning these covered transactions, common law remedies are precluded in this area." 913 F. Supp. 2d at 208.[5] The same conclusion was reached most recently by the Supreme Court of Virginia, holding that common law claims concerning an allegedly unauthorized payment order were barred because they were inconsistent with Article 4A:

> The alleged unauthorized payment orders are "a situation covered by the particular provisions" of [Va.] Code § 8.4A-204(a) and the remedy Schlegel seeks in his common law claims would conflict with the statutory remedy. [Va.] Code § 8.4A-102 cmt.; see Sheerbonnet, 951 F. Supp. at 408, 410. In other words, to allow Schlegel to proceed on his common law claims with regard to the unauthorized payment orders would "create rights, duties and liabilities inconsistent with those stated in" [Va.] Code § 8.4A-204(a). [citations omitted]

Schlegel v. Bank of America, N.A., 628 S.E.2d 362, 368 (Va. 2006).

In fact, courts have held Article 4A provides the exclusive remedy in a factual situation nearly identical to the one alleged here. In Estate of Freitag v. Frontier Bank, 118 Wash. App. 222, 75 P.3d 596 (2003), a deceased depositor's estate claimed that the bank wrongfully honored a payment order submitted by the estate's personal representative, which resulted in the transfer of the estate's funds to the representative's own personal account. 118 Wash. App. at 225, 75 P.3d at 598. The court upheld a judgment for the bank, concluding that Article 4A exclusively governed the question of whether the payment order was authorized, and finding that the personal representative's order was an "authorized" order of the estate under Article 4A. The court specifically rejected the estate's claim that the bank was on "inquiry

[5] Conversely, the Centre-Point court did not dismiss claims regarding other instructions given by the customer to the bank that did not involve fund transfers. 913 F. Supp. at 207-08.

notice" of wrongdoing because the payment order directed the transfer to a personal account of a fiduciary. 118 Wash. App. at 232, 75 P.3d at 601. Plaintiffs make the same claim here, and it must be rejected for the same reason: Citibank's liability for any funds transfer is exclusively governed by Article 4A, and plaintiffs have not – and cannot – challenge that the payment order honored by Citibank was the binding payment order of the Bayou Depositors under Article 4A.

In sum, plaintiffs cannot proceed with their common law claims because not only do they fail to state any claim, but even if they did, those claims are inconsistent with, and therefore barred by, Article 4A.

## CONCLUSION

For all of the foregoing reasons, the claims asserted by plaintiffs against defendant Citibank, N.A. – in Counts VII, VIII, XII, XIII, XIV, and XV of the Amended Complaint – should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: May 31, 2006

Respectfully submitted,

SIDLEY AUSTIN LLP

By: s/ John K. Van De Weert

Benjamin R. Nagin (BN 0539)
Catherine B. Winter (CW 3053)
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Mark B. Blocker
(admitted *pro hac vice*)
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
(312) 853-7036 (fax)

John K. Van De Weert
(admitted *pro hac vice*)
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Counsel for Defendant Citibank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2006, a copy of the Memorandum of Law in Support of Defendant Citibank, N.A.'s Rule 12(b)(6) Motion to Dismiss was filed electronically and served by U.S. mail, first class postage prepaid, on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

s/ John K. Van De Weert
John K. Van De Weert