UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

IN RE BAYOU HEDGE FUND INVESTMENT :     06 MD 1755 (CM)
LITIGATION

---------------------------------------------------------X

THIS DOCUMENT RELATES TO:

---------------------------------------------------------X

DEPAUW UNIVERSITY,

         Plaintiff,

                             No.: 06-cv-03028 (CM)

       vs.

HENNESSEE GROUP LLC,
CHARLES GRADANTE and           DECLARATION OF
E. LEE HENNESSEE,               CHARLES GRADANTE

         Defendants.        **Electronically Filed**

---------------------------------------------------------

STATE OF NEW YORK          )
                             ) ss.:
COUNTY OF NEW YORK     )

      Pursuant to 28 U.S.C. § 1746(2) (2004), I declare under penalty of perjury that the foregoing is true and correct:

1.     My name is Charles Gradante. I am more than 18 years of age and understand the nature and obligation of an oath. I have personal knowledge of the facts and statements contained in this Declaration and each of them is true and correct. I am a Managing Principal of Hennessee Group, LLC.

2.     I submit this Declaration in support of Hennessee Group, LLC (the "Hennessee Group"), Elizabeth Lee Hennessee and my Motion to stay this proceeding and compel arbitration of Plaintiff's claims.

3.     On or about November 19, 2003, Plaintiff DePauw University ("Plaintiff") and Hennessee Group entered into an Investment Advisory Agreement ("Agreement"),

wherein Hennessee Group agreed to provide Plaintiff with hedge fund advisory services. A copy of the Agreement entered into by Plaintiff is attached hereto as Exhibit A. I executed the Agreement on behalf of Hennessee Group and Carla McGuire executed the Agreement on behalf of DePauw University.

4.     Section XIV of the Agreement contains an arbitration clause which provides that:

> Any disputes arising under this Agreement or, with respect to its interpretation, shall be submitted to arbitration before a panel of three arbitrators selected under the Rules of the American Arbitration Association and such arbitration shall be conducted in accordance with the commercial arbitration rules of said Association. Each of the parties shall be entitled to select one arbitrator; those two arbitrators shall select the third arbitrator. The ruling of said panel shall be binding in all respects and judgment thereon may be entered in any court having jurisdiction.

* * * * *

5.     The Agreement also contains a choice of law provision, providing for the application of New York law. The choice of law provision appears in Section XIII of the Agreement and provides that:

> This Agreement will be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflict or choice of law provisions of that State, provided that nothing in this Agreement will be construed inconsistent with the Investment Advisers Act, or any rule or order of the Securities and Exchange Commission under the Investment Advisers Act.

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated herein are true.

Executed on May 31, 2006

_Charles Gradante_
Charles Gradante

2

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2006, a copy of the *Declaration of Charles Gradante* and exhibits thereto was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Matthew C. Plant (MP 0328)

Exhibit A

INVESTMENT ADVISORY AGREEMENT

(WITH DISCRETIONARY AUTHORITY)

This agreement is a discretionary investment advisory agreement ("Agreement") between DePauw University, an Indiana body politic and corporate (and all other entities, that may invest in hedge funds, for which DePauw University is authorized under the terms of any applicable plan, trust, partnership agreement or other governing instrument and by any applicable law to retain Hennessee and to make investments in Hedge Funds, collectively "Client"); and Hennessee Group LLC ("Hennessee" also "Investment Adviser") with an office at 500 Fifth Avenue, New York, New York 10110.

## SECTION I:  PARTIES AND PURPOSE

Client desires to invest in hedge funds and has retained Hennessee as an Investment Adviser with discretionary authority to invest Client's assets in one or more private investment vehicles (each a "Hedge Fund" and collectively, the "Portfolio").  The authority granted to Investment Adviser and the services to be performed hereunder include the initial selection of Hedge Funds and ongoing monitoring of the performance of the Portfolio and are specified in more detail in Section II below.

Client understands that the discretionary authority granted to Hennessee includes the authority to select Hedge Funds, to allocate Client assets among asset classes, and decisions as to the timing of entry or exit to/from a Hedge Fund; all without any obligation to obtain any further consent, authorization or approval from Client.  Hennessee shall also manage the transfer of funds between the Client and any Hedge Fund.

Hennessee shall maintain a continuous and discretionary investment program for the assets of the Client by causing Client to be invested and reinvested from time to time in the Portfolio, all in accordance with applicable law and this Agreement.  Hennessee shall determine investments to be made for the Client and direct the Client in processing all necessary documents and instruments which Hennessee may deem appropriate for the Client to execute and deliver in order to make such investment.  All such investments shall be consistent with this Agreement, the investment guidelines attached hereto on Exhibit G (the "Investment Guidelines"), as the same may be amended or modified in writing from time to time by the Client, and any and all information provided from time to time to Hennessee in writing concerning Client's long-term and short-term investment objectives and its financial and structural profile (collectively, the "Profile").  In any case where Client is organized as a trust, Hennessee shall be authorized to direct the trustee or other appropriate signatory to execute all documents.

