UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE BAYOU HEDGE FUND INVESTMENT : 06 MD 1755 (CM)
LITIGATION :
------------------------------------------------------------X
THIS DOCUMENT RELATES TO:
------------------------------------------------------------X

SOUTH CHERRY STREET, LLC, :

   Plaintiff, :

: No.: 06-cv-02943 (CM)

vs. :

HENNESSEE GROUP LLC, : DECLARATION OF
ELIZABETH LEE HENNESSEE and : CHARLES GRADANTE
CHARLES GRADANTE :

   Defendants. : **Electronically Filed**

---

STATE OF NEW YORK   )
          ) ss.:
COUNTY OF NEW YORK  )

Pursuant to 28 U.S.C. § 1746(2) (2004), I declare under penalty of perjury that the foregoing is true and correct:

1. My name is Charles Gradante. I am more than 18 years of age and understand the nature and obligation of an oath. I have personal knowledge of the facts and statements contained in this Declaration and each of them is true and correct. I am a Managing Principal of Hennessee Group, LLC.

2. I submit this Declaration in support of Hennessee Group, LLC (the "Hennessee Group"), Elizabeth Lee Hennessee and my Motion to stay this proceeding and compel arbitration of Plaintiff's claims.

3. On or about August 4, 2001, Craig Bollman ("Bollman"), the authorized "agent" of Plaintiff South Cherry Street, LLC ("Plaintiff"), and Hennessee Group entered into an Investment Advisory Agreement ("Agreement"). A copy of the Agreement entered

into on behalf of Plaintiff is attached hereto as Exhibit A. I executed the Agreement on behalf of Hennessee Group.

4. Pursuant to the Agreement, Hennessee Group agreed to provide hedge fund advisory services to Bollman "and all other entities, that may invest in hedge funds, for which Mr. Craig Bollman is authorized under the terms of any applicable plan, trust, partnership agreement or other governing instrument and by any applicable law to retain Hennessee and to make investments in hedge funds." See Exhibit A. One such entity is Plaintiff South Cherry Street.

5. Section XIV of the Agreement contains an arbitration clause which provides that:

> Any disputes arising under this Agreement or, with respect to its interpretation, shall be submitted to arbitration before a panel of three arbitrators selected under the Rules of the American Arbitration Association and such arbitration shall be conducted in accordance with the commercial arbitration rules of said Association. Each of the parties shall be entitled to select one arbitrator; those two arbitrators shall select the third arbitrator. The ruling of said panel shall be binding in all respects and judgment thereon may be entered in any court having jurisdiction. Nothing in this Agreement shall bind either party to submit any dispute to arbitration with respect to which such party is entitled to have litigated in a court of competent jurisdiction.

6. The Agreement also contains a choice of law provision, providing for the application of New York law. The choice of law provision appears in Section XIII of the Agreement and provides, in relevant part, that:

> This Agreement will be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflict or choice of law provisions of that State.

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated herein are true.

Executed on May 31, 2006

*Charles Gradante* (signature)
Charles Gradante

2

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 31, 2006, a copy of the *Declaration of Charles Gradante* and exhibits thereto was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                                  Matthew C. Plant (MP 0328)

Exhibit A

INVESTMENT ADVISORY AGREEMENT

(WITH NON-DISCRETIONARY AUTHORITY)

This agreement is a non-discretionary investment advisory agreement ("Agreement") between: (a) Mr. Craig Bollman; and all other entities, that may invest in hedge funds, for which Mr. Craig Bollman is authorized under the terms of any applicable plan, trust, partnership agreement or other governing instrument and by any applicable law to retain Hennessee and to make investments in hedge funds (collectively "Client") and; (b) Hennessee Group LLC ("Hennessee" also "Investment Adviser") with an office at 500 Fifth Avenue, New York, New York 10110.

## SECTION I: PARTIES AND PURPOSE

Client desires to invest in hedge funds and has retained Hennessee as a non-discretionary Investment Adviser for the sole purpose of providing advice to Client concerning investments in one or more private investment partnerships (each a "Hedge Fund" and collectively, the "Portfolio"). These services include the initial selection of each Hedge Fund and ongoing monitoring of the performance of the Portfolio and are specified in more detail in Section II below.

Client understands that neither Hennessee nor its representatives will exercise any discretionary authority with respect to: the selection of any Hedge Fund; or the allocation of Client assets among asset classes; or any decision as to the timing of entry or exit to/from a Hedge Fund; or the administration of monies between Client and any Hedge Fund. Client will have sole responsibility for these decisions and actions.

