## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| BROAD-BUSSEL FAMILY LIMITED PARTNERSHIP, MARIE-LOUISE MICHELSOHN, MICHELLE MICHELSOHN and HERBERT BLAINE LAWSON, JR., Individually and on Behalf of All Other Persons and Entities Similarly Situated, | : : : : : : : |
| Plaintiffs, | : CIVIL ACTION NO.  3:05-CV-01762-JBA |
| vs. | : AMENDED CLASS ACTION COMPLAINT |
| BAYOU GROUP LLC, BAYOU MANAGEMENT LLC, BAYOU FUND, LLC, BAYOU SUPER FUND, LLC, BAYOU NO LEVERAGE FUND, LLC, BAYOU AFFILIATES FUND, LLC BAYOU ACCREDITED FUND, LLC, BAYOU OFFSHORE FUND, LLC, BAYOU PARTNERS LLC, BAYOU SECURITIES LLC, BAYOU SECURITIES, LTD, BAYOU ADVISORS, LLC, BAYOU EQUITIES, LLC, IM PARTNERS, IMG, LLC, SAMUEL ISRAEL, III, DANIEL E. MARINO, RICHMOND-FAIRFIELD ASSOCIATES, CPA, PLLC, JAMES G. MARQUEZ, JEFFREY D. FOTTA, EQYTY RESEARCH AND MANAGEMENT, LLC, EQYTY RESEARCH AND MANAGEMENT, LTD, CITIBANK N.A., FAUST RABBACH & OPPENHEIM LLP, STEVEN D. OPPENHEIM, HENNESSEE GROUP LLC, ELIZABETH LEE HENNESSEE, and CHARLES J. GRADANTE, | : : : : : JURY TRIAL DEMANDED : : : : : : : : : : : : : : : : : : : March 6, 2006 |
| Defendants. | : |

(Page 4 of 102)

Plaintiffs Broad-Bussel Family Limited Partnership ("Broad-Bussel Family"), Marie-Louise Michelsohn, Michelle Michelsohn and Herbert Blaine Lawson, Jr. (collectively, "Plaintiffs"), individually and on behalf of all other persons and entities similarly situated, as and for their Amended Complaint against defendants ("Defendants"), allege as follows:

## NATURE OF ACTION

1.      During the period between at least December 31, 1996 and August 25, 2005 (the "Class Period"), defendants Bayou Super Fund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, Bayou Accredited Fund, LLC, Bayou Offshore Fund, LLC, and Bayou Fund, LLC (collectively, the "Bayou Hedge Funds"),[1] and defendants Bayou Group LLC, Bayou Management LLC, Bayou Securities LLC, Bayou Securities, LTD, Bayou Partners LLC, Bayou Advisors, LLC, Bayou Equities, LLC, IM Partners, IMG, LLC, Samuel Israel, III and Daniel E. Marino (collectively, with the Bayou Hedge Funds, the "Bayou Defendants" or "Bayou") solicited, sold, operated and/or participated in the operations of the Bayou Hedge Funds. On August 25, 2005, the financial press began to reveal that Bayou had long been operated as a fraud, with its principals having misappropriated literally millions of investor dollars. Plaintiffs and other similarly situated investors purchased investment interests in one or more of the Bayou Hedge Funds during the Class Period, and were damaged thereby (the "Class"). In total, Plaintiffs and members of the Class invested more than $450 million in the Bayou Hedge Funds during the Class Period.

---

[1]      The Bayou Hedge Funds also include the following Bayou entities that are not named as defendants in this Amended Complaint because they are in bankruptcy and an injunction has been issued precluding any such lawsuits, as explained more fully in ¶ 44 below:  Bayou Offshore Fund A, LTD; Bayou Offshore Fund B, LTD; Bayou Offshore Fund C, LTD; Bayou Offshore Fund D, LTD; Bayou Offshore Fund E, LTD; Bayou Offshore Fund F, LTD; and Bayou Offshore Master Fund, LTD.

2.    The Bayou fraud was accomplished with the active and substantial participation
of Bayou's bankers, lawyers and advisors. Indeed, almost since their inception, the Bayou
Hedge Funds have essentially operated as a massive financial sham and Ponzi scheme
orchestrated by the Bayou Defendants. In sum, the Bayou Defendants fraudulently lured
investors to invest and maintain hundreds of millions of dollars in the Bayou Hedge Funds
during the Class Period, through a scheme of improper acts and continuing misrepresentations
and omissions regarding the business practices and financial results, operations and condition of
Bayou and the Bayou Hedge Funds. The Bayou Defendants, and in particular their principals
including defendants Samuel Israel, III ("Israel") and Daniel E. Marino ("Marino"), then
unlawfully pilfered and squandered hundreds of millions of dollars that Plaintiffs and the Class
had entrusted to them as financial investments. Subsequently, both Israel and Marino have pled
guilty to multiple criminal acts, and the Bayou Funds have essentially collapsed.

3.    The financial fraud and other misconduct of the Bayou Defendants was aided and
abetted substantially by Bayou's long-time banker, defendant Citibank, N.A. ("Citibank"). In
sum, defendant Citibank served as Bayou's lead banker. As such, Citibank received millions of
investment dollars from Class members it knew were fiduciary proceeds beneficially owned by
the Class, and processed millions of dollars in Bayou transactions. Nevertheless, Citibank
assisted defendants Israel and Marino in misappropriating Class member investor funds.
Specifically, beginning in or about July 2004, Citibank actually distributed some $161 million in
cash from five Bayou bank accounts maintained at Citibank in New York, directly to one or
more private bank accounts solely in defendant Israel's name at Deutsche Postbank in Hamburg,

3

Germany, despite knowing or ignoring that such proceeds were fiduciary funds beneficially owned by Class members.

4.    The financial fraud and other misconduct of the Bayou Defendants was also aided and abetted by defendants James G. Marquez ("Marquez"), Richmond-Fairfield Associates, CPA, PLLC ("Richmond-Fairfield"), Jeffrey D. Fotta ("Fotta"), Eqyty Research and Management, LLC, Eqyty Research and Management, LTD, Faust Rabbach & Oppenheim LLP, and Steven D. Oppenheim (collectively with Citibank, the "Aider/Abettor Defendants"). In sum, defendants Marquez, Richmond-Fairfield, Fotta, Eqyty Research and Management, LLC, Eqyty Research and Management, LTD, Faust Rabbach & Oppenheim LLP ("Faust Rabbach & Oppenheim") and Steven D. Oppenheim ("Oppenheim") were close associates of Bayou and Bayou's principals, defendants Israel and Marino; were directly or indirectly involved in planning, orchestrating and/or executing the alleged fraud; and directly or indirectly received compensation misappropriated from Class member investors.

