USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

IN RE BAYOU HEDGE FUND INVESTMENT                    06 MDL 1755 (CM)
LITIGATION
_____X

THIS DOCUMENT RELATES TO:
_____X

SOUTH CHERRY STREET, LLC,

      Plaintiff,                                   06 Civ 2943 (CM)

    -against-

HENNESSEE GROUP LLC, ELIZABETH LL
HENNESSEE and CHARLES A. GRADANTE,

      Defendants.
_____X

ORDER OF REFERENCE TO MAGISTRATE JUDGE FOX FOR HEARING

McMahon, J.:

    Before the court is defendants' motion to stay the above-captioned action and compel arbitration between it and the plaintiff.

    Before I can decide the motion, we will need to hold a fact hearing.

    The relevant facts, as contained in the record before, me are as follows: Plaintiff, a limited liability corporation, has commenced this action (which has been consolidated with a number of related actions by the Judicial Panel on Multidistrict Litigation) against the entity that it alleges (in its complaint) served as its (plaintiff's) investment adviser and adviser on hedge funds – Hennessee Group LLC – and the principals of that organization. Plaintiff claims that defendants breached an unspecified contract with them, breached their fiduciary duty as investment advisers, and violated the Federal securities law, when they recommended that South Cherry invest in the now-defunct Bayou Hedge Funds, run by Samuel Israel III and Daniel Marino, both of whom have pleaded guilty to numerous criminal violations of the federal securities laws.

    The complaint specifically alleges that Hennessee was "South Cherry's investment advisor and hedge fund consultant." (Cplt. ¶ 7). It further pleads that South Cherry was

introduced to Hennessee in late 2000 via South Cherry's "agent," one Craig Bollman, (Cplt. ¶ 12), and that Hennessee made a presentation on or about August 27, 2001 to South Cherry concerning hedge fund investment strategies. Although the complaint asserts a cause of action against Hennessee and its principals for breach of contract, it never identifies the contract, or even affirmatively alleges that South Cherry entered into any contract. Nevertheless, it is implicit in a claim for breach of contract that there was in fact a contract to breach, and the only fair reading of the complaint is that the contract was one between South Cherry and Hennessee for the provision of investment advisory services.

      The question is whether that contract contains an arbitration clause.

      Defendants claim that South Cherry, acting through an agent (Bollman), signed an investment advisory agreement with Hennessee, which contained an arbitration clause. It appears that an Investment Advisory Agreement was executed on or about August 4, 2001 by and between Hennessee and "Mr. Craig Bollman; and all other entities, that may invest in hedge funds, for which Mr. Craig Bollman is authorized under the terms of any applicable plan, trust, partnership agreement or other governing instrument and by any applicable law to retain Hennessee and to make investments in hedge funds (collectively "Client")". Hennessee agreed to provide this rather loosely-defined "Client" with investment advisory services.

      The agreement contains a broad arbitration clause covering "Any disputes arising under the Agreement or, with respect to its interpretation." (Section XIV). If South Cherry falls within the ambit of the term "Client" under this Agreement, the claims alleged in the complaint are clearly arbitrable. However, nothing in the four corners of the contract identifies South Cherry as falling within the document's terms.

      Section XII of the Agreement requires the "Client" to represent to Hennessee that he/she is an "accredited investor," and Exhibit B to the Investment Advisory Agreement is entitled Accredited Investor Status. It asks the maker of the contract to initial one or more of twelve different descriptions of "accredited investors" as that term is defined in the Securities Act of 1933 Rule 501(a). On August 4, 2002 – a year after entering into the Agreement – Bollman checked off two categories: an individual whose net worth together with that or his or her spouse exceeds $1 million; and an individual who has individual income in excess of $200,000 in each of the two most recent years or joint income with his or her spouse in excess of $300,000 in each of those years, and who reasonably expects to reach the same income level in the current year. He did not check off any category that would relate to a corporation or other entity – even one in which all the principals were themselves "Accredited Investors."

      Exhibit C to the Investment Advisory Agreement – also signed one year after the agreement itself – is an "Accredited Investor Profile." In this document, Bollman states that he will be investing on behalf of "yourself" and no one else. He also identifies himself as the "sole decision maker" with respect to investments in hedge funds. He identified his current source of income as "business/family business ownership." The document discloses no relationship to any other entity (plan, trust, partnership) for which Bollman is authorized to "retain Hennessee to make investments in hedge funds."

Nonetheless, Hennessee takes the position that South Cherry was encompassed by this investment advisory contract.

