UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| IN RE BAYOU HEDGE FUND INVESTMENT LITIGATION | : : : : : : | 06 MD 1755 (CM) |

------------------------------------------------------------ X
THIS DOCUMENT RELATES TO:
------------------------------------------------------------ X

|  |  |  |
|---|---|---|
| SOUTH CHERRY STREET, LLC, | : : : | |
| Plaintiff, | : : | No.: 06-cv-02943 (CM) |
| vs. | : : : | |
| HENNESSEE GROUP LLC, ELIZABETH LEE HENNESSEE and CHARLES GRADANTE | : : : : | |
|  | : | **Electronically Filed** |
| Defendants. | : : | |

_____

---

### DEFENDANTS' OBJECTION TO MAGISTRATE FOX'S REPORT AND RECOMMENDATION

---

BRESSLER, AMERY & ROSS
17 State Street, 34th Floor
New York, New York  10004
(212) 425-9300
Attorneys for Defendants
Hennessee Group, LLC, Elizabeth Lee
Hennessee and Charles Gradante

On the Brief:   Lawrence E. Fenster (LF 9378)
                Matthew C. Plant (MP 0328)

i

**TABLE OF CONTENTS**

**PAGES**

I. PRELIMINARY STATEMENT ................................................................................................. 1

II. OBJECTION ............................................................................................................................. 1

    A. Bollman was South Cherry's Authorized Agent.............................................................. 1

    B. Plaintiff's Acts and Omissions Created Apparent Authority .......................................... 5

    C. Principles of Ratification and Estoppel Warrant Compelling this Case to Arbitration .. 12

III. CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

## Federal Cases

PAGES

*Best Concrete Mix Corp. v. Lloyd's of London Underwriters*
   413 F. Supp.2d 182, 187 (E.D.N.Y. 2006) .................................................................... 13

*Carte Blanch (Singapore) PTE., Ltd. v. Diners Club Intern,. Inc.*
   758 F. Supp. 908, 919 (S.D.N.Y. 1991) ............................................................................ 3

*Minskoff v. Amer. Express Travel Related Servs. Co.*
   98 F.3d 703, 708 (2d Cir. 1996) ................................................................................... 3, 5

*Health Plan v. O'Higgins*
   951 F. Supp. 352, 360 (N.D.N.Y 1997) ......................................................................... 13

*Hickox v. Friedland*
   No. 01-Civ.2025, 2001 WL 1490696, *9 (S.D.N.Y. Nov. 21, 2001) ............................. 13

*Itar-Tass Russian News Agency,*
   No. 95 Civ. 2144, 1999 WL 58680, *8 (S.D.N.Y. Feb. 9, 1999) ................................... 13

## State Cases

*Riverside Research Inst. V. KMGA, Inc.*
   108 A.D.2d 365, 489 N.Y.S.2d 220, 223 (1st Dep't 1985) ................................................ 3

## I. **PRELIMINARY STATEMENT**

Defendants submit this Objection to apprise the Court of additional relevant facts not set forth in Magistrate Fox's Report and Recommendation, dated October 18, 2006, and demonstrate why this Court should compel Plaintiff's claims to arbitration.

First, documentary evidence submitted by Plaintiff demonstrates that Bollman had actual authority to act on behalf of South Cherry Street LLC ("South Cherry") and exercised that authority in connection with the investments made by South Cherry.

Second, the conduct, including acts of omission, of Groothuis and South Cherry establishes that Plaintiff created apparent authority in Bollman to bind South Cherry.

Third, it is apparent that South Cherry and Groothuis knowingly accepted the benefits of the Investment Advisory Agreement entered into between Bollman and Hennessee Group and accepted the Hennessee Group's advisory services pursuant to that agreement. South Cherry therefore ratified Bollman's execution of the Investment Advisory Agreement and is estopped from challenging the arbitration clause contained in the Investment Advisory Agreement signed by Bollman.

