UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————x

IN RE BAYOU HEDGE FUND                          06 MDL 1755 (CM)
INVESTMENT LITIGATION
————————————————————x

THIS DOCUMENT RELATES TO:
————————————————————x

BROAD-BUSSEL FAMILY LIMITED                     06 CV 3026 (CM)
PARTNERSHIP, MARIA LOUISE
MICHELSOHN, MICHELLE MICHELSOHN,
and HERBERT BLAINE LAWSON, JR.,
individually and on behalf of all other persons
and entities similarly situated,

      Plaintiffs,

   -against-

BAYOU GROUP LLC, et al.,

      Defendants.
————————————————————x

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART
## THE HENNESSEE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

McMahon, J.:

     The court, for its opinion disposing of the motion to dismiss the complaint as filed by defendants The Hennessee Group LLC, Elizabeth Lee Hennessee and Charles Gradante (hereafter, "The Hennessee Defendants"):

Procedural Posture

     The reader's familiarity with the demise of the Bayou Funds and subsequent criminal and civil proceedings is assumed.

     This putative class action was originally filed in the District of Connecticut. It was transferred here by order of the Judicial Panel for Multi-District Litigation on April 18, 2006. Ordinarily, because the transfer is no more than a change of courtroom, this court would be required to apply the law that Connecticut would apply. In re Parmalat Sec. Litig., 412 F. Supp. 2d 392, 399 (S.D.N.Y. 2006).

However, the matter is complicated by the fact that defendants have moved to dismiss the case for lack of personal jurisdiction. If Connecticut lacked jurisdiction over defendants, it affects the choice of law issues that are raised by the motion on the merits. Hatfill v. Foster, 415 F. Supp. 2d 353 (S.D.N.Y. 2006). Therefore – even though there is absolutely no doubt that this court has jurisdiction over defendants – the first order of business is to decide whether Connecticut had personal jurisdiction over defendants. I will then turn to the choice of law issues – and then to the merits of the motion.

Personal Jurisdiction

All three Hennessee Defendants first assert that Connecticut lacked personal jurisdiction over them. Plaintiff has the burden of establishing jurisdiction pursuant to this statute by a preponderance of the evidence, with all doubts being resolved in plaintiffs' favor.

Plaintiffs allege that Broad-Bussel is a limited partnership organized under the laws of North Carolina, with registered offices in Chapel Hill, North Carolina. The three individually named plaintiffs allege that they are all citizens of New York.

Defendant Hennessee Group LLC ("Hennessee Group") is a New York limited liability corporation with its principal place of business in New York. Its principals, defendants Elizabeth Lee Hennessee ("Elizabeth Hennessee") and Charles J. Gradante ("Gradante"), are also New York citizens and residents.

Defendants allege that The Hennessee Group is not subject to *in personam* jurisdiction in Connecticut because Connecticut restricts the right of non-residents to sue non-Connecticut corporations in Connecticut courts. Conn. Gen. Stat. § 33-929(f) provides "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state . . . ." The Hennessee Group is a limited liability corporation. Plaintiffs are not residents of Connecticut and do not have any place of business in Connecticut. Therefore, at first blush it appears that Connecticut would not countenance the exercise of long-arm jurisdiction over The Hennessee Group, an out-of-state corporation.

Plaintiffs assert that they are not purporting to sue under this statute but rather under Connecticut's other long-arm statute, Conn. Gen. Stat. § 52-59(b), which provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association . . . who in person or through an agent: (1) transacts any business within the state; (2) commits a tortious act within the state . . . .

This statute is modeled on New York's Civil Practice Law and Rules, C.P.L.R. 302, and so can be interpreted by looking at New York law. Zartolas v. Nisenfeld, 440 A.2d 179, 180-81 (Conn.

1981).  However, unlike C.P.L.R. 302, this particular statute applies only to individuals, partnerships or voluntary associations – not corporations.

