# Exhibit D

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

IN RE BAYOU HEDGE FUND INVESTMENT      06 MDL 1755 (CM)
LITIGATION

_____x

THIS DOCUMENT RELATES TO:

_____x

SOUTH CHERRY STREET, LLC,

      Plaintiff,                        06 CV 2943 (CM)(MDF)

  -against-

HENNESSEE GROUP, LLC, ELIZABETH LEE
HENNESSEE, and CHARLES A. GRADANTE,

      Defendants.

_____x

## MEMORANDUM ORDER DENYING MOTION BY DEFENDANTS TO STAY THIS ACTION AND TO COMPEL ARBITRATION

McMahon, J.:

    The court has reviewed the Report and Recommendation of The Hon. Mark D. Fox, U.S.M.J., delivered on October 18, 2006; the objections thereto filed by Defendants on November 6, 2006; and the response to those objections filed by Plaintiff on November 21, 2006.

    The Report contains the learned Magistrate Judge's Findings of Fact and Conclusions of Law concerning the relationship between South Cherry and one Craig Bollman, who signed an Investment Advisory Agreement with defendant Hennessee Group LLC, and who recommended investments to South Cherry. Magistrate Judge Fox held a hearing into this issue at the court's direction (See Memorandum Order dated August 23, 2006, which is incorporated into this order by reference).

    For the reasons detailed in his Report, Magistrate Judge Fox concluded that Bollman was

not acting as South Cherry's agent when he signed the Investment Advisory Agreement.

Judge Fox concluded that there was no evidence that South Cherry had ever authorized Bollman, orally or in writing, to make investments on South Cherry's behalf; that Bollman was not an employee of South Cherry; and that, while Bollman did on occasion recommend investments to South Cherry's principal, Fred Groothius (who happened to be Bollman's accountant), Groothius made all the decisions for South Cherry. For these reasons, Judge Fox concluded that he had no basis on which to find that Bollman had actual authority to sign the Investment Advisory Agreement on behalf of South Cherry.

Judge Fox also concluded that Bollman did not have apparent authority to bind South Cherry when he signed the agreement. The record is barren of evidence that Groothius conveyed to defendants that Bollman had authority to bind South Cherry; indeed, the testimony of Charles Gradante, Hennessee principal and one of the named defendants, revealed that he had no knowledge that South Cherry existed! Neither side called as a witness Leeana Piscopo, a Hennessee employee to whom Bollman allegedly spoke; Magistrate Judge Fox drew an adverse inference against Hennessee from its failure to call Piscopo as a witness, and properly so, since if Bollman conveyed authority to bind South Cherry to anyone at or about the time he signed the Investment Advisory Agreement, he did so to Piscopo, not Gradante or anyone else at Hennessee.[1]

If Judge Fox's findings of fact and conclusions of law were adopted by the court, I would have to conclude that South Cherry was not a party to the arbitration agreement in the Investment Advisory Agreement, and would deny the underlying motion to compel arbitration.

Defendants objected to Judge Fox's conclusions on the following grounds:

**Actual Authority**: Both Groothius and Bollman testified that Bollman had no actual authority to make investments on behalf of South Cherry – his only role was to make recommendations, with Groothius making the final decision in every case. Defendants claim that this testimony in incredible, in light of certain documentary evidence. They point to Exhibit 7, a multi-page document relating to investments made by South Cherry through MJ Whitman. They argue that the last two pages of Exhibit 7 establish, on their face, that Bollman had actual authority to act on behalf of South Cherry. Those pages consist of two letters – one from Groothius and one from Bollman – authorizing South Cherry's bank to wire $1 million in funds to MJ Whitman to fund an investment by South Cherry. Defendants argue that these letters demonstrate that Bollman was exercising actual authority over South Cherry's assets, because Bollman's letter "authorized" the transfer of South Cherry's funds for the purpose of investing

---

[1] I disagree completely with Hennessee's argument that no adverse inference is warranted because Piscopo is no longer a Hennessee employee. Since the uncontroverted evidence (including Gradante's testimony) established that Piscopo was the ONLY person associated with Hennessee who could controvert Bollman's testimony if that testimony were false, it was up to Hennessee – the party with the burden of proving that South Cherry is a party to the arbitration agreement – to obtain that testimony, by subpoena if necessary.

those funds with MJ Whitman. And they further argue that, because these letters were dated the same day that South Ferry made its first investment in a hedge fund through Hennessee Group (not Bayou, but another hedge fund, West Broadway), one must conclude that Bollman was acting as South Cherry's actual agent when he signed the Investment Advisory Agreement.

There are two problems with Defendants' argument.

First, Bollman's "authorization" of the South Cherry investment can be explained by evidence that does not suggest any agency relationship between Bollman and South Cherry. The relationship between South Cherry and Proteus, Bollman's wholly-owned corporation, is rooted in a tax avoidance strategy devised for Bollman by his accountant, Groothius. Pursuant to the tax avoidance transaction between South Cherry and Proteus, Proteus/Bollman became a secured creditor of South Cherry to the tune of $1 million – a substantial sum of money. Exhibit 7 does not establish that Bollman had any control over South Cherry's investments: the actual wire transfer instructions came from Groothius, not Bollman (Bollman's letter to the bank said as much), and Proteus' status as a secured creditor of South Cherry explains why Bollman's authorization might have been required before South Cherry could make so substantial an investment (there is, unfortunately, no testimony on the point).

