ADELMAN LAVINE GOLD SCHILDHORN AND KLEBAN,
A Professional Corporation
4 Penn Center, Suite 900
Philadelphia, PA 19103
Telephone: (215) 568-7515
Facsimile: (215) 557-7922
Gary M. Schildhorn, Esquire (Admitted *Pro hac vice*)

*Attorneys for Broad-Bussel Limited Partnership,*
*Marie-Louise Michelsohn, Michelle Michelsohn,*
*and Herbert Blaine Lawson, Jr., individually and*
*on behalf of all other persons and entities similarly situated*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ———————————————————— X | : | |
| In re: | : | Chapter 11 |
| | : | |
| BAYOU GROUP, LLC, et al., | : | Case No. 06-22306 (ASH) |
| | : | |
| Debtors. | : | Jointly Administered |
| ———————————————————— X | | |

## APPLICATION PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE DIRECTING THE PRODUCTION OF DOCUMENTS BY THE DEBTORS AND ENFORCEMENT OF PROTECTIVE ORDER DATED AUGUST 23, 2006

The Broad-Bussel Family Limited Partnership, Marie-Louise Michelsohn, Michelle

Michelsohn and Herbert Blaine Lawson, Jr. (the "Class Plaintiffs"), by and through their

undersigned counsel, hereby submit this Application (the "Application") for entry of an Order

pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 2004")

directing the production of documents by Bayou Group, LLC ("Bayou Group"), Bayou

Management, LLC ("Bayou Management"), Bayou Advisors, LLC ("Bayou Advisors"), Bayou

Equities, LLC ("Bayou Equities"), Bayou Fund, LLC ("Bayou Fund"), Bayou Superfund, LLC

("Bayou Superfund"), Bayou No Leverage Fund, LLC ("Bayou No Leverage"), Bayou Affiliates

Fund, LLC ("Bayou Affiliates"), and Bayou Accredited Fund, LLC ("Bayou Accredited")

(collectively, the "Debtors"). In support of the Application, the Class Plaintiffs respectfully represent to the Court as follows:

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1.    The Court is well-versed in the facts of this case and the Bayou family of hedge funds ("Bayou Hedge Funds") and their ultimate demise. The Debtors are an affiliated group of entities that created, operated, comprised, and controlled private pooled investment funds (commonly known as "hedge funds"). To conceal unattractive investment performance and their own misconduct, the Debtors operated the Bayou Hedge Funds in the manner of a fraudulent Ponzi scheme, and engaged in a series of fraudulent actions and transactions in furtherance of this criminal scheme.

2.    The Class Plaintiffs and other similarly situated persons and entities were, during the period between December 31, 1996 and August 25, 2005, damaged by investing in one or more of the Bayou Hedge Funds (the "Class").

3.    On November 17, 2005, the Class Plaintiffs, individually and on behalf of the Class, filed a Class Action Complaint in the United States District Court for the District of Connecticut, Civil Action No. 3:05-CV-01762-JBA (the "Class Action"), which was amended on March 6, 2006 (the "Amended Class Action Complaint"). The Amended Class Action Complaint asserts contract, tort and other claims against the Debtors and others, including Bayou Securities, LLC, Bayou Securities, LTD, Bayou Partners, LLC, Bayou Offshore Fund, LLC, IM Partners, IMG, LLC, Samuel Israel, III ("Israel"), Daniel E. Marino ("Marino"), Richmond-Fairfield Associates, CPA, PLLC ("Richmond-Fairfield"); James G. Marquez ("Marquez"); Citibank N.A. ("Citibank"); Jeffrey D. Fotta, Eqyty Research and Management, LLC, and Eqyty Research and Management, LTD (the "Fotta Defendants"); Faust Rabbach & Oppenheim LLP

2

and Steven D. Oppenheim (the "Oppenheim Defendants"); and Hennessee Group LLC, Elizabeth Lee Hennessee and Charles J. Gradante (the "Hennessee Defendants").

4.    On December 30, 2005, the Class Plaintiffs moved before the Judicial Panel on Multidistrict Litigation to consolidate in a single court all actions related to the Class Action (the "MDL Transfer Motion"). On April 18, 2006, the MDL Transfer Motion was granted and all Bayou-related cases pending in different courts throughout the country were transferred to the United States District Court for the Southern District of New York (the "District Court"), which had also been presiding over multiple related criminal, civil and regulatory proceedings. The Class Action is currently pending in the District Court, docketed as No. 06 Civ. 3026 (CM), and is part of the coordinated proceedings captioned In re Bayou Hedge Funds Investment Litigation, MDL No. 1755 (CM).

5.    On May 30, 2006, the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). By Order of the United States District Court for the Southern District of New York dated April 25, 2006, Jeff J. Marwil, Esquire (the "Receiver") was appointed receiver of the entities comprising the Debtors as well as Bayou Securities LLC. (The terms "Debtors" and "Receiver", in his official capacity as representative of the Debtors, are used herein interchangeably.)

6.    On or about August 15, 2006, the Class Plaintiffs filed with this Court a Motion of the Class Plaintiffs for Declaratory Relief and a Motion of Class Plaintiffs to Partially Withdraw the Reference of the Bayou Bankruptcy Case (collectively, the "Motions").

7.    The Motions were subsequently withdrawn in connection with a Stipulation which was entered into between the Debtors and Class Plaintiffs regarding the Motions.

3

8.    The current status of the Class Action is as follows: On May 31, 2006, the

Hennessee Defendants and defendant Citibank filed motions to dismiss the Amended Class

Action Complaint. On July 6, 2006, the Oppenheim Defendants also filed a motion to dismiss.

On May 31 and June 12, 2006, respectively, the Fotta Defendants and defendant Marquez filed

an Answer to the Amended Class Action Complaint. The Debtors and certain other Bayou-

related defendants have never responded to the Amended Class Action Complaint. On

September 7, 2006 and January 18, 2007, respectively, the District Court granted the motions to

dismiss filed by defendant Citibank and the Oppenheim Defendants. On January 19, 2007, the

District Court denied in part and granted in the Hennessee Defendants' motion to dismiss,

dismissing Hennessee Group LLC on jurisdictional ground and a state statutory claim against all

of the Hennessee Defendants, but otherwise sustaining the claims asserted against those

defendants. In response to that decision, one of the Class Plaintiffs and another Bayou investor

have filed a new related class action in the District Court against the Hennessee Defendants in

order to address the jurisdictional deficiency with respect to Hennessee Group LLC. This related

action is captioned <u>Broad-Bussel Family L.P., et al. v. Hennessee Group LLC</u>, No. 07-cv-2026.

Moreover, the plaintiffs in this related action have also filed a motion to consolidate that action

with the Class Action; that motion is pending *sub judice*.

