7UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                                         :
IN RE BAYOU HEDGE FUNDS INVESTMENT          :       No. 06 MDL 1755 (CM)
LITIGATION                                               :
                                                         :
-------------------------------------------------------- X
THIS DOCUMENT RELATES TO:                                :
-------------------------------------------------------- X
                                                         :
BROAD-BUSSEL FAMILY LIMITED                 :       No. 06 Civ. 3026 (CM)
PARTNERSHIP, MARIE-LOUISE                                :
MICHELSOHN, MICHELLE MICHELSOHN, an         :
HERBERT BLAINE LAWSON, JR., Individually    :
and on Behalf of All Other Persons and Entities          :
Similarly Situated,                                      :
                                                         :
                         Plaintiffs,                     :
                                                         :
           - against -                                   :
                                                         :       **ORAL ARGUMENT REQUESTED**
BAYOU GROUP LLC, et al.,                     :
                                                         :
                         Defendants.                     :       ELECTRONICALLY FILED
                                                         :
-------------------------------------------------------- X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT CITIBANK, N.A.'S MOTION TO DISMISS

BERGER & MONTAGUE, P.C.          KOSKOFF, KOSKOFF & BIEDER, P.C.
Merrill G. Davidoff, Esq.        William M. Bloss, Esq.
Lawrence J. Lederer, Esq.        Neal A. DeYoung, Esq.
Lane L. Vines, Esq.              350 Fairfield Avenue
1622 Locust Street               Bridgeport, CT  06604
Philadelphia, PA  19103-6305     Telephone:  (203) 336-4421
Telephone:  (215) 875-3000       Fax:  (203) 368-3244
Fax:  (215) 875-4604

*Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................. ii-v

INTRODUCTION ......................................................... 1-4

SUMMARY OF PERTINENT FACTS ........................................... 4-9

    A.    Plaintiffs Invest in the Bayou Hedge Funds Through Citibank ............. 4-5

    B.    The Bayou Hedge Fund Fraud ...................................... 5-7

    C.    Citibank's Participation in the Bayou Hedge Fund Fraud ................. 7-9

ARGUMENT ............................................................ 9-25

    I.    Plaintiffs Have Properly Pleaded Negligence ........................ 10-12

    II.    Plaintiffs Have Properly Pleaded Aiding and Abetting Claims ........... 12-20

    III.    Plaintiffs' Claim for Commercial Bad Faith
        Is Pleaded Properly ............................................ 20-21

    IV.    Plaintiffs Have Adequately Pleaded a Claim for
        Unjust Enrichment ............................................. 21–22

    V.    The New York U.C.C. Does Not Bar Plaintiffs' Claims ................ 22-25

CONCLUSION ........................................................... 25

# TABLE OF AUTHORITIES

*Federal Cases*

Allied Irish Banks, P.L.C. v. Bank of America, N.A.,
    No. 03 Civ. 3748 (DAB), 2006 U.S. Dist. LEXIS 4270
    (S.D.N.Y. Jan. 31, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Atlanta Shipping Corp. v. Chemical Bank,
    818 F.2d 240 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Banca Commerciale Italiana v. Northern Trust Int'l Banking Corp.,
    160 F.3d 90 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Centre-Point Merchant Bank v. American Express Bank,
    913 F. Supp. 202 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cortec v. Sum Holding,
    949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 21

Foman v. Davis,
    371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Ganino v. Citizens Utils. Co.,
    228 F.3d 154 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20

Golden Pac. Bancorp v. FDIC,
    273 F.3d 509 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

JP Morgan Chase Bank v. Winnick,
    406 F. Supp. 2d 247 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Kingdom 5-KR-41, Ltd. v. Star Cruises PLC,
    No. 01 Civ. 2946 (AGS), 2002 U.S. Dist. LEXIS 4636
    (S.D.N.Y. Mar. 20, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Nigerian Nat'l Petroleum Corp. v. Citibank, NA,
    No. 98 Civ. 4960 (MBM), 1999 U.S. Dist. LEXIS 11599
    (S.D.N.Y. July 29, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Phelps v. Kapnolas,
    308 F.3d 180 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Pierce v. Marano,
    No. 01 Civ. 3410 (JSR) (AJP), 2002 U.S. Dist. LEXIS 14870
    (S.D.N.Y. Aug. 13, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Primavera Familienstiftung v. Askin,
    130 F. Supp. 2d 450 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Regions Bank v. Wider & Mastroianni, P.C.,
    423 F. Supp. 2d 265 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Renner v. Chase Manhattan Bank,
    No. 98 Civ. 926 (CSH), 2000 U.S. Dist. LEXIS 8552
    (S.D.N.Y. June 14, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ryan v. Hunton & Williams,
    No. 99-CV-5938 (JG), 2000 U.S. Dist. LEXIS 13750
    (E.D.N.Y. Sept. 20, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

S & K Sales Co. v. Nike, Inc.,
    816 F.2d 843 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Sharp International Corp.,
    403 F.3d 43 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

In re Sharp International Corp.,
    302 B.R. 760 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sheerbonnet Ltd. v. American Express Bank, Ltd.,
    951 F. Supp. 403 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Suez Equity Investors, L.P. v. Toronto-Dominion Bank,
    250 F.3d 87 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Thomas v. Ross & Hardies,
    9 F. Supp. 2d 547 (D. Md. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

UniCredito Italiano SpA v. JPMorgan Chase Bank,
    288 F. Supp. 2d 485 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

### Federal Statutes and Regulations

31 U.S.C. § 5318 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

12 C.F.R. § 208.20(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

31 C.F.R. § 103.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

### Federal Rules

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20

Fed R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

### State Cases

Canajoharie Nat. Bank v. Diefendorf,
    25 N.E. 402 (N.Y. 1890) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Chartered Bank v. American Trust Company,
    263 N.Y.S.2d 53 (N.Y. Supr. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Kimmell v. Schaefer,
    675 N.E.2d 450 (N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Peck v. Chase Manhattan Bank, N.A.,
    593 N.Y.S.2d 509 (N.Y. App. Div. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Prudential-Bache Secur., Inc. v. Citibank, N.A.,
    536 N.E.2d 1118 (N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 24

<u>Rose Lee Mfg., Inc. v. Chemical Bank,</u>
    563 N.Y.S.2d 965 (N.Y. Supr. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Soma v. Handrulis,</u>
    14 N.E.2d 46 (N.Y. 1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*State Statutes and Regulations*

N.Y.U.C.C. 1-203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

N.Y.U.C.C. 3-405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

N.Y.U.C.C. 4-A-507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24

Plaintiffs Broad-Bussel Family Limited Partnership ("Broad-Bussel Family"), Marie-Louise Michelsohn, Michelle Michelsohn and Herbert Blain Lawson, Jr. (collectively, the "plaintiffs"), individually and on behalf of all other persons and entities similarly situated (the "Class"), respectfully submit this memorandum of law in opposition to the Motion to Dismiss filed by defendant Citibank, N.A. ("Citibank").