Client agrees to notify Hennessee promptly, in writing, of any significant change in Client's investment objectives, or if any significant change to Client's financial profile should occur, or if Client has any concerns about the Portfolio and its performance.  Client agrees to provide Hennessee with relevant information about Client's financial profile for use by Hennessee to gain a sufficient understanding of Client's investment objective and to provide proper advice to Client on the use of Hedge Funds to meet Client's overall objectives.

The scope of and any limitations to Hennessee's discretionary authority are specified in Exhibit G annexed hereto.

Agreement Between
Hennessee Group LLC;
And DePauw University ("Client")

## SECTION II:  HEDGE FUND ADVISORY SERVICES

Hennessee agrees to provide the following advisory services:

(a)    Structuring and Ongoing Services

Hennessee will perform search, evaluation, selection, and introduction services (collectively, "Structuring Services") and introduce Client to one or more Hedge Fund(s) that Hennessee reasonably believes would be appropriate investment vehicles for Client to use based upon the investment objectives of Client, as specified by Client orally or in writing.  Included in the Structuring Services, Hennessee (at the request of Client) will evaluate any Hedge Fund(s) identified by Client as being of interest.  Hennessee will also provide the services below listed ("Ongoing Services").

(i)    Hennessee will provide continuous and ongoing performance monitoring of the Portfolio.

(ii)  Representatives of Hennessee will also be available to confer with Client periodically.

(iii)   Client may also request Hennessee to evaluate and provide Ongoing Services, pursuant to Section II(a) hereof, with respect to pre-existing hedge fund investments made by Client.  With respect to such investments, Client shall pay the Structuring and Monitoring Fee pursuant to Section IV(a) hereof.

(b)  Access to Proprietary Analytics

Hennessee will provide Client with highly confidential information, research and analyses it compiles about numerous hedge funds ("Proprietary Analytics").  These Proprietary Analytics generally are not available from other sources; have required many years of diligent effort to accumulate; are derived from unique proprietary analytic processes of Hennessee; and is highly confidential.  Clients are required to sign a confidentiality agreement when they become clients of Hennessee.  (See Exhibit A hereto).

## SECTION III:  RETAINER FEE

Client will pay Hennessee a fee to secure the services of Hennessee ("Retainer Fee") of $30,000 upon the execution of this Agreement.  The Retainer Fee will be applied against the Structuring and Monitoring Fee provided for in Section IV(a) hereof.  Any monies from the Retainer Fee not applied after one year from the date the Retainer Fee is paid to Hennessee will be refunded to Client.

## SECTION IV: COMPENSATION

(a) Structuring and Monitoring Fee

As compensation for the Structuring and Ongoing Services provided pursuant to Section II(a) of this

Agreement Between
Hennessee Group LLC;
And DePauw University ("Client")

Agreement, Hennessee shall be entitled to receive an annual fee ("Structuring and Monitoring Fee") based upon the value of hedge fund(s) in which Client invests as set forth in Exhibit F.

The value of Client's investments for any given year will be the value of Client's investments in recommended hedge fund(s) as of January 1 of such year, determined on the basis of the Client's account value provided by the hedge fund. New investments and additions to or redemptions from existing investments that take place after January 1 in any given year will generate a Structuring and Monitoring Fee due Hennessee on a prorated basis based on a twelve (12) month year.

(b) Proprietary Analytics Fee

While Hennessee could attempt to assign a value to access its Proprietary Analytics on a one-time basis, when the Client first receives a recommendation from the Hennessee Group, it has elected to value access to the Proprietary Analytics provided pursuant to Section II(b) of this Agreement based on the amount and duration of the Client's use of that confidential information by investing in a Covered Hedge Fund as defined hereof. Accordingly, the following annual fee (the "Proprietary Analytics Access Fee") is due to Hennessee in accordance with the following terms and conditions:

(i) If Hennessee introduces Client to a Hedge Fund ("Introduction") and subsequent to such Introduction Client chooses not to invest in the Hedge Fund at that time, but does invest with such Hedge Fund within three years of such Introduction, the Proprietary Analytics Access Fee will be due as set forth in Exhibit F based on the value of the Covered Hedge Fund (as defined below) and for as long as Client remains an investor in the Covered Hedge Fund.

(ii) An investment by Client in a Hedge Fund will be included in the Portfolio and such Hedge Fund will be a Covered Hedge Fund if Hennessee is responsible for causing the Hedge Fund to forward to Client the offering memorandum for the Hedge Fund and/or Hennessee provides information either to the Hedge Fund and/or Client which is employed to establish an investment relationship between Client and the Hedge Fund. A Hedge Fund will also be included in the Portfolio and deemed to be a Covered Hedge Fund if Client makes an investment after receiving research, analysis, or due diligence performed by Hennessee at the request of Client, even if Client brought the manager to the attention of Hennessee.