Client agrees to notify Hennessee promptly, in writing, of any significant change in Client's investment objectives, or if any significant change to Client's financial profile should occur, or if Client has any concerns about the Portfolio's structure pursuant to Section II(a) hereof or concerns regarding the Portfolio's financial performance. Client agrees to provide Hennessee with relevant information about Client's financial profile for use by Hennessee to gain a sufficient understanding of Client's investment objective and to provide proper advice to Client on the use of Hedge Funds to meet Client's overall objectives.

## SECTION II: HEDGE FUND ADVISORY SERVICES

Hennessee agrees to provide the following services:

(a) <u>Structuring and Ongoing Services</u>

Hennessee will perform search, evaluation, selection, and introduction services (collectively, "Structuring Services") and introduce Client to one or more Hedge Fund(s) that Hennessee reasonably believes would be appropriate investment vehicles for Client to use based upon the investment objectives of Client, as specified by Client orally or in writing. Included in the Structuring Services, Hennessee (at the request of Client) will evaluate any Hedge Fund(s) identified by Client as being of interest. Hennessee will also provide the services below listed ("Ongoing Services").

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 2

(i) Hennessee will monitor the performance of the Portfolio selected by Client and provide continuous and ongoing Hedge Fund investment advice.

(ii) Hennessee will also be available to confer with Client periodically to provide investment advice on the Portfolio.

(iii) Client may also request Hennessee to evaluate and provide Ongoing Services, pursuant to Section II(a) hereof, with respect to pre-existing hedge fund investments made by Client. With respect to such investments, Client shall pay the Structuring and Monitoring Fee pursuant to Section IV(a) hereof.

(b) Access to Proprietary Analytics

Hennessee will provide Client with highly confidential information, research and analyses it compiles about numerous hedge funds ("Proprietary Analytics"). These Proprietary Analytics: generally are not available from other sources; have required many years of diligent effort to accumulate; are derived from unique proprietary analytic processes of Hennessee; and is highly confidential. Clients are required to sign a confidentiality agreement when they become clients of Hennessee. (See Exhibit A attached hereto).

SECTION III: RETAINER FEE

~~Client will pay Hennessee a fee to secure the services of Hennessee ("Retainer Fee") not to exceed six (6) months of the expected annual fee due Hennessee. The Retainer Fee will be applied against the Structuring and Monitoring Fee provided for in Section IV(a) hereof.~~

SECTION IV: ANNUAL COMPENSATION

(a) Structuring and Monitoring Fee

As compensation for the Structuring and Ongoing Services provided pursuant to Section II(a) of this Agreement, Hennessee shall be entitled to receive an annual fee ("Structuring and Monitoring Fee") based upon the value of Client's portfolio (as defined below) and computed as set forth in Exhibit F attached hereto.

The Value (as defined hereof) of Client's investments for any given calendar year will be the Value of Client's Portfolio as of January 1 of such year, determined on the basis of the cumulative sum, of the total of Client's capital account for each Hedge Fund comprising the Portfolio ("Value"). New investments and additions to or redemptions from existing investments that take place after January 1 in any given year will generate a Structuring and Monitoring Fee due Hennessee prorated on a twelve (12) month calendar year.

(b) Proprietary Analytics Fee

While Hennessee could attempt to assign a fee to access its Proprietary Analytics on a one-time basis, when the Client first receives a recommendation from the Hennessee Group, it has elected to

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")                                               Page: 3

value access to the Proprietary Analytics provided pursuant to Section II(b) of this Agreement based on the amount and duration of the Client's use of that confidential information by investing in a Covered Hedge Fund as defined hereof. Accordingly, the following annual fee (the "Proprietary Analytics Access Fee") is due to Hennessee in accordance with the following terms and conditions:

(i) If Hennessee introduces Client to a Hedge Fund ("Introduction") and subsequent to such Introduction Client chooses not to invest in the Hedge Fund at that time, but does invest with such Hedge Fund within three years of such Introduction, the Proprietary Analytics Access Fee will be due as set forth in Exhibit F based on the Value of the Covered Hedge Fund (as defined hereof) and for as long as Client remains an investor in the Covered Hedge Fund.