5.    In addition, the investment advisor defendants Hennessee Group LLC (the "Hennessee Group"), Elizabeth Lee Hennessee ("Lee Hennessee") and Charles J. Gradante ("Gradante") (collectively, the "Hennessee Defendants") also facilitated the wrongdoing by failing to conduct proper due diligence of Bayou and the Bayou Hedge Funds prior to recommending those investments to plaintiff Broad-Bussel Family and other investors, and then by failing to monitor properly those investments, and are thus liable to those Bayou investors to whom they marketed the Bayou Hedge Funds. Plaintiff Broad-Bussel Family and other Class member investors retained the Hennessee Defendants for the express purpose of properly conducting such due diligence. However, despite the presence of numerous red flags regarding

4

Bayou's finances, operations and principals as set forth more fully below, the Hennessee Defendants failed to uncover and advise plaintiff Broad-Bussel Family and other investors of a fraud that had been occurring for years. The principals of defendant Hennessee Group, defendants Lee Hennessee and Gradante, are liable because they were the alter egos and controlled the acts of defendant Hennessee Group; personally solicited and recommended Bayou investments to plaintiff Broad-Bussel Family and other investors; personally failed to investigate properly Bayou and Bayou's principals; and received direct or indirect compensation and were unjustly enriched thereby.[2]

6.     As the fraud began to unravel internally within Bayou in July 2005, defendant Israel sent a letter to Bayou investors informing them that Bayou was closing its businesses. Significantly, however, that letter also assured Class member investors that all of their invested funds would be distributed to them once the necessary liquidation audit was complete.

7.     On August 25, 2005 -- the end of the proposed Class Period -- *The New York Times* first alerted investors to "the possible collapse" of Bayou and the Bayou Hedge Funds. By August 29, 2005, *The Wall Street Journal* reported that a self-titled "suicide note and confession", written by Bayou's CFO Dan Marino (who did not commit suicide), had been found

---

[2]     In the initial complaint they filed November 17, 2005, Plaintiffs also brought suit against Sterling Stamos Capital Management, L.P. ("Sterling Stamos"). Subsequent to the filing of that complaint, Plaintiffs have continued their investigation and conducted both formal and additional informal discovery as to Sterling Stamos, among other things. As a result, Plaintiffs have not named Sterling Stamos as a defendant in this Amended Complaint. Further, this action does not appear to require notice to Class members or court approval because at this juncture no class has been certified in these proceedings. See Federal Rule of Civil Procedure 23(e)(1)(A) ("The Court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class."). Plaintiffs Marie-Louise Michelsohn, Michelle Michelsohn and Herbert Blaine Lawson, Jr. reserve their rights to add Sterling Stamos as a defendant in any further amended pleading or otherwise, or to pursue their claims against Sterling Stamos in separate individual (*i.e.*, non-class) proceedings in state court.

at Bayou's abandoned headquarters in Stamford, CT. That six-page note directly implicated Marino, Israel and others in a massive fraud on investors of the Bayou Hedge Funds dating back to 1996. Subsequent media and other reports indicate that the Bayou Hedge Funds are wholly or substantially insolvent, and that hundreds of millions of dollars of Class member investments are missing and unaccounted for -- including the some $161 million of Class member investment proceeds which Citibank distributed directly to one or more personal offshore accounts controlled solely by defendant Israel. At least seven Bayou entities have already commenced bankruptcy proceedings as of the date hereof (see footnote 1, *supra*, and ¶ 44, *infra*).

8.     Since Bayou's shocking collapse, numerous investigations have been commenced by state, federal and regulatory agencies, several lawsuits have been filed, and Bayou's two principals, defendants Israel and Marino, have pleaded guilty to multiple criminal counts. In addition, some $101 million in suspected Bayou investor funds have been seized by the Arizona Attorney General from several Wachovia Bank accounts in Flemington, New Jersey; Plaintiffs understand that those monies are the subject of civil forfeiture proceedings by the U.S. Attorney's Office for the Southern District of New York and other litigations. In addition to money damages, Plaintiffs, on behalf of themselves individually and other members of the Class, seek the imposition of a constructive trust over such proceeds and further that such proceeds be equitably distributed to members of the Class in accordance with their respective losses. Since the Bayou Defendants' announcement in July 2005 that the Bayou Hedge Funds were being closed and liquidated, none of the Bayou Hedge Fund investments has been returned to the Plaintiffs and other members of the Class.

6

9.    Defendants' misconduct has caused Plaintiffs and the Class to suffer hundreds of millions of dollars in damages.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the matter in controversy is in excess of $5 million, exclusive of interest and costs; the matter is a class action in which at least one member of the Class is a citizen of a State different from any Defendant; and the aggregate size of the proposed Class is believed to be greater than 100 members.

11.    This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims of Plaintiffs and the Class arise under a federal statute, the Investment Advisers Act of 1940 (the "Investment Advisers Act"), 15 U.S.C. § 80b-6 and 15 U.S.C. § 80b-15, and thus present federal question jurisdiction.

12.    This action is not preempted under the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 78bb ("SLUSA"), because, among other reasons, this case does involve "covered securities" as defined by SLUSA, 15 U.S.C. § 78bb(f)(5)(E).

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a). Many of the acts and transactions giving rise to the alleged violations of law occurred in this District. In addition, numerous of the Defendants maintain their principal executive offices or residence within this District, or did so during the time of the alleged wrongdoing. Moreover, each of the Defendants resides in the State of Connecticut, and/or transacts business in the State of Connecticut, and has certain minimum contacts with State of Connecticut, and/or engaged in tortious conduct in the

State of Connecticut, such that maintenance of this action does not offend traditional notions of fair play and substantial justice.

14.    In connection with the acts, conduct and other wrongs alleged in this Amended Complaint, the Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce including the mail, the Internet and telephone communications.

## THE PARTIES

### The Plaintiffs

15.    Plaintiff Broad-Bussel Family is a limited partnership organized under the laws of North Carolina with registered offices located in Chapel Hill, North Carolina. During the Class Period, the Broad-Bussel Family invested in the Bayou Hedge Funds and was damaged as a result of Defendants' misconduct.

16.    Plaintiffs Marie-Louise Michelsohn, Michelle Michelsohn and Herbert Blaine Lawson, Jr. (collectively, the "Michelsohn Plaintiffs") are citizens of New York. During the Class Period, the Michelsohn Plaintiffs invested in the Bayou Hedge Funds and were damaged as a result of Defendants' misconduct.