South Cherry, by contrast, asserts that, while Bollman introduced it to Hennessee (an allegation of the complaint that binds plaintiff), and Hennessee elected to serve as South Cherry's investment adviser, it did so without entering into any written investment advisory contract. Fred Groothius, the principal of South Cherry, avers without contradiction that South Cherry is a Delaware Limited Liability Company consisting of two members: Groothius himself (who owns 99% of the company) and South Cherry Street Investment Corp., (SCSIC), its manager. Groothius asserts that Bollman has never had an ownership interest or served as an officer or director of SCSIC. Groothius further avers that, contrary to Bollman's representations in the exhibits to the Investment Advisory Agreement, "Hennessee has always understood that I speak for South Cherry." (Aff. at ¶ 5). He notes that he regularly received correspondence from both Bayou and Hennessee concerning South Cherry, and that papers prepared for Groothius' signature in a lawsuit sponsored by Hennessee referred to "my [that is, Groothius'] decision to invest" in Bayou.

There is no affidavit or other evidence from Bollman. Neither side explains what Bollman's role in the dealings between South Cherry and Hennessee was, other than to introduce Hennessee to South Cherry. Groothius's affidavit does not rule out the possibility that Bollman was, for example, an employee (albeit not an officer or director or shareholder) of SCSIS, which might well have given him authority (actual or apparent) to bind South Cherry.[1] Groothius does assert, in conclusory fashion, that Bollman had no actual authority to bind South Cherry to an Investment Advisory Agreement containing an arbitration provision. Without knowing anything about Bollman other than what is alleged in paragraph 12 of the complaint, it is impossible to test this assertion.

Neither side offers any evidence about Bollman's investment history with Hennessee, though it would be of interest to the court to know whether any of his personal funds were ever invested with Hennessee. Neither side offers evidence about who paid Hennessee's investment advisory fees (the bills were submitted to Bollman).

A party moving to compel arbitration must establish that an agreement to arbitrate exists between the parties. <u>Kurz v. Chase Manhattan Bank</u>, 319 F. Supp. 2d 457, 461 (S.D.N.Y. 2004). On the record before this court, Hennessee has failed to make the necessary showing. Neither the agreement containing the arbitration clause nor any of its attachments makes reference to South Cherry.[2] Bollman does not purport to sign the agreement in an agency capacity on behalf of a

---

[1] South Cherry's Operating Agreement states that the LCC "shall be managed by the Manager," and gives that manager broad powers to conduct the affairs of the enterprise. (Groothius Aff. Ex. A)

[2] The representations are not necessarily inconsistent with Bollman's acting for South Cherry, since the LLC is clearly owned by an individual (Groothius) who may well have the requisite net worth. With the possible exception of category 12 (an entity in which all of the

disclosed principal; under New York law, this make the agreement personal to him. <u>Beck v. Suro Textiles, Ltd.</u>, 612 F. Supp. 1193, 1194 (S.D.N.Y. 1985); <u>Keplon-Belo Assoc., Inc. v. Farrelly</u>, 633 N.Y.S.2d 522, 523 (2d Dept. 1995) (citing <u>Rennert-Diana & Co., Inc. v. Costarino</u>, 513 N.Y.S.2d 190, 191 (2d Dept. 1987)).

   Hennessee protests that the majority of its clients are "high net worth individuals who in the normal course of business utilize multiple entities, including family limited partnerships, joint ventures and limited liability corporations, to invest their assets." Supp. Dec. Gradante ¶ 3. I have no doubt that this is true. However, this court does not lightly assume that an investor who signs an advisory agreement with Hennessee or any similar manager would blatantly misrepresent his status by failing to reveal, on a "know your customer" form, that he was in fact investing on behalf of someone or something other than "yourself." (Exhibits B and C).

   Hennessee also contends that, to the extent it dealt with Groothius on behalf of South Cherry, it did so at Bollman's request, and that all recommendations on investments were made to plaintiff through Bollman – including the presentation referenced in the complaint, which took place on August 27, 2001 (Cplt. ¶ 22).

   The court has the distinct impression that the parties are not disclosing all the information necessary to decide this motion. I have therefore decided to refer this matter to The Hon. Mark D. Fox, who will conduct a hearing on September 12, 2006 at 9:45 a.m. for the purpose of finding the facts necessary to enable the court to conclude what Bollmans' relationship was to South Cherry and whether South Cherry can fairly be said to have been acting through Bollman in the making of the Investment Advisory Contract. Bollman, Groothius and Gradante will be necessary witnesses at this hearing. I will ask for a report and recommendation (containing findings of fact and conclusions of law concerning the existence or non-existence of, and the scope of, any agency relationship between Bollman and South Cherry) to be delivered to the court by October 18, 2006. I doubt there will be any need for additional briefing once the factual record has been fleshed out. I will hold the motion to compel arbitration in abeyance pending receipt of a full record and recommendations from Judge Fox.

   This constitutes the decision and order of the court.

Dated: August 23, 2006.

                  _____
                      U.S.D.J.

---

equity owners or partners are "accredited investors"), no other category on the form describes an individually owned limited liability corporation like South Cherry.