## II. **OBJECTION**

### A. **Bollman was South Cherry's Authorized Agent**

Magistrate Judge Fox's Report and Recommendation (the "Report") concludes that no agency relationship existed between South Cherry Street, LLC ("South Cherry") and Craig Bollman. In reaching this conclusion the Report relies most heavily on the testimony of Fred Groothuis and Craig Bollman. Significantly, Groothuis testified that Bollman "…was authorized to do nothing on behalf of South Cherry Street. The documents do not give him authority to do anything on behalf of South Cherry Street." See Transcript of the September 21, 2006 hearing at

1

p. 20, ln. 16 – 21 (hereinafter referred to as "Trans."). Confronted with paragraph 12 of the Complaint, in which South Cherry states that "[i]n late 2000, South Cherry's agent, Craig Bollman ('Bollman') contacted Hennessee Group after reading about it in a financial publication. . . .", Groothuis testified that Bollman was merely a "colloquial agent" of South Cherry (i.e., "…that he would look at investment opportunities, that then he might make recommendations to me…." See Trans. at p. 20, ln. 29 – p. 21, ln. 1). In response to the Court's statement "[t]hat was the scope of his agency that you are describing, he just made recommendations, or did he do more than that?", Groothuis testified "[n]o, Your Honor, just make recommendations." See Trans. at p. 23, ln. 7 – 11. Likewise, Bollman testified that "I never understood that I had the power to bind South Cherry." See Trans. at p. 115, ln. 5 – 6.

The documentary evidence submitted by plaintiff, however, squarely contradicts both Groothuis' and Bollman's testimony as well as the conclusions of the Report. Exhibit 7, which was offered by Plaintiff and admitted into evidence, is a multi-page document relating to investments made by South Cherry through MJ Whitman contemporaneously with South Cherry's first investment based on recommendations made by Hennessee Group to Bollman. See Trans. at p. 98, ln. 7 – p. 99, ln 11, p. 43, ln. 11 – 20 and p. 34, ln. 1 - 6. With respect to these investments, Groothuis testified that "[t]here were two investments [by South Cherry] made through MJ Whitman that were very significant, half million dollars each." See Trans. at p. 98, ln. 7 – 13.

The last two pages of Exhibit 7, on their face, establish that Bollman in fact had actual authority to act on behalf of South Cherry with respect to its investments. The next to last page of Exhibit 7, for example, is a November 7, 2001 letter on South Cherry's letterhead to Shana Mayberry. The letter is signed by Groothuis and states:

2

> Please wire as soon as practicable $1,000,000 from South Cherry Street, LLC account 8048170 to MJ Whitman Inc. I am enclosing a letter from Proteus Associates, LLC signed by Craig M. Bollman Jr. authorizing this distribution. <u>See</u> Exhibit 7.

In turn, the last page of Exhibit 7 is an October 31, 2001 letter to Shanna Mayberry of the National Bank of Arizona (the same bank at which Groothuis testified South Cherry maintained an account, <u>see</u> Trans. at p. 68, ln. 25 – p. 69, ln. 1). The letter is signed by Bollman. The "Re:" line of the letter reads "South Cherry Street, LLC Control Agreement Authorization" and the letter states:

> This letter is sent to authorize the transfer of $1,000,000 of funds from South Cherry Street LLC account # 8048170 to an investment with MJ Whitman Advisors that South Cherry Street LLC will be making.
>
> Fred R. Groothuis will be sending you separate wire transfer instructions. <u>See</u> Exhibit 7.

In light of these documents, Groothuis' and Bollman's testimony--that Bollman lacked authority to act on behalf of South Cherry--cannot be considered credible. As the Report states, "'[a]ctual authority arises from a manifestation of consent from principal to agent,' which 'can be either express or implied from 'the parties' words and conduct as construed in light of the surrounding circumstances.' *Carte Blanch (Singapore) PTE., Ltd. v. Diners Club Intern,. Inc.*, 758 F. Supp. 908, 919 (S.D.N.Y. 1991) (quoting *Riverside Research Inst. V. KMGA, Inc.* 108 A.D.2d 365, 489 N.Y.S.2d 220, 223 (1st Dep't 1985)). Actual authority 'exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act.' *Minskoff v. Amer. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996)." <u>See</u> Report at pp. 10 – 11.