Plaintiffs assert that the phrase "foreign partnership" has been held to include a foreign limited liability coroporation, such as The Hennessee Group.  Nadler v. Grayson Constr. Co., No. CV-020190015S, 2003 WL 1963158, at *5 (Conn. Super. Ct. Apr. 15, 2003).  The Hennessee Defendants recognize that this case exists, but point out that the weight of Connecticut authority – including the most recent decision of our sister court in Connecticut – holds that § 33-929(f) is the long-arm statute applicable to limited liability corporations.  See Lechner v. Capital Group Cos., No. 05-CV-1410, 2006 WL 1525967, at *2 (D. Conn. May 26, 2006); see also Swain v. American Capital Strategies, Ltd., No. X04CV030103924S, 2004 WL 1966013, at *7 (Conn. Super. Ct. Aug. 4, 2004); Hartford Fire Ins. Co. v. United Restoration LLC, No. CV020813517, 2003 WL 1962864, at *5 (Conn. Super. Ct. Apr. 4, 2003).  These cases hold that a limited liability corporation is to be treated like any other corporation for long-arm purposes.  The Connecticut Supreme Court does not appear to have opined on the issue, but I agree with Judge Eginton and the majority of state court judges in Connecticut.  That being so, Connecticut's long-arm jurisdiction does not reach The Hennessee Group in this lawsuit brought by non-resident named plaintiffs.[1]

Elizabeth Hennessee and Charles Gradante are individuals, and so the long-arm statute that applies to them is § 52-59(b).  This means that plaintiffs – having been met by a motion to dismiss for lack of *in personam* jurisdiction – must establish by a preponderance of the evidence that these individuals either "transacted business" within Connecticut or committed a tortious act within Connecticut.  Plaintiffs cannot rely on tortious acts allegedly committed outside of Connecticut, because the effects of any such activities would necessarily have been felt by plaintiffs in North Carolina – not in Connecticut.

Plaintiffs did not request jurisdictional discovery or submit any affidavits or evidence on the issue of *in personam* jurisdiction.  The court therefore looks to the allegations of the complaint.  M&D Info. Sys., Inc. v. The Tower Group, Inc., No. 05-CV-552, 2006 WL 752880, at *1 (D. Conn. Mar. 21, 2006).  However, because no discovery has yet taken place, the record need only reveal a *prima facie* showing of jurisdiction.  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990).  Vague and conclusory allegations in a pleading are insufficient to establish personal jurisdiction.

Were I to consider only the Amended Complaint, the individual defendants would prevail on their motion to dismiss for lack of personal jurisdiction as well, because that pleading does not allege any facts suggesting that either individual defendant committed any tortious acts in Connecticut.  The Amended Complaint expressly alleges that both Gradante and Elizabeth

---

[1] The parties did not brief – nor could this court locate cases that discuss – whether class action status would in any way affect this outcome.  Regardless, nothing in the record indicates that The Hennessee Group advised any Connecticut residents to invest in Bayou.

Hennessee live in New York City and are citizens of New York. (Am. Compl. ¶ 45.) Plaintiffs cite paragraphs 5 and 13 of the Amended Complaint in support of the proposition that The Hennessee Group transacted business in Connecticut. Those paragraphs do not support any finding of personal jurisdiction over either Elizabeth Hennessee or Gradante. Indeed, they do not mention the name of either individual defendant.

Paragraph 5 of the Amended Complaint says:

In addition, the investment advisor defendants Hennessee Group LLC (The Hennessee Group), Elizabeth Lee Hennessee (Lee Hennessee) and Charles J. Gradante (Gradante) (collectively, the "Hennessee Defendants") also facilitated the wrongdoing by failing to conduct proper due diligence of Bayou and the Bayou Hedge Funds prior to recommending those investments to plaintiff Broad-Bussel Family and other investors, and then by failing to monitor properly those investments, and are thus liable to those Bayou investors to whom they marketed the Bayou Hedge Funds . . . .  The principals of defendant Hennessee Group . . . are liable because they were the alter egos and controlled the acts of defendant Hennessee Group; personally solicited and recommended Bayou investments to plaintiff Broad-Bussel Family and other investors; personally failed to investigate properly Bayou and Bayou's principals; and received direct or indirect compensation and were unjustly enriched thereby.