Second, these letters say nothing about who made the decision to invest in MJ Whitman (or in Bayou, or in any other hedge fund). The arbitration clause whose application is here at issue purports to bind Bollman and "all other entities that may invest in hedge funds for which Mr. Bollman is authorized under the terms of any applicable plan, trust, partnership agreement or other governing instrument and by any applicable law to retain Hennessee and to make investments in hedge funds........" Nothing in either letter at the end of Exhibit 7 indicates that Bollman was authorized, under the terms of any document or law, to retain Hennessee on South Cherry's behalf, or to make investments in hedge funds on South Cherry's behalf. Indeed, it appears that South Cherry was required to make the investment, since Groothius directed the wire transfer.

Defendants are correct that Bollman did not identify Proteus, his own investment vehicle (through which Bollman apparently made an investment in a hedge fund – albeit not Bayou – on Hennessee's recommendation) when he filled out the Investment Advisory Agreement. Perhapsy he should have done so. But one cannot infer from Bollman's silence about *his own* wholly-owned investment vehicle, over which he clearly has control, that Bollman must also have had control over Groothius' investment vehicle, in which Bollman had no ownership interest whatever. Defendants' argument is a complete non sequitur.

I thus agree with the learned Magistrate Judge that the evidence does not support a finding that Bollman had actual authority over South Cherry's investments.

**Apparent Authority**: Defendants also argue that South Cherry conferred apparent authority on Bollman to sign the Investment Advisory Agreement (and agree to the arbitration clause). This issue is harder to analyze.

As Judge Fox correctly observed, only the act or omissions of a principal can create the appearance of authority – not the acts of the purported agent, no matter how convincing. Karavos Compania Naviera S.A. v. Atlantic Export Corp., 588 F. 2d 1, 10 (2d Cir. 1978). Therefore, the evidence that needs to be analyzed on this point is evidence concerning the acts and omissions of Groothius, not Bollman.

The evidence adduced at the hearing certainly established an intertwined relationship between Bollman and Groothius and their respective investment vehicles. It also established that South Cherry was aware of the intertwining.

For example, Groothius (the accountant) testified that he was authorized to sign Proteus checks – i.e., that he was an actual agent of Proteus. That fact does not, of course, give rise to the conclusion that Bollman was authorized to enter into contracts on behalf of South Cherry – i.e., that Bollman was an agent of South Ferry. The one does not necessarily follow from the other.

The hearing evidence established that, despite the purported need to keep a "bright line" between South Cherry and Proteus for tax reasons, there were a number of instances in which the "line" was anything but "bright." For example, Bollman received invoices on behalf of South Cherry as well as Proteus, and some of those invoices showed South Cherry investments as belonging to Bollman. Of course, any error in this regard was made by Hennessee, not by South Cherry; yet Groothius admitted that he never advised Hennessee that these investments were not Bollman's, or told defendant to correct its records. Proteus paid at least one 2001 invoice relating to a South Cherry investment in an entity called West Broadway, and Groothius used a Proteus check – with Bollman's name on it – to pay a 2003 fee in connection with that same investment. Groothius also sent an email to Piscopo in May 2004, requesting a summary of "the fee structure of all the funds *we* are currently in, especially Bayou and the fee arrangement with Hennessee."

All of this suggests that there was an unusually close relationship between this particular accountant and his clients; that they invested together (the only fair import of the phrase "all the funds *we* are currently in"); and even that funds belonging to one entity were occasionally used to pay th debts of another entity. It even suggests that the tax strategy Groothius devised was not necessarily consistent with the facts. But whether Bollman is entitled to his tax advantage is not the issue here. The question for this court is whether the evidence fairly suggests that Bollman was authorized to enter into a contract on behalf of South Cherry.

I agree with the learned magistrate judge that the answer is no. The evidence might suggest to Hennessee that Groothius could act on behalf of Bollman, but there is nothing in this evidence suggesting that Bollman could act on behalf of Groothius/South Cherry. Certainly nothing fairly suggests that Bollman could bind South Cherry to an arbitration agreement. Nor is there any evidence in the record that Bollman authorized the investments made by South Cherry – or even that he, as opposed to Groothius, directed Hennessee to process any such investments.

Hennessee was clearly aware of both Groothius and South Cherry and the fact that they had invested in hedge funds through Hennessee. Hennessee could have had Groothius sign an

Investment Advisory Agreement, but did not. Hennessee's belief that there was no need for any such written agreement, because South Cherry was encompassed by Bollman's Investment Advisory Agreement – notwithstanding Bollman's statement in the Accredited Investor Profile that he was investing solely for his own account – is nothing more than an assumption on its part. Unfortunately for defendants, the evidence does not bear out the assumption.

    Like Magistrate Judge Fox, I conclude that Bollman had neither actual nor apparent authority to bind South Cherry to the Investment Advisory Agreement with its arbitration clause – notwithstanding the fact that the complaint describes Bollman as South Cherry's "agent" for unspecified purposes. I therefore deny the defendants' motion to stay this action and to compel arbitration.

    This constitutes the decision and order of the Court.

Dated: December 5, 2006

                                                                                  _____
                                                                                               U.S.D.J.

BY FAX TO ALL COUNSEL