9.    The Class Plaintiffs require immediate access to the Debtors' documents in order

to conduct discovery in connection with the filing of a motion for class certification in the Class

Action. Specifically, on February 15, 2007, the District Court held a status conference on the

Class Action and related Bayou litigations. On February 21, 2007, the District Court issued a

Minute Order from the February 15 conference ordering that all class certification discovery in

4

the Class Action be completed by May 31, 2007 and that the Class Plaintiffs file their motion for class certification by July 15, 2007.

10.     The Class Plaintiffs have filed Proofs of Claim in these bankruptcy proceedings. Specifically, plaintiff Broad-Bussel Family L.P. filed Claim Nos. 710, 711, 781, 789, 790, 791, 792, 977 and 978; plaintiff Marie-Louise Michelsohn filed Claim Nos. 738, 756, 757, 758, 759, 793, 912, 913 and 931; plaintiff Michelle Michelsohn filed Claim Nos. 723, 724, 728, 729, 765, 766, 834, 1068 and 1070; and plaintiff Herbert Blaine Lawson, Jr. filed Claim Nos. 767, 768, 769, 783, 835, 845, 846, 847 and 848. In total, the Class Plaintiffs have filed claims against the Debtor's estate in excess of $4,350,000.

## PREDICATES FOR RELIEF

11.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 18 U.S.C. § 157(b). Venue is properly before this Court under 28 U.S.C. §§ 1408 and 1409. The legal predicate for the relief sought herein is Bankruptcy Rule 2004.

## RELIEF REQUESTED

12.     For all of the reasons set forth herein, the Class Plaintiffs assert that at this stage of the proceedings it is wholly appropriate that the Debtors be compelled to produce certain documents to the Class Plaintiffs.

13.     The Class Plaintiffs assert that the Debtors presently retain documents that may provide material information concerning the conduct and operation of the Bayou Hedge Funds, as it relates to the claims asserted by the Class Plaintiffs in the Class Action, which could, in part, support class certification and further substantiate claims against certain third party defendants (including those third party defendants who have been dismissed from the Class

Action). The Class Plaintiffs believe that the Debtors retain information regarding the actions and inactions of certain third parties, which may demonstrate the liability of such third parties for losses that the Class Plaintiffs have incurred. Any recovery against such third parties by the Class Plaintiffs may reduce the Class Plaintiffs' claims against the Debtors' estates.

14.    Bankruptcy Rule 2004 provides, in relevant part, as follows:

(a)    Examination on Motion. On motion of any party in interest, the Court may order the examination of any entity.

(b)    Scope of Examination. The examination of an entity under this rule or of the Debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the Debtor, or to any matter which may affect the administration of the Debtor's estate, or to the Debtor's right to a discharge...

(c)    Compelling Attendance and Production of Documentary Evidence. The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

15.    As equity securities holders and creditors of the Debtors, the Class Plaintiffs and the Class are undeniably parties in interest within the context of these Chapter 11 bankruptcy proceedings. See 11 U.S.C. § 1109(b) (providing that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and may be heard on any issue" in a Chapter 11 proceeding).

16.    It is well-established that the scope of an examination under Bankruptcy Rule 2004 is unfettered and broad. In re Vantage Petroleum Corp., 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983). Indeed, the examination can even "legitimately be in the nature of a 'fishing expedition'". In re M4 Enterprises, Inc., 190 B.R. 471, 474 (Bankr. N.D. Ga. 1995); see also In re Valley Forge Plaza Assoc., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) ("R2004 permits a party

6

invoking it to undertake a broad inquiry of the examiner, in the nature of a fishing expedition.");
In re Frigitemp Corp., 15 B.R. 263, 264 n.3 (Bankr. S.D.N.Y. 1981) (noting that predecessor to
Rule 2004 examinations have been likened to "fishing expeditions"). "[The discovery] is not
limited to the debtor or his agents, but may properly extend to creditors and third parties who
have had dealings with the debtor." In re Federated Department Stores, Inc., Cons. Case No. 1-
90-00130, 1990 Bankr. LEXIS 1143, at *7 (citing Chereton v. United States, 286 F.2d 409, 413
(6th Cir. 1961)).

17.    Examinations under Bankruptcy Rule 2004(a) and (c) may include within their
scope, among other things: any matter which may relate to the property and assets of the estate;
the financial condition of the debtor; any matter which may affect the administration of a
debtor's estate; and, in a Chapter 11 case as here, any matter relevant to the case or to the
formulation of a plan. The information sought by the Class Plaintiffs in connection with this
Application is consistent with Rule 2004, as it clearly relates to matters which may affect the
administration of the Debtors' estates.

18.    Here, the Class Plaintiffs are seeking documents from the Debtors that directly
relate to the operations of the Bayou Hedge Funds and the interactions between and among
various of the Bayou-related entities and certain third parties, all of which could buttress the
Class Plaintiffs' claims against said third parties in the Class Action and which, in turn, would
reduce the Class Plaintiffs' claims against the Debtors' estates. As such, the Class Plaintiffs
assert that granting this Application pursuant to Rule 2004 for the production of documents by
the Debtors would substantially benefit the Debtors' estates by potentially reducing the Class
Plaintiffs' claims against the Debtors' estates. See In re Mittco, Inc., 44 B.R. 35, 38 (Bankr. E.D.
Wis. 1984) (discussing that when a 2004 examination is being conducted with "the prime aim of

benefiting the bankruptcy estate, the fact that it may also produce information which in turn may collaterally be used by third parties in separate litigation outside of the bankruptcy case, is no reason to restrict its use or to shield parties . . . from such possible litigation").

19.    The Class Plaintiffs are aware that this Court entered a Protective Order Governing the Production and Use of Confidential Material (the "Protective Order"), on or about August 23, 2006. A copy of the Protective Order is attached as Exhibit "A" to the accompanying Proposed Order. The Protective Order provides, in part, that "[n]othing herein shall reduce the rights of any non-Party to obtain disclosure in any other action by subpoena or otherwise. Upon written request of any Party, Producing Party, or party-in-interest (each, a 'Requesting Party'), the Debtors shall make available for review materials produced herein by a Producing Party that are not marked or deemed Confidential or Highly Confidential hereunder and such Requesting Party may arrange to make or obtain a copy of such materials at the sole cost and expense of the such Requesting Party." Protective Order ¶¶ 4, 8 ("Nothing in this Order shall restrict the right of any Producing Party, Party, or non-Party from seeking discovery of materials produced herein in connection with actions other than the adversary proceedings herein, whether by subpoena, document request, court-order or otherwise ('Separate Action Compulsory Disclosure').").

20.    The Debtors have advised the Class Plaintiffs that they are not in possession of any documents that have not been marked as either "Confidential" or "Highly Confidential", in accordance with the terms of the Protective Order. As a result, and in addition to the Class Plaintiffs' request for the production of documents by the Debtor, the Class Plaintiffs seek relief consistent with the terms of the Protective Order so that the documents designated in accordance with the Protective Order may be disclosed to the Class Plaintiffs, as the Protective Order provides that materials designated as "Confidential" may be disclosed to "[a]ny other person

designated by the Court, upon such terms as the Court may deem proper." Protective Order ¶ 2(k). Therefore, the Class Plaintiffs are seeking Separate Action Compulsory Disclosure in accordance with the Protective Order.