## **INTRODUCTION**

This class action is brought by plaintiffs, who invested in hedge funds operated by one or more of the various Bayou entities (the "Bayou Hedge Funds" or the "Funds"),[1] against Citibank and other defendants for their role in facilitating one of the biggest and most audacious hedge fund frauds in history. Almost since their inception in 1996, the Bayou Hedge Funds operated

---

[1]     The Funds include Bayou Super Fund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, Bayou Accredited Fund, LLC, Bayou Offshore Fund, LLC and Bayou Fund, LLC.

Specifically, the proposed Class includes those who, during the period December 31, 1996 through August 25, 2005 (the "Class Period"), invested funds or maintained investments in the Bayou Hedge Funds, and suffered damages thereby. Plaintiffs also bring this action on behalf of the Hennessee Subclass, which includes all members of the Class who, during the Class Period, were advised to invest in the Bayou Hedge Funds pursuant an investment advisory relationship with the Hennessee Group LLC (the "Hennessee Group"), one of the primary firms which advised numerous investors to invest in the Bayou Hedge Funds. Defendants Hennessee Group and its principals, defendants Elizabeth Lee Hennessee and Charles J. Gradante, have also moved to dismiss plaintiffs' Amended Complaint; plaintiffs' opposition to that motion is being filed separately.

Defendants Jeffrey D. Fotta, Eqyty Research and Management, LLC, Eqyty Research and Management, LTD, and James G. Marquez have already filed Answers. None of the Bayou Defendants have answered or moved against the plaintiffs' Amended Complaint. However, on May 30, 2006, the Bayou Defendants filed for protection under the federal bankruptcy laws, with the exception of defendants Samuel Israel, Daniel Marino, Bayou Securities LLC, Bayou Securities Ltd., Bayou Offshore Fund, LLC, IM Partners, and IMG, LLC, who are thus in default in these proceedings. Defendants Faust Rabbach & Oppenheim LLP and Steven D. Oppenheim have been served and are expected to respond in the near future.

essentially as a massive financial sham and Ponzi scheme that was orchestrated principally by Bayou's principals Samuel Israel, III ("Israel") and Daniel Marino ("Marino"). During the course of the Class Period, plaintiffs and members of the Class invested more than $450 million in the Bayou Hedge Funds.

In carrying out this massive fraud, Israel and Marino created and used various Bayou entities[2] (collectively, with the Bayou Hedge Funds, "Bayou" or the "Bayou Defendants") to fraudulently lure investors to invest hundreds of million of dollars in the Bayou Hedge Funds through a scheme of improper acts and blatant misrepresentations regarding the Funds' financial results -- using wholly falsified investment results, phoney résumés and even a fictitious, purportedly "outside" auditing firm, Richmond-Fairfield Associates ("Richmond-Fairfield") -- which in fact was actually owned exclusively by defendant Marino himself. However, it was simply not possible for the fraud here to have been accomplished without the active and substantial participation of Bayou's lawyers, advisors and bankers -- including specifically, defendant Citibank -- as well as third party investment advisors such as the defendant Hennessee Group LLC and its principals, defendants Elizabeth Lee Hennessee and Charles Gradante (collectively, the "Hennessee Defendants").

In particular, throughout the Class Period, Citibank served as Bayou's lead banker. In that capacity, Citibank received millions of investment dollars from Class members -- including directly by wire transfers from plaintiffs and numerous other Class member investors -- it knew

---

[2]     The Bayou entities include Bayou Group LLC, Bayou Management LLC, Bayou Securities LLC, Bayou Securities, LTD, Bayou Partners LLC, Bayou Affiliates, LLC, Bayou Equities, LLC, IM Partners and IMG, LLC, and possibly others which are currently unknown to plaintiffs.

or disregarded were fiduciary proceeds beneficially owned by the Class. In addition, Citibank processed millions of dollars in securities transactions for Bayou at the direction of Marino and Israel. Despite knowing or ignoring the fiduciary nature of those funds, Citibank is alleged to have directly aided and abetted defendant Israel's misappropriation of Class member investor funds by distributing in July 2004 some $161 million in cash from five Bayou bank accounts maintained at Citibank in New York, directly to *one or more offshore private bank accounts solely in defendant Israel's name* at Deutsche Postbank in Hamburg, Germany. Plaintiffs contend that the unprecedented amount and magnitude of the wire transfers to Israel personally was wrongful and violated numerous of Citibank's duties. Indeed, there can be little dispute that Citibank's international wire transfers also constitute money laundering in violation of Citibank's own anti-money laundering protocols that have been in effect since 2000.

Citibank is liable for aiding and abetting the Bayou Defendants' fraud because it is alleged to have received and processed Class member fiduciary funds; processed securities transactions for Class member investors at the direction of the Bayou Defendants; knew or ignored Israel's and Marino's breaches of fiduciary duty and fraudulent conduct; and knew or ignored that Citibank's private banking representatives circumvented Citibank's anti-money laundering protocols, as well as related federal regulations, by distributing to foreign accounts huge amounts of Class member fiduciary funds to Israel personally. Indeed, as plaintiffs allege, immediately prior to their complete liquidation of these accounts, the Bayou Defendants had engaged in a classic money-laundering ploy in these very same accounts, such that those wire transactions would have also triggered Citibank's anti-money laundering protocols. Nevertheless, Citibank's private banking representatives for Israel and Marino circumvented these protocols

3

and effected the money laundering scheme at issue in this action. Citibank seems hard pressed when complaining that its compliance with its own anti-money laundering obligations will somehow threaten the U.S. banking system; far from it, plaintiffs seek only to hold Citibank accountable for its specific alleged misconduct solely in the circumstances of this case.

Further, Citibank's argument that it owed no duty to Bayou investors simply ignores *both* plaintiffs' factual allegations, and that questions as to Citibank's legal duties involve issues of fact and law unsuitable for resolution on a motion to dismiss. Citibank's brief also confuses the standards for claims of primary liability with claims of secondary liability.

The sole issue before the Court now is whether plaintiffs would be entitled to relief should they prove Citibank aided and abetted the Bayou Defendants' misconduct as alleged. Here, plaintiffs plainly allege sufficient facts to meet the requirements of Federal Rule of Civil Procedure 8(a). Accordingly, Citibank's motion should be denied.