Client shall continue to pay the Proprietary Analytics Access Fee for so long as Client maintains an investment with a Covered Hedge Fund. Hedge Funds shall be added to the Portfolio and Client shall be required to pay a Proprietary Analytics Access Fee with respect to such investment if an investment is made in a Hedge Fund at any time within three years of the date of the Introduction, regardless of whether this Agreement is then otherwise in effect.

For the purposes of determining the Proprietary Analytics Fee due Hennessee, the value of Client's investment will be determined as set forth in Section IV(a) hereof.

SECTION V:    ALTERNATIVE PAYMENT OF FEES BY HEDGE FUNDS OR THEIR MANAGERS

Client can request that the Hedge Fund(s) in which they invest or the managers of those Hedge

Agreement Between
Hennessee Group LLC,
And DePauw University ("Client")

Funds pay over to Hennessee some or all of the compensation owed to Hennessee by Client under this Agreement as set forth in Section IV hereof (collectively the "Fee(s)"). Hedge funds or their managers can satisfy the Client's Fee obligation in one of two ways. First, the manager can direct that the Hedge Fund to execute securities transactions through a broker dealer identified by Hennessee that pays brokerage commissions to Hennessee or its officers for the directed trading. Currently, Hennessee has arrangements with certain brokers ("Brokers") under which Hennessee's officers can receive brokerage commissions as the introducing broker when hedge funds execute certain securities transactions through the Brokers ("Directed Commissions"). Alternatively, a hedge fund manager can make cash payments to Hennessee to satisfy the Fee ("Cash Payment(s)").

Hennessee annually reviews (for the prior year) the amounts it receives under the alternative fee payment options described above and compares the amounts received with the Fee owed by Client. Client will receive a statement annually from Hennessee reflecting its accounting for the alternative fee payment options. When Directed Commissions or Cash Payments are directed by hedge funds to satisfy the Fee obligation, Hennessee employs the following methods to account for such payments:

1. The total commissions net of execution and clearing costs received by Hennessee from hedge funds in which the Client invests are added together ("Total Directed Commissions"). When several clients of Hennessee invest in the same Hedge Fund, the Total Directed Commissions generated by that Hedge Fund are allocated among the clients in proportion to the assets each client has invested in the Hedge Fund. However, if an individual Hedge Fund directs brokerage in excess of the Fee for that Hedge Fund, the Total Directed Commissions for the Client will only be credited for the amount equal to the Fee for that Hedge Fund. Hennessee retains the excess of Directed Commission over the Fee for that Hedge Fund. This excess is not carried forward to any subsequent year and will not reduce the Fee during any subsequent year.

2. When the Hedge Fund makes Cash Payments to Hennessee to satisfy the Fee obligation, the Fee for the year in which the Cash Payment is received will be reduced by the amount of the Cash Payment but not below zero.

Hennessee will provide the Client, at least annually, with a statement reflecting:

1. The Fee the Client owes Hennessee under this Agreement and information explaining how the Fee is calculated;

2. The Total Directed Commissions Hennessee credits to the Client to reduce the Fee; and

3. Any Cash Payments to Hennessee by Hedge Fund managers that Hennessee credits to the Client to reduce the Fee.

4. The net Fee balance due Hennessee, if any.

In no case will either Total Directed Commissions or Cash Payments received in any one year from a Hedge Fund reduce the Client's Fee obligations to Hennessee in any subsequent year for an investment in that Hedge Fund.

Agreement Between
Hennessee Group LLC;
And DePauw University ("Client")

Client agrees to provide a copy to Hennessee of all notices made by Client to Hedge Fund(s) pursuant to this Agreement regarding the investment in Covered Hedge Fund(s), the addition to or redemption by Client of investment(s) in Covered Hedge Fund(s) and all other Hedge Funds comprising the Portfolio. Client has executed Exhibit E attached and has authorized Hennessee to furnish Exhibit E to all Hedge Funds comprising the Portfolio for which a Structuring and Monitoring Fee and/or Proprietary Analytics Fee is due pursuant to this Agreement, for the purpose of full disclosure where Directed Commissions and/or Cash Payments will be the method of Compensation.

## SECTION VI:  ANNUAL FEE PAYMENT

It is contemplated that all or a major portion of the Fee will be paid through Cash Payments and/or Directed Commissions. Notwithstanding such belief, there is no explicit or implicit guarantee that the general partner or the Hedge Fund will satisfy any portion of the Fee due Hennessee (Section IV hereof). At the end of each calendar year, Client will be responsible for compensating Hennessee for any unpaid balance of the Fee (Section IV hereof), adjusted pursuant to Section III hereof (if applicable). Payment of the unpaid balance will be made by Client to Hennessee within 30 calendar days after receipt of an invoice from Hennessee for the prior year's unpaid balance. Client authorizes Hennessee to contact and obtain confirmation(s) from the Hedge Fund(s) concerning the status of Client's investment with the Hedge Fund, including additions, withdrawals and the value of Client's capital account.