(ii) An investment by Client in a Hedge Fund will be included in the Portfolio and such Hedge Fund will be a "Covered Hedge Fund" if Hennessee is responsible for causing the Hedge Fund to forward to Client the offering memorandum for the Hedge Fund and/or Hennessee provides information either to the Hedge Fund and/or Client which is employed to establish an investment relationship between Client and the Hedge Fund. A Hedge Fund will also be included in the Portfolio and deemed to be a Covered Hedge Fund if Client makes an investment after receiving research, analysis, or due diligence performed by Hennessee at the request of Client, even if Client brought the Hedge Fund to the attention of Hennessee.

Client shall continue to pay the Proprietary Analytics Access Fee for so long as Client maintains an investment with a Covered Hedge Fund. Covered Hedge Funds shall be added to the Portfolio and Client shall be required to pay a Proprietary Analytics Access Fee with respect to such investment if an investment is made in a Covered Hedge Fund at any time within three years of the date of the Introduction, regardless of whether this Agreement is then otherwise in effect.

For the purposes of determining the Proprietary Analytics Fee due Hennessee, the Value of Client's investment will be determined as set forth in Section IV(a) hereof.

SECTION V: ALTERNATIVE PAYMENT OF FEES BY HEDGE FUNDS OR THEIR MANAGERS

Client can request that the Hedge Fund(s) in which they invest or the managers of those Hedge Funds pay over to Hennessee some or all of the compensation owed to Hennessee by Client under this Agreement as set forth in Section IV hereof (collectively the "Fee(s)"). Hedge Funds or their manager(s) can satisfy the Client's Fee(s) obligation in one of two ways. First, the manager can direct the Hedge Fund to execute securities transactions through a broker dealer selected by Hennessee that pays brokerage commissions to Hennessee or its officers for the directed trading. Currently, Hennessee has arrangements with certain brokers ("Brokers") under which Hennessee's officers can receive brokerage commissions as the introducing broker when Hedge Funds execute certain securities transactions through the Brokers ("Directed Commissions"). Alternatively, a Hedge Fund manager can make cash payments to Hennessee to satisfy the Fee(s), ("Cash Payment(s)").

Hennessee annually reviews (for the prior year) the amounts it receives under the alternative fee

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 4

payment options described hereof and compares the amounts received with the Fee(s) owed by Client. Client will receive a statement annually from Hennessee reflecting its accounting for the alternative fee payment options. When Directed Commissions or Cash Payments are directed by Hedge Funds to satisfy the Fee(s) obligation, Hennessee employs the following methods to account for such payments:

1. The Directed Commissions net of execution and clearing costs received by Hennessee from the Hedge Fund are totaled ("Total Directed Commissions"). When several clients of Hennessee invest in the same Hedge Fund, the Total Directed Commissions generated by that Hedge Fund are allocated among the clients in proportion to the assets each client has invested in the Hedge Fund. However, if an individual Hedge Fund directs brokerage in excess of the Fee(s) for that Hedge Fund, the Total Directed Commissions for the Client will only be credited for the amount equal to the Fee(s) for that Hedge Fund. Hennessee retains the excess of Directed Commission over the Fee(s) for that Hedge Fund. This excess is not carried forward to any subsequent year and will not reduce the Fee(s) during any subsequent year.

2. When the Hedge Fund makes Cash Payments to Hennessee to satisfy the Fee(s) obligation, the Fee(s) for the year in which the Cash Payment is received will be reduced by the amount of the Cash Payment but not below zero.

Hennessee will provide the Client, at least annually, with a statement reflecting:

1. The Fee(s) the Client owes Hennessee under this Agreement and information explaining how the Fee(s) are calculated;

2. The Total Directed Commissions Hennessee credits to the Client to reduce the Fee(s); and

3. Any Cash Payments to Hennessee by Hedge Fund that Hennessee credits to the Client to reduce the Fee(s).

4. The net Fee(s) balance due Hennessee, if any.

In no case will either Total Directed Commissions or Cash Payments received in any one year from a Hedge Fund reduce the Client's Fee(s) obligations to Hennessee in any subsequent year for an investment in that Hedge Fund.

Client agrees to provide a copy to Hennessee of all notices made by Client to Hedge Fund(s) pursuant to this Agreement regarding the investment in Covered Hedge Fund(s), the addition to or redemption by Client of investment(s) in Covered Hedge Fund(s) and all other Hedge Funds comprising the Portfolio. Client has executed Exhibit E attached hereto and has authorized Hennessee to furnish Exhibit E to all Hedge Funds comprising the Portfolio for which a Structuring and Monitoring Fee and/or Proprietary Analytics Fee is due pursuant to this Agreement, for the purpose of full disclosure where Directed Commissions and/or Cash Payments by the Hedge Fund will be the method of Compensation.