### The Bayou Defendants

17.    Defendant Bayou Group LLC ("Bayou Group") is a limited liability company organized under the laws of Connecticut and has principal offices located at 40 Signal Road, Stamford, CT. Corporate records list defendants Israel and Fotta as being Principals and Members of Bayou Group.

8

     a.     The Bayou Group has, or at times relevant during the Class Period had, controlling and/or other equity interests in one or more of the Bayou Defendants and/or helped create, operate and control the Bayou Hedge Funds.

     b.     The email domain used by one or more of the Bayou Defendants during the Class Period was <<www.bayougroup.com>>. The registrant of this email domain is defendant Bayou Securities. This email domain was used by Bayou for both internal email at the 40 Signal Road address in Stamford (*e.g.*, info@bayougroup.com, podwyer@bayougroup.com), and for external email addresses, such as those for promoters and agents of Bayou, including but not limited to Howard Kra (*e.g.*, hkra@bayougroup.com).

18.     The Bayou Hedge Funds include the following funds:

     a.     Defendant Bayou Fund, LLC ("Bayou Fund"), which is a limited liability company organized under the laws of New York and has principal offices at 40 Signal Road, Stamford, CT;

     b.     Defendant Bayou Super Fund, LLC ("Bayou Super Fund"), which is a limited liability company organized under the laws of Delaware and has principal offices at 40 Signal Road, Stamford, CT;

     c.     Defendant Bayou No Leverage Fund, LLC ("Bayou No Leverage Fund"), which is a limited liability company organized under the laws of Delaware and has principal offices at 40 Signal Road, Stamford, CT;

     d.     Defendant Bayou Affiliates Fund, LLC ("Bayou Affiliates Fund"), which is a limited liability company organized under the laws of Delaware and has principal offices at 40 Signal Road, Stamford, CT;

      e.      Defendant Bayou Accredited Fund, LLC ("Bayou Accredited Fund"),
which is a limited liability company organized under the laws of Delaware and has principal
offices at 40 Signal Road, Stamford, CT; and

      f.      Defendant Bayou Offshore Fund, LLC, which is a company incorporated
under the laws of the Delaware.

      19.      Defendant Bayou Management LLC ("Bayou Management") is a limited liability
company organized under the laws of New York and has principal offices at the law firm of
defendant Faust Rabbach & Oppenheim LLP, 488 Madison Avenue, New York, NY -- Bayou's
outside law firm ("Faust Rabbach & Oppenheim") -- and at 40 Signal Road, Stamford, CT.
Bayou Management served as the investment advisor to, and manager of, the Bayou Hedge
Funds. Bayou Management maintained primary bank accounts at defendant Citibank and
additional accounts at Wachovia Bank.

      20.      Defendant Bayou Partners LLC ("Bayou Partners") is a company with principal
offices at both 40 Signal Road, Stamford, CT and 27 Beaver Place, Boston, MA -- the home
residence of defendant Fotta. Defendant Bayou Partners was involved in soliciting investment
funds from members of the Class and other prospective Bayou investors, including specifically
at investor conferences held in Miami, FL in October 2000 and in Monte Carlo, Monaco in
September 2000. According to its own investment literature, Bayou Partners purported to
provide "advisory services to managers and investors in the alternative sector" and "specializes
in identifying emerging managers ($25-500 Mill.) and positioning them in institutional
investment portfolios, either through structuring multi-manager product or direct allocation."

21.     Defendant Bayou Advisors, LLC ("Bayou Advisors") is a Delaware limited liability company with principal offices at defendant Faust Rabbach & Oppenheim, and a mailing address at 40 Signal Road, Stamford, CT. Bayou Advisors was formed in or about January 2001 and is a member of the Bayou Group.

22.     Defendant Bayou Equities, LLC ("Bayou Equities") is a Delaware limited liability company with principal offices at defendant Faust Rabbach & Oppenheim, and a mailing address at 40 Signal Road, Stamford, CT. Bayou Equities was formed in or about January 2001 and is a member of the Bayou Group.

23.     Defendants Bayou Securities LLC and Bayou Securities, LTD are collectively referred to as defendant Bayou Securities.

a.     Bayou Securities LLC is a limited liability company organized under the laws of New York in or about May 1997 and has principal offices located at 40 Signal Road, Stamford, CT. Bayou Securities LLC is a broker-dealer registered with the National Association of Securities Dealers ("NASD") and the Securities and Exchange Commission ("SEC"), and, upon information and belief, is the successor-in-interest to Bayou Securities, LTD, a Delaware corporation. Bayou Securities, LTD was formed in or about January 1996 with principal offices located at 31 Buckout Road, West Harrison, NY.

b.     Bayou Securities performed securities brokerage and trading services for the Bayou Hedge Funds. Defendant Israel is the President and sole owner of Bayou Securities. During the Class Period, defendants Israel and Marquez oversaw the operations of Bayou Securities and directed the securities trades for the Bayou Hedge Funds, engaging in a "strategy" that involved buying and selling tens of millions of dollars of securities on a nearly daily basis,

11

akin to day trading. While these securities trades generally resulted in significant losses, those trades yielded enormous commissions for Bayou Securities, from which Israel, Marino and Marquez paid themselves substantial annual salaries and profit distributions. Moreover, even occasionally profitable trades resulted in net losses because of the high commissions charged by Bayou Securities. For example, in 2003 alone, the Bayou Hedge Funds *suffered losses of some $49 million*; however, Bayou Securities *earned approximately $29 million in commissions*.

24.     Defendant IM Partners ("IM Partners") is a general partnership organized under the laws of Connecticut with principal offices at 40 Signal Road, Stamford, CT. During the Class Period, defendants Israel and Marino created IM Partners to directly participate in converting and laundering Class member investor funds. Israel and Marino then used IM Partners to, among other things, invest those wrongfully converted funds in private companies located in Europe, the United States and possibly elsewhere, including reportedly a $10 million investment in Kycos Ltd. in or about 2003, and a $2 million investment in Debit Direct Ltd. beginning in or about November 2003.

25.     Defendant IMG, LLC ("IMG") is a limited liability company organized under the laws of Connecticut with principal offices at 40 Signal Road, Stamford, CT. Defendants Israel and Marino created IMG in or about November 2002. According to state regulatory filings, Marino is listed as a Principal and Member of IMG. Like IM Partners, Israel and Marino created IMG to participate in their scheme to unlawfully convert Class member investor funds from the Bayou Hedge Funds.