Groothuis' and Bollman's letters plainly demonstrate that Bollman was exercising actual authority over South Cherry's assets--not merely those of Proteus.[1]  Further, they show that Bollman exercised his authority over the financial assets of South Cherry from the inception of South Cherry's relationship with Hennessee Group.  In fact, Bollman's letter is dated <u>the same day</u> as plaintiff's investment in West Broadway (the first investment South Cherry alleges it made in a hedge fund through Hennessee Group, <u>see</u> Trans. at p. 22, ln. 9 - 11 and p. 26, ln. 18 – 20) <u>See</u> Exhibit 6.  The fact that Groothuis forwarded Bollman's letter to the National Bank of Arizona demonstrates Groothuis' full participation and consent in Bollman's authority.  Groothuis made no mention of any grant of authority by South Cherry to Bollman at the hearing before Magistrate Fox and, in fact, he flatly denied any such grant of authority.  <u>See</u> Trans. at p. 23, ln. 7 – 11.

The Report also points to Exhibit B of the Investment Advisory Agreement signed by Bollman, noting that Bollman checked off two categories, both of which identify him as an individual investor, and the Court goes on the state "[m]ore significantly, he did not initial any category relating to a corporation or entity, even one in which all of the principals were themselves 'Accredited Investors'. . . . [and] In the 'Accredited Investor Profile', . . . Bollman . . . further stated that he would be investing only on behalf of himself and no one else."  <u>See</u> Report at pp. 4 and 5.  The Court concluded "[n]otably, this appendix to the IAA discloses no relationship with any entity on whose behalf Bollman is authorized to 'retain Hennessee to make investments in hedge funds.'"  <u>See</u> Report at p. 5

---

[1] The testimony given by Groothuis establishes that the funds South Cherry had available to invest resulted from the sale of the real estate associated with the tenant-in-common interest (<u>see</u> Trans. at p. 16, ln. 8 – 10), which occurred in late November 2000 (<u>see</u> Trans. at p. 22, ln. 22 – p. 23, ln. 2) -- almost a year prior to Bollman's letter.

4

The Report however, fails to note that, at the time Bollman entered into the Investment Advisory Agreement, he intended to, and subsequently did, invest through his other investment vehicle--Proteus--even through that entity was also not mentions in the Agreement. Groothuis testified that when Bollman signed the Investment Advisory Agreement "Mr. Bollman had other assets to invest, in Proteus; that was his investment vehicle that he would use. That agreement was signed on behalf of Mr. Bollman and Proteus." See Trans. at p. 27, ln. 6 – 9. In fact, Bollman's investment in Sage was made through Proteus--a company owned by Bollman and his wife. See Trans. at p. 96, ln 19 - p. 97, ln. 2 and p. 22, ln. 14 – 15. Proteus, like South Cherry, is nowhere reflected in the Investment Advisory Agreement or its Exhibits. Bollman's failure to identify Proteus as a vehicle through which he intended to make investments, and on whose behalf he entered into the Investment Advisory Agreement, negates any implication that his failure to so identify South Cherry meant that he was not thus acting for South Cherry when he signed the Agreement.

Defendants submit that the Report's conclusion that Bollman did not have actual authority to act on behalf of South Cherry is belied by the documentary evidence admitted in evidence at the hearing demonstrating that Bollman had actual authority to act on behalf of South Cherry with respect to South Cherry's investments during the relevant period.

B.  **Plaintiff's Acts and Omissions Created Apparent Authority**

As the Court noted, "'a principal may be estopped from denying apparent authority if (1) the principal's intentional or negligent acts, including acts of omission, created an appearance of authority in the agent, (2) on which a third party reasonably and in good faith relied, and (3) such reliance resulted in a detrimental change in position on the part of the third

5

party.'" See Report at p. 11 citing *Minskoff v. Amer. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996).

In concluding that Bollman did not have apparent authority to act on behalf of South Cherry, the Report primarily relies upon Groothuis' testimony that there was a need for a "bright line" between Bollman and South Cherry. See Report at pp. 3 and 6. Groothuis testified that "…there has to be a bright line between South Cherry Street and Mr. Bollman, and that I owned South Cherry Street, . . . and we had to keep a strict line between South Cherry and Mr. Bollman, because the tax structure is . . . dependent upon South Cherry Street being independent from Mr. Bollman." See Trans. at p. 28 ln. 8 – 16. Groothuis further testified that if the "bright line" was not maintained "[t]he entire gain would have been reportable in the year 2000" see Trans. at p. 29, ln. 11 – 15, which was "practically the entire amount of the 14 million" see Trans. at p. 16, ln. 19 – 20. The Court also referred to Bollman's testimony concerning a distinction between him and South Cherry. See Report at p. 7.