This paragraph contains absolutely no allegation that would permit this court to conclude that either Elizabeth Hennessee or Gradante performed any tortious action in the State of Connecticut.

Paragraph 13 of the Amended Complaint says:

Venue is proper in this district . . . .  Many of the acts and transactions giving rise to the alleged violations of law occurred in this District.  In addition, numerous of the Defendants maintain their principal executive offices or residence within this District, or did so at the time of the alleged wrongdoing.  Moreover, each of the Defendants resides in the State of Connecticut, and/or transacts business in the State of Connecticut, and has certain minimum contacts with State of Connecticut, and/or engaged in tortious conduct in the State of Connecticut, such that maintenance of this action does not offend traditional notions of fair play and substantial justice.

These conclusory allegations do not allege any facts that would permit the court to conclude that either individual Hennessee Defendant performed any tortious action in Connecticut, either.

Plaintiffs' effort to conflate jurisdiction over Bayou (which is clearly proper in Connecticut) with jurisdiction over the Individual Hennessee Defendants – by asserting that The Hennessee Group's recommending Bayou as an investment "facilitated the wrongdoing" of

4

Bayou and its alleged co-conspirators (a group that does NOT include Hennessee[2]) – fails.  The Hennessee Defendants are not alleged to have been aiders and abetters of Bayou's fraud, as are certain other defendants.  Indeed, the allegations against the Hennessee Defendants, fairly read, focus on The Hennessee Group's failure to detect the fraud, to the detriment of its clients.  They do not allege that the Hennessee Defendants participated in the looting of Bayou in the scheme that originated and was conducted out of Stamford, Connecticut.  Bayou undoubtedly committed numerous tortious acts in Connecticut, but that has no bearing on whether The Hennessee Group's principals can be sued in Connecticut.

If that were the entire state of the record, I would not hesitate to dismiss the complaint against the individual Hennessee Defendants as well.  However, defendants elected to augment the record, submitting a carefully-worded Declaration by Charles Gradante ("Gradante Decl."), which says, "Due diligence [by The Hennessee Group], including that performed with respect to the Bayou Hedge Funds, was performed by The Hennessee Group almost exclusively in New York."  (Gradante Decl. ¶ 6.)  Viewing this allegation most favorably to plaintiffs, as I must at this stage of the proceedings, one can infer that some minimal amount of due diligence was in fact performed in Connecticut.

Of course, Gradante's Declaration refers only to the "Hennessee Group" and does not specifically refer to either of the individually-named defendants.  But the Amended Complaint alleges that the individual defendants controlled the business operations and practices of The Hennessee Group and that the "Hennessee Defendants" (which includes the two individuals as well as the corporation) failed to conduct proper due diligence and monitoring of the investments.  Gradante himself states in his Declaration, "All aspects of marketing, recommendations to clients and performing due diligence and monitoring of hedge funds is either done by the Individual Defendants or by employees who are under the direct supervision of one or both of the Individual Defendants."  (Id. ¶ 14.)  Since Gradante's Declaration affirmatively states that not all due diligence took place in New York – and since it is fair to infer, from the totality of the allegations of the Amended Complaint, that some due diligence may have taken place in Connecticut, where Bayou was located – and since the declaration also lays responsibility for due diligence at the Individual Defendants' feet, I cannot dismiss the Amended Complaint against the two individuals at the pre-discovery stage.  The allegations of the Amended Complaint plus Gradante's declaration, taken together, add up to a *prima facie* case that Elizabeth Hennessee and Gradante committed a tortious act within Connecticut.  Of course, the individual Hennessee Defendants can plead lack of personal jurisdiction in their answer and, if discovery does not bear this out, renew their motion to dismiss for lack of *in personam* jurisdiction over them in Connecticut.

---

[2] A number of defendants are alleged to have aided and abetted the Bayou frauds.  The Hennessee Defendants are not among them.  (See Am. Compl. ¶¶ 31-38.)  Rather, Hennessee and its principals are the subject of a wholly separate section of the Amended Complaint, which alleges wrongs that are particular to Hennessee Group in its role as investment advisor.  (See id. ¶¶ 39-43.)