21.    The Class Plaintiffs are willing to be bound by the terms of the Protective Order. The Class Plaintiffs request that this Court resolve any objections to the Proposed Order seeking the document production and the enforcement of the Protective Order at the hearing on this Application.

## NOTICE

22.    Notice of this Application has been given in accordance with the Order Establishing Notice Procedures dated May 31, 2006. In addition, notice of this Application has been given to the Debtors, and all parties who are required to receive notice pursuant to the terms of the Protective Order. The Class Plaintiffs respectfully submit that no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

23.    Because this Application presents no novel issues of law and the authorities relied upon by the Class Plaintiffs are set forth herein, the Class Plaintiffs respectfully request that the Court waive the requirement for the filing of a separate memorandum of law in support of this Application pursuant to Local Bankruptcy Rule 9013-1(b).

## PRIOR REQUEST FOR RELIEF

24.    No previous application for the relief sough herein has been made to this or any other Court.

WHEREFORE, the Class Plaintiffs respectfully request entry of an order:

(a)    granting the relief requested in this Application;

(b)    directing the Debtors to produce the documents described in the Document

Request Subpoena attached as Exhibit "B" to the accompanying Proposed Order in accordance

with the terms of the Protective Order; and

(c)    granting the Class Plaintiffs such other and further relief as the Court deems just

and proper.


Dated:  March 27, 2007
        White Plains, New York

               Respectfully submitted,

               ADELMAN LAVINE GOLD
               SCHILDHORN AND KLEBAN,
               A Professional Corporation


By:    */s/ Gary M. Schildhorn*
               GARY M. SCHILDHORN, ESQUIRE
               4 Penn Center, Suite 900
               Philadelphia, PA  19103
               Telephone:  (215) 568-7515
               Facsimile:  (215) 557-7922

               -and-

               BERGER & MONTAGUE, P.C.
               MERRILL G. DAVIDOFF, ESQUIRE
               LAWRENCE J. LEDERER, ESQUIRE
               LANE L. VINES, ESQUIRE
               1622 Locust Street
               Philadelphia, PA  19103
               Telephone:  (215) 875-3000
               Facsimile:  (215) 875-4604

               *Attorneys for Broad-Bussel Limited Partnership,*
               *Marie-Louise Michelsohn, Michelle Michelsohn*
               *and Herbert Blaine Lawson, Jr., individually and*
               *on behalf of all other persons and entities similarly*
               *situated*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— X
                                              :
In re:                                        :        Chapter 11
                                              :
BAYOU GROUP, LLC, et al.,                     :        Case No. 06-22306 (ASH)
                                              :
                              Debtors.        :        Jointly Administered
———————————————————— X

### ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE DIRECTING THE PRODUCTION OF DOCUMENTS BY THE DEBTORS AND ENFORCEMENT OF PROTECTIVE ORDER DATED AUGUST 23, 2006

Upon the Application (the "Application") of the Broad-Bussel Family Limited

Partnership, Marie-Louise Michelsohn, Michelle Michelsohn and Herbert Blaine Lawson, Jr.

(the "Class Plaintiffs"), for entry of an Order pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure ("Bankruptcy Rule 2004") directing the production of documents by

Bayou Group, LLC ("Bayou Group"), Bayou Management, LLC ("Bayou Management"), Bayou

Advisors, LLC ("Bayou Advisors"), Bayou Equities, LLC ("Bayou Equities"), Bayou Fund,

LLC ("Bayou Fund"), Bayou Superfund, LLC ("Bayou Superfund"), Bayou No Leverage Fund,

LLC ("Bayou No Leverage"), Bayou Affiliates Fund, LLC ("Bayou Affiliates"), and Bayou

Accredited Fund LLC ("Bayou Accredited") (collectively, the "Debtors"); and notice of the

Application having been given in accordance with the Order Establishing Notice Procedures

dated May 31, 2006, as well as to the Debtors, and no other or further notice being required; and

sufficient cause appearing therefore, it is hereby

ORDERED that the Application is granted in its entirety; and it is further

ORDERED that the Debtors are directed to produce all documents marked "Confidential"

and/or "Highly Confidential," as defined in the Protective Order, attached as Exhibit "A", upon

receipt of an executed Undertaking Concerning Confidential Material Covered By Protective Order from the Class Plaintiffs' counsel; and it is further

ORDERED that the Class Plaintiffs are hereby authorized to issue a subpoena and other process to compel the production of documents ("Document Request Subpoena"), and each of the Debtors is directed to produce in response to the Document Request Subpoena all responsive documents described in Exhibit B annexed hereto so as to be received not later than twenty (20) days after the entry of an Order on this Application, subject to the withholding of any documents under a claim of privilege, by delivery via overnight courier, or such other means as the Debtors may elect, to Lawrence J. Lederer, Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA 19103; and it is further

ORDERED that the Order is without prejudice to the rights of the Class Plaintiffs to apply for further discovery of any other person or entity; and it is further

ORDERED that this Court shall retain jurisdiction to resolve any issues with respect to this Order and the requested production of documents.


Dated: _____, 2007
       White Plains, New York




                              _____
                                United States Bankruptcy Judge

2

**EXHIBIT A – PROTECTIVE ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :
In re:                                                        :    Chapter 11
                                                              :
BAYOU GROUP, LLC, et al.,                                     :    Case No.: 06-22306 (ASH)
                                                              :
                                Debtors.                      :    Jointly Administered
                                                              :
------------------------------------------------------------- X

### PROTECTIVE ORDER GOVERNING THE
### PRODUCTION AND USE OF CONFIDENTIAL MATERIAL

This Protective Order shall govern the production, review, and handling of materials,

testimony and other information produced, given, or exchanged in connection with these

bankruptcy cases, including any adversary proceedings in connection therewith, whether in

response to formal or informal discovery requests issued by Bayou Group, LLC, Bayou

Management, LLC, Bayou Advisors, LLC, Bayou Equities, LLC, Bayou Fund, LLC, Bayou

Superfund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, and Bayou

Accredited Fund, LLC (collectively, the "Debtors") or issued by any party or non-party to an

adversary proceeding commenced in these bankruptcy cases or in response to any Order of the

Court (the Debtors and  all adversary proceeding defendants, current and future,, are collectively

hereinafter referred to as the "Parties").

1.      Parties and non-parties producing documents or providing testimony or other

information herein (each a "Producing Party") may designate as "Confidential" any such

material or information which the Producing Party in good faith believes is non-public and

contains confidential financial, commercial, personal, personnel, or proprietary information,

including confidential information of a Producing Party's clients, the use and dissemination of

which should be limited as provided herein.  "Confidential" material, as used herein, shall

include any document, testimony, or other discovery materials and copies thereof that is so designated, and shall also refer to the information contained in such materials.