## SUMMARY OF PERTINENT FACTS[3]

### A.    Plaintiffs Invest in the Bayou Hedge Funds Through Citibank

During the Class Period December 31, 1996 and August 25, 2005, defendants Israel and Marino solicited, sold and operated the Bayou Hedge Funds -- a family of hedge funds based in Stamford, Connecticut.[4] ¶ 2. Also, during the Class Period, Bayou Management and the Bayou Hedge Funds maintained primary bank accounts at defendant Citibank. ¶¶ 19, 35, 45, 57.

---

[3]    The facts are taken from plaintiffs' Amended Complaint (the "complaint"), citations to which are referenced as " ¶____ ".

[4]    Among other things, defendant Israel was a founder and served as the Chief Executive Officer and Chief Investment Officer for the Bayou entities. ¶ 26. By contrast, defendant Marino is a Certified Public Accountant and served as the Chief Financial Officer and Chief Operating Officer of Bayou. ¶ 27.

4

Bayou used its Citibank accounts to receive directly from investors, including plaintiff Broad-Bussel Family and other members of the Class, fiduciary funds into the accounts for the Bayou Hedge Funds. For example, plaintiff Broad-Bussel Family entered into a Subscription Agreement with Bayou on December 21, 2003. ¶ 57. Broad-Bussel Family's Subscription Agreement provided for, among other things, Broad-Bussel Family's initial investment of $1,000,000 in the Bayou Super Fund. Id. In accordance with its obligations, on January 5, 2004, Broad-Bussel Family made a $500,000 wire transfer to Citibank, credited as Broad-Bussel Family's initial investment in the Bayou Super Fund. Id. On January 8, 2004, Broad-Bussel Family made a second $500,000 wire transfer to Citibank; that transfer was also credited as Broad-Bussel Family's investment in the Bayou Super Fund. Id. After Citibank received monies from plaintiff Broad-Bussel Family and other Class members as investments in the Bayou Hedge Funds, defendant Bayou Management sent such investors a certificate that acknowledged the Class members' investment in the respective Bayou Hedge Fund. Id. Thus, Citibank knew or ignored that the funds in the Bayou's Citibank accounts were fiduciary funds.

## B.    The Bayou Hedge Fund Fraud

The Bayou Hedge Funds were touted and sold as legitimate investment vehicles, but were actually being operated as a massive financial sham and Ponzi scheme. ¶¶ 2, 73, 124. Specifically, Israel and Marino fraudulently lured investors to invest and maintain hundreds of millions of dollars in the Bayou Hedge Funds during the Class Period, through a scheme of improper acts and continuing misrepresentations and omissions regarding the business practices, financial results, operations and condition of Bayou. ¶¶ 86-88.

Throughout the Class Period, the Bayou Defendants and third party investment advisors,

5

such as the Hennessee Defendants, communicated wholly false financial and other information about Bayou and the Bayou Hedge Funds to the Class via weekly newsletters, monthly reports, quarterly reports, annual reports and investor conference calls, all of which also omitted material adverse information about Bayou and the Bayou Hedge Funds in order to mislead Class member investors into believing the Bayou Hedge Funds were being operated properly and in accordance with the law. ¶ 60. The Bayou Defendants then used their phoney outside accounting firm, Richmond-Fairfield, in order to fraudulently certify the false financial data. ¶¶ 32, 62-63, 67, 72, 107. For example, during the Class Period, defendants Israel and Marino sent plaintiffs and other members of the Class, on a monthly basis, Net Asset Valuations that purported to accurately reflect Class members' contributions, withdrawals, and profits and losses for their investments in the Bayou Hedge Funds. ¶¶ 30, 59. However, these Net Asset Valuation statements were false and misleading because they did not reflect Class members' true financial interests in the Bayou Hedge Funds and did not accurately portray the Bayou Hedge Funds' true financial position and results. Id. Moreover, the Net Asset Valuation statements were also false because they omitted to disclose, among other things, the massive trading losses that were being incurred by the Bayou Hedge Funds, the true asset valuation of the Bayou Hedge Funds, and the fact that the Bayou Defendants were unlawfully and secretly converting and otherwise dissipating -- indeed, outright stealing -- millions of dollars of Class member funds. Id.

On or about July 27, 2005, defendant Israel sent Class member investors, including plaintiffs, a letter which announced abruptly that the Bayou Hedge Funds would be closed at the end of July 2005. ¶ 64. During the next couple of weeks, defendant Israel sent Class member investors additional letters discussing the status of winding-up the Bayou Hedge Funds and

6

promising to return promptly all funds to the respective Class member investors. ¶¶ 65-68.

On August 25, 2005, the financial press began to reveal that Bayou had long been operated as a fraud, with its principals having misappropriated literally millions of investor dollars. ¶ 1. That day, *The New York Times* shocked Class members and other investors by reporting that "[s]tate and federal officials in Connecticut are investigating the possible collapse of the Bayou Group, a hedge fund and brokerage firm in Stamford that managed an estimated $400 million for its investors." ¶¶ 7, 69. On August 27, 2005, *The New York Post* reported that federal agents had seized boxes of records and other material from Bayou's offices in Stamford, Connecticut, amid fears that up to $500 million of its investors' money has "disappeared." ¶ 70.

### C.    Citibank's Participation in the Bayou Hedge Fund Fraud

On August 29, 2005, following the initial public disclosures of Bayou's collapse, *The Wall Street Journal* reported that a "suicide note and confession" had been found at offices of defendant Bayou Management. ¶¶ 7, 71, 72. That suicide note/confession was supposedly written by defendant Marino, directly implicated defendants Marino, Israel and others, and consisted of a six-page account of some of the details of financial fraud that had been conducted by the Bayou Defendants since in or about 1996. Id. Among other things, it was disclosed that defendants Israel and Marino had created entities that were used to unlawfully receive Class members funds, and thereafter either converted those funds personally to their own use or invested those funds in other investments exclusively for their personal interests. ¶¶ 24, 25, 74.

Over time, the Bayou Defendants' scheme began to unravel as new investments were outpaced by investment withdrawals, expenses, losses and unlawful conversions. ¶ 75. In or about April 2004, the Bayou Defendants made a last-ditch effort to keep their scheme afloat. Id.