## SECTION VII:  CONFIDENTIALITY AND USE OF PROPRIETARY INFORMATION

Client understands and agrees to be bound by the provisions of the attached Confidentiality Agreement (Exhibit A attached).

## SECTION VIII:  RISK ACKNOWLEDGMENT AND INDEMNIFICATION

Hennessee does not guarantee the future financial performance of the Portfolio or any Hedge Fund, nor does it guarantee that the Hedge Fund(s) selected for investment will individually or collectively meet Client's intended investment objectives. Nothing in this Agreement and nothing in verbal statements made to Client by Hennessee (its principals, employees or affiliates) may be construed by Client as a promise about the outcome of any Client investments made pursuant to this Agreement. Hennessee makes no such promises or guarantees. Comments by Hennessee about the outcome of Hedge Fund investing in general and the Portfolio in specific are expressions of opinion only.

Client understands that Hedge Funds are investments that are subject to various market, currency, economic, political and business risks and that Client's investment decisions made with respect to the Portfolio may not always be profitable.

In performing its duties under this Agreement, Hennessee will not take into consideration any other investments or securities owned by Client, other than those disclosed to Hennessee in writing.

Client agrees to indemnify and hold Hennessee harmless from: (a) any liability to, expense claimed by, or judgment in favor of, a third party, or an amount paid to a third party in settlement thereof, arising as a result of Client's investment in a Hedge Fund for which Hennessee provided services as set forth in Section II hereof; or (b) any loss arising from Hennessee's adherence to a Client's

written or oral instructions; or (c) any act or failure to act, whether fraudulent or otherwise, with respect to any Client investment in a Hedge Fund, by a Hedge Fund manager, its affiliates, assigns, agents, employees or counterparties associated in any way with the Hedge Fund, provided that the selection of such Hedge Fund was not the result of any gross negligence by Hennessee, its employees or agents in the discharge of its or their duties hereunder; or (d) any errors or omissions committed by Hennessee, its employees or agents in the discharge of its duties hereunder, unless such errors or omissions constitute gross neglect or willful misfeasance; provided, however, that nothing in this paragraph shall relieve Hennessee from any liability imposed by federal or state securities laws or other applicable laws which cannot be waived. Hennessee shall promptly notify Client in writing of any action, claim or other matter in respect of which Hennessee intends to claim such indemnification. Hennessee shall permit Client, at Client's discretion, to defend or settle any action, claim or other matter, and Hennessee agrees to the complete control of such defense or settlement by Client. Hennessee shall fully cooperate with Client in the investigation and defense of any action, claim or other matter covered by the indemnification obligations of this paragraph. In all events, no such action, claim or other matter shall be settled by Hennessee without the prior written consent of Client, which, if Client has not assumed control of the defense of such action, claim or other matter, shall not be unreasonably withheld or delayed.

## SECTION IX: TERMINATION

This Agreement may be terminated by either party at any time upon thirty (30) days prior written notice to the other party. Upon such termination, Hennessee shall have no further obligation to perform Structuring Services and Ongoing Services pursuant to Section II(a) hereof, and the power of attorney pursuant to Section XVIII shall terminate and shall be of no further effect, and Hennessee shall not be entitled to receive any additional Structuring and Monitoring Fee pursuant to Section IV(a) hereof. However, Client shall remain liable for the payment of the Proprietary Analytics Access Fee pursuant to Section IV(b) hereof for any Covered Hedge Fund for so long as Client maintains his/her/its investment with the Covered Hedge Fund. Termination of this Agreement will not affect: (a) the validity of any action previously taken by Hennessee under this Agreement; (b) liabilities or obligations of the parties to the Agreement arising from transactions initiated before termination of this Agreement; or (c) Client's continuing obligations under Sections IV(b), V, VI, VII, VIII, Exhibit A and Exhibit E hereof; or (d) Client's authorization for Hennessee to receive and allocate Directed Commissions and/or Cash Payments for the Covered Hedge Fund as set forth in Section V hereof.

## SECTION X: AUTHORITY

Client represents that he/she/it has the requisite capacity and authority to enter into this Agreement and that he/she/it is authorized under the terms of any applicable plan, trust, partnership agreement or other governing instrument and by any applicable law to retain Hennessee and to make investments in Hedge Funds.

## SECTION XI: POTENTIAL CONFLICTS OF INTEREST

Client understands that Hennessee and its affiliates perform Hedge Fund Advisory Services (Section II hereof) for various clients and Client agrees that Hennessee and its affiliates may give advice and take actions with respect to any of its other clients which may differ from the timing or nature of the actions taken on behalf of Client. Hennessee will endeavor, to the extent practical, to allocate

Agreement Between
Hennessee Group LLC;
And DePauw University ("Client")

investment opportunities to Client over a period of time on a fair and equitable basis relative to other clients. Client further understands that Hennessee shall not have any obligation to recommend any Hedge Fund for Client that Hennessee, its principals, affiliates or employees may recommend for any other client or for Hennessee or its own accounts, if in Hennessee's opinion such transaction or investment appears unsuitable, impractical or undesirable for the Client. Client also understands that Hennessee or its affiliates- may receive referral fees, directed commissions or other remuneration from the Hedge Fund(s), or its general partner(s), or investment manager for the purpose of reducing the Fee due Hennessee (Sections IV and V hereof). Client further understands that because of legal and business considerations, Hennessee, in its capacity as Investment Adviser to the Portfolio may not be able to act on material non-public information affecting such Portfolio.