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 5

## SECTION VI: ANNUAL FEE PAYMENT

It is contemplated that all or a major portion of the Fee(s) will be paid through Cash Payments and/or Directed Commissions. Notwithstanding such belief, there is no explicit or implicit guarantee that the general partner or the Hedge Fund will satisfy any portion of the Fee(s) due Hennessee (Section IV hereof). At the end of each calendar year, Client will be responsible for compensating Hennessee for any unpaid balance of the Fee(s) (Section IV hereof), adjusted pursuant to Section III hereof (if applicable). A cash payment of the unpaid balance will be made by Client to Hennessee within 30 calendar days after receipt of an invoice from Hennessee for the prior year's unpaid balance. Client authorizes Hennessee to contact and obtain confirmation(s) from the Hedge Fund(s) concerning the status of Client's investment with the Hedge Fund, including additions, withdrawals and the value of Client's capital account.

## SECTION VII: CONFIDENTIALITY AND USE OF PROPRIETARY INFORMATION

Client understands and agrees to be bound by the provisions of the attached Confidentiality Agreement (as defined in Exhibit A attached hereto).

## SECTION VIII: RISK ACKNOWLEDGMENT AND INDEMNIFICATION

Hennessee does not guarantee the future financial performance of the Portfolio or any Hedge Fund, nor does it guarantee that the Hedge Fund(s) selected for investment will individually or collectively meet Client's intended investment objectives. Nothing in this Agreement and nothing in verbal statements made to Client by Hennessee (its principals, employees or affiliates) may be construed by Client as a promise about the outcome of any Client investments made pursuant to this Agreement. Hennessee makes no such promises or guarantees. Comments by Hennessee about the outcome of Hedge Fund investing in general and the Portfolio in specific are expressions of opinion only.

Client understands that Hedge Funds are investments that are subject to various market, currency, economic, political and business risks and that Client's investment decisions made with respect to the Portfolio may not always be profitable.

In performing its duties under this Agreement, Hennessee will not take into consideration any other investments or securities owned by Client, other than those disclosed to Hennessee in writing.

Client agrees to indemnify and hold Hennessee harmless from: (a) any liability, expense, judgment, amount paid in settlement or loss incurred as a result of Client's investment in a Hedge Fund for which Hennessee provided services as set forth in Section II hereof; or (b) any loss arising from Hennessee's adherence to a Client's written or oral instructions; or (c) any act or failure to act, whether fraudulent or otherwise, by a Hedge Fund or its: manager(s); affiliates; assigns; agents; employees or counterparties associated in any way with the Hedge Fund; or (d) any errors or omissions committed by Hennessee, its employees or agents in the discharge of its duties hereunder, unless such errors or omissions constitute gross neglect or willful misfeasance; provided, however, that this clause shall not relieve Hennessee from any liability imposed by federal or state securities laws or other applicable laws which cannot be waived.

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 6

## SECTION IX: TERMINATION

This Agreement may be terminated by either party at any time upon thirty (30) days prior written notice to the other party. Upon such termination, Hennessee shall have no further obligation to perform Structuring Services and Ongoing Services pursuant to Section II(a) hereof and shall not be entitled to receive any additional Structuring and Monitoring Fee pursuant to Section IV(a) hereof. However, Hennessee shall remain entitled to payment of the Proprietary Analytics Access Fee pursuant to Section IV(b) hereof for any Covered Hedge Fund for so long as Client maintains his/her/its investment with the Covered Hedge Fund. Termination of this Agreement will not affect: (a) the validity of any action previously taken by Hennessee under this Agreement; (b) liabilities or obligations of the parties to the Agreement arising from transactions initiated before termination of this Agreement; (c) Client's continuing obligations under Sections IV(b), V, VI, VII, VIII, Exhibit A and Exhibit E hereof; or (d) Client's authorization for Hennessee to receive and allocate Directed Commissions and/or Cash Payments for the Covered Hedge Fund as set forth in Section V hereof.

## SECTION X: AUTHORITY

Client represents that he/she/it has the requisite capacity and authority to enter into this Agreement and that he/she/it is authorized under the terms of any applicable plan, trust, partnership agreement or other governing instrument and by any applicable law to retain Hennessee and to make investments in Hedge Funds.