26.     · Defendant Israel is and was, at all times relevant, a founder and principal of the Bayou Group, Bayou Management, Bayou Securities, Bayou Partners, Bayou Advisors, Bayou

12

Equities and the Bayou Hedge Funds. He is the sole owner of Bayou Management and Bayou Securities. He is also the Chief Executive Officer and Chief Investment Officer of Bayou Management, and as such, was responsible for the investment management and operations of Bayou. Defendant Israel is a citizen of New York and resides at 52 Oregon Road, Mt. Kisco, NY.

27.    Defendant Marino is and was, at all times relevant, the Chief Financial Officer and Chief Operating Officer of Bayou, including Bayou Group and Bayou Management, and was a fund manager for the Bayou Hedge Funds. Marino is also the owner and registrant for defendant Richmond-Fairfield. Defendant Marino is a citizen of Connecticut and resides at 261 Bayberry Lane, Westport, CT. He is a Certified Public Accountant, having received his license in 1990 in the State of New York. Prior to his involvement with Bayou, Marino worked at several securities brokers, as well as in the audit departments at two accounting firms, Coopers & Lybrand LLP and Spicer & Oppenheim.

28.    As a result of their positions and roles as principals and officers of the various Bayou entities, defendants Israel and Marino controlled the financial operations, business practices and assets of Bayou and the Bayou Hedge Funds.

29.    As a result of their positions and roles as principals and officers of the various Bayou entities, defendants Israel and Marino owed fiduciary and other duties to the Plaintiffs and the members of the Class. Among other things, those duties required defendants Israel and Marino to safeguard and protect the Class' investments in the Bayou Hedge Funds, to properly manage Class member investor funds as faithful fiduciaries, and to be truthful and deal honestly and fairly with the Plaintiffs and the Class.

13

30.    The Bayou Defendants were also bound to act in good faith by the contracts that were entered into with members of the Class governing Class member investments in the Bayou Hedge Funds. These agreements, which typically were called Operating Agreements and Subscription Agreements, had uniform terms governing the parties' relationship. For example, these agreements uniformly obligated the Bayou Defendants to ensure the accuracy of the Net Asset Valuations and other reports the Bayou Hedge Funds distributed to the Class. Defendants Israel and Marino controlled each of the Bayou entities and thus had the ability and opportunity to prevent the issuance of such reports if such reports were inaccurate or to promptly correct same. In addition, defendants Israel and Marino had unfettered access to the true financial results, operations and condition of the Bayou Hedge Funds. Nevertheless, defendants Israel and Marino directed the Bayou Defendants' wrongdoing alleged here and knowingly disseminated false and material statements and omissions regarding the financial results, operations and condition of the Bayou Hedge Funds.

**The Aider/Abettor Defendants**

31.    Defendant Marquez was, at times relevant, a principal and co-founder of Bayou Securities and the Bayou Hedge Funds with defendant Israel. In addition, Marquez oversaw the operations of Bayou Securities. Reportedly, defendant Marquez left Bayou in 2004 as it was plunging into insolvency.

a.    According to media reports, Marquez had long been a mentor to Israel, and Israel became a protege of Marquez. Defendants Marquez and Israel began their relationship in the mid-1980s at F.J. Graber & Co., a small stock-trading firm. At the time, defendant Israel was a young clerk on the trading desk, fresh from Tulane University, and the

14

grandson of legendary commodities trader, Samuel Israel, Jr. By contrast, Marquez was a well-known former arbitrage trader who had managed money for hedge fund managers George Soros and Michael Steinhardt.

      b.     In 1990, Marquez founded a hedge fund called JGM Management ("JGM"). In 1991, Marquez hired Israel to trade stocks for JGM; Marino was hired as the fund's controller. According to a March 1993 *Wall Street Journal* article, the JGM fund was down 40% in 1992; JGM never recouped its losses and was shut down in 1993.

      c.     Defendants Marino, Israel and Marquez have also previously worked together at another hedge fund called HMR Investors, Limited Partnership (a/k/a Highly Motivated Research) ("HMR Investors"). HMR Investors is a Delaware limited partnership with principal offices at 405 Park Ave., New York, NY; defendant Marquez and his wife, Mariella, are the General Partners of HMR Investors.

      32.     Defendant Richmond-Fairfield (a/k/a Richmond-Fairfield CPA Services, PLLC) was, at times relevant, the purported outside accountant and auditor for Bayou and the Bayou Hedge Funds.

      a.     Richmond-Fairfield is a limited liability company organized under the laws of New York. The Bayou Defendants falsely portrayed Richmond-Fairfield as being a legitimate public accounting firm with offices located at 575 Madison Avenue, Suite 1006, New York, NY that performed independent financial audits of Bayou.

      b.     In actuality, Richmond-Fairfield was a sham company set up by defendant Marino on or about October 10, 2000 as part of the Bayou Defendants' fraudulent scheme to misappropriate Class member assets. Corporate records for Richmond-Fairfield list defendant

Marino as the sole owner and report registered offices located at 111 John Street, #1720, New York, NY.

33.    Defendant Fotta was, at times relevant, a Principal and Member of the Bayou Group, according to the Connecticut Secretary of State's Commercial Recording Division. Defendant Fotta is also a principal or agent for Bayou Partners and Bayou Securities. On or about October 11, 2005, a so-called Interim Notice was filed with the Connecticut Secretary of State, by or on behalf of defendant Fotta, to remove Fotta's name as a Principal and Member of the Bayou Group -- in an attempt to conceal his involvement and relationship with Bayou.

a.    Defendant Fotta is a citizen of Massachusetts and resides at 73 Mount Vernon St., Boston, MA. Defendant Fotta also has or had a residence at 27 Beaver Place, Boston, MA. In addition, Fotta maintains telephone listings at the 27 Beaver Place residence for Bayou Partners and Bayou Securities, as well as for Ernst Research and Management, LLC (n/k/a Eqyty Research and Management, LLC).

b.    Defendant Fotta is also a co-founder and Managing Partner of defendant Eqyty Research and Management, LLC and is a principal of defendant Eqyty Research and Management, LTD (collectively, "Eqyty Research"). From 2003 to 2005, Eqyty Research received at least $700,000 from Bayou Securities. According to a September 17, 2005 article in *The New York Times*, Fotta claimed that "the payments were for research on stocks" for Bayou through May 2005. However and in fact, the Bayou Defendants halted all stock trades and liquidated the Bayou Hedge Funds in or about April 2004. Indeed, the $700,000 payment to Eqyty Research was one of the means pursuant to which defendant Fotta participated in, and

16

personally benefitted from, the Bayou Defendants' misappropriation of Class member investor assets.