Despite the foregoing testimony, the conduct, including acts of omission, of Groothuis, South Cherry and Bollman, however, flatly contradicts the existence of such a "bright line" and establishes that Plaintiff created apparent authority in Bollman. First, invoices for Hennessee Group's services in connection with the hedge funds in which Proteus and South Cherry invested were sent directly to Bollman. See Exhibits D and H. In fact, Groothuis admitted that Proteus-- Bollman's other investment vehicle--probably paid the 2001 invoice, sent to Bollman, which reflected fees due solely in connection with South Cherry's investment in West Broadway Partners. See Trans. at p. 57, ln. 6 – 9. When asked by the Court "[a]nd can you tell me why one of Mr. Bollman's companies would have paid the fee for a South Cherry investment?", Groothuis responded by testifying that "I would describe it probably as sloppiness, sir, and

6

oversight, Your Honor." See Exhibit D and Trans. at p. 57, ln. 19 – 23. Further, the 2003 invoice, which was also sent to Bollman, reflects Sage (the sole Proteus investment) as well as Bayou, Bricoleur, Cobalt and West Broadway (all South Cherry investments). See Exhibit H and Trans. at p. 22, ln. 7 - 18. Although the 2003 Hennessee Group invoice identified the four hedge fund investments made by South Cherry, Groothuis conceded that despite the alleged existence of a "bright line," he failed to notify anyone at Hennessee Group that in fact these were South Cherry's investments, not Bollman's investments. See Trans. at p. 63, ln. 1-4.

The 2003 invoice reflects a $2,490 fee due in connection with West Broadway. See Exhibit H. The 2003 fee was paid with a Proteus Associates check on which Groothuis wrote "South Cherry St. LLC" because he ". . .intended that the bookkeeper charge that back to South Cherry Street, LLC" and the notation was a "message from [Groothuis] to the bookkeeper to charge South Cherry Street, LLC." See Trans. at p. 64, ln. 14 – p. 65, ln. 1. Although the Report notes that Groothuis signed these checks, it fails to mention that Bollman's name was also stamped on the checks. See Exhibit H and Trans. at p. 64, ln. 2 – 8. Contrary to the Court's statement that "[o]n these checks, Groothius made an entry memo 'South Cherry LLC' to direct the bookkeeper to charge the fee back to South Cherry" (See Report at p. 7), Exhibit I is the only example of such an entry by Groothius. In fact, Groothuis signed a second Proteus check for payment of the 2003 Hennessee Group fee, which bears a memo of "Bollman, Craig". See Exhibit J and Trans. at p. 65, ln. 2 - 13. However, Groothuis could not explain why Bollman was referenced on the memo line of the second check. See Trans. at p. 65, ln. 24 – p. 66, ln. 3.

Second, on May 3, 2004, Groothuis sent an email to Leeana Piscopo at Hennessee Group. See Exhibit L. Groothuis wrote that "Phyllis Bollman has requested a summary of the fee structure of all the funds we are currently in, especially Bayou and the fee arrangement with

7

Hennessee." see Exhibit L.  Groothuis wrote and sent this email despite the fact that Phyllis Bollman--the wife of South Cherry's alleged "colloquial agent"--had no interest whatsoever in South Cherry (see Trans. at p. 72, ln. 9 – 10 ) and could not benefit from the investments made by South Cherry (see Trans. at p. 73, ln. 5 – 7).  Groothuis' email continues that "Craig and I have both suggested that she directly initiate a dialogue with you, but she wants this information before she contacts you."  See Exhibit L.  Groothuis concludes the email by writing "I am in a bit of an awkward situation on this myself as Phyllis and Craig do not see eye-to-eye on investment philosophy and I have evolved as the financial go-between on some of their differences."  See Exhibit L.