I appreciate the irony that the complaint can be dismissed against Hennessee Group but not against the individuals whose activity was undertaken on behalf of Hennessee Group. However, that is entirely a function of Connecticut's bifurcated long-arm statute, which treats corporations and individuals differently.

There is undoubted jurisdiction over The Hennessee Group, as well as the individual defendants, here in New York. Had a motion to transfer the case to the Southern District of New York been made, my colleague in Connecticut would almost certainly have granted it; all defendants, including the Bayou Defendants, are clearly amenable to suit in this district. As North Carolina residents, plaintiffs should be utterly indifferent to whether they go to trial in White Plains or Bridgeport. If plaintiffs choose to refile their action against Hennessee Group in this court (which means that it will not be remanded for trial in Connecticut after discovery, but will remain here for final adjudication), then everyone will be before a single court. Or plaintiffs could choose to bring a separate action against Hennessee Group in this court (leaving their claims against Bayou in the Connecticut action) – which I would immediately consolidate with the MDL proceeding for pre-trial purposes.

In the end, I imagine that the class plaintiffs will manage to find a way to consolidate their claims against the Hennessee Defendants in a single court. And I imagine that they will.

Choice of Law

Because the record reveals a *prima facie* basis for concluding that individual defendants Elizabeth Hennessee and Gradante are subject to *in personam* jurisdiction in Connecticut, I must determine what law applies to the claims asserted against them using Connecticut's choice of law principles. The fact that jurisdiction exists does not mean Connecticut law applies to the claims – it means that Connecticut choice of law will be used to decide what law applies.

First, I cannot find any substantive difference between Connecticut and New York law on most of the issues of the case. Connecticut and New York tort law is fundamentally identical. That being so, it is not necessary to engage in a lengthy choice of law analysis when the two states involved would apply the same substantive law. See In re Air Crash at Dubrovnik, Croatia, No. 96-CV-1194, 2000 WL 840057, at *2 (D. Conn. Apr. 10, 2000) (applying Connecticut choice of law analysis and noting at outset that "Only 'actual' conflicts require the application of a forum state's choice of law rules.") While New York calls its choice of law principle "interest analysis" while Connecticut uses the phrase "most significant relationship," the test applied in the two states is the same: in tort cases, the state will apply the law of the state that has the greatest or most significant interest in the transaction that underlies the lawsuit. In this case, that transaction is the provision of investment advisory services by The Hennessee Group and its principals to Broad-Bussel pursuant to the Investment Advisory Agreement. Under both Connecticut and New York law, that state is New York.

Because I am sitting in the place of a Connecticut court, I will perform the analysis that a Connecticut judge would perform.

6

The first reason why a Connecticut court would conclude that New York law applies is that the Investment Advisory Agreement pursuant to which all the actions complained of in the complaint were undertaken contains a choice of law clause stipulating that the Agreement (and hence the duties imposed on the parties pursuant to that agreement) will be governed by the law of New York (without regard to New York's conflicts of laws provision). As a choice of law matter, "Connecticut indubitably favors enforcement of contractual choice of law provisions." Blakeslee Arpaia Chapman, Inc. v. Helmsman Mgmt. Servs., Inc., No. 443753, 2002 WL 172670, at *2 (Conn. Super. Ct. Jan. 9, 2002); see also Reichhold Chem., Inc. v. Hartford Accident & Indem. Co., 750 A.2d 1051 (Conn. 2000). There are two well-established exceptions to that rule: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." Pajor v. Town of Wallingford, 704 A.2d 247, 257 (Conn. App. Ct. 1997) (internal quotations omitted). Neither exception applies here.

The chosen state – New York – has a substantial relationship to the transaction (which, in this case, is The Hennessee Group's providing investment advisory services to plaintiffs). Indeed, other than North Carolina (where plaintiffs live), New York seems to be the only state that has any significant relationship to the transaction between plaintiffs and the Hennessee Defendants. Defendants and their corporation are citizens and residents of New York, and defendants provided the bulk of their investment advisory services to plaintiffs in New York.