      2.      Materials designated "Confidential" and the information contained therein shall be maintained in confidence and, to the extent not otherwise prohibited by any order of the Court, shall only be disclosed to the following persons:

      a.      The Court, its personnel, any other person (such as a master or mediator) who serves in a judicial or quasi-judicial function, professional court reporters engaged to transcribe testimony, and any appellate court and related personnel;

      b.      Counsel for the Debtors, and employees of such counsel assigned to and necessary to assist such counsel in connection with the Debtors' bankruptcy cases, including any adversary proceeding in connection therewith, or with any investigation or prosecution of potential claims against third parties;

      c.      The Debtors, by their sole managing member;

      d.      Non-party financial advisors, experts, or consultants retained in good faith to assist the Debtors in connection with the Debtors' bankruptcy cases, including any adversary proceeding in connection therewith, or with any investigation or prosecution of potential claims against third parties provided that prior to the time that any such financial advisor, expert, or consultant is given access to Confidential material, counsel for the Debtors shall provide such expert or retained professional with a copy of this Protective Order and such financial advisor, expert, or consultant shall execute an undertaking in the form of Exhibit A hereto agreeing to be bound by this Order, which undertaking shall be retained by counsel for the Debtors;

      e.      Counsel and other advisors for the Official Committee of Unsecured Creditors (the "Committee"); provided however, that the information set forth in confidential

materials may be disclosed to members of the Committee only in summary form without reference to parties' identities or specific data; and further provided that prior to the time that any member of the Committee is given access to such summaries, counsel for the Committee shall provide such member with a copy of this Protective Order and such member shall execute an undertaking in the form of Exhibit A hereto agreeing to be bound by this Order, which undertaking shall be retained by counsel for the Committee;

      f.    The United States Attorney for the Southern District of New York and the receiver appointed by the United States District Court for the Southern District of New York in USA v. All Assets of Bayou Accredited Fund, LLC, 05 CV 7722 (CM); and

      g.    Any Party and any counsel (including in-house counsel), officer, director or employee of any Party, and any expert or consultant retained in good faith by any Party provided that each such officer, director, employee, expert, or consultant sign an undertaking in the form attached as Exhibit A hereto agreeing to be bound by this Order;

      h.    Court reporters, stenographers, or video operators at depositions, court, or arbitral proceedings at which Confidential material is disclosed;

      i.    Non-party trial or non-party deposition witnesses, and their counsel, provided that such person(s) signs an undertaking in the form attached hereto as Exhibit A agreeing to be bound by this Protective Order;

      j.    Clerical and data processing personnel involved in the production, reproduction, organizing, filing, coding, cataloging, converting, storing, retrieving, and review of Confidential information, to the extent reasonably necessary to assist the Parties or their counsel; and

k.    Any other person designated by the Court, upon such terms as the Court may deem proper.

3.    In the event that a Producing Party deems all or any part of a document, testimony or other material, or the information contained therein, to be particularly sensitive, confidential or proprietary so that its disclosure to any individual identified in paragraph 2 poses a reasonable risk of (i) appreciable competitive or other significant harm to the Producing Party or non-party (or to a third party that supplied the documents) or (ii) a breach of the Producing Party's legal obligation of confidentiality ("Highly Confidential" material), then the Producing Party may designate such materials "Highly Confidential – Attorney's Eyes Only."   The designation of materials as Highly Confidential shall constitute a certification by the Producing Party that the standards set forth herein for such designation have been satisfied.  Except upon further order of the Court, or by express written consent of counsel for the Producing Party, disclosure of documents, things, and testimony designated "Highly Confidential – Attorneys' Eyes Only" and any information contained therein, shall only be disclosed to:

a.    The Court, persons employed by the Court, the jury or stenographers transcribing the testimony or argument at a hearing, trial or deposition, or any appeal therefrom;

b.    Counsel to the Parties and such counsel's clerical, paralegal and secretarial staff;

c.    The Debtors' sole managing member;

d.    The United States Attorney for the Southern District of New York and the receiver appointed by the United States District Court for the Southern District of New York in USA v. All Assets of Bayou Accredited Fund, LLC, 05 CV 7722 (CM); and

4

e.      trial or deposition witnesses, including expert witnesses, who are

employed by the Producing Party or who previously received such materials in the ordinary course of

business not more than thirty (30) days before the scheduled testimony ("Exempted Witnesses") and trial

or deposition witnesses, including expert witnesses, who are not Exempted Witnesses, provided

that such person(s) signs and delivers to opposing counsel an undertaking in the form attached as Exhibit A

hereto agreeing to be bound by this Protective Order and consenting to the jurisdiction of this Court,

and provided further that the party producing the "Confidential Information – Attorneys' Eyes

Only" material to a trial or deposition witnesses, including expert witnesses, other that an

Exempted Witness, shall be advised in advance by opposing counsel of the identity of such person(s)

and shall be given seven (7) business days in which to make any appropriate applications to

the Court concerning the disclosure of such material.

4.      Nothing contained in this Protective Order shall be deemed to expand the rights of

any Party to obtain materials of a Producing Party. Nothing herein shall reduce the rights of any

non-Party to obtain disclosure in any other action by subpoena or otherwise. Upon written

request of any Party, Producing Party, or party-in-interest (each, a "Requesting Party"), the

Debtors shall make available for review materials produced herein by any Producing Party that

are not marked or deemed Confidential or Highly Confidential hereunder and such Requesting

Party may arrange to make or obtain a copy of such materials at the sole cost and expense of

such Requesting Party.

5.      Information disclosed at a deposition may be designated "Confidential" or

"Highly Confidential – Attorneys' Eyes Only" on the record during the deposition or within

thirty (30) days of receipt of the transcript by written notice to counsel to all the parties.

Transcripts of testimony so designated during the deposition may, at the option of counsel for the

Debtors or the designating party, be appropriately marked and bound separately. All depositions shall be treated in their entirety as "Confidential" information for a period of thirty (30) days after receipt of the transcript. Nothing herein precludes the deponent from reviewing the transcript at any time.

6.      Neither the termination of these bankruptcy cases nor the termination of employment of any person who has had access to any "Confidential" or "Highly Confidential – Attorneys' Eyes Only" information shall relieve such person from the obligation of maintaining the confidentiality of such information.

7.      Nothing in this Protective Order shall limit a Producing Party's use or disclosure of its own Confidential or Highly Confidential material.

8.      Nothing in this Protective Order shall be taken as indicating or finding that any discovery materials are in fact Confidential or Highly Confidential or entitled to confidential treatment. No Party shall be obligated to challenge the propriety of a Confidential or Highly Confidential designation at the time made by a Producing Party, and a failure to do so shall not preclude a subsequent challenge thereto by any Party or by any non-Party. In the event that the Producing Party or any Party disagrees at any stage of these proceedings with the designation by a Producing Party of documents designated Confidential or Highly Confidential, the Parties and the Producing Party shall try first to resolve such dispute in good faith on an informal basis. If the dispute cannot be resolved, any Party may move the Court to do so. Nothing in this Order shall restrict the right of any Producing Party, Party, or non-Party from seeking discovery of materials produced herein in connection with actions other than the adversary proceedings herein, whether by subpoena, document request, court-order or otherwise ("Separate Action Compulsory Disclosure"). In the event of such Separate Action Compulsory Disclosure, the

requirements of paragraph 20 shall be complied with, but this Order shall not limit or alter the rights of the litigant seeking the Separate Action Compulsory Disclosure in the action wherein such disclosure is sought.