7

The Bayou Defendants then secretly stopped all securities trading and liquidated the Bayou Hedge Funds. Id. Specifically, Citibank, which had previously received directly and deposited millions of investment dollars from Class members, is alleged to have directly assisted defendants Israel and Marino in misappropriating Clas member investor funds. ¶¶ 3, 7, 19, 35, 75, 76-82, 124.

Following the Bayou Defendants' liquidation of the Bayou Hedge Funds, defendants Israel and Marino instructed Citibank to transfer $150 million from the Bayou bank accounts held at the Citibank branch in Bronxville, NY. ¶ 77. Israel and Marino wired those funds to a trading account at Barclay's Bank in London. Thereafter, Israel and Marino reportedly transferred the $150 million back to Bayou's Citibank accounts in Bronxville. Id.

Beginning in or about July 2004, Citibank actually distributed a total of some $161 million in cash from five Bayou bank accounts maintained at Citibank in New York, directly to one or more private bank accounts solely in defendant Israel's name at Deutsche Postbank in Hamburg, Germany, despite knowing or ignoring that such proceeds were fiduciary funds beneficially owned by Class members. Id. According to a September 1, 2005 article in *The Wall Street Journal*, the Bayou Defendants reportedly emptied five Bayou accounts held by Citibank over the course of six days, withdrawing some $161 million. Four of those accounts held money for -- and, very significantly, ***explicitly and directly in the name of*** -- four specific Bayou Hedge Funds (Bayou Super Fund, Bayou No Leverage Fund, Bayou Affiliates Fund and Bayou Accredited Fund), and the fifth account held money directly in the name of Bayou Management. ¶ 78. Despite the fact that Citibank knew or disregarded that those monies were Bayou Class member investor funds, Citibank nevertheless permitted defendant Israel to withdraw personally

8

and transfer those funds to accounts he himself alone owned and controlled. Specifically, on or about July 8, 2004, Citibank directly wired $120 million, of the total $161 million, from Bayou's Citibank accounts in New York to one or more offshore bank accounts in defendant Israel's name personally at Deutsche Postbank in Hamburg, Germany. Other transfers of Class member investor funds from the Citibank accounts, including an additional $32 million wire transfer reportedly somewhere within the United States, are unaccounted for. ¶ 79.

Since Bayou's shocking collapse, numerous investigations have been commenced by state, federal and regulatory agencies, several lawsuits have been filed, and Bayou's two principals, defendants Israel and Marino, have pleaded guilty to multiple criminal counts, and now face long prison sentences. ¶¶ 2, 8, 85. Although some $101 million in suspected Bayou investor funds have been seized by the Arizona Attorney General, millions of dollars in other Class member investment proceeds remain missing. ¶¶ 8, 84.

## ARGUMENT

In ruling on a motion to dismiss under Fed R. Civ. P. Rule 12(b)(6), courts are to accept all factual allegations in the complaint as true, as well as draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). At the motion to dismiss stage, the issue is "'not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" Phelps v. Kapnolas, 308 F.3d 180, 184-85 (2d Cir. 2002) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). Accordingly, the court's role in ruling on a Rule 12(b)(6) motion is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence

9

which might be offered in support thereof.'" <u>Pierce v. Marano</u>, No. 01 Civ. 3410 (JSR) (AJP),

2002 U.S. Dist. LEXIS 14870, at *3 (S.D.N.Y. Aug. 13, 2002) (citation omitted).[5]

## I.    **PLAINTIFFS HAVE PROPERLY PLEADED NEGLIGENCE**

Citibank argues that it cannot be held liable for negligence because it owed no duty to

plaintiffs and the other members of the Class. However, Citibank ignores not only plaintiffs'

allegations and the fact that the duty element of negligence involves a highly factual inquiry

inappropriate for resolution on a motion to dismiss, but the very nature of the banking services at

issue here and how Citibank's misconduct is alleged to have directly harmed Class member

investors.

As alleged, the bank accounts that were used by the Bayou Hedge Funds and to which

plaintiff Broad-Bussel Family and other members of the Class wired their investments funds was

not simply an ordinary bank account. Those accounts were specifically designated as *special*

*accounts* set up to process and handle investors' fiduciary funds. According to the Wire Transfer

Instructions supplied by Citibank in connection with Bayou Hedge Fund investments, such funds

---

[5]    Although allegations of fraud must meet the particularity requirements of Fed. R.
Civ. P. 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be
averred generally." <u>Ganino v. Citizens Utils. Co.</u>, 228 F.3d 154, 169 (2d Cir. 2000). Further,
Rule 9(b) "must be read together with rule 8(a)". <u>Ouaknine v. MacFarlane</u>, 897 F.2d 75, 79 (2d
Cir. 1990).

Plaintiffs have addressed defendant Citibank's arguments under the law of New
York, the state where Citibank accounts were set up and maintained for the Bayou Hedge Funds.
As alleged, plaintiffs deposited their investments in the Funds via wire transfers to the New York
accounts and, in or about the summer of 2004, defendant Israel allegedly liquidated those
accounts with the knowing and substantial assistance of Citibank. Nevertheless, as demonstrated
below, plaintiffs' claims are sufficiently pleaded whether New York or Connecticut law is
applied in the circumstances here.

were to be held and maintained in the names of the Bayou Hedge Funds. For example, the Wire

Transfer Instructions supplied by Citibank for plaintiff Broad-Bussel Family directed that Broad-

Bussel Family wire transfer its investment for the Bayou Super Fund directly to Citibank NA, 95

Pondfield Road Br 165, Bronxville, New York 10708. Those wiring instructions also provided

the specific ABA number and bank account number for the Citibank account; the account name

specified by Citibank was "*Bayou Management, L.L.C. Special Account as agent for Bayou

Superfund LLC*"; and the wire transfer to Citibank included "Reference: Broad-Bussel Family

L.P.".

Accordingly, Citibank knew or disregarded that it was holding the Bayou fund proceeds

for the benefit of the Bayou Class member investors. In fact, Citibank knew as of the time the

Bayou Defendants established these accounts that such accounts included Class member

fiduciary investment dollars. Moreover, that Citibank understood clearly that it was holding

fiduciary proceeds beneficially owned by Class member investors is confirmed further by the fact

that many Class members invested originally in the Bayou Hedge Funds by making *wire

transfers and other deposits directly to Citibank*. These facts amply allege the existence of a

duty for pleading purposes.

In Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003), this

Court recognized that duties in the context of negligence claims may be recognized in

circumstances that do not involve traditional banking relationships. There, plaintiff Dubai

alleged that Citibank had assisted the money-laundering activities of one Citibank's banking

customers. As here, plaintiff Dubai also alleged that it had a special relationship with Citibank

based on the nature of the parties' banking relationship. Although the Court noted that such

11

relationships may ordinarily arise in the context of business negotiations, the Court held that such relationships may also arise "where the parties are engaged in a business [and banking] transaction as well." Whether a "special relationship" exists which gives rise to a duty is generally a question of fact. Id. Accord Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103-04 (2d Cir. 2001) (citing Kimmell v. Schaefer, 675 N.E.2d 450 (N.Y. 1996)).

In sum, if plaintiffs prove the well-pleaded facts they have alleged, plaintiffs would be entitled to relief. Indeed, the sheer magnitude of money (some $160 million), the unprecedented nature of the transactions involved, and the fact that the wire transfers Citibank made were to defendant Israel personally via foreign bank accounts alone states facts sufficient for plaintiffs to prevail on their negligence claim *in the circumstances of this case*. At a minimum, the arguments raised by Citibank regarding the duties it may or may not owe here present factual questions requiring further development of the record, and in no event support dismissal now as a matter of law.

## II.   PLAINTIFFS HAVE PROPERLY PLEADED AIDING AND ABETTING CLAIMS

Citibank also seeks to dismiss as a matter of law plaintiffs' secondary liability claims. However, because the well-pleaded allegations in their complaint allege sufficiently Citibank's knowing participation and substantial assistance in the Bayou Defendants' now-admitted fraud and other misconduct, dismissal is not warranted. Indeed, to the extent that Citibank argues that plaintiffs fail to state a claim because Citibank is not alleged to be a knowing participant in the Bayou Defendants' overall hedge fund fraud spanning the last decade, such an argument is a red herring. Plaintiffs seek to hold Citibank liable only for its acts in assisting defendants Israel and

12

Marino in wrongfully liquidating, transferring and laundering Class member fiduciary funds in or about the spring and early summer of 2004 -- not that Citibank had knowledge and participated in the Bayou Defendants overall hedge fund fraud, something that plaintiffs have not alleged, at least based on the evidence plaintiffs have obtained to date.

Under New York law, the elements of a claim for aiding and abetting fraud are: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." UniCredito Italiano SpA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003) (citing Gabriel Capital, L.P. v. NatWest Finance, Inc., 94 F. Supp. 2d 491, 511 (S.D.N.Y. 2000)). "Substantial assistance" exists where "(1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." Id. (citing McDaniel v. Bear Stearns & Co., Inc., 196 F. Supp. 2d 343, 352 (S.D.N.Y. 2002)).

Similarly, claims for aiding and abetting a breach of fiduciary duty also require an allegation as to the defendant's knowledge of the breach and participation in aiding the breach. Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003).[6] Plaintiffs,

---

[6]    Citibank's suggestion that aiding and abetting claims are novel is baseless, even if in the context of the claims for aiding and abetting negligence which several courts have recognized. See, e.g., Thomas v. Ross & Hardies, 9 F. Supp. 2d 547, 559 (D. Md. 1998) (recognizing aiding and abetting negligence; holding that defendant is liable if he encourages, incites, aids, or abets the acts of the direct perpetrator of the tort; denying motion to dismiss because resolution of such claims involve questions of fact). New York, like Maryland, has long recognized aiding and abetting tort liability and the various claims that may flow from that basic concept. See, e.g., Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 251 (2d Cir. 1987) ("New York common law recognizes a cause of action for aiding and abetting wrongful diversion of funds.").

however, need not allege that the aider/abettor defendant actually intended to cause harm by aiding and abetting the primary tortfeasor's conduct. See, e.g., S & K Sales Co. v. Nike, Inc., 816 F.2d 843 (2d Cir. 1987) (holding that "the tort of participation in a fiduciary's breach of duty simply does not require proof of an intent to harm").

Here, plaintiffs specifically allege that defendant Citibank both had the requisite knowledge of the underlying misconduct and substantially participated in that misconduct. Specifically, plaintiffs allege that Citibank:  a) had previously received directly the monies from Class member investors and deposited same in special fiduciary accounts; b) knew that the transferred funds were fiduciary funds of investors; c) had to exercise reasonable commercial diligence in the circumstances, particularly given the sheer magnitude of money and unprecedented nature of the transaction involved, more than $160 million; and d) negligently made the wire transfers to Israel personally via foreign bank accounts.

Moreover, Citibank's knowledge and participation in ultimately facilitating the Bayou Defendants' underlying fraud is further exemplified by violations and breaches of its own procedures and the protocols of international banking and those addressing money laundering.[7] For example, in or about October 2000, Citibank announced that it was establishing new policies and procedures for transactions involving its private banking clients, which transactions were to be conducted in accordance with certain protocols known as the Wolfsberg AML Principles [Global Anti-Money Laundering Guidelines on Private Banking]. See Vines Decl., Exhibit B

---

[7]    A copy of Citibank's definition of "money laundering" as per the website of Citibank's corporate parent, Citigroup (www.citi.com/citigroup/citizen/antimoneylaundering /summary.htm.) is annexed as Exhibit A to the Declaration of Lane L. Vines, dated June 30, 2006 (hereinafter referred to as "Vines Decl.") which is filed contemporaneously with this Memorandum of Law.

(attaching copy of the "Wolfsberg AML Principles on Private Banking"). By signing onto the

Wolfsberg AML Principles, Citibank imposed upon itself the responsibility to both investigate

and understand the structure of certain of its private banking clientele, including in particular

investment entities such as the Bayou defendants, which had control over a significant amount of

funds. Citibank specifically agreed to establish a written policy upon which to "follow-up on

unusual and suspicious activities." Suspicious activities expressly included "account

transactions", such as the ones at issue here which were inconsistent with the purposes of the

Bayou hedge fund accounts. In or about September 2003, Citibank, as a member of the

Wolfsberg Group, further agreed to engage in the "transaction monitoring" of wire transactions

and other fund transfers prior to their execution. See Vines Decl., Exhibit C (attaching copy of

"Monitoring Screening and Searching Wolfsberg Statement").