## SECTION XII:  ACCREDITED INVESTOR STATUS

Client hereby represents to Hennessee that he/she/it is an "accredited investor" as defined in Securities Act Rule 501(a). Annexed hereto is Exhibit B, on which Client has designated the provision(s) of Rule 501(a) that apply to Client. Client also agrees to complete Exhibit C attached ("Accredited Investor Profile") and Exhibit D attached ("Current Investment Portfolio").

## SECTION XIII:  GOVERNING LAW

This Agreement will be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflict or choice of law provisions of that State, provided that nothing in this Agreement will be construed inconsistent with the Investment Advisers Act, or any rule or order of the Securities and Exchange Commission under the Investment Advisers Act.

## SECTION XIV:  ARBITRATION

Any disputes arising under this Agreement or, with respect to its interpretation, shall be submitted to arbitration before a panel of three arbitrators selected under the Rules of the American Arbitration Association and such arbitration shall be conducted in accordance with the commercial arbitration rules of said Association. Each of the parties shall be entitled to select one arbitrator; those two arbitrators shall select the third arbitrator. The ruling of said panel shall be binding in all respects and judgment thereon may be entered in any court having jurisdiction.

## SECTION XV:  NOTICES

Any notice, advice or report given to either party under this Agreement will be delivered by mail or courier or sent by facsimile (with a hard copy sent by mail or courier) to Hennessee at the address on the first page of this Agreement or to Client at address on the signature page, or such other address as either party may designate in writing.

## SECTION XVI:  ASSIGNMENT

Neither party shall assign his/her/its rights or obligations under this Agreement without prior written notice to and consent of the other party. Hennessee shall notify Client in writing of any change in the principals of Hennessee which would constitute a change of control.

## SECTION XVII:  MISCELLANEOUS

If any provision of this Agreement is now or should become inconsistent with any law or rule of any governmental or regulatory body having jurisdiction over the subject matter of this Agreement, the provision will be deemed to be rescinded or modified in accordance with any such law or rule.  In all other respects, this Agreement will continue and remain in full force and effect.  No term or provision of this Agreement may be waived or changed except in writing signed by the party against whom such waiver or change is sought to be enforced.  Hennessee's failure to insist at any time on strict compliance with this Agreement or with any of the terms of the Agreement or any continued course of such conduct on its part will not constitute or be considered a waiver by Hennessee of any of its rights or privileges.

This Agreement contains the entire understanding between Client and Hennessee.

## SECTION XVIII: POWER OF ATTORNEY

Client hereby appoints Hennessee as its true and lawful attorney-in-fact and agent, in its name, place and stead, with full power and authority to act in the name and behalf of Client, to take all actions required to invest Client assets in Hedge Funds and effect withdrawals or redemptions of such assets, all as fully and to the same extent as if Client took such actions directly.  Without limiting the generality of the foregoing, Hennessee shall be authorized to execute in the name and on behalf of Client all subscription documents, limited partnership agreements, redemption or withdrawal requests, consents, authorizations and approvals and all other instruments, documents and certificates required in connection with Hedge Fund Investments made for the account of the Client.

This power of attorney is coupled with an interest, is irrevocable, and shall survive and shall not be affected by the subsequent death, disability, incompetency, or bankruptcy of Client; provided that this power of attorney shall terminate upon the termination of this Agreement.

## SECTION XIX: APPOINTMENT CUSTODIAN

The Client may in its discretion enter into a custody agreement (the "Custody Agreement") with a custodian of its choice (the "Custodian") to maintain the assets of the a managed account subject to the Custody Agreement.  In such event, the Client shall notify Hennessee of the terms of any Custody Agreement, and shall keep Hennessee apprised of any changes in the Custody Agreement. Hennessee shall have no responsibility or liability with respect to the collection of income, physical acquisition or the safekeeping of property in the account, all of which shall solely be the obligation of the Custodian.  Hennessee shall not be responsible for, and Client shall hold Hennessee and its officers, managers, members, and affiliates harmless against, any loss, expense or claim arising as a result of the acts, omissions and other conduct of the Custodian.

At the time this Agreement is being made, however, no Custody Agreement is in effect or contemplated.

## SECTION XX:  DISCLOSURE

Client has received and reviewed a copy of Part II of Hennessee's Form ADV, as well as a copy of this Agreement.