## SECTION XI: POTENTIAL CONFLICTS OF INTEREST

Client understands that Hennessee and its affiliates perform Hedge Fund Advisory Services (Section II hereof) for various clients and Client agrees that Hennessee and its affiliates may give advice and take actions with respect to any of its other clients which may differ from the timing or nature of the actions taken on behalf of Client. Hennessee will endeavor, to the extent practical, to allocate investment opportunities to Client over a period of time on a fair and equitable basis relative to other clients. Client further understands that Hennessee shall not have any obligation to recommend any Hedge Fund for Client that Hennessee, its principals, affiliates or employees may recommend for any other client or for Hennessee or its own accounts, if in Hennessee's opinion such transaction or investment appears unsuitable, impractical or undesirable for the Client. Client also understands that Hennessee or its affiliates may receive referral fees, directed commissions or other remuneration from the Hedge Fund(s), or its general partner(s), or its investment manager for the purpose of reducing the Fee(s) due Hennessee (Sections IV and V hereof). Client further understands that because of legal and business considerations, Hennessee, in its capacity as Investment Adviser to the Portfolio may not be able to act on material non-public information affecting such Portfolio.

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 7

## SECTION XII: ACCREDITED INVESTOR STATUS

Client hereby represents to Hennessee that he/she/it is an "accredited investor" as defined in Securities Act Rule 501(a). Attached hereto is Exhibit B, on which Client has designated the provision(s) of Rule 501(a) that apply to Client. Client also agrees to complete Exhibit C ("Accredited Investor Profile") and Exhibit D ("Current Investment Portfolio") both attached hereto.

## SECTION XIII: GOVERNING LAW

This Agreement will be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflict or choice of law provisions of that State, provided that nothing in this Agreement will be construed inconsistent with the Investment Advisers Act, or any rule or order of the Securities and Exchange Commission under the Investment Advisers Act.

## SECTION XIV: ARBITRATION

Any disputes arising under this Agreement or, with respect to its interpretation, shall be submitted to arbitration before a panel of three arbitrators selected under the Rules of the American Arbitration Association and such arbitration shall be conducted in accordance with the commercial arbitration rules of said Association. Each of the parties shall be entitled to select one arbitrator; those two arbitrators shall select the third arbitrator. The ruling of said panel shall be binding in all respects and judgment thereon may be entered in any court having jurisdiction. Nothing in this Agreement shall bind either party to submit any dispute to arbitration with respect to which such party is entitled to have litigated in a court of competent jurisdiction.

## SECTION XV: NOTICES

Any notice, advice or report given to either party under this Agreement will be delivered by mail or courier or sent by facsimile (with a hard copy sent by mail or courier) to Hennessee at its then principal address or to Client at address on the signature page, or such other address as either party may designate in writing.

## SECTION XVI: ASSIGNMENT

Neither party shall assign his/her/its rights or obligations under this Agreement without prior written notice to and consent of the other party. Hennessee shall notify Client in writing of any change in the principals of Hennessee which would constitute a change of control.

## SECTION XVII: MISCELLANEOUS

If any provision of this Agreement is now or should become inconsistent with any law or rule of any governmental or regulatory body having jurisdiction over the subject matter of this Agreement, the provision will be deemed to be rescinded or modified in accordance with any such law or rule. In

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 8

all other respects, this Agreement will continue and remain in full force and effect. No term or provision of this Agreement may be waived or changed except in writing signed by the party against whom such waiver or change is sought to be enforced. Hennessee's failure to insist at any time on strict compliance with this Agreement or with any of the terms of the Agreement or any continued course of such conduct on its part will not constitute or be considered a waiver by Hennessee of any of its rights or privileges.

This Agreement contains the entire understanding between Client and Hennessee.

## SECTION XVIII: DISCLOSURE

Client has received and reviewed a copy of Part II of Hennessee's Form ADV, as well as a copy of this Agreement.

**(agreement execution on next page)**

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 9

## SECTION XIX: AGREEMENT EXECUTION

Hennessee Group LLC and Client have executed this non-discretionary Investment Advisory Agreement on this _4_ day of _August_, 20_01_.