34.    Defendants Eqyty Research and Management, LLC and defendant Eqyty Research and Management, LTD are collectively referred to as defendant Eqyty Research.

a.    Defendant Eqyty Research and Management, LLC is a limited liability company organized under the laws of Massachusetts and has principal offices located at 27 Beaver Place, Boston, MA. According to state regulatory records, Eqyty Research was formerly known as Ernst Institutional Research; that name change occurred on July 16, 2003. Prior to that time, Eqyty Research was known as Ernst Research and Management, LLC.

b.    Defendant Eqyty Research and Management, LTD is a corporation with principal offices located in Tortola, British Virgin Islands and a mailing address of 27 Beaver Place, Boston, MA. Eqyty Research and Management, LTD is registered as an Investment Advisor with the NASD and the SEC.

c.    According to a February 15, 2000 media report on *SmartMoney.com*, defendant Fotta and Eqyty Research are touted experts in the field of fundamental analysis of equities securities and supposedly pioneered a novel approach to analyzing companies based on cash flow, known as a "dual cash flow" screen. This analytical approach supposedly "has a proven record as an early warning system for companies whose earnings may be about to change." Morever, that analytical approach allegedly allows "investors [to] spot companies with real potential" by focusing on "the sustainability of earnings growth by getting a handle on how much cash flow is actually generated by paying customers and how much is being contrived by balance-sheet manipulations."

17

35.     Defendant Citibank is a nationally chartered bank with its principal place of business at 399 Park Avenue, New York, NY. Citibank is a subsidiary of Citigroup, Inc., a Delaware corporation with principal offices located at 399 Park Ave, New York, NY.

a.     Defendant Citibank served as a principal banker for Israel and the Bayou Hedge Funds. Among other things, Citibank held several of Bayou's bank accounts during the Class Period; received millions of dollars in deposits from Class member investors; transferred millions of dollars in Class member investments for securities trading and other transactions; and knew that the proceeds it had on deposit in Bayou accounts were fiduciary proceeds beneficially owned by Class members. Citibank specifically held bank accounts in the name of, among others, defendants Bayou Super Fund, Bayou No Leverage Fund, Bayou Affiliates Fund, Bayou Accredited Fund and Bayou Management.

b.     During the Class Period, defendant Citibank received deposits directly from members of the Class that were specifically designated as being investments in the Bayou Hedge Funds. Citibank also participated in transferring and receiving Class member funds from or relating to the securities trading activities directed by defendants Israel, Marino and Marquez. For example, defendant Citibank transferred investor funds to, and received funds from, Spear, Leeds & Kellogg, L.P., which served as Bayou's lead securities trading and clearing firm, as described more fully below.

c.     Defendant Citibank knew or disregarded that the Bayou accounts it held consisted of fiduciary funds representing Class member investments in the Bayou Hedge Funds. Nevertheless, and at the request of defendant Israel, in or about July 2004 Citibank allowed defendant Israel to withdraw some $161 million from the five Bayou bank accounts that were

held at Citibank in New York -- thereby completely draining those accounts -- and transferred some or all of such proceeds directly to Israel care of one or more offshore bank accounts solely in Israel's own name maintained at Deutsche Postbank in Hamburg, Germany.

36.     Defendant Faust Rabbach & Oppenheim is a limited liability partnership organized under the laws of New York with registered offices located at 488 Madison Avenue, New York, NY. Defendant Faust Rabbach & Oppenheim, served as counsel for Bayou during all or some of the Class Period and was otherwise substantially involved in facilitating the operations of Bayou. Indeed, during the Class Period, defendants Bayou Management, Bayou Advisors and Bayou Equities actually maintained their principal place of business at defendant Faust Rabbach & Oppenheim's offices in New York City.

37.     Defendant Steven D. Oppenheim ("Oppenheim ") is a partner and member of defendant Faust Rabbach & Oppenheim and served as counsel for Bayou during all or some of the Class Period. He is a citizen of New York and resides at 14 Senaca Trail in Harrison, New York.

a.     Oppenheim is both an attorney and a Certified Public Accountant, having received his CPA license in 1965 in the State of New York. In April 2005, he was elected to serve as a Governor of the American Stock Exchange.

b.     Prior to his law practice as a named partner of Faust Rabbach & Oppenheim, defendant Oppenheim was the managing partner of Spicer & Oppenheim, an eight-office, 100-partner accounting firm that disbanded in or about December 1990; at that time, Spicer & Oppenheim was the nation's 15th largest accounting firm. According to media reports,

19

the securities industry accounted for about 40% of Spicer & Oppenheim's business, which was crippled in 1987 by the Black Monday crash of the stock market.

    c.  Following the dissolution of Spicer & Oppenheim, defendant Oppenheim and most of his New York office joined the accounting firm of Grant Thornton, which served as Bayou's auditor until in or about 1998. Bayou, however, continued to falsely tell investors as late as 2002 that Grant Thornton audited Bayou's books.

    d.  In late 1991, Oppenheim left Grant Thornton to join Faust, Rabbach & Stranger as a tax lawyer. After leaving Grant Thornton, Oppenheim continued a personal business relationship with that firm. According to a September 23, 1991 article in Accounting Today, Oppenheim said at the time that "he and his family would retain Grant Thornton as accountant for certain entities, which he would not identify, that they control."

    38.  During the Class Period, defendant Faust Rabbach & Oppenheim and defendant Oppenheim provided counsel and advice to the Bayou Defendants in planning, forming and operating the fraudulent Bayou Hedge Funds. In doing so, defendant Oppenheim acted on behalf of, and in the interests of, defendant Faust Rabbach & Oppenheim. As legal counsel for Bayou, defendant Faust Rabbach & Oppenheim and defendant Oppenheim were privy to non-public information and documents concerning the true structure, operations and finances of the Bayou Hedge Funds. Further, given defendant Oppenheim's extensive legal, accounting and auditing knowledge and background, defendant Faust Rabbach & Oppenheim and defendant Oppenheim knew or ignored various aspects of the fraud and other misconduct that was being committed by the Bayou Defendants, all as alleged more fully herein. Nonetheless, defendant Faust Rabbach & Oppenheim and defendant Oppenheim failed in their professional duties to

help stop the Bayou Defendants' fraudulent conduct, timely disclose the truth to Class member investors, or otherwise withdraw from said representation and stop facilitating the Bayou Defendants' underlying wrongdoing in conformity with their professional and ethical obligations.