In response to Groothuis' email request, Hennessee Group prepared a memo which was sent to Groothuis.  See Exhibit M and Trans. at p. 74, ln. 15 – 19.  The "Subject" line of the memo was "Hedge Fund Manager Fees and Hennessee Group Advisory Fees for Craig Bollman's existing Hedge fund portfolio."  See Exhibit M.  The memo states "[a]s requested, below are a list of Craig Bollman's current hedge fund investments and a breakdown of both the fees charged by each hedge fund, as well as, Hennessee Group's Advisory Fee."  See Exhibit M.  The memo then goes on to list all of the hedge funds in which Proteus and South Cherry were invested.  See Exhibit M.  Despite the fact that all of the hedge funds were identified as Bollman's investments, Groothuis once again failed to advise Hennessee Group that they were actually South Cherry's investments and testified that "[n]o, I would not have done that."  See Trans. at p. 76, ln. 9 – 17.  In response to Groothuis' request, the memo goes on to state "[w]ith respect to Hennessee Group's Advisory Fee, as outlined in greater detail in the Advisory Agreement . . ."  See Exhibit M and Trans. at p. 77, ln. 5 – 12.  In response to the questions "[w]hat agreement -- what Advisory Agreement did you understand her to be referring [to]?"

Groothuis testified that "I suppose that's the Advisory Agreement that I had a copy of in my file [between Bollman and Hennessee Group]". See Trans. at p. 77, ln. 13 – 19.

Third, although the Report mentions the ACT system, it mentions only the fact that the ACT notes regarding Groothuis state "ID/Status-client" and that such entry "could be read as an indication that Groothuis was a client of Hennessee separate from Bollman." See Report at p. 9.

The sheer volume of conversations memorialized in the ACT notes between Defendants and Bollman as compared to the virtual nonexistence of such conversations with Groothuis, however, demonstrates the true nature of the relationship between Hennessee Group, Bollman, Groothuis and South Cherry. The ACT notes for Bollman span a five year period from November 1, 2000 through November 15, 2005 and contain 95 entries and continue even after Proteus--Bollman's other investments vehicle--redeemed its interest in Sage on March 31, 2004. See Exhibits T and C. This is in stark contrast to those for Groothuis, which contain only 5 entries and reference none of South Cherry's investments. See Exhibit U. Exhibit T was received into evidence as a business record and Plaintiff was free on its case (at which time Bollman was recalled) to contradict any of the entries contained in those ACT Notes. Plaintiff did not even address any of the entries, far less call the veracity of the entries into question.[2]

The substance of the conversations memorialized in the ACT notes highlights the extent to which Bollman made the decision to invest in each of the hedge fund investments that are now claimed to have been made by South Cherry solely for its benefit. Groothuis, who either participated in these conversations or was subsequently made aware of such conversations, never

---

[2] It should be noted that the suggestion of an adverse inference against Defendants for not calling Leeana Piscopo (Report, at p. 13) is not appropriate. Ms. Piscopo has not been an employee of Hennessee Group since January 2006, and Plaintiff had just as much opportunity to call her as a witness as did Defendants.

disclosed to Hennessee Group that he was anything but Bollman's accountant. See Exhibit T. For instance, the June 3, 2003 ACT note memorialized the following conversation:

> LP had a conf. call with Craig and Fred Groothis [sic] (accountant). We discussed the performance of his current portfolio. Craig is pleased with the performance. HG recommended adding to Bayou. Craig is going to add another $500K to Bayou and then $1 million after that. Wants to treat the $1 million as cash and does not want us to include it when performing any asset reallocation. He is very happy with us! See Exhibit T, p. 5.

At about the same time, June 1, 2003, an additional $1,500,000 was invested in Bayou by South Cherry. See Exhibit C and Trans. at p. 22, ln. 9 - 11.