The exceptions to Connecticut's predisposition to honor a choice of law clause do not come into play in this case. It does not offend Connecticut public policy to apply New York law to the conduct of a New York corporation, or to its principals acting on behalf of that corporation, in connection with their dealings with residents of North Carolina. Nothing in this record suggests that Connecticut has a materially greater interest than does New York in governing the conduct of a New York based investment advisor in its dealings with North Carolina clients. Indeed, the public policy of Connecticut in such a situation is that Connecticut ought not interfere – which is best exemplified by the fact that Connecticut will not take jurisdiction over lawsuits against foreign corporations when they are brought by non-residents like Broad-Bussel.

The fact that The Hennessee Group's principals advised plaintiffs to invest in Connecticut-based hedge funds is – and ought to be – irrelevant to the choice of law analysis. Otherwise, the terms of an investment advisory contract would be governed by the law of every state in which investments were made! It cannot be that the parties' rights and obligations under a single contract could vary depending on what investment was the basis for a contractual dispute.

Plaintiffs argue that the individual Hennessee Defendants are not parties to the contract with its choice of law provision, so the choice of law clause should be of no moment. Technically, plaintiffs are correct that the individual defendants are not parties to the contract. However, the claims against the principals arise out of their position with The Hennessee Group

and in connection with actions they took (or did not take) on behalf of The Hennessee Group. As paragraph 42 of the Amended Complaint states:

> As a result of their positions and roles as principals and officers of the Hennessee Group, defendants Lee Hennessee and Gradante controlled the business operations and practices of the Hennessee Group.

It is those very "business practices and operations" that form the basis of the claims asserted against Elizabeth Hennessee and Gradante in this lawsuit. Since the corporation cannot act except through human beings, it is the alleged behavior of Elizabeth Hennessee and Gradante that is the basis for this lawsuit. Therefore, the parties' sensible choice of law clause governs their respective rights and responsibilities.

Plaintiffs also argue that the choice of law clause should be irrelevant because they are seeking to have the investment advisory agreement between themselves and The Hennessee Group set aside. But the request for rescission does not change the fact that New York law governs the relationship between the parties because, under ordinary Connecticut choice of law principles, a Connecticut court would apply New York law to the allegedly tortious conduct of the parties.

In a tort suit like this one, Connecticut courts apply the law of the state with the "most significant relationship" to the "tort(s) at issue here." Vertrue Inc. v. Meshkin, 429 F. Supp. 2d 479, 504 (D. Conn. Apr. 27, 2006). Connecticut law might well apply to Bayou's conduct, because the alleged frauds by Bayou were committed in Connecticut. But as against The Hennessee Group's principals (whose actions vis-à-vis Broad-Bussel cannot be conflated with Bayou's fraud, as explained above), the "torts at issue here" are breaches of fiduciary duty by (1) advising investors to invest in Bayou without performing adequate due diligence (which is really not a tort at all, but a breach of the Investment Advisory Agreement); and (2) failing to monitor Bayou's performance adequately (same). As I discussed above, plaintiffs made no showing whatever that The Hennessee Group's principals committed these acts in Connecticut. While Gradante's declaration raises the inference that he and/or Elizabeth Hennessee may have conducted some due diligence activity in Connecticut, it also indicates that the bulk of The Hennessee Group's (and, hence, the individual defendants') investment advisory activities took place in New York. Plaintiffs offer nothing to undermine the perfectly sensible inference that a New York investment advisor working out of a New York office did most of its work in New York.

The best case for plaintiffs, then, is this: some of the conduct giving rise to the lawsuit took place in Connecticut and some in New York. Applying Connecticut's "most significant relationship" test to this situation – where a New York corporation gave investment advice in New York to North Carolina citizens about a Connecticut partnership, based on due diligence conducted in New York and Connecticut – I conclude that the courts of Connecticut would apply

New York law to the torts alleged against Elizabeth Hennessee and Gradante.[3]

Motion to Dismiss

Plaintiffs allege that the individual Hennessee Defendants breached their fiduciary duties, committed negligence and were unjustly enriched as a result of those fiduciary breaches and/or that negligence. Plaintiffs also allege that this conduct violated the Connecticut Unfair Trade Practices Act ("CUTPA").