9.      No designation of Confidential or Highly Confidential material shall be effective unless there is placed or affixed on each page of such material (in such manner as will not interfere with the legibility thereof) a "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" notice or the equivalent. When Confidential or Highly Confidential information is disclosed in a form not appropriate for such placing or affixing it shall be designated in writing as Confidential or Highly Confidential at the time it is delivered to the receiving party.

10.     All discovery materials (and the information contained therein), whether designated Confidential or Highly Confidential or not so designated, shall be used by the Parties solely for: (i) any adversary proceeding in connection with these bankruptcy cases; (ii) investigation by the Debtors with regard to the acts, conduct, or property or to the liabilities and financial condition of the Debtors and to determine whether claims should be asserted against third parties, including a Producing Party; and (iii) prosecution of any claims asserted by the Debtors against any party, including a Producing Party. Material designated Confidential or Highly Confidential shall not be used by any Party who has obtained such material in connection with these bankruptcy cases, including any adversary proceedings in connection herewith, for any business, commercial, competitive, personal, other litigation, or other purpose and any such use shall be a violation of this Protective Order. Nothing in this Order shall restrict the right of any Producing Party, Party, or non-Party from seeking Separate Action Compulsory Disclosure

of materials produced herein in connection with actions other than the adversary proceedings herein.

11.    The Party recipient or other recipient hereunder of any Confidential or Highly Confidential information that is produced pursuant to this Protective Order shall maintain such Confidential or Highly Confidential information in a secure and safe area, and the recipient shall exercise all reasonable standards of due and proper care with respect to the storage, custody and use of such Confidential or Highly Confidential information so that it is not further disclosed or used, either intentionally or inadvertently in any manner inconsistent with this Protective Order.

12.    In the event that Confidential or Highly Confidential materials are used in an open court or deposition in connection with any trial, hearing or other proceeding in the bankruptcy cases or any appeal therefrom, they shall not lose their status through such use. Counsel shall confer on such procedures as are necessary to protect the confidentiality of information used in the course of the proceedings.  If the Parties are unable to agree on procedures, the Parties shall request a ruling from the Court.

13.    Nothing shall prevent disclosure beyond the terms of this Protective Order if the Producing Party designating material as Confidential or Highly Confidential consents to such disclosure in writing, or if the Court orders such disclosure.  On notice, any Party may apply to the Court for relief related to or from this Order.

14.    The Parties shall not be responsible to a Producing Party, and shall not be deemed to have violated the terms of this Protective Order, for any use made of information produced and not identified as Confidential or Highly Confidential, provided that a Producing Party may remedy any failure to designate materials as Confidential or Highly Confidential at the time of their production by furnishing a substitute copy of the materials properly marked along with

8

written notice that such materials are deemed Confidential or Highly Confidential. Upon

receiving such written notice, the Parties shall thereafter treat the designated materials in

accordance with the terms of this Protective Order.

15.     Nothing in this Protective Order shall require disclosure of any material that a

Producing Party contends is protected from disclosure by the attorney-client privilege, work-

product doctrine immunity, or any other legally recognized privilege. The inadvertent

production of any document or information during discovery in this action shall be without

prejudice to any claim that such material is privileged under the attorney-client privilege, work-

product doctrine, or any other legally recognized privilege, and no Producing Party shall be held

to have waived any rights by such inadvertent production. Upon written request by the

inadvertently Producing Party, the Parties shall (i) return the original and all copies of such

documents and (ii) shall not use such information for any purpose unless allowed by order of the

Court.

16.     If designated material is disclosed to any person other than in the manner

authorized by this Protective Order, the Parties learning of the disclosure shall, immediately

upon learning of such disclosure, inform the Producing Party of all pertinent facts relating to

such disclosure and shall make every effort to retrieve the Confidential or Highly Confidential

material and to prevent disclosure by each unauthorized person who received such material.

17.     Nothing contained in this Protective Order shall be construed to have any effect

on the admissibility or discoverability of any Confidential or Highly Confidential material.

Nothing contained in this Protective Order shall be construed to limit the Parties' rights to use in

Court any Confidential or Highly Confidential material, except that no Confidential or Highly

Confidential material shall be filed in the public record of any action absent the consent of the

Producing Party or an order of the Court so permitting. In the event that any Party wants to file with the Court any Confidential or Highly Confidential material and the Producing Party does not consent to such material being filed in the public record, the Party shall make an application to the Court, on notice to the Producing Party, for (i) leave under 11 U.S.C. § 107(b), or other relevant rule, to file such material under seal, or (ii) a determination that such material should not be treated as Confidential or Highly Confidential. Notwithstanding Rule 7033-1(e) of the Local Bankruptcy Rules for the Southern District of New York, interrogatory responses designated Confidential or Highly Confidential – Attorneys Eyes Only shall not be filed with the Court.

18.     In the event that a Court permits any Confidential or Highly Confidential material to be filed under seal, such material, and any pleadings, motions, or other papers filed with the Court disclosing any such material, shall be filed in a sealed envelope (or other sealed container) which shall be endorsed with the title of the action, the words "CONFIDENTIAL INFORMATION" and a statement in substantially the following terms:

> This envelope contains [indication of the nature of the contents] which were filed in this action, [Caption], pending in the [Court], by [the Debtors], pursuant to Protective Order, and is not to be opened or the contents thereof to be displayed or revealed, except by further Order of the United States Bankruptcy Court for the Southern District of New York.

19.     The foregoing shall not prevent any appropriately marked second copy of any designated material specifically intended for review by a Court from being hand delivered to the Court to assure that the same is brought promptly to the Court's attention.

20.     If any Party or their counsel is served with a subpoena, notice, or are otherwise legally compelled to produce Confidential or Highly Confidential material, such Party or their counsel (the "Compelled Party") shall give prompt written notice to the Producing Party sufficiently in advance of the requested production date so as to allow for an opportunity to

10

object to production. In addition, the Compelled Party shall cooperate, at the Producing Party's request and sole cost and expense, with the Producing Party's efforts to resist disclosure of the Producing Party's Confidential or Highly Confidential material. If and to the extent such efforts to resist disclosure are not successful, the Compelled Party will disclose only such Confidential or Highly Confidential materials required to be disclosed.