Of particular pertinence to Israel's liquidation of the Bayou fund accounts is Citibank's

institution in 2003 of its "Transaction Monitoring" procedures. Under these procedures, Citibank

officials evaluate pending transactions with that account's transaction history for the express

purpose of determining whether money laundering or other patterns of suspicious activities or

anomalies are occurring in the account. See Vines Decl., Exhibit C. Citibank's private banking

representatives responsible for Israel and Marino had to circumvent these protocols to effectuate

the liquidation of the Bayou Hedge Funds by wire transfer and, in doing so, also violated the

federal regulations requiring banks to file reports of such suspicious transactions, including

transactions where there were "no reasonable explanation for the transaction after examining the

available facts, including the background and possible purpose of the transaction." 31 C.F.R. §

103.18. Citibank was required to have filed a Suspicious Activity Report, generally referred to as

15

"SARs", to the Financial Crimes Enforcement Network of the U.S. Department of Treasury. Notably, the SAR form has a designated section specifically addressing "wire transfer fraud". Citibank was required to report the transactions at issue since transferring the entirety of the Bayou funds' assets to a foreign account in the individual name of the fund's manager "is not the sort in which the particular customer would normally be expected to engage ...." See Vines Decl., Exhibit D (attaching copy of the U.S. Department of Treasury's Suspicious Activity Report form).

For Citibank to complain that it did not know of the breaches being committed by defendants Israel and Marino contradicts its own written monitoring and control policies, as well as the other anti-money laundering procedures already established by Citibank under the Wolfsberg AML Principles. See Vines Decl., Exhibit B ("The private banker will be familiar with significant transactions and increased activity in the account and will be especially aware of unusual or suspicious activities."). Indeed, the circumstances upon which Citibank's personnel accomplished the circumvention of these safeguards and Citibank's anti-money laundering organization is likewise a matter for discovery, and may be the subject of a future motion for summary judgment; however, this action certainly should not be dismissed now, before plaintiffs are permitted even any opportunity to develop evidence consistent with their claims.

In view of Citibank's alleged circumvention of its own procedural safeguards, this is not a case of a bank official simply failing to sufficiently act on certain "suspicions" once the bank had started an investigation, such as in the cases that Citibank cites. See Ryan v. Hunton & Williams, No. 99-CV-5938 (JG), 2000 U.S. Dist. LEXIS 13750 (E.D.N.Y. Sept. 20, 2000) (allegation that defendant bank manager initiated investigation into accounts suspected as

16

vehicles for ponzi scheme not sufficient to show actual knowledge); Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 2000 U.S. Dist. LEXIS 8552 (S.D.N.Y. June 14, 2000) (bank manager's suspicions about improper uses of bank accounts, and rejection of certain transactions because of suspected fraud, did not show actual knowledge of the alleged fraud). Similarly, in Nigerian Nat'l Petroleum Corp. v. Citibank, NA, No. 98 Civ. 4960 (MBM), 1999 U.S. Dist. LEXIS 11599 (S.D.N.Y. July 29, 1999), plaintiff alleged only various inconsistencies in the primary defendant's communications with Citibank and "other badges of fraud" which plaintiff complained should have alerted Citibank to the misconduct involved in certain wire transfers. See In re Sharp International Corp., 403 F.3d 43, 51-52 (2d Cir. 2005) (alleged acts of defendant bank were "consistent with its contractual and legal rights").

The factual circumstances of this case is a far cry from the facts at issue in Ryan, Renner, and other cases where the bank officials actually referred the matters to their in-house fraud investigative unit and then conducted investigations, albeit unsuccessful, of their suspicions. Here, it is alleged that Citibank knew or disregarded that the primary Bayou Defendants were engaging in breach of their fiduciary duties by liquidating the fiduciary accounts and transferring such funds overseas into the personal accounts of defendant Israel. Moreover, here, these wires were approved and conducted in circumvention of both Citibank's own anti-laundering policies and controls, as well as regulations promulgated under the Annunzio-Wylie Act, 31 U.S.C. § 5318 (g), which require financial institutions to file SARs (Suspicious Activity Reports) "no later than thirty (30) days after the initial detection of a known or suspected violation of federal law, a suspected transaction related to money laundering activity, or a violation of the Bank Secrecy Act." 12 C.F.R. § 208.20(d).

17

Notably, plaintiffs here also allege that, prior to the looting of the accounts at issue, defendants Israel and Marino engaged in classic money-laundering transactions in the very same accounts. In particular, plaintiffs allege that in April 2004, the primary defendants directed Citibank private banking representatives to effectuate a wire transfer of $150 million from the Bayou fund accounts to a foreign trading account and then wired the money back again. ¶ 77. By their nature, there was nothing routine about these prior wiring transactions. At the very least, it is beyond cavil that, for purposes of the instant motion, plaintiffs have alleged a sufficient basis entitling them to relief if they prove that Citibank's private banking representatives knew that Israel and Marino were defrauding investors in the Bayou hedge funds when they subsequently emptied the fund accounts by international wire into Israel's personal accounts.

In contrast to In re Sharp International Corp., 403 F.3d 43, Citibank's representatives are alleged to have circumvented established procedures in order to effectuate the transactions at issue. See also Ryan v. Hunton & Williams, 2000 U.S. Dist. LEXIS 13750, at *31-32 (pleading "merely a lapse of wary vigilance"). Unlike those cases, the evidence here is that Citibank did not undertake *any* proper investigation of their clients' misconduct, such as the filing of a SAR, and that the Citibank's private banking representatives responsible for Israel had circumvented the established safeguards against money laundering. It bears emphasis that as noted, Citibank's post-2000 institution of anti-money laundering policies and protocols for transactions involving its private banking clients alone distinguishes this action from Sharp, Ryan and the other cases that Citibank cites. Furthermore, the unprecedented nature of the transactions at issue further distinguish this action, as Israel did not just deplete the fiduciary accounts, but liquidated them over an extraordinarily short time period, perhaps even via a single telephone call or other

18

isolated communication. ¶¶ 35, 78-82. The liquidation of the fiduciary accounts to a personal

overseas account is of such an extraordinary nature that Citibank cannot reasonably claim, at

least as a matter of law, that the transactions were routine and thus that such transactions cannot

under any circumstances constitute the requisite "substantial assistance" for purposes of

plaintiffs' aiding and abetting claims. As summarized in Primavera Familienstiftung v. Askin,

130 F. Supp. 2d 450, 511-12 (S.D.N.Y. 2001):

> Executing transactions, even ordinary course transactions, can
> constitute substantial assistance under some circumstances, such as
> where there is an extraordinary economic motivation to aid in the
> fraud. See Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983)
> (broker's processing of transactions with knowledge of fraudulent
> nature to generate commissions); IIT v. Cornfeld, 619 F.2d 909,
> 921-22, 926-27 (2d Cir. 1980) (performing challenged transaction
> knowing it violated client's policy, with heightened economic
> motive to do so); see also Rolf v. Blyth, Easton Dillon & Co., 570
> F.2d at 48 ("Substantial assistance might include . . . executing
> transactions or investing proceeds, or perhaps . . . financing
> transactions."). Participation in financing the fraudulent scheme,
> particularly where the financing was not routine, is another. See,
> e.g., Monsen v. Consolidated Dressed Beef Co., 579 F.2d 793,
> 800-04 (atypical financing transactions); In re Gas Reclamation,
> Inc. Sec. Litig., 659 F. Supp. 493, 504 (S.D.N.Y. 1987) (same).
> Where there is evidence of various types of activities by an alleged
> aider and abetter going to this issue, the evidence should be
> considered together.