Agreement Between
Hennessee Group LLC,
And DePauw University ("Client")

## SECTION XXI:  AGREEMENT EXECUTION

Hennessee Group LLC and Client have executed this non-discretionary Investment Advisory Agreement on this _18_ day of _November_, 19- 2003

DePauw University Investment Management
NAME OF CLIENT

by _Carla C McGuire_
Carla McGuire, Chief Investment Officer [sign]

Address of Client for all communications:

_512 N. McClurg Ct_

_Unit 4507_

_Chicago, IL  60611_

Telephone No.: _312-955-8283_

Fax: _312-670-4331_

E-mail: _cmcguire @ depauw.edu_

Accepted as of _November 19, 2003_ [date]:

HENNESSEE GROUP LLC

by _Charles Gradante_
Managing Principal

Agreement Between
Hennessee Group LLC;
And DePauw University ("Client")

EXHIBIT A
HENNESSEE GROUP LLC
INVESTOR CONFIDENTIALITY AGREEMENT

The Hennessee Group LLC ("Hennessee") is pleased to assist the below named ("Client") in selecting private investment partnerships (each a "Hedge Fund" and collectively, the "Portfolio(s)"). Because of capital capacity constraints with most Hedge Funds and Hennessee's expenses associated with originating, researching and monitoring Hedge Fund managers, it is Hennessee's policy to obtain a confidentiality agreement ("Agreement") from hedge fund investors.

It is very costly to create and maintain proprietary analytics including a proprietary database of information on over 3,000 managers and to have an infrastructure to evaluate these managers so that the best Hedge Fund managers are selected for Portfolios of Hennessee clients. Hennessee trusts that Client recognize that the analytics, the process and the information about each manager is proprietary. Except as may be required by law or regulation, neither Client nor Hennessee will disclose to any third party, information about the Portfolio or about recommendations made by Hennessee to Client regarding Hedge Funds. We therefore respectfully request that Client maintain the confidential nature of all information we provide to Client, including Hedge Fund manager names, addresses and phone numbers. Review by another person, reproduction, communication or transmission of information we provide Client is not permitted without the written consent of Hennessee, provided, however, that (i) Client shall be permitted to disclose to the Client's auditors such information about the Portfolios as reasonably requested by such auditors to verify, and otherwise assure the accuracy of, the reported market values of any Hedge Fund as of dates reasonably near the date of each annual audit; (ii) it is understood that the Client's total investments in Hedge Funds may be disclosed in its financial reports; and (iii) Client shall be permitted to disclose such information as may be required to comply with the secondary market disclosure requirements of the Municipal Securities Rulemaking Board or any Nationally Recognized Municipal Securities Information Repository applicable to Client which may become applicable to any bonds of the Client issued through Indiana Educational Facilities Finance Authority.

Furthermore, Client cannot (without the written consent of Hennessee) utilize or transfer the information we provide Client for Client's personal or family investment; or an investment by an affiliate; or an investment by non-affiliated entities, in a manner which excludes Hennessee from receiving Compensation it would have ordinarily received. Should any entity express an interest in your investments with Hennessee Group LLC, we respectfully request that Client will refer that individual or entity to Hennessee directly. Unless otherwise provided in writing subsequent to the signing of this document, this Agreement cannot be terminated or suspended by either party, provided, that the information shall no longer be deemed confidential and subject to this agreement, two (2) years after the termination of the Investment Advisory Agreement. In the event that Client is found by a court of law to have breached this Agreement, Hennessee shall be entitled, in addition to any other rights that Hennessee may have, to receive from Client, attorney's fees and costs incurred by Hennessee in enforcing this Agreement.

Please sign below, indicating your agreement.

_Charles Gradante_ (signature)
Managing Principal
Hennessee Group LLC

_Carla McGuire_ (signature)
Carla McGuire, Chief Investment Officer [sign]

Date: 11-19-03

Date: 11-18-03

HENNESSEE GROUP LLC
HEDGE FUND ADVISORY

Agreement Between
Hennessee Group LLC;
And DePauw University ("Client")



HENNESSEE GROUP LLC

HEDGE FUND ADVISORY

## EXHIBIT B

### *ACCREDITED INVESTOR STATUS*

The following categories of persons are "accredited investors;" Please ***initial*** the appropriate items that apply to Client:

_____ 1.  A <u>bank</u> as defined in Section 3 (a) (2 ) of the 1933 Act, or a <u>savings and loan association</u> or other institution defined in Section 3 (a) (5) (A) of the 1933 Act, whether acting in its individual capacity or a fiduciary capacity.

_____ 2.  A <u>broker or dealer</u> registered pursuant to Section 15 of the Securities Exchange Act of 1934.

_____ 3.  An <u>insurance company</u> as defined in Section 2 (13) of the 1933 Act.

_____ 4.  An <u>investment company</u> registered under the Investment Company Act of 1940 (the "1940 Act") or a <u>business development company</u> as defined in Section 2 (a) (48) of the 1940 Act.

_____ 5.  A <u>small business investment company</u> licensed by the U.S. Small Business Administration under Section 301 (c) or (d) of the Small Business Investment Act of 1958.