Craig M. Bollman, Jr
Mr. Craig Bollman
NAME OF CLIENT

_____
Mr. Craig Bollman [sign]

Address of Client for all communications:

To be provided:

_____
_____
_____

Telephone No.: _303-906-2686_

Fax: _____

E-mail: _____

Accepted as of _8/4/01_ [date]:

HENNESSEE GROUP LLC

by _____
Managing Principal

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 10

# EXHIBIT A

## HENNESSEE GROUP LLC
## INVESTOR CONFIDENTIALITY AGREEMENT

The Hennessee Group LLC ("Hennessee") is pleased to advise the below named ("Client" of Hennessee) concerning investments in one or more private investment partnerships (each a "Hedge Fund" and collectively, the "Portfolio(s)"). Due to capital capacity constraints with most hedge funds and Hennessee's expenses associated with originating, researching and monitoring such hedge funds, it is Hennessee's policy to obtain a confidentiality agreement ("Confidentiality Agreement") from hedge fund investors.

It is very costly to create and maintain proprietary analytics including a proprietary database of information on over 3,000 hedge funds and to have an infrastructure to evaluate these hedge funds so that the best Hedge Fund(s) are selected for portfolios of Hennessee's clients. Hennessee trusts that Client recognizes that the analytics, the process and the information about each manager is proprietary. Except as may be required by law or regulation, neither Client nor Hennessee will disclose to any third party, information about the Portfolio or about recommendations made by Hennessee to Client regarding Hedge Funds. We therefore respectfully request that Client maintain the confidential nature of all information we provide to Client, including hedge fund manager names, addresses and phone numbers. Review by another person, reproduction, communication or transmission of information we provide Client is not permitted without the written consent of Hennessee.

Furthermore, Client cannot (without the written consent of Hennessee) utilize or transfer the information we provide Client for Client's personal or family investment; or an investment by an affiliate; or an investment by non-affiliated entities, in a manner which excludes Hennessee from receiving Compensation it would have ordinarily received. Should any entity express an interest in your investments with Hennessee, we respectfully request that Client will refer that individual or entity to Hennessee directly. Unless otherwise provided in writing subsequent to the signing of this document, this Agreement cannot be terminated or suspended by either party. In the event that Client is found by a court of law to have breached this Confidentiality Agreement, Hennessee shall be entitled, in addition to any other rights that Hennessee may have, to receive from Client, attorney's fees and costs incurred by Hennessee in enforcing this Confidentiality Agreement.

Please sign below, indicating your agreement.

_____
Managing Principal
Hennessee Group LLC

Date: 8/4/01

_____
Mr. Craig Bollman [sign]

Date: Aug. 4, 2002

\\WPG-CLR1\DATA\DEPT\HEDGE\Clients-Prospects\Correspondence\PROSPECT\Bollman, Craig\Compliancy Regulatory\AA-NEW MASTER 00 with x (NON-DISCRETIONARY)Mr. Craig Bollman-12-13-00.docCreated on

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 11



## EXHIBIT B

### ACCREDITED INVESTOR STATUS

The following categories of persons are "accredited investors;" Please *initial* the appropriate items that apply to Client:

_____ 1. A <u>bank</u> as defined in Section 3 (a) (2) of the 1933 Act, or a <u>savings and loan association</u> or other institution defined in Section 3 (a) (5) (A) of the 1933 Act, whether acting in its individual capacity or a fiduciary capacity.

_____ 2. A <u>broker or dealer</u> registered pursuant to Section 15 of the Securities Exchange Act of 1934.

_____ 3. An <u>insurance company</u> as defined in Section 2 (13) of the 1933 Act.

_____ 4. An <u>investment company</u> registered under the Investment Company Act of 1940 (the "1940 Act") or a <u>business development company</u> as defined in Section 2 (a) (48) of the 1940 Act.

_____ 5. A <u>small business investment company</u> licensed by the U.S. Small Business Administration under Section 301 (c) or (d) of the Small Business Investment Act of 1958.

_____ 6. A <u>plan established</u> and maintained <u>by a state</u>, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, <u>for the benefit of its employees</u>, if such plan has total assets in excess of $5 million.

_____ 7. A <u>private business development company</u> as defined in Section 202 (a) (22) of the Investment Advisors Act of 1940.

_____ 8. An <u>organization</u> described in <u>Section 501 (c) (3)</u> of the Internal Revenue Code, <u>corporation</u>, <u>Massachusetts</u> or similar <u>business Trust</u>, or <u>partnership</u>, not formed for the specific purpose of acquiring interests in the Partnership, with total assets in excess of $5 million.