**The Hennessee Defendants**

39.    Defendant Hennessee Group (d/b/a Hennessee Hedge Fund Advisory Group) is a limited liability company organized under the laws of New York which was formed in or about March 1997. Hennessee Group has principal offices at 500 Fifth Avenue, 47th Floor, New York, NY.

a.    Hennessee Group is a registered investment adviser that consults hedge fund investors on asset allocation, manager selection, ongoing monitoring of hedge fund managers and asset reallocation. In its role as a hedge fund consultant, Hennessee Group funneled tens of millions of dollars to Bayou by advising its clients to invest in the Bayou Hedge Funds and by facilitating those investments.

b.    The Hennessee Group charged plaintiff Broad-Bussel Family and other similarly situated investors advisory and other fees for its services.

40.    Defendant Lee Hennessee was, at times relevant, a Managing Principal of the Hennessee Group. Lee Hennessee is a citizen of New York and resides at 45 Sutton Place in New York City.

a.    In her role with the Hennessee Group, defendant Lee Hennessee touted, among other things, that she "focuses on manager selection and client services development, sharing overall management with Mr. Gradante."

21

     b.    Lee Hennessee co-founded the Hennessee Group with defendant Gradante in 1997. Lee Hennessee directed a division of E.F. Hutton and worked for Shearson Lehman, Republic National Bank and Weiss, Peck and Greer from 1987 to 1997. Prior to that time, she worked for Thomson McKinnon Securities where she performed institutional and retail sales from 1976 to 1987. Defendant Lee Hennessee claims that she has been "Series 3 and 7 registered since 1976 and also holds Series 24, Series 65 and Series 63 registrations."

41.    Defendant Gradante was, at times relevant, a Managing Principal of the Hennessee Group. Gradante is a citizen of New York and resides at 45 Sutton Place in New York City.

     a.    In his role with the Hennessee Group, defendant Gradante claimed that he "focuses on research, market analysis, risk management and portfolio design" and specifically boasts that he "brings 'hands-on' experience in risk management, portfolio analysis, trading and venture capital."

     b.    Prior to co-founding the Hennessee Group in 1997, defendant Gradante had a twenty-five year financial industry career, during which he held executive positions in the banking and securities industries, including as President and CEO of Union Chelsea National Bank, Group Marketing Manager at Citibank and Chair of the Risk Management Committee of Drexel Burnham Lambert, where he was responsible for Trading Administration. Defendant Gradante claims to hold a Series 65 registration.

42.    As a result of their positions and roles as principals and officers of the Hennessee Group, defendants Lee Hennessee and Gradante controlled the business operations and practices of the Hennessee Group.

43.    The Hennessee Defendants had fiduciary and other duties and obligations to be truthful and deal honestly and fairly with plaintiff Broad-Bussel Family and the other Class member investor clients who retained the Hennessee Defendants expressly to render such investment advisory services. Among other things, those duties required the Hennessee Defendants to conduct proper due diligence and monitoring of the investments they recommended to plaintiff Broad-Bussel Family and their other similarly situated client investors. Indeed, plaintiff Broad-Bussel Family and other such investors specifically relied upon the Hennessee Defendants to perform properly such investigation and monitoring. However, the Hennessee Defendants failed to perform their obligations, ignoring or failing to uncover numerous red flags with regard to the Bayou Hedge Funds which should have been properly investigated and timely reported to plaintiff Broad-Bussel Family and the Hennessee Defendants' other client investors, all as described more fully below.

## CERTAIN OTHER RELEVANT PERSONS

44.    <u>Bayou Offshore Entities</u>: The following seven Bayou entities (the "Bayou Offshore Entities") are part of the Bayou family of funds, directly participated in the wrongdoing alleged, and would have been named as defendants in this litigation but for an Order of the United States Bankruptcy Court for the District of Connecticut enjoining lawsuits against the Bayou Offshore Entities:

    a.    Bayou Offshore Fund A, LTD ("Bayou Offshore Fund A"), which is a company incorporated under the laws of the Cayman Islands;

    b.    Bayou Offshore Fund B, LTD ("Bayou Offshore Fund B"), which is a company incorporated under the laws of the Cayman Islands;

c.    Bayou Offshore Fund C, LTD ("Bayou Offshore Fund C"), which is a company incorporated under the laws of the Cayman Islands;

d.    Bayou Offshore Fund D, LTD ("Bayou Offshore Fund D"), which is a company incorporated under the laws of the Cayman Islands;

e.    Bayou Offshore Fund E, LTD ("Bayou Offshore Fund E"), which is a company incorporated under the laws of the Cayman Islands;

f.    Bayou Offshore Fund F, LTD ("Bayou Offshore Fund F"), which is a company incorporated under the laws of the Cayman Islands; and

g.    Bayou Offshore Master Fund, LTD ("Bayou Offshore Master Fund"), which is a company incorporated under the laws of the Cayman Islands.[3]

45.    Goldman Sachs Execution and Clearing, L.P.:  Goldman Sachs Execution and Clearing, L.P. (f/k/a Spear, Leeds & Kellogg, L.P.) ("Spear Leeds") is a New York limited partnership with principal offices located at One New York Plaza, New York, NY.

a.    Spear Leeds is registered as a U.S. broker-dealer and futures commission merchant and provides a wide range of brokerage and investment services, including, among other things:  floor-based and electronic market making as a specialist on U.S. equities exchanges; facilitating and financing transactions with a diverse group of corporations, financial institutions, government and individuals; and executing and clearing customer transactions on

---

[3]    See Order for Preliminary Injunction and Granting of Petitions under Section 304, In re Petitions of Gordon I. Macrae and G. James Cleaver, Case Nos. 05-51154 to 60 (Bankr. Conn. Oct. 5, 2005) (Shiff, J.) (ordering "that a Preliminary Injunction is hereby issued ... enjoining all persons and entities from ... commencing or continuing any action or other legal proceeding against the [Bayou Offshore Entities], or any of their property in the United States, and seeking discovery of any nature ... against the [Bayou Offshore Entities] without first seeking and receiving permission by the Grand Court in the [Cayman Islands]").

major stock, options and futures exchanges worldwide. Spear Leeds held itself out as being a reputable, honest and experienced broker-dealer.

> b.    Spear Leeds served as a securities trading agent for Bayou Management, Bayou Securities and the Bayou Hedge Funds. In that capacity, Spear Leeds maintained one or more capital trading accounts for Bayou, processed securities trading instructions from Bayou's principals, including defendants Israel, Marino and Marquez, and engaged in actual securities trading for Bayou.