An August 31, 2004 entry memorialized the following conversation:

> LP spoke with Craig (I had called him while I was on vacation to let him know his soon to be ex wife Phyllis called. He said he will take care of it and I should not call her back. All of Craig's investments are under South Cherry Street for which Phyllis is not authorized to receive and [sic] info.) he thanked me for how we handled the Phyllis situation. We discussed his portfolio which has been whittled down to just Bric II, Bayou and Cobalt. Bayou and Cobalt are performing well and Craig is really happy with Hennessee. We discussed Bric which is up about 2% for the year. He wants to fully redeem as he has enough exposure to home builders and is not comfortable with any more. He wants to put all of the money in Bayou and then once he has everything settled (which he does not think will be much longer) with the divorse [sic] we can do a proper review and asset allocation of the port. . . .
> See Exhibit T, p. 2.

On September 30, 2004 the investment in Bricoleur (a South Cherry investment) was redeemed and on October 1, 2004 an additional investment in Bayou was made (also a South Cherry investment). See Exhibit C and Trans. at p. 22, ln. 9 - 18.

A November 17, 2004 entry memorialized the following conversation:

> LP spoke with Craig he wanted to know if he was still invested in Bricolour because he saw their performance in October and doesn't like what they are doing (doesn't like the exposure to

>WLS). I told him we got out at the end of Sept. so don't worry about it. We discussed the status of his divorce alitte [sic]. He can't put money back into his hedge fund portfolio until the divorce is done and it is taking longer than he thought. We also spoke about the Bayou letter (RE former employees suing them). He said he also left a message for Sam. He thinks the letter was well done, he had been in a similar situation and just wanted to let Sam know he has confidence in him. The only lesson he has learned is be careful who you hire. See Exhibit T, p. 2.

Moreover, Plaintiff's failure to "correct" the documents provided to it by Hennessee Group--which made no distinction between Proteus and South Cherry investments, but treated them all as Bollman's investments--plainly created an appearance of authority in Bollman. These include not only the invoices (see Exhibits D and H) and Hennessee Group's May 3, 2004 memo (see Exhibit M) but also Portfolio Performance Monitors prepared for Bollman over the life of the relationship. Each of the Monitors reflected the hedge fund investments made by Proteus and South Cherry along with the monthly performance for each hedge fund as well as the monthly value of each such investment. See Exhibit C. Likewise, Hennessee Group prepared Statements of Cash Flow, which detailed each hedge fund Proteus and South Cherry had invested in as well as the additional investments in and redemptions from each such investment. See Exhibit C. Each of the Portfolio Performance Monitors and Statements of Cash Flow from 2001 through 2006 stated that they were prepared for Craig Bollman. None of these documents even mentions South Cherry. Although Groothuis received copies of the Portfolio Performance Monitors and Statements of Cash Flow for five years, 2001 – 2005 (see Trans. at p. 49, ln. 10 – 13), he failed to advise Hennessee Group that the investments were not Bollman's.

Last, there can be no question that Hennessee Group reasonably and in good faith relied upon Bollman's authority in connection with hedge fund investments made by him; whether through Proteus or South Cherry, and did so even after the one investment South Cherry alleges

11

was made solely by Bollman was redeemed. In fact, in connection with its recommendations, Hennessee Group sent a fax to the hedge fund manager requesting that the fund's offering memorandum and subscription agreement be sent to Bollman with a copy to his "accountant" Groothuis. See Exhibit S. Clearly, Hennessee Group continued to make all recommendations to Bollman.

The foregoing demonstrates that Plaintiff's acts and omissions created the appearance of authority in Bollman and it is now estopped from denying such apparent authority.

### C.    Principles of Ratification and Estoppel Warrant Compelling this Case to Arbitration

Even if the Court accepts the findings and recommendation of the Report, the Court should still enforce the arbitration agreement against Plaintiff on the grounds of ratification and estoppel.