The court denies the individual defendants' motion to dismiss the common law tort claims (breach of fiduciary duty and negligence) and the unjust enrichment claim. The extensive pleading in the Amended Complaint is more than sufficient to permit this case to go forward as against Elizabeth Hennessee and Gradante. New York law does not require a showing of "deceitful intent" in order to establish either a breach of fiduciary duty or negligence. Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC, 376 F. Supp. 2d 385, 415 (S.D.N.Y. 2005). Issues relating to the so-called "exculpatory clause" in the Investment Advisory Agreement will be dealt with post-discovery; at this point, it is sufficient to note that plaintiffs allege the agreement is void *ab initio* and should be rescinded. Finally, it is premature to determine whether The Hennessee Group's corporate veil can be pierced; all such issues are deferred until after discovery, when I will undoubtedly receive a motion for summary judgment (whether or not the material facts are undisputed).

As for the CUTPA claim: for unfathomable reasons, the parties have not briefed the issue of whether a CUTPA claim lies against a New York defendant for tortious conduct against a North Carolina plaintiff who invests in a Connecticut hedge fund. Instead, they focus on whether a CUTPA claim lies when the claim relates to a securities transaction – in this case, the purchase of interests in the Bayou hedge funds. Defendants urge that CUTPA does not apply to deceptive practices in connection with the sale of securities. See Russell v. Dean Witter Reynolds, Inc., 510 A.2d 972 (Conn. 1986). Plaintiffs respond that their CUTPA claim is predicated on common law tort causes of action (breach of fiduciary duty and negligence) that arose out of "services incidental to securities transactions" (i.e., defendants' provision of advisory services), and so ought not be dismissed under the Russell exception.

The closest case on point cited by either side is a decision of Judge Eginton of the District of Connecticut in Olsavsky v. Casey, No. 92-CV-324, 1992 WL 363573 (D. Conn. Nov. 2, 1992).

---

[3] Since The Hennessee Group was not amenable to jurisdiction in Connecticut, this court would not apply Connecticut choice of law principles to make the choice of law decision for any claims that are ultimately filed against The Hennessee Group, applying New York choice of law principles. Both because of the choice of law provision in the Investment Advisory Agreement and under New York's choice of law rules (interest analysis test, which is really no different than Connecticut's most significant interest test), New York law would apply to plaintiffs' claims against The Hennessee Group in both contract and tort.

The closest case on point cited by either side is a decision of Judge Eginton of the District of Connecticut in Olsavsky v. Casey, No. 92-CV-324, 1992 WL 363573 (D. Conn. Nov. 2, 1992). In Olsavsky, an attorney who advised a doctor with regard to his investments, and who agreed to monitor the investment plan's performance and recommend changes where warranted, moved to dismiss the doctor-plaintiff's claim against him under CUTPA.  Judge Eginton dismissed the CUTPA claim, in reliance on Russell, because, "The gravamen of plaintiff's complaint alleges unfair practices in the purchase of securities for plaintiff's retirement fund." (The doctor, like plaintiffs here, also brought various claims for breach of fiduciary duty and negligence that were not dismissed.)

Olsavsky appears to be good law and I will follow it.  The CUTPA claim against Elizabeth Hennessee and Gradante is dismissed.

Conclusion

Defendants' Motion to Dismiss the Amended Class Action Complaint against The Hennessee Group, LLC, for lack of personal jurisdiction in Connecticut is granted.  The Defendants' Motion to Dismiss the Amended Class Action Complaint against Elizabeth Lee Hennessee and Charles J. Gradante is denied, except that plaintiffs' CUTPA claims against Ms. Hennessee and Mr. Gradante are dismissed.

This constitutes the decision and order of the court.

Dated: January 19, 2006

_____
U.S.D.J.

BY FAX TO ALL COUNSEL

10