21. The terms of this order shall remain with full force and effect until any adversary proceeding or any investigation or prosecution of potential claims against third parties is finally resolved, that is, until all appeals relating to any such actions have been exhausted or the time to appeal has expired ("Final Resolution"). Upon Final Resolution, a Producing Party may request that the Parties either (i) return all documents provided in response to the Discovery, or (ii) provide a certification stating that the Producing Party's documents have been destroyed. The restrictions set forth in any of the preceding paragraphs shall not apply to information or material that:

a. was, is or becomes public knowledge, not in violation of this Order;

b. is acquired from a third party having the right to disclose such information or material; or

c. was lawfully possessed prior to entry by the Court of this Order.

22. Materials produced prior to the entry of this Protective Order and in reliance on the anticipated entry of the Protective Order shall be subject to the terms of this Protective Order.

Dated: White Plains, New York
August 23, 2006

/s/ Adlai S. Hardin, Jr.
United States Bankruptcy Judge

11

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                  :

In re:                                 :    Chapter 11

                                 :

BAYOU GROUP, LLC, et al.,        :    Case No.: 06-22306 (ASH)

                                 :

               Debtors.        :    Jointly Administered

                                 :
------------------------------------------------------------- X

**UNDERTAKING CONCERNING CONFIDENTIAL**
**MATERIAL COVERED BY PROTECTIVE ORDER**

I, _____, declare that:

       1.      I have received a copy of the Protective Order dated August __, 2006 (the

"Protective Order") in this action, and I have carefully read and understand its provisions. I

acknowledge that I am one of the persons contemplated in the Protective Order as permitted

access to information designated "Confidential" or "Highly Confidential – Attorneys' Eyes

Only" by a Producing Party.

       2.      I will comply with all of the provisions of the Protective Order. I will hold in

confidence, will not disclose to anyone other than those persons specifically authorized by the

Protective Order, and will not copy or use for purposes other than for these cases and adversary

proceedings any information designated "Confidential" or "Highly Confidential – Attorneys'

Eyes Only" that I receive in these cases, except to the extent that such information designated

"Confidential" or "Highly Confidential – Attorneys' Eyes Only" is or becomes public domain

information or otherwise is not deemed "Confidential" or "Highly Confidential – Attorneys'

Eyes Only" in accordance with the Protective Order.

3.     I agree to subject myself personally to the jurisdiction of the Court for the purpose of proceedings relating to my performance under, compliance with, or violation of this Protective Order.

4.     I understand that disclosure of information designated "Confidential" or "Highly Confidential – Attorneys' Eyes Only" in violation of this Protective Order may constitute contempt of court.

5.     I declare under penalty of perjury that the foregoing is true and correct.

_____          _____
        Date                                      Signature
                                                  [Print Name]: _____

2

## EXHIBIT B – DOCUMENT REQUEST SUBPOENA

### Definitions and Instructions

A.     Pursuant to Rule 7026-1 of Local Rules for the United States Bankruptcy Court

for the Southern District of New York (the "Local Bankruptcy Rules"), the uniform definitions

and rules of construction set forth in Rule 26.3 of the Local Rules of the United States District

Courts for the Southern and Eastern Districts of New York are incorporated fully herein.

B.     As used herein:

(1)     "Bayou Entities" refers broadly to any and all of Bayou Group, LLC,

Bayou Management, LLC, Bayou Advisors, LLC, Bayou Equities, LLC, Bayou Fund, LLC,

Bayou Superfund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, and

Bayou Accredited Fund, LLC (collectively, the "Debtors"); Bayou Securities, LLC, Bayou

Securities, LTD and Bayou Partners, LLC (collectively, "Bayou Securities"); Bayou Offshore

Master Fund, LTD, Bayou Offshore Fund A, LTD, Bayou Offshore Fund B, LTD, Bayou

Offshore Fund C, LTD, Bayou Offshore Fund D, LTD, Bayou Offshore Fund E, LTD and Bayou

Offshore Fund F, LTD (the "Bayou Offshore Funds"); Debtors', Bayou Securities', or the Bayou

Offshore Funds' predecessors, successors, assigns, parent corporations, subsidiaries, divisions or

affiliates; hedge funds or other investment vehicles Debtors, Bayou Securities, or the Bayou

Offshore Funds operate or operated; Bayou Securities', or the Bayou Offshore Funds' bank

accounts; Debtors', Bayou Securities', or the Offshore Bayou Funds' current or former

principals, managing members, directors, officers, agents and employees, including but not

limited to Samuel Israel III, Daniel E. Marino and James G. Marquez; and Richmond-Fairfield

Associates, CPA, PLLC.

1

(2)     The "Bayou Hedge Funds" refers to Bayou Super Fund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, Bayou Accredited Fund, LLC, Bayou Offshore Fund, LLC, Bayou Fund, LLC, Bayou Offshore Fund A, LTD, Bayou Offshore Fund B, LTD, Bayou Offshore Fund C, LTD, Bayou Offshore Fund D, LTD, Bayou Offshore Fund E, LTD, Bayou Offshore Fund F, LTD and Bayou Offshore Master Fund, LTD.

(3)     "Bayou Operations" means for any of the Bayou Entities, any or all of the following, the solicitation of investor funds, the deposit of investor funds, the investments made, the gain or loss realized from such investment activity, the deposit, withdrawal, transfer or use of money controlled by the Bayou Entities, and the financial condition, results, operations or reporting of the Bayou Entities.

(4)     "Class Period" refers to December 31, 1996 through and including August 25, 2005.

(5)     "Class" refers to the Broad-Bussel Family Limited Partnership, Marie-Louise Michelsohn, Michelle Michelsohn, and Herbert Blaine Lawson, Jr., on behalf of themselves and all similarly situated Bayou hedge fund investors who purchased investment interests in one or more of the Bayou Hedge Funds during the Class Period and were thereby damaged.

(6)     "Bayou-related Persons" refers broadly to any and all of the following: IM Partners, IMG, LLC, Samuel Israel, III ("Israel"), Daniel E. Marino ("Marino"), Richmond-Fairfield Associates, CPA, PLLC ("Richmond-Fairfield"), James G. Marquez ("Marquez"), Jeffrey D. Fotta, Eqyty Research and Management, LLC, Eqyty Research and Management, LTD, Citibank, N.A., Faust Rabbach & Oppenheim LLP, Steven D. Oppenheim, Citibank, N.A., Hennessee Group LLC, Elizabeth Lee Hennessee and Charles J. Gradante.

(7)     "Citibank" refers to Citibank, N.A. and its present and former divisions, subsidiaries, affiliates, successors, parents, partners, officers, directors, and employees, whether located in the United States or in international locations, and other persons and entities acting or purporting to act on their behalf.

(8)     "Wachovia" refers to Wachovia Corp. and its present and former divisions, subsidiaries, affiliates, successors, parents, partners, officers, directors, and employees, whether located in the United States or in international locations, and other persons and entities acting or purporting to act on their behalf.

(9)     "Bayou Accounts" refers to all accounts, bank accounts, deposits, loans, financings and borrowings maintained by Citibank, Wachovia or any other person for or on behalf of any of the Bayou Entities, Israel, Marino, Marquez, Richmond-Fairfield, IM Partners, or IMG, LLC.