See also JP Morgan Chase Bank v. Winnick, 406 F. Supp. 2d 247, 257-259 (S.D.N.Y. 2005)

(distinguishing cases relied upon by Citibank).

Further, because the liquidation of the fiduciary accounts undeniably caused damage to

plaintiffs, Citibank's argument that plaintiffs' complaint fails to set forth a basis for establishing

causation should be rejected outright. Indeed, causation is likewise an issue of fact unsuitable for

resolution on a motion to dismiss. Id.

Finally, Citibank attempts to conflate the knowledge required to sustain aiding and

abetting claims, with intentional misconduct. "There is no requirement that the alleged aider and

abetter have an intent to harm." In re Sharp International Corp., 302 B.R. 760, 779 (E.D.N.Y.

2003). Needless to say, even under Rule 9(b)'s heightened pleading requirements, "conditions of

the mind", such as allegations of knowledge, may be averred generally. See Ganino v. Citizens

Utils. Co., 228 F.3d at 169 (2d Cir. 2000).

### III.    PLAINTIFFS' CLAIM FOR COMMERCIAL BAD FAITH IS PLEADED PROPERLY

Citibank also asserts that plaintiffs have failed to allege Citibank's knowledge and

participation sufficient to state a claim for commercial bad faith. Citibank is wrong.

In Prudential-Bache Secur., Inc. v. Citibank, N.A., 536 N.E.2d 1118, 1125 (N.Y. 1989),

the New York Court of Appeals held that commercial bad faith may found "[w]here a depositary

bank acts dishonestly -- where it has actual knowledge of facts and circumstances that amount to

bad faith, thus itself becoming a participant in a fraudulent scheme ...." In reversing the lower

court's dismissal of such a claim, the Court of Appeals further held that (citations omitted):

> It bears emphasis that we answer this question in the context of a
> motion to dismiss the complaint, where courts are obliged to view
> plaintiff's assertions most favorably because the motion would
> terminate the action before there has been any opportunity for
> discovery. A court therefore must assume the truth of the facts
> asserted in the complaint ... opposing dismissal and accord plaintiff
> the benefit of all favorable inferences that may be drawn from its
> pleadings ....

Here, as in Prudential-Bache, "Plaintiff's cause of action for 'commercial bad faith' rests

on allegations that Citibank, through its officers, agents and employees, actually knew or ignored,

and thus itself became a participant in, the unlawful scheme to launder plaintiff's funds." See

also <u>Peck v. Chase Manhattan Bank, N.A.</u>, 593 N.Y.S.2d 509, 510-11 (N.Y. App. Div. 1993);

<u>Rose Lee Mfg., Inc. v. Chemical Bank</u>, 563 N.Y.S.2d 965 (N.Y. Supr. 1990).  <u>Accord Dubai</u>

<u>Islamic Bank v. Citibank, N.A.</u>, 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003).[8]

As alleged, Citibank knew that the transferred funds were fiduciary funds of investors,

having received those funds directly from plaintiffs and other members of the Class, but

nevertheless assisted and facilitated defendant Israel to drain the Bayou accounts of more than

$160 million and transfer the bulk of those monies to a foreign bank account in the personal

name of defendant Israel.  The magnitude, timing and other circumstances of these transfers

adequately set out a *prima facie* commercial bad faith claim.  <u>Accord</u> <u>Prudential-Bache Secur.,</u>

<u>Inc. v. Citibank, N.A.</u>, 536 N.E.2d at 1125.

## IV.    PLAINTIFFS HAVE ADEQUATELY PLEADED
##         A CLAIM FOR UNJUST ENRICHMENT

Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he must

establish:  (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's

expense; and (3) that the circumstances are such that in equity and good conscience the defendant

should return the money or property to the plaintiff.  <u>Golden Pac. Bancorp v. FDIC</u>, 273 F.3d 509

(2d Cir. 2001).  However, at the pleading stage, a notice pleading of these elements is all that is

---

[8]     Under New York law, "gross carelessness may constitute evidence of bad faith."
<u>Soma v. Handrulis</u>, 14 N.E.2d 46, 50 (N.Y. 1938).  <u>See also</u> <u>Canajoharie Nat. Bank v.</u>
<u>Diefendorf</u>, 25 N.E. 402 (N.Y. 1890).  Another New York case also looked to <u>Canajoharie</u> in
order to define what constitutes bad faith:  "gross carelessness or willful ignorance may
constitute evidence of bad faith."  <u>Chartered Bank v. American Trust Company</u>, 263 N.Y.S.2d 53
(N.Y. Supr. 1965) (citations omitted).  In <u>Soma</u>, 277 N.Y. at 50-51, the court stated that if the
particular facts should have led the financial institution to inquire, and by inquiry it would have
discovered the true facts of the situation, failure to do so establishes, in both a legal and
commercial sense, bad faith on the part of the bank.  This gross carelessness is precisely what
Citibank is alleged to have engaged in here.

required. <u>Kingdom 5-KR-41, Ltd. v. Star Cruises PLC</u>, No. 01 Civ. 2946 (AGS), 2002 U.S. Dist. LEXIS 4636 (S.D.N.Y. Mar. 20, 2002).

Here, plaintiffs plead that "defendant Citibank received fees and other benefits in connection with its banking services to the Bayou Hedge Funds and defendant Israel". ¶ 218. Plaintiffs further allege that Citibank "derived benefits from [its] relationships with Plaintiffs and the members of the Class" (¶ 219); that "Citibank received millions of investment dollars from Class members" (¶ 3); that Citibank "knew [that such funds] were fiduciary proceeds beneficially owned by the Class" (¶ 3); and that Citibank "processed millions of dollars in Bayou transactions" at the behest of plaintiffs' fiduciaries, the Bayou Defendants -- who were supposed to have managed and properly traded securities with those invested fiduciary funds (¶ 3). Similarly, Citibank also failed in its duties by directly assisting defendants Israel and Marino in misappropriating Class member investor funds. ¶ 3.