_____ 6.  A <u>plan established</u> and maintained <u>by a state</u>, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, <u>for the benefit of its employees</u>, if such plan has total assets in excess of $5 million.

_____ 7.  A <u>private business development company</u> as defined in Section 202 (a) (22) of the Investment Advisors Act of 1940.

___X___ 8.  An <u>organization</u> described in <u>Section 501 (c) (3)</u> of the Internal Revenue Code, <u>corporation, Massachusetts</u> or similar <u>business Trust</u>, or <u>partnership</u>, not formed for the specific purpose of acquiring interests in the Partnership, with total assets in excess of $5 million.

Agreement Between
Hennessee Group LLC,
And DePauw University ("Client")

_____ 9.   An <u>individual whose net worth</u> together with that of his or her spouse, <u>exceeds $1,000,000</u>.

_____ 10.  An <u>individual</u> who has individual <u>income in excess of $200,000</u> in each of the two most recent years, or <u>joint income with his or her spouse in excess of $300,000</u> in each of those years, and who reasonably expects to reach the same income level this year.

_____ 11.  A <u>trust</u>, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring an Interest in the Partnership, whose decisions to invest in hedge funds are directed by a sophisticated person who can demonstrate to the hedge fund that such person has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of an investment in the Partnership.

_____ 12.  An entity in which all of the equity owners or partners are "accredited investors."

_____

Carla McGuire, Chief Investment Officer [sign]

Date: __11-18-03_____

Agreement Between
Hennessee Group LLC;
And DePauw University ("Client")

EXHIBIT C

*Accredited Investor Profile*

1. Will you be investing on behalf of (check all those that apply): Yourself _____
   Limited Partnerships _____ Trust _____ Endowment __X__ Fund of Funds _____

2. Have you ever invested in a hedge fund? If yes, what year did you make your first hedge fund investment? *yes, 2000*

3. Are you the sole decision maker in connection with hedge fund investments? If not, what is the investment process you undertake (ie., investment committee approval, etc.)? *Other than hedge funds recommended by the Hennessee Group, Investment Committee approval is required.*

4. What is the percentage (%) allocation of investments in your portfolio?
   Stocks: *54%*   Hedge Funds: *3%*   Real Estate: *2%*   All Other: _____
   Bonds: *26%*   Cash/Treasuries: _____   Private Eq./Venture Cap.: *15%*

5. How would you characterize your hedge fund risk/return objectives (aggressive, moderate, conservative)? _____

6. Hedge funds may not be suitable for all investment objectives. Please indicate which objective(s) you are attempting to achieve with your investment.
   Retirement _____ Appreciation _____ Income _____ Diversification __X__

7. Hedge funds can be illiquid investments. Are the monies you are investing needed to support your current lifestyle? _____ Yes __X__ No

8. What is your approximate total net worth (assets less liabilities)?
   Less than $2 million: _____ Between $10 and $25 million: _____ Between $50 and $10 million: _____
   Between $2 and $10 million: _____ Between $25 and $50 million: _____ Over $100 million: __X__

9. What percent (%) of your total net worth is liquid? *N/A*

10. When do you expect to make the investment decision regarding hedge funds? How much you expect to invest? *Jan 1, 2004   Initial investment - $10 million*

11. What is your current source of income (Employer, Pension, Family Business, Business Ownership, Fund-of-Funds, Investments)? *N/A*

*Carla McGuire*
Carla McGuire, Chief Investment Officer [sign]

HENNESSEE GROUP LLC
HEDGE FUND ADVISORS

*11-18-03*
Date

Hennessee Group LLC.
And DePaw University ("Client")

EXHIBIT D
CURRENT INVESTMENT PORTFOLIO

| Fund/Company | Portfolio Manager | Investment Style | Date of Investment | Approximate Dollars Invested |
|---|---|---|---|---|
| **CURRENT HEDGE FUND INVESTMENTS** | | | | |
| | | | | |
| | | | | |
| **HEDGE FUND INVESTMENTS TERMINATED** | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TRADITIONAL (LONG ONLY) INVESTMENTS** | | | | |
| Russell 1000 + Value | State Street | Index Fund | | $158.6m |
| SmCap Equity | Schroder, MFS | | | |
| | Kalmar | | | |
| Intl Equity | Putnam | Intl | | 51.5 m |
| Other | Putnam | | | |
| | | Private Equity | | 3.0 m |
| | | Private Equity | | 18.6 m |
| **HEDGE FUND MANAGERS CURRENTLY UNDER CONSIDERATION** | | | | |
| Bridgewater, AQR, Angelo Gordon, MNugho, PEETS, 4S | | | | 3.2 m |

Carla McGuire, Chief Investment Officer [sign]

_____     11-18-03
                              Date

HENNESSEE GROUP LLC
Hedge Fund Advisor

I:\Client Projects\Correspondence\PROSPECTUS\DePauw University\AAD-NEW MASTER (DISCRETIONARY)_DePauw University11.17.03.doc\Created on 11/17/2003 1:22 PM Printed on 11/17/03

Agreement Between
Hennessee Group LLC;
And DePauw University ("Client")

## EXHIBIT E

Dear Client of Hennessee Group:

We are writing with regards to your participation in the Hennessee Hedge Fund Advisory Program, of the Hennessee Group LLC ("Hennessee"). Specifically, this correspondence is intended to disclose, to all parties, methods of compensation for services provided by Hennessee to you ("Client(s)" of Hennessee), pursuant to the investment advisory agreement ("Agreement") between Hennessee and you. It also gives Hennessee authority to periodically receive your capital account balance solely for the purpose of determining fees due under the Agreement.