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")                                                                Page: 12

___✓___ 9.   An <u>individual whose net worth</u> together with that of his or her spouse, <u>exceeds $1,000,000</u>.

___✓___ 10.  An <u>individual</u> who has individual <u>income in excess of $200,000</u> in each of the two most recent years, or <u>joint income with his or her spouse in excess of $300,000</u> in each of those years, and who reasonably expects to reach the same income level this year.

_____ 11.  A <u>trust</u>, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring an Interest in the Partnership, whose decisions to invest in hedge funds are directed by a sophisticated person who can demonstrate to the hedge fund that such person has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of an investment in the Partnership.

_____ 12.  An entity in which all of the equity owners or partners are "accredited investors."

                                                                    Mr. Craig Bollman [sign]

                                                       Date: _____Aug. 4, 2002_____

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 13

## EXHIBIT C

### Accredited Investor Profile

1. Will you be investing on behalf of (check all those that apply): Yourself ✓
   Limited Partnerships _____ Trust _____ Endowment _____ Fund of Funds _____

2. Have you ever invested in a hedge fund? If yes, what year did you make your first hedge fund investment? _____approx. 1981_____

3. Are you the sole decision maker in connection with hedge fund investments? If not, what is the investment process you undertake(ie., investment committee approval, etc.)? _____Yes, Sole decision maker_____

4. What is the percentage (%) allocation of investments in your portfolio?
   Stocks: _____     Hedge Funds: _5%_     Real Estate: _45%_
   Bonds: _____     Cash/Treasuries: _50%_     All Other: _____

5. How would you characterize your hedge fund risk/return objectives (aggressive, moderate, conservative)? _____aggressive_____

6. Hedge funds may not be suitable for all investment objectives. Please indicate which objective(s) you are attempting to achieve with your investment.
   Retirement _____ Appreciation ✓ Income _____ Diversification _____

7. Hedge funds can be illiquid investments. Are the monies you are investing needed to support your current lifestyle? _____ Yes ✓ No

8. What is your approximate total net worth (assets less liabilities)?
   Less than $2 million: _____   ✓ Between $10 and $25 million: _____   Between $50 and $10 million: _____
   Between $2 and $10 million: _____   Between $25 and $50 million: _____   Over $100 million: _____

6. What percent (%) of your total net worth is liquid? _____20%+_____

7. When do you expect to make the investment decision regarding hedge funds? How much do you expect to invest? _____undetermined_____

8. What is your current source of income (Employer, Pension, Family Business, Business Ownership, Fund-of-Funds, Investments)? _____Business/Family Business Ownership_____

_____[signature]_____
Client or Authorized Signatory for Client [sign]

[Hennessee Group LLC Hedge Fund Advisory seal]

_____
Client or Authorized Signatory for Client [print]

_____Aug. 4, 2002_____
Date

Agreement Between
Hennessee Group LLC,
And Mr. Craig Dollman ("Client")

Page: 14

**EXHIBIT D**
**CURRENT INVESTMENT PORTFOLIO**

| Fund/Company | Portfolio Manager | Investment Style | Date of Investment | Approximate Dollars Invested |
|---|---|---|---|---|
| *CURRENT HEDGE FUND INVESTMENTS* | | | | |
| | | | | |
| | | | | |
| | | | | |
| *HEDGE FUND INVESTMENTS TERMINATED* | | | | |
| | | | | |
| | | | | |
| | | | | |
| *TRADITIONAL (LONG ONLY) INVESTMENTS* | | | | |
| | | | | |
| | | | | |
| *HEDGE FUND MANAGERS CURRENTLY UNDER CONSIDERATION* | | | | |
| | | | | |
| | | | | |

HENNESSEE GROUP LLC
HEDGE FUND ADVISORY

_____
Client or Authorized Signatory for Client [sign]

_____     _____
Client or Authorized Signatory for Client [print]     Date

Agreement Between
Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

Page: 15

EXHIBIT E

Dear Client of Hennessee Group:

We are writing with regards to your participation in the Hennessee Hedge Fund Advisory Program, of the Hennessee Group LLC ("Hennessee"). Specifically, this correspondence is intended to disclose, to all parties, methods of compensation for services provided by Hennessee to you ("Client(s)" of Hennessee), pursuant to the investment advisory agreement ("Agreement") between Hennessee and you. It also gives Hennessee authority to periodically receive your capital account balance solely for the purpose of determining fees due under the Agreement.