> c.    Spear Leeds also acted as the clearing firm for Bayou's securities transactions and transferred securities and cash proceeds to and from Bayou accounts including at Citibank in connection therewith. Spear Leeds' clearing responsibilities include, among other things: receiving and delivering funds from or to the customer; maintaining records that reflect the transaction; and safeguarding the funds in the customer's account.

46.    <u>Kenneth E. Stocker</u>: Kenneth Stocker was, at relevant times, a principal and Managing Director of Bayou Management and a Partner of Bayou Partners. In addition, Mr. Stocker was part of the hedge fund advisory team, along with Kathleen McLaren Williams, which advised Bayou Management and the Bayou Hedge Funds. Mr. Stocker was also a direct marketer of the Bayou Hedge Funds. Among other things, Mr. Stocker acted as intermediary between Bayou and the institutional investor community. For example, Mr. Stocker acted as the Bayou representative for investor conferences held in Scottsdale, Arizona in January 2001; Miami, FL in October 2000; and Monte Carlo, Monaco in September 2000 -- the latter being a conference that was personally attended by defendant Fotta. Mr. Stocker reportedly left Bayou in or about June 2002 to become a Managing Director of Northeast Alternative Strategies in

25

New York City, a then newly-created division of Northeast Securities, Inc. which serves institutional hedge funds.

47.    Kathleen McLaren Williams:  Kathleen McLaren Williams was, at relevant times, part of the hedge fund advisory team, along with Kenneth Stocker, which advised Bayou Management and the Bayou Hedge Funds.  Ms. Williams reportedly left Bayou with Kenneth Stocker in or about June 2002 to become a Managing Director of Northeast Alternative Strategies in Boston, MA.

48.    Chris D'Amore:  Beginning in or about June 2002, Chris D'Amore became a direct marketer for the Bayou Hedge Funds, and thereby participated in directly soliciting members of the Class and other prospective Bayou investors to invest in the Bayou Hedge Funds.  Mr. D'Amore replaced Kenneth Stocker who had previously acted as one of Bayou's direct marketers.  Prior to working for Bayou, Mr. D'Amore was a marketer for the San Francisco-based hedge fund RS Investment Management.

## CLASS ACTION ALLEGATIONS

49.    Plaintiffs bring this action on behalf of themselves and a Class of persons who, during the Class Period December 31, 1996 through August 25, 2005, invested funds or maintained investments in the Bayou Hedge Funds, and suffered damages thereby.  Plaintiffs also bring this action on behalf of the following subclass:  all members of the Class who, during the Class Period December 31, 1996 through August 25, 2005, were advised to invest in the Bayou Hedge Funds pursuant an investment advisory relationship with the Hennessee Group, and suffered damages thereby (the "Hennessee Subclass").  Excluded from the Class and the Hennessee Subclass are:  the Defendants; the principals, officers and directors of the Defendants;

26

the members of the immediate families of any of the foregoing persons; any entity in which any Defendant has a controlling interest; other persons and entities presently unknown to Plaintiffs who directly or indirectly participated in the wrongdoing alleged; and the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest and assigns of any such excluded person or entity.

50.     This action is properly maintainable as a class action on behalf of the Class under Rules 23(a), (b)(1)(A), (b)(1)(B) and (b)(3) of the Federal Rules of Civil Procedure (the "Federal Rules") because:

(a)     During the Class Period, numerous investors dispersed throughout the United States invested hundreds of millions of dollars in the Bayou Hedge Funds, and accordingly, those investors are so numerous that joinder of all such Class members is impracticable.

(b)     Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and all members of the Class similarly acquired interests in one or more of the Bayou Hedge Funds. Plaintiffs and all members of the Class similarly relied on the veracity of Defendants' acts and practices and were similarly damaged by Defendants' misconduct.

(c)     Plaintiffs are representative parties who will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel competent and experienced in class action litigation.

(d)     A class action is superior to other available methods for the fair and efficient adjudication of the Class' claims, because joinder of all members is impracticable. Furthermore, although the damages suffered by Plaintiffs and other individual Class members

27

may be substantial, the expense and burden of individual litigation render class treatment far superior to individual litigation in the circumstances here. Moreover, the likelihood of all of the individual Class members prosecuting separate claims is remote, would result in increased litigation costs, and would be an inefficient use of judicial resources in any event.

      (e)     Plaintiffs anticipate no unusual difficulties in the management of this action as a class action.

      (f)     Common questions of law and fact predominate over any questions affecting any individual members of the Class. The questions of law and fact which are common to Plaintiffs and the Class include, among others:

      (i)     Whether the Defendants' acts and omissions violated the law as alleged;

      (ii)     Whether the Bayou Defendants defrauded Plaintiffs and the Class through several sham hedge funds that they orchestrated and operated;

      (iii)     Whether the Bayou Defendants misappropriated property of the Plaintiffs and the Class;

      (iv)     Whether the Bayou Defendants engaged in fiduciary and other breaches of obligations owed to Plaintiffs and the Class;

      (v)     Whether the Aider/Abettor Defendants aided and abetted the Bayou Defendants' misconduct as alleged;

      (vi)     Whether the reports and other statements disseminated by the Bayou Defendants to the Plaintiffs and the Class misrepresented or omitted material facts about the financial results, operations and condition of the Bayou Hedge Funds;

28

(vii)  Whether Class members should be entitled to share ratably in accordance with their damages in any remaining proceeds of the Bayou Defendants and other Bayou Hedge Fund proceeds; and

(viii)  Whether the Plaintiffs and the Class have sustained damages and, if so, the extent of such damages.