Groothuis testified that Bollman had been South Cherry's "colloquial agent" since November 2000. See Trans. at p. 20, ln. 7 – 10, p. 21, ln. 18 – 21 and p. 22 ln. 22 – p. 23, ln. 5. Groothuis defined "colloquial agent" to mean that Bollman ". . . would look at investment opportunities, [ ] then he might make recommendations to me. . . ." See Trans. at p. 20, ln.24 – p. 21, ln. 1. Groothuis was aware that Bollman had signed a written Investment Advisory Agreement with Hennessee Group, see Trans. at p. 21. ln. 9 – 12, p. 30, ln. 25 – p. 31, ln. 4 and p. 27, ln. 8 – 9. Groothuis had even seen an unsigned copy of that Agreement and reviewed a copy of it. See Trans. at p. 21, ln. 13 – 15 and p. 36, ln. 14 - 17. Groothuis was not present at the August 27, 2001 meeting with Hennessee Group, see Trans. at p. 43, ln. 3-5 and 8 – 14, and was aware that the August 27, 2001 presentation was for Bollman based on Bollman's investment objectives, assets and risk tolerance, see Trans. at p. 43, ln. 15 – p. 44, ln. 2 and 14 –

18. Groothuis confirmed that the recommendations made by Hennessee Group in the August 27, 2001 presentation were made to Bollman.  <u>See</u> p. 47. ln. 16 – 18.  Bollman testified that he ". . . came away from that [August 27, 2001] meeting with investment ideas that were later provided to South Cherry Street, LLC."  <u>See</u> Trans. at p. 43, ln. 11 – 14.  Plaintiff also specifically referenced the August 27, 2001 presentation and even quoted sections of it in the Complaint.  <u>See</u> Complaint ¶ 22 – 23.

Ratification occurs when there is "(1) acceptance by the principal of the benefits of the transaction (2) with full knowledge of the relevant facts (3) under circumstances indicating an intention to adopt the unauthorized acts", *Itar-Tass Russian News Agency*, No. 95 Civ. 2144, 1999 WL 58680, *8 (S.D.N.Y. Feb. 9, 1999) *citing Health Plan v. O'Higgins*, 951 F. Supp. 352, 360 (N.D.N.Y 1997).  A non-signatory is estopped from challenging the arbitration clause when he knowingly accepted the benefit of the agreement containing the arbitration clause.  *See Hickox v. Friedland*, No. 01-Civ.2025, 2001 WL 1490696, *9 (S.D.N.Y. Nov. 21, 2001); *see also Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F. Supp.2d 182, 187 (E.D.N.Y. 2006).

Here, South Cherry knowingly accepted the benefits of Bollman's execution of the Investment Advisory Agreement.  Approximately three weeks after Bollman's execution of the Investment Advisory Agreement, Hennessee Group prepared and presented its August 27, 2001 presentation to Bollman.  In its presentation, Hennessee Group recommended certain hedge fund investment opportunities to Bollman in light of his investment objectives, assets and risk tolerance.  Bollman then discussed those recommendations with Groothuis, which he knew had been made to Bollman.  Groothuis concedes that Bollman had an agency relationship with South

Cherry for the very purpose of looking at investment opportunities and recommending them to South Cherry. See Trans. at p. 20, ln 22 – p. 21, ln. 3, p. 21, ln. 22 – 25 and p. 23, ln. 7 – 11.

Plaintiff accepted the benefits of the recommendations that it knew were made to Bollman pursuant to the Investment Advisory Agreement. At the time of South Cherry's investments, Groothuis knew that Bollman had entered into the Investments Advisory Agreement and he was aware of its terms--he conceded that he had seen and reviewed a copy of the Agreement. See Trans. at p. 21, ln. 13 – 15 and p. 36, ln. 14 – 17. It cannot be disputed that Hennessee Group's recommendations to invest in West Broadway, Cobalt, Bricoleur and Bayou were made to Bollman. See Exhibit S. Certainly Groothuis proceeded to invest in these hedge funds based on Hennessee Group's recommendations to Bollman.

Plaintiff's acceptance of the benefits of the Investment Advisory Agreement precludes it from challenging the arbitration agreement contained in the Investment Advisory Agreement.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully object to the Report and Recommendation and submit that this Court should stay all proceedings against Defendants and compel Plaintiff to arbitration in a manner consistent with the Investment Advisory Agreement.

Dated: November 6, 2006

Respectfully submitted,

By: _____/S/_____
Lawrence E. Fenster (LF 9378)
Matthew C. Plant (MP 0328)
BRESSLER, AMERY & ROSS
17 State Street, 34th Floor
New York, New York 10004
(212) 425-9300
Attorneys for Defendants
Hennessee Group, LLC, Elizabeth Lee Hennessee and Charles Gradante