(10)     "April 2004 Transfer" refers to the transfer of about $150 million from one or more of the Bayou Accounts to an account at Barclay's Bank in London in or about April 2004, including but not limited to the subsequent transfer of such monies back to the Bayou Accounts.

(11)     "2005 Liquidation" refers to the transfer and/or withdrawal of a total of about $161 million from one or more of the Bayou Accounts in or about April through July 2005, including but not limited to a transfer of about $120 million from one or more of the Bayou Accounts to an account at Deutsche Postbank in Hamburg, Germany and a transfer of about $32 million to somewhere in the United States.

(12)     "Faust, Rabbach & Oppenheim" refers to Steven Oppenheim, and the law firm Faust, Rabbach & Oppenheim LLP and its present and former divisions, subsidiaries,

3

affiliates, successors, parents, partners, officers, directors, and employees, whether located in the United States or in international locations, and other persons and entities acting or purporting to act on their behalf.

(13)    "Fotta" refers to Jeffrey D. Fotta, and Eqyty Research and Management, LLC, Eqyty Research and Management, Ltd., Labor-Management Fund Advisors, LLC and their present and former divisions, subsidiaries, affiliates, successors, parents, partners, officers, directors, and employees, whether located in the United States or in international locations, and other persons and entities acting or purporting to act on their behalf.

(14)    "Goldman Sachs" refers to Goldman Sachs Execution and Clearing L.P. (f/k/a Spear, Leeds & Kellogg) and its present and former divisions, subsidiaries, affiliates, successors, parents, partners, officers, directors, and employees, whether located in the United States or in international locations, and other persons and entities acting or purporting to act on their behalf.

(15)    "Grant Thornton" refers to Grant Thornton LLP and its present and former divisions, subsidiaries, affiliates, successors, parents, partners, officers, directors, and employees, whether located in the United States or in international locations, and other persons and entities acting or purporting to act on their behalf.

(16)    "Hennessee" refers to Hennessee Group LLC, Elizabeth Lee Hennessee and Charles J. Gradante and their present and former divisions, subsidiaries, affiliates, successors, parents, partners, officers, directors, and employees, whether located in the United States or in international locations, and other persons and entities acting or purporting to act on their behalf.

(17)    "Investment Consultant" refers to any entity or person whose business involved rendering or providing investment advice, or facilitating or executing investment transactions, or in maintaining investments for investors.

(18)    "Class Action Complaint" or the "Class Action" refers to the Amended Class Action Complaint filed on or about March 6, 2006, in the United States District Court for the District of Connecticut, Civil Action No. 3:05-CV-01762-JBA, which was subsequently transferred to the Southern District of New York and assigned to the Honorable Colleen McMahon, captioned Broad-Bussel Family LP, et al. v. Bayou Group, LLC, et al., 06 Civ. 3026 (CM) (MDF) and coordinated with proceedings captioned In re Bayou Hedge Funds Investment Litigation, 06 MDL 1755 (CM)( MDF).

C.    The term "investment" means the purchase or holding of any shares, stock, securities, equity, property, asset, membership or other economic or participation interest.

D.    The term "thing" has the meaning prescribed in Rule 34 of the Federal Rules of Civil Procedure, and includes every type of physical specimen or tangible item other than a document.

E.    The term "including" means "including but not limited to."

F.    The term "document" is used in the broadest possible sense and means, without limitation, any thing or any written, printed, typed, photostatic, photographed, electronically recorded, electro-magnetically recorded, e-mail, computer disc or tape recorded, or electronic or otherwise reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies of duplicates or documents contemporaneously or subsequently created which have any non-confirming notes or other markings. Without limiting the generality of the foregoing,

5

"document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegraphs, e-mails, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings or other communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonograph records, filings, tapes, disks, data cells, printouts of information stored or maintained by computer or electronic data compilations from which information can be obtained, including, without limitation, electro-magnetically sensitive storage media such as floppy disks and hard disks, and preliminary versions, drafts or revisions of any of the foregoing.

G.     The term "communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and the originals and all non-identical copies of all documents you sent to or received from any person or entity (including, without limitation, inter- and intra-office memoranda, e-mail and other communications).

H.     The term "meeting" means the contemporaneous presence, whether in person or by conference telephone or other conference medium, of two or more persons, whether or not by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity.

I.     The terms "refers", "relate", "relating", "regarding", "concern", "concerning" and "in connection with" when used to describe documents are used in the broadest possible sense and include all documents which explicitly or implicitly comprise, reflect, record, memorialize, relate to, embody, discuss, mention, evaluate, consider, review or report on the subject matter of

the request, or that were created, generated, reviewed in conjunction with, or maintained as a result of, the subject matter of the request.

       J.      The term "identify" when used with reference to a document or documents, means to state, for each such document:

          (1)     its nature, e.g., letter, memorandum, photograph, etc.;

          (2)     its title or designation;

          (3)     the date it bears;

          (4)     the name, title, business affiliation, and business address of the person by whom the document was prepared;

          (5)     the name, title, business affiliation, and business address of all persons for whom the document was prepared or copied;

          (6)     the statement of the subject and substance of the document; and

          (7)     the location and custodian of the document.

       K.      The term "person" refers to natural persons or corporations, partnerships, sole proprietorships, or other business entities.

       L.      In accordance with Rule 9016 of the Federal Rules of Bankruptcy Procedure, which applies Rule 45(d) of the Federal Rules of Civil Procedure to this action, documents shall be produced as they have been kept in the ordinary course of business or shall be organized and labeled to correspond with the requests to which the documents are responsive. If there are no documents responsive to a request herein, the response to such request shall so state. Pursuant to Rule 45(d), should any responsive documents or other information be in an electronic format, consist of electronic data, or be electronically stored, you shall produce such matter in its native format and which shall include all metadata. "Electronic data" means any and all information stored or maintained in electronic format including, without limitation, all electronic files,

databases, data images or electronic mail stored in any electronic media including, without

limitation, desktop or laptop computers, computer hard drives, personal digital assistants,

portable email devices, network or group servers, email servers, backup tapes or drives,

catastrophe recovery devices or any other portable data storage device such as CD ROMs, DVD

ROMs, floppy disks, or disc drives.

M.    Each page of all documents and all things produced in response to this subpoena

shall be marked by a unique Bates number to allow for accurate identification.

N.    In accordance with Local Bankruptcy Rule 7034-1, in connection with any

objection or request for relief with respect to the document requests herein, you shall (i)

simultaneously file a copy of the document request or answer, and (ii) specify and quote

verbatim each relevant document request or answer, and immediately following each

specification, set forth the basis of the objection or relief requested. Any such objection or

request for relief shall state all grounds with specificity. Any ground not stated in such objection

or request for relief within the time provided by the Federal or Local Bankruptcy Rules shall be

deemed waived.