Through its inequitable conduct, Citibank obtained fees, compensation and other emoluments and benefits which it did not properly earn and was not rightfully entitled to, and has thus been unjustly enriched. Plaintiffs allege that under the circumstances it would be inequitable for Citibank to retain such fees, compensation and other benefits. <u>Accord Allied Irish Banks, P.L.C. v. Bank of America, N.A.</u>, No. 03 Civ. 3748 (DAB), 2006 U.S. Dist. LEXIS 4270 (S.D.N.Y. Jan. 31, 2006) (sustained claim of unjust enrichment where Citibank and others aided and abetted a fraud committed by plaintiffs' fiduciary). These allegations sufficiently allege an unjust enrichment claim.

## V.    <u>THE NEW YORK U.C.C. DOES NOT BAR PLAINTIFFS' CLAIMS</u>

In their final arguments, Citibank simply misconstrues Article 4-A of the N.Y.U.C.C. in

22

order to falsely manufacture a non-existent safe harbor for itself against any liability for money

laundering or any other financial misconduct involving the wiring of funds. The intended and

actual purpose behind Article 4-A is not to protect banks from common law liability simply

because the misconduct involved the use of wire transfers. Citibank otherwise acknowledges

that plaintiffs' claim for commercial bad faith does not have as high a pleading requirement as the

aiding and abetting claims, and requires only that the bank knew of the "facts and circumstances

that amount to bad faith." As demonstrated above, this is not just a case of "merely a lapse of

wary vigilance"-- to the contrary, Citibank is alleged to have had knowledge of the relevant

underlying facts and, indeed, violated its own internal policies and industry procedures and

regulations in participating in the misconduct alleged.

Contrary to Citibank's contentions, Article 4-A of the N.Y.U.C.C. is not designed to

address these parties' transactional rights and obligations in the circumstances here. Rather, the

undisputed purpose of that code was to create a statutory framework for parties conducting wire

transfers "by analogy to rights and obligations in negotiable instruments law or the law of check

collection." Banca Commerciale Italiana v. Northern Trust Int'l Banking Corp., 160 F.3d, 90, 95

(2d Cir. 1998) (quoting Banque Worms v. BankAmerica Int'l, 77 N.Y.2d 362, 369 (1991)). The

parties to wire transfer transactions are referred to in the statute as the sending (or "originator")

bank, and receiving and beneficiary banks. See N.Y.U.C.C. 4-A-507. Article 4-A provides a

framework for these transactional parties, not persons and entities which were outside the

transactions. See Sheerbonnet Ltd. v. American Express Bank, Ltd., 951 F. Supp. 403, 407

(S.D.N.Y. 1995) (Article 4-A addresses "'the rights and obligations flowing from payment

orders.'") (quoting Section 4-A-102, Official Comment, at 559). The claims by plaintiffs do not

23

in any way contradict the limited transactional purposes of Article 4-A's provisions. According

to the case that Citibank itself cites, Centre-Point Merchant Bank v. American Express Bank, 913

F. Supp. 202, 206 (S.D.N.Y. 1996) (emphasis added):

> In noting that commentators uniformly recognize that Article 4-A
> is not a "hermetic legal seal" over funds transfers, the Court
> explained that "[a] desire to start on a 'clean slate' implies only that
> in drafting the Article, the legislature was neither borrowing from
> related U.C.C. regulations ... nor from principles of common law
> or equity." Id. While Article 4-A should be the first place parties
> look for guidance when they seek to resolve claims arising out of a
> funds transfer, *"the article has not completely eclipsed the*
> *applicability of common law in the area. The exclusivity of*
> *Article 4-A is deliberately restricted to 'any situation covered by*
> *particular provisions of the Article.' Conversely, situations not*
> *covered are not the exclusive province of the Article."* Id. In fact,
> the Official Comment tacitly states that resorting to principles of
> law or equity outside of Article 4A is acceptable, so long as it does
> not create rights, duties and liabilities "inconsistent with those
> stated in this Article." Id.

See also Prudential-Bache Secur., Inc. v. Citibank, N.A., 536 N.E.2d 1118, 1125 (N.Y. 1989)

("Where a depositary bank acts dishonestly -- where it has actual knowledge of facts and

circumstances that amount to bad faith, thus itself becoming a participant in a fraudulent scheme

-- such conduct falls wholly outside the allocation of business risks that was contemplated by

UCC 3-405 (1) (c).") (citing UCC 1-203, 3-405, Comment 4).

    At bottom, plaintiffs' claims against defendants Israel, Marino and the other Bayou

Defendants are neither governed by nor inconsistent with the provisions of Article 4-A of the

N.Y.U.C.C. Similarly, the claims of secondary liability against Citibank for aiding and abetting

those primary defendants are not barred by the N.Y.U.C.C. As this Court recently held,

"[c]ertainly a rule established to govern wire transfers would not restrict a party's fiduciary duties

24

and defendants have offered no convincing argument as to why a claim for [common law]

conversion or breach of fiduciary duty would be inconsistent with Article 4A." <u>Regions Bank v.</u>

<u>Wider & Mastroianni, P.C.</u>, 423 F. Supp. 2d 265, 269 (S.D.N.Y. 2006).

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendant

Citibank, N.A.'s Motion to Dismiss.[9]

---

[9]    If for any reason the Court were inclined to grant the defendant Citibank's motion, plaintiffs request an opportunity to amend. <u>See</u> <u>Cortec v. Sum Holding</u>, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (holding that "refusal to grant the leave without any justifying reason appearing for the denial is ... merely abuse of that discretion and inconsistent with the spirit of the Federal Rules").

Dated: June 30, 2006
New York, New York

Respectfully submitted,

BERGER & MONTAGUE, P.C.

Merrill G. Davidoff, Esq.
Lawrence J. Lederer, Esq.
Lane L. Vines, Esq.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604

KOSKOFF, KOSKOFF & BIEDER, P.C.
William M. Bloss, Esq.
Neal A. DeYoung, Esq.
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
Fax: (203) 368-3244

*Attorneys for Broad-Bussel Family Limited
Partnership, Marie-Louise Michelsohn, Michelle
Michelsohn and Herbert Blaine Lawson, Jr.*

## CERTIFICATE OF SERVICE

I, Lane L. Vines, hereby certify that I caused today the following to be electronically filed with the Clerk of Court by using the ECF System: Plaintiffs' Memorandum of Law in Opposition to Defendant Citibank, N.A.'s Motion to Dismiss and the accompanying Declaration of Lane L. Vines in support thereof. The foregoing filing will be served on counsel electronically through the Court's ECF System, and by U.S. First Class mail on any counsel that has not signed up for electronic service. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

Dated: June 30, 2006

_____
Lane L. Vines