As previously set forth in the Agreement, Hennessee facilitates two alternative fee payment options to its clients. A client may compensate Hennessee directly or a client may request the general partner, the investment adviser of the Hedge Fund, to direct brokerage ("Directed Commissions") and/or make cash payments ("Cash Payments") to satisfy your annual fee "Fee(s)" due Hennessee. Your fee(s) to Hennessee is set forth in the Agreement. **By copy of this document, your request is being submitted to the general partner.**

If you request the general partner to Direct Commissions, upon acceptance of such request, a registered broker dealer will be designated at the sole discretion of Hennessee to execute trading. On your behalf, the designated broker dealer will pay over to Hennessee a portion of the resulting brokerage commissions. **These funds will be credited to your Fee(s) due Hennessee pursuant to the Agreement.**

**There is no affiliation between Hennessee and the Hedge Fund, the funds received by Hennessee (whether Directed Commissions and/or Cash Payment(s)) will not increase the management fee or performance fee you would ordinarily pay the Hedge Fund.** Note that the general partner may Direct Commissions to Hennessee's designated broker dealer only if such action results in best execution of securities transactions for the Hedge Fund.

Please sign where indicated below to acknowledge that you are electing to pay Hennessee's Fee(s) through Directed Commissions and are requesting that the designated broker dealer pay Hennessee's Fee(s) from such commissions. You also acknowledge that the general partner (at its discretion) may choose (in lieu of, or in combination with Directed Commissions) to make Cash Payments to Hennessee. This document authorizes the Hedge Fund to copy Hennessee on all correspondence sent to you as a limited partner of the Hedge Fund including manager letters to limited partners, quarterly Client capital account balances and Client schedule K-1.

Sincerely,

Acknowledged: _____

Carla McGuire, Chief Investment Officer [sign]

Managing Principal
Hennessee Group LLC


cc: Hedge Fund General Partner          Date: _____11-18-03_____

Agreement between
Hennessee Group LLC;
And DePauw University ("Client")

EXHIBIT F

*Annual Compensation*

| | Pre-Existing Portfolio Created by Client | Hennessee Created Portfolio | |
|---|---|---|---|
| | Portfolio Structuring and Monitoring Fee pursuant to Section II(a) and Section IV(a) min/max (*) | Access to Proprietary Analytics Fee pursuant to Section II(b) and Section IV(b) min/max (*) | Portfolio Structuring and Monitoring Fee pursuant to Section II(a) and Section IV(a) min/max (*) |
| Fee | 20 bp | 0 bp/80 bp | 0 bp/20 bp |
| Payment Type | Client Payment | Manager Rebate and/or Client Payment | |

(*)  Minimum/maximum Client cash outlay
(**)  Client requests manager Cash Payment(s); and/or Directed Commissions on "best efforts and best execution" basis.

Agreement Between
Hennessee Group LLC,
And DePauw University ("Client")

## EXHIBIT G

### *Investment Guidelines*

Hennessee shall utilize a multi-adviser, multi-strategy diversified investment approach in managing the Account.  Hennessee may invest Account assets in certain limited partnerships, foreign corporations and other collective investment vehicles (collectively, "Funds"), which in turn are managed by or place their assets with one or more investment advisers (collectively, "Advisers").  A Fund whose assets are managed by one Adviser is hereinafter referred to as a "Single-Adviser Fund," and a Fund whose assets are allocated among multiple Advisers is hereinafter referred to as a "Multi-Adviser Fund."  Hennessee may invest Client assets in both Single-Adviser Funds and Multi-Adviser Funds.  Advisers may invest in and trade any financial instrument, whether domestic or foreign and whether or not exchange-traded, and may use any traditional or non-traditional investment strategy.  The potential instruments include, but are not limited to, common stocks, corporate bonds, government securities, convertible securities, mortgages, "distressed" securities, certificates of deposit, commodities and commodity futures, currencies, swaps, tax liens, trade claims, any options on any of the foregoing or on indices comprised of the foregoing and any right relating thereto.  Hennessee shall not invest in leveraged buy-out funds, venture capital funds or funds that directly own or operate real estate as their predominate business; but may invest in funds that invest in restricted securities or private placements.  The use of leverage will also be central to the investment strategies of many Funds and Advisers.


_____

Carla McGuire, Chief Investment Officer [sign]


Date: _____1.L-18- 03_____