As previously set forth in the Agreement, Hennessee facilitates two alternative fee payment options to its clients. A client may compensate Hennessee directly or a client may request the general partner, the investment adviser of the Hedge Fund, to direct brokerage ("Directed Commissions") and/or make cash payments ("Cash Payments") to satisfy your annual fee "Fee(s)" due Hennessee. Your Fee(s) to Hennessee is set forth in the Agreement. **By copy of this document, your request is being submitted to the general partner.**

If you request the general partner to Direct Commissions, upon acceptance of such request, a registered broker dealer will be designated at the sole discretion of Hennessee to execute trading. On your behalf, the designated broker dealer will pay over to Hennessee a portion of the resulting brokerage commissions. These payments will be credited to your Fee(s) due Hennessee pursuant to the Agreement.

**There is no affiliation between Hennessee and the Hedge Fund, the compensation to Hennessee (whether Directed Commissions and/or Cash Payment(s)) will not increase the management fee or performance fee you would ordinarily pay the Hedge Fund.** Note that the general partner may Direct Commissions to Hennessee's designated broker dealer only if such action results in best execution of securities transactions for the Hedge Fund.

Please sign where indicated below to acknowledge that you are electing to pay Hennessee's Fee(s) through Directed Commissions and are requesting that the designated broker dealer pay Hennessee's Fee(s) from such commissions. You also acknowledge that the general partner (at its discretion) may choose (in lieu of, or in combination with Directed Commissions) to make Cash Payments to Hennessee. This document authorizes the Hedge Fund to copy Hennessee on all correspondence sent to you as a limited partner of the Hedge Fund including manager letters to limited partners, quarterly Client capital account balances and Client schedule K-1.

Sincerely,

[signature]
Managing Principal
Hennessee Group LLC

Acknowledged: [signature]
Mr. Craig Bollman [sign]

cc: Hedge Fund General Partner

Date: Aug. 4, 2001

Hennessee Group LLC;
And Mr. Craig Bollman. ("Client")

**HENNESSEE GROUP LLC**
HEDGE FUND ADVISORY

EXHIBIT F

*Annual Compensation*

| Portfolio Assets | Option A — Client Makes Cash Payment | | | | Option B — Client Requests Hedge Fund to Cover Fee(s) | | | |
|---|---|---|---|---|---|---|---|---|
| | Hard Dollar Tiered Pricing | | | | Total Directed Commissions/Cash Payments (**) | | | |
| | Pre-Existing Portfolio Created by Client | | Hennessee Created Portfolio | | Pre-Existing Portfolio Created by Client | | Hennessee Created Portfolio | |
| | Portfolio Structuring and Monitoring Fee pursuant to Section II(a) and Section IV(a) min/max (*) | | Access to Proprietary Analytics Fee pursuant to Section II(b) and Section IV(b) min/max (*) | Portfolio Structuring and Monitoring Fee pursuant to Section II(a) and Section IV(a) min/max (*) | Portfolio Structuring and Monitoring Fee pursuant to Section II(a) and Section IV(a) min/max (*) | | Access to Proprietary Analytics Fee pursuant to Section II(b) and Section IV(b) min/max (*) | Portfolio Structuring and Monitoring Fee pursuant to Section II(a) and Section IV(a) min/max (*) |
| $25m or less | 20 bp/20 bp | | 80 bp/80 bp | 20 bp/20 bp | 0 bp/20 bp | | 0 bp/80 bp | 0 bp/20 bp |
| $25m to $50m | 13 bp/13 bp | | 50 bp/50 bp | 13 bp/13 bp | 0 bp/13 bp | | 0 bp/50 bp | 0 bp/13 bp |
| $50m & above | 6 bp/6 bp | | 25 bp/25 bp | 6 bp/6 bp | 0 bp/6 bp | | 0 bp/25 bp | 0 bp/6 bp |
| Example $100m Portfolio | $112,500 per year | | $450,000/yr | $112,500/yr | $0/$112,500/yr | | $0/$450,000/yr | $0/$112,500/yr |

(*) Minimum/maximum Client cash outlay
(**) Client requests manager Cash Payment(s); and/or Directed Commissions on "best efforts and best execution" basis.

\\WPG-CLR1\DATA\DEPT\HEDGE\Clients-Prospects\Correspondence\PROSPECT\Bollman, Craig\Compliancy Regulatory\AAA-NEW MASTER 00 with x (NON-DISCRETIONARY)\Mr. Craig Bollman-12-13-00.doc Created on 12/13/00 3:01 PM Printed on 08/02/01