(g)  Certification of a mandatory non-opt Class under Federal Rules 23(b)(1)(A) and 23(b)(1)(B) is appropriate in the circumstances here as to Plaintiffs' claims against the Bayou Defendants. First, certification as a mandatory non-opt out Class is appropriate under Federal Rule 23(b)(1)(A) as to the Class' claims against the Bayou Defendants because inconsistent or varying adjudications with respect to individual Class members would establish incompatible standards of conduct regarding the Bayou Defendants' alleged culpability to the Class. Second, certification as a mandatory non-opt out Class is appropriate under Federal Rule 23(b)(1)(B) because adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Certification of the Class claims against the Bayou Defendants as a mandatory non-opt out Class is particularly appropriate here given, among other things, the limited funds the Bayou Defendants reportedly have, the fact that a judgment in favor of the Plaintiff Class may substantially exceed the Bayou Defendants' available assets, and the $101 million in investor proceeds reportedly seized by the Arizona Attorney General which are beneficially owned by, and should be distributed ratably to, Class member investors in accordance with their respective damages. Indeed, Plaintiffs understand that the U.S. Attorney for the Southern District of New

York has commenced civil forfeiture proceedings against at least certain of the Bayou

Defendants and will seek to distribute the $101 million in seized proceeds, together with other

proceeds the Government may collect from the Bayou Defendants, ratably to injured investors in

accordance with their losses. Class certification as a mandatory non-opt out Class as to the

claims against the Bayou Defendants will provide an efficient, cost-effective way for the parties

to coordinate with the U.S. Attorney and distribute such proceeds to injured investors fairly and

expeditiously in accordance with their respective losses. Plaintiffs seek a mandatory non-opt out

Class only as to the Class' claims against the Bayou Defendants. Plaintiffs seek to certify the

Class under Federal Rule 23(b)(3) as to all other claims against the Hennessee Defendants and

the Aider/Abettor Defendants, with Class members free to opt out and pursue their own claims

against such parties as the Court may determine.

     51.    This action is properly maintainable as a Class action on behalf of the members of

the Hennessee Subclass under Federal Rules 23(a) and (b)(3) because:

     (a)    During the relevant period, numerous investors dispersed throughout the

United States retained the Hennessee Defendants to render financial advisory services and, based

on such advice, invested millions of dollars in the Bayou Hedge Funds. Accordingly, the

members of the Hennessee Subclass are so numerous that joinder of all such subclass members is

impracticable.

     (b)    Plaintiff Broad-Bussel Family's claims are typical of the claims of the

other members of the Hennessee Subclass. Plaintiff Broad-Bussel Family and all members of

the Hennessee Subclass similarly retained the Hennessee Defendants to render financial advisory

services and made investments in one or more of the Bayou Hedge Funds as a result of such

financial advice. Plaintiff Broad-Bussel Family and all members of the Hennessee Subclass similarly relied on the veracity of the Hennessee Defendants' acts and practices in properly investigating the Bayou Hedge Funds, and were similarly damaged as a result.

       (c)    Plaintiff Broad-Bussel Family is a representative party who will fairly and adequately protect the interests of the members of the Hennessee Subclass. Plaintiff Broad-Bussel Family has retained counsel competent and experienced in class action litigation.

       (d)    A class action is superior to other available methods for the fair and efficient adjudication of the claims of the Hennessee Subclass, because joinder of all members of the Hennessee Subclass is either impracticable, or would entail duplicative litigation and significantly increased costs to the parties and the judiciary. Furthermore, although the damages suffered by plaintiff Broad-Bussel Family and other individual members of the Hennessee Subclass may be substantial, the expense and burden of individual litigation render class treatment far superior to individual litigation in the circumstances here. Moreover, the likelihood of all of the individual members of the Hennessee Subclass prosecuting separate claims is remote, would result in increased litigation costs, and would be an inefficient use of judicial resources in any event.

       (e)    Plaintiffs anticipate no unusual difficulties in the management of the Hennessee Subclass in this action.

       (f)    Common questions of law and fact predominate over any questions affecting any individual members of the Hennessee Subclass. The questions of law and fact which are common to plaintiff Broad-Bussel Family and the members of the Hennessee Subclass include, among others:

(i)     Whether the acts and omissions of the Hennessee Defendants violated the law as alleged;

(ii)    Whether the Hennessee Defendants engaged in fiduciary and other breaches of obligations owed, respectively, to plaintiff Broad-Bussel Family and to the other members of the Hennessee Subclass;

(iii)   Whether the Hennessee Defendants failed to investigate properly Bayou and the Bayou Hedge Funds prior to recommending investments in the Bayou Hedge Funds;

(iv)    Whether the Hennessee Defendants failed to monitor properly the Hennessee Subclass' investments in Bayou and the Bayou Hedge Funds; and

(v)     Whether the plaintiff Broad-Bussel Family and the other members of the Hennessee Subclass have sustained damages and, if so, the extent of such damages.

## ADDITIONAL SUBSTANTIVE ALLEGATIONS

### The Class Invests in the Bayou Hedge Funds

52.     In seeking to attract investors to the Bayou Hedge Funds, the Bayou Defendants provided prospective investors, including Plaintiffs and members of the Class, with the Bayou Hedge Funds' offering memoranda, subscription agreements, operating agreements and other general marketing materials.

53.     Investments in the Bayou Hedge Funds by Class members were typically contracted for pursuant to a so-called Subscription Agreement with Bayou Management (the "Subscription Agreement"). The Subscription Agreement provided for the Class member's initial purchase of an interest in one or more of the Bayou Hedge Funds. In addition, Class

members and Bayou Management entered into a separate agreement known as the Operating

Agreement (the "Operating Agreement").

54.    The material terms of the Bayou Operating Agreements were uniform, although

each Operating Agreement was also specific to the particular Bayou fund the Class member

invested in. For example, Bayou's standard form Operating Agreement specifically obligated

Bayou Management in its role as the manager of the Bayou Hedge Funds, among other things:

<ul>
<li>a.    to keep "[p]roper and complete records and books of account";</li>

<li>b.    to account "fully and accurately [for] all transactions and other matters";</li>

<li>c.    to compute all "profits and losses of the [Bayou Hedge Fund] ... in accordance with Generally Accepted Accounting Principles applied on a consistent basis using mark-to-market method of accounting";[4]</li>

<li>d.    to maintain sufficient "procedures and internal controls reasonably designed to prevent the use of the Fund for money laundering purposes"; and</li>

<li>e.    to perform its managerial duties "in good faith, in a manner it reasonably believes to be in the best interests of the Company [i.e., the Bayou Hedge Fund], and with such care as an ordinary prudent person in a like position would use under similar circumstances.</li>
</ul>

55.    The Operating Agreements also provided for a uniform choice of law (Delaware)

and similarly purported to disclaim liability for loss or damage unless such was the result of

---

[4]    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures that define accepted accounting practice at a particular time. GAAP includes, among other things: FASB (Financial Accounting Standards Board) Statements of Financial Accounting Standards ("FAS"); FASB Interpretations ("FIN"); Accounting Principles Board Opinions ("APB"); American Institute of Certified Public Accountants ("AICPA") Accounting Research Bulletins ("ARB"); AICPA Statements of Position ("SOP"); Consensus Positions of FASB Emerging Issues Task Force ("EITF"); and FASB Concept Statements ("CON").