O.    In accordance with Local Bankruptcy Rule 7034-1, if a claim of privilege is

asserted with respect to any of the requests herein, and any responsive documents or portions of

responsive documents are withheld on such basis, the written objection to such request shall

identify the nature of the privilege being claimed and, if the privilege is being asserted in

connection with a claim or defense governed by state law, the state's privilege rule being

invoked, and you shall provide, at the time of the response to this subpoena, a list setting forth as

to each document or portion of document withheld the following information: (i) the type of

document; (ii) the general subject matter of the document; (iii) the date of the document; (iv) the

author of the document; (v) the recipients of the document; (vi) where not apparent, the relationship of the author of the document to the recipients of the document; and (vii) the privilege claimed as to the document.

P.     If any responsive documents or parts of document have been destroyed, deleted, or otherwise disposed of, a list shall be provided setting forth as to each such document the following information to the extent known:  (i) the type of document, (ii) the general subject matter of the document; (iii) the date of the document; (iv) the author of the document; (v) the recipients of the document; (vi) the date on which the document was destroyed, deleted, or otherwise disposed of; (vii) the person or program that destroyed, deleted, or otherwise disposed of the document; and (viii) the reason that the document was destroyed, deleted or otherwise disposed of.

Q.     Documents produced in response to one specific paragraph of this request need not be produced again, provided they are designated as being responsive to subsequent paragraphs when they are first produced.

R.     The use of the singular form of any word includes the plural and vice versa.

S.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

T.     The terms "all" and "each" shall be construed as all and each.

U.     Unless otherwise indicated, the relevant time period of these document requests is January 1, 1996 through the present, and shall include all documents and information produced or created during that period, and shall also include all documents which relate in whole or in

part to such period, or to events or circumstances during such period, even though dated, prepared or generated, or received prior or subsequent to that period.

## **Documents Requested**

1.     All documents relating to the Bayou Operations, including but not limited to the following:

(a)     All documents that the Debtors have received in connection with their Rule 2004 Applications and/or discovery commenced in adversary proceedings in the Debtors' bankruptcy proceedings relating to the Bayou Operations.

(b)     All documents relating to the Bayou Entities' offering memoranda, subscription agreements, operating agreements and other marketing materials.

(c)     All documents relating to solicitations made by any person in connection with an investment in the Bayou Entities, whether actual or contemplated.

(d)     All copies of subscription agreements and other agreements, arrangements or understandings of any kind made in connection with investments in the Bayou Entities, whether actual or contemplated.

(e)     All documents relating to the financial results, operations or condition of the Bayou Entities, whether actual, purported or otherwise.

(f)     All documents that were exchanged by and between any of the Bayou-related Persons, on the one hand, and any of the Bayou Entities on the other.

(g)     All documents that concern or reflect fees, compensation or benefits that were paid or are owed by the Bayou Entities to any of the Bayou-related Persons or any other person.

(h)    All documents that concern or reflect fees, compensation or benefits that were received by or are due to the Bayou Entities from any of the Bayou-related Persons or any other person.

(i)    All documents that concern or reflect services provided to or that were to be provided to the Bayou Entities by any of the Bayou-related Persons or any other person.

(j)    All documents that concern or reflect services provided by or that were to be provided by the Bayou Entities to any of the Bayou-related Persons or any other person.

(k)    All documents that were received from or provided to any of the Bayou-related Persons by any of the Bayou Entities.

(l)    All documents relating to transfers of money made by any of the Bayou Entities to or for the benefit of any of the Bayou-related Persons or any other person.

(m)    All documents relating to transfers of money received by any of the Bayou Entities from any of the Bayou-related Persons or any other person.

(n)    All documents that concern or reflect any Bayou Account or transaction related thereto, including but not limited to the April 2004 Transfer and the 2005 Liquidation.

(o)    All documents that were received from or provided to Citibank or Wachovia by any of the Bayou Entities.

(p)    All documents that concern or reflect any communication with Citibank or Wachovia, on the one hand, and any of the Bayou Entities on the other.

(q)    All documents that concern or reflect any communication with Citibank or Wachovia, on the one hand, and any of the Bayou-related Persons on the other.

11

(r)     All documents that concern or reflect any solicitation, recommendation, advice or counseling as to an investment in the Bayou Entities, whether actual or contemplated, that was rendered by any Investment Consultant, including but not limited to Hennessee.

(s)     All documents that concern or reflect due diligence, investigation or monitoring of the Bayou Entities by any Investment Consultant, including but not limited to Hennessee.

(t)     All documents that concern or reflect fees, compensation or benefits received or given by any Investment Consultant, including but not limited to Hennessee, in connection with the Bayou Entities.

(u)     All documents that were received from or provided to Investment Consultant, including but not limited to Hennessee, in connection with the Bayou Operations.

(v)     All documents that concern or reflect fees, compensation or benefits received by Fotta in connection with the Bayou Entities.

(w)     All documents that concern or reflect services that were provided or were to have been provided by Fotta in connection with the Bayou Entities.

(x)     All documents that concern or reflect Fotta's involvement, whether actual or contemplated, in the planning, formation or operation of the Bayou Entities.

(y)     All documents that concern or reflect any agreement, understanding or arrangement involving Fotta in connection with the Bayou Entities.

(z)     All documents that concern or reflect fees, compensation or benefits received by Oppenheim in connection with the Bayou Entities.

(aa)     All documents that concern or reflect services that were provided or were to have been provided by Oppenheim in connection with the Bayou Entities.

(bb)    All documents that concern or reflect Oppenheim's involvement, whether actual or contemplated, in the planning, formation or operation of the Bayou Entities.

(cc)    All documents that concern or reflect any agreement, understanding or arrangement involving Oppenheim in connection with the Bayou Entities.

(dd)    All documents that concern or reflect fees, compensation or benefits received by Goldman Sachs in connection with the Bayou Entities.

(ee)    All documents that concern or reflect services that were provided or were to have been provided by Goldman Sachs in connection with the Bayou Entities.

(ff)    All documents that concern or reflect Goldman Sachs' involvement, whether actual or contemplated, in the planning, formation or operation of the Bayou Entities.

(gg)    All documents that concern or reflect any agreement, understanding or arrangement involving Goldman Sachs in connection with the Bayou Entities.

(hh)    All documents that were received from or provided to Goldman Sachs in connection with the Bayou Operations.

(ii)    All documents that concern or reflect fees, compensation or benefits received by Grant Thornton in connection with the Bayou Entities.

(jj)    All documents that concern or reflect services that were provided or were to have been provided by Grant Thornton in connection with the Bayou Entities.

(kk)    All documents that concern or reflect Grant Thornton's involvement, whether actual or contemplated, in the planning, formation or operation of the Bayou Entities.

(ll)    All documents that concern or reflect any agreement, understanding or arrangement involving Grant Thornton in connection with the Bayou Entities.

(mm)   All documents that were received from or provided to Grant Thornton in connection with the Bayou Operations.

(nn)   To the extent not already requested, all documents that relate to IM Partners and IMG, LLC.

(oo)   To the extent not already requested, all documents that concern or reflect the Bayou Operations.