UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
IN RE BAYOU HEDGE FUND INVESTMENT       :  MDL No. 1755 (CM)
LITIGATION                                                   :
                                                             :
------------------------------------------------------------ X
                                                             :
THIS DOCUMENT RELATES TO:                                    :
------------------------------------------------------------ X
                                                             :
BROAD-BUSSEL FAMILY LIMITED             :  No. 06 Civ. 3026 (CM)
PARTNERSHIP, MARIE LOUISE,                                   :
MICHELSOHN, MICHELLE MICHELSOHN, and :
HERBERT BLAINE LAWSON, JR., Individually :  **ELECTRONICALLY FILED**
and on Behalf of All Other Persons and Entities              :
Similarly Situated,                                          :
                                                             :
                           Plaintiffs,  :
                                                             :
         - against -                    :
                                                             :
BAYOU GROUP LLC, et al.,                :
                                                             :
                           Defendants.  :
                                                             :
------------------------------------------------------------ X

### CITIBANK, N.A.'S REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS

| | |
|---|---|
| Benjamin R. Nagin (BN 0539) | Mark B. Blocker |
| Catherine B. Winter (CW 3053) | Sidley Austin LLP |
| Sidley Austin LLP | One South Dearborn Street |
| 787 Seventh Avenue | Chicago, Illinois 60603 |
| New York, New York 10019 | (312) 853-7000 |
| (212) 839-5300 | (312) 853-7036 (fax) |
| (212) 839-5599 (fax) | |
| | John K. Van De Weert |
| | Sidley Austin LLP |
| | 1501 K Street, N.W. |
| | Washington, D.C. 20005 |
| | (202) 736-8000 |
| *Counsel for Defendant Citibank, N.A.* | (202) 736-8711 (fax) |

# TABLE OF CONTENTS

Table of Contents ............................................................................................................... i

Table of Authorities .......................................................................................................... ii

Introduction ........................................................................................................................1

Argument ............................................................................................................................2

    I.      THE NEGLIGENCE CLAIM (COUNT VII) FAILS BECAUSE CITIBANK OWED NO DUTY TO NON-CUSTOMERS, AS A MATTER OF LAW. ..........................................................................................2

    II.     ABSENT ACTUAL KNOWLEDGE OF THE UNDERLYING WRONG, THERE CAN BE NO CLAIM FOR COMMERCIAL BAD FAITH (COUNT VIII). ..................................................................................3

    III.    PLAINTIFFS HAVE NOT ALLEGED ANY BASIS FOR CITIBANK'S ACTUAL KNOWLEDGE OF MISCONDUCT OR SUBSTANTIAL PARTICIPATION, WHICH ARE BOTH NECESSARY ELEMENTS OF THE AIDING AND ABETTING CLAIMS (COUNTS XII, XIII & XIV). ...........4

          A.     Plaintiffs Have Not Alleged "Actual Knowledge" By Citibank ..................4

          B.     Plaintiffs Have Not Alleged That Citibank Lent "Substantial Assistance" ...................................................................................................7

    IV.    PLAINTIFFS OFFER NO BASIS FOR THE UNJUST ENRICHMENT CLAIM (COUNT XV). .................................................................................7

    V.     UCC ARTICLE 4A PREEMPTS ALL OF PLAINTIFFS' CLAIMS .....................8

    VI.    LEAVE TO AMEND SHOULD BE DENIED .......................................................9

Conclusion ........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Alden Automobile Parts Warehouse, Inc. v. Dolphin Equipment Leasing Corp., 682 F.2d 330 (2d Cir. 1982)..................................................................................................7

Allied Irish Banks, P.L.C. v. Bank of America, N.A., No. 03 Civ. 3748 (DAB), 2006 U.S. Dist. LEXIS 4270 (S.D.N.Y. Jan. 31, 2006).....................................................8

Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158 (S.D.N.Y. 2003) ..........................2, 4

Estate of Freitag v. Frontier Bank, 118 Wash. App. 222, 75 P.3d 596 (2003)................................8

McDaniel v. Bear Stearns & Co., 196 F. Supp. 2d 343 (S.D.N.Y. 2002) .......................................7

Primavera Familienstiftung v. Askin, 130 F. Supp. 2d 450 (S.D.N.Y. 2001) ............................5, 7

Prudential-Bache Secur., Inc. v. Citibank, N.A., 73 N.Y.2d 263, 539 N.Y.S.2d 699, 536 N.E.2d 1118 (1989)...........................................................................................................3

Regions Bank v. Wieder & Mastroianni, P.C., 170 F. Supp. 2d 436 (S.D.N.Y. 2001)...................9

Regions Bank v. Wieder & Mastroianni, P.C., 423 F. Supp. 2d 265 (S.D.N.Y. 2006)...................9

Renner v. Chase Manhattan Bank, 98 Civ. 926, 2000 U.S. Dist. LEXIS 8552 (S.D.N.Y. June 14, 2000)..........................................................................................................3, 5, 6

Ryan v. Hunton & Williams, 99 Civ. 5938, 2000 U.S. Dist. LEXIS 13750 (E.D.N.Y. Sept. 20, 2000) ........................................................................................................3, 5, 6

Schlegel v. Bank of America, N.A., 271 Va. 542, 628 S.E.2d 362 (2006) .....................................8

In re Sharp Int'l Corp. (Sharp Int'l Corp. v. State Street Bank & Trust Co.), 403 F.3d 43 (2d Cir. 2005)..................................................................................................................7

Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87 (2d Cir. 2001)....................2

Thomas v. Ross & Hardies, 9 F. Supp. 2d 547 (D. Md. 1998).......................................................4

Tzaras v. Evergreen Int'l Spot Trading, Inc., No. 01 Civ. 10726 (LAP), 2003 U.S. Dist. LEXIS 2707 (S.D.N.Y. Feb. 25, 2003).............................................................................2

UniCredito Italiano SpA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485 (S.D.N.Y. 2003)...........4

**Statutes & Rules**

N.Y. Banking L. § 9............................................................................................................5

Fed. R. Civ. P. 12(b)(6).....................................................................................................10

## **INTRODUCTION**

Unable to defend their complaint as currently pled, plaintiffs fill their response with references to many new facts either gleaned from internet searches or simply stated as fact without support. For example, plaintiffs make wild references to money laundering – a crime never mentioned in the Amended Complaint – and attach various money laundering policies. But even if all of these new facts are accepted as true and treated as if they were pled in the Amended Complaint (and Citibank has no objection to the Court's doing so), the Amended Complaint still does not state a claim against Citibank. None of these allegations changes the outcome as to any Count.

As to the negligence claim, none of these new allegations alters the fact that plaintiffs were not Citibank customers and thus Citibank did not owe them any duty. As to the unjust enrichment claim, none of these new allegations changes the fact that Citibank rightfully earned fees from the Bayou Depositors. And as to the aiding and abetting and commercial bad faith claims, plaintiffs still are unable to allege that Citibank had the requisite knowledge of the underlying fraud perpetrated by Israel and Marino. Even assuming, as plaintiffs now claim, that Citibank did not follow its own anti-money laundering policies, such allegations at most suggest that Citibank had procedures to detect suspicious activity, not that Citibank had the requisite actual knowledge of the underlying fraud.

As Citibank pointed out in its opening brief, claims of the sort brought here have been routinely disposed of through motions to dismiss, and plaintiffs have presented no reason that this Court cannot likewise adjudicate their claims. Citibank's motion should therefore be granted, and the claims asserted against Citibank should be dismissed with prejudice.

**ARGUMENT**

I.  **THE NEGLIGENCE CLAIM (COUNT VII) FAILS BECAUSE CITIBANK OWED NO DUTY TO NON-CUSTOMERS, AS A MATTER OF LAW.**

Plaintiffs, who are non-customers of Citibank, do not dispute that settled New York law provides that "a bank does not owe a duty of care to a non-customer." Tzaras v. Evergreen Int'l Spot Trading, Inc., No. 01 Civ. 10726 (LAP), 2003 U.S. Dist. LEXIS 2707, *17 (S.D.N.Y. Feb. 25, 2003) (granting Rule 12(b)(6) motion). Nevertheless, plaintiffs claim that whether Citibank owed a duty to them is question of fact. Not only is this assertion wrong, see id. at *16 ("whether, under New York common law, a duty of care is owed to plaintiff is a question of law that is properly before this Court on a motion to dismiss"), but the two cases on which plaintiffs rely do not say otherwise. Neither Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003), nor Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103-04 (2d Cir. 2001), addressed whether a bank can ever owe a duty to a non-customer. Rather, both cases involved negligent misrepresentation claims (rather than simple negligence claims), for which New York law requires showing a "special relationship" that gives rise to a duty to disclose. The courts held that there was a factual question as to whether the conceded relationship between the parties gave rise to a special relationship. The rule in those cases does not apply in this case, which does not involve a negligent misrepresentation claim. Moreover, here there was no relationship – special or otherwise – between plaintiffs and Citibank, and thus there is no conceivable factual question.

Plaintiffs try to suggest there was some relationship by pointing out that plaintiffs wired money to a Citibank account of the Bayou Depositors. (Pl. Mem. at 10-11). That fact, however, does not give rise to a relationship between plaintiffs and Citibank. Plaintiffs wired money to the account at Citibank for the purpose of investing in the Bayou Funds, not to establish a

relationship with Citibank. Simply put, there was no duty as a matter of law, and therefore the negligence claim should be dismissed.

II. **ABSENT ACTUAL KNOWLEDGE OF THE UNDERLYING WRONG, THERE CAN BE NO CLAIM FOR COMMERCIAL BAD FAITH (COUNT VIII).**

Plaintiffs concede that, to state a claim for commercial bad faith, they must plead that Citibank "has actual knowledge of facts and circumstances that amount to bad faith," such that the defendant "itself becom[es] a participant in a fraudulent scheme." (Pl. Mem. at 20).[1] Although plaintiffs claim they have pled actual knowledge, they admit that the only facts known by Citibank were that the Bayou Depositors held investor funds and that the person authorized to direct those funds – Mr. Israel – made transfers from the Bayou Depositors' accounts into other accounts at a foreign bank. (Pl. Mem. at 21). These allegations do not show that Citibank had actual knowledge of the underlying fraud committed by Israel and Marino. As in Ryan v. Hunton & Williams, 99 Civ. 5938 (JG), 2000 U.S. Dist. LEXIS 13750, *31-32 (E.D.N.Y. Sept. 20, 2000), and Renner v. Chase Manhattan Bank, 98 Civ. 926 (CSH), 2000 U.S. Dist. LEXIS 8552, *53 (S.D.N.Y. June 14, 2000), these facts at most establish that Citibank negligently failed to detect the fraud or should have had suspicions on which it failed to act. But Ryan and Renner, both of which were decided on 12(b)(6) motions, confirm that such allegations are not sufficient to state a claim, and thus Count VIII can be readily disposed of on a motion to dismiss.

---

[1] Plaintiffs' footnote regarding "gross carelessness" adds nothing to their arguments. (Pl. Mem. at 21 n.8). The much older cases on which they rely are inapposite given the standard of actual knowledge adopted by the Court of Appeals in Prudential-Bache Secur., Inc. v. Citibank, N.A., 73 N.Y.2d 263, 275, 539 N.Y.S.2d 699, 706, 536 N.E.2d 1118, 1125 (1989).

### III. PLAINTIFFS HAVE NOT ALLEGED ANY BASIS FOR CITIBANK'S ACTUAL KNOWLEDGE OF MISCONDUCT OR SUBSTANTIAL PARTICIPATION, WHICH ARE BOTH NECESSARY ELEMENTS OF THE AIDING AND ABETTING CLAIMS (COUNTS XII, XIII & XIV).

Plaintiffs do not dispute the elements of a claim for aiding and abetting fraud or breach of fiduciary duty. (Pl. Mem. at 13).[2] The only dispute they raise is whether they have met the necessarily elements of alleging that Citibank had "actual knowledge" of the underlying fraud or breach fiduciary duty, Dubai Islamic Bank, 256 F. Supp. 2d at 166, and that Citibank provided "substantial assistance" to the wrongdoers, UniCredito Italiano SpA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003). They have met neither prong.

#### A. Plaintiffs Have Not Alleged "Actual Knowledge" By Citibank.

Plaintiffs' summary of their allegations on page 14 of their memorandum confirms that they have not – and cannot – allege the requisite actual knowledge. In their summary, the only facts allegedly within Citibank's *actual* knowledge were that (1) it had received money from putative class members as investments in the Bayou Funds, and (2) it knew that the funds were "fiduciary funds of investors" – although plaintiffs do not dispute that the fiduciaries of those funds were the Bayou principals, not Citibank. (See Pl. Mem. at 14). These facts are plainly insufficient to meet the actual knowledge requirement. If these facts were enough, then Citibank would be subject to aiding and abetting liability every time an improper use was made of funds attributable to an investment vehicle. But the law has never embraced such an expansive notion of liability, and instead has required actual knowledge of the underlying fraud. As applied here,

---

[2] Contrary to plaintiffs' assertion, Citibank has never contended that aiding and abetting claims are "novel." (Pl. Mem. at 13 n.6). Rather, Citibank argued that the aiding and abetting *negligence* claim is novel because there is no support for it under New York law – a conclusion confirmed by the fact that plaintiffs can only point to a single trial court decision, applying Maryland law, that ever accepted such a claim. (Id.), citing Thomas v. Ross & Hardies, 9 F. Supp. 2d 547, 559 (D. Md. 1998). And it makes no sense to recognize such a claim because aiding and abetting liability is predicated on *scienter* while negligence claims are not.

that means plaintiffs must show that Citibank had actual knowledge of the Israel/Marino Ponzi scheme, and plaintiffs concede that this is "something that plaintiffs have not alleged." (Pl. Mem. at 13).

Instead, plaintiffs claim that all they have to show to prove their claim is that Citibank permitted the Bayou Depositors' accounts to be "wrongfully liquidat[ed]." (See Pl. Mem. at 12-13). But that claim is meritless because, absent the underlying fraud and breach of fiduciary duty, there would be nothing inherently improper about the transfers made from the Bayou Depositors' Citibank accounts to accounts allegedly in the name of Mr. Israel. Accord N.Y. Banking L. § 9 (fact that corporate officer draws a check on corporation's account in his own name "shall not constitute notice" of wrongful transaction to the bank). As Ryan and Renner confirm, even suspicions about a transaction are not sufficient to meet the "actual knowledge" standard. Ryan, 2000 U.S. Dist. LEXIS 13750 at *25-27; Renner, 2000 U.S. Dist. LEXIS 8552 at *36. Nor is recklessness. Primavera Familienstiftung v. Askin, 130 F. Supp. 2d 450, 507 n.64 (S.D.N.Y. 2001).

Perhaps recognizing their inability to allege (much less ever prove) actual knowledge by Citibank, plaintiffs now rely on a variety of new facts that were not alleged, such as Citibank's anti-money laundering[3] policies and guidelines and the obligation of financial institutions to report to their regulators certain suspicious activity under the Bank Secrecy Act. (See Pl. Mem. at 14-18 & Declaration of Lane L. Vines ("Vines Decl."), Exh. A-D). But none of these new facts even suggests that Citibank had actual knowledge of the Israel/Marino fraud. At most,

---

[3] It is far from clear that the label "money laundering" even applies in this case. As set forth in Exhibit A to the Vines Declaration, "[m]oney laundering is the process of introducing the process of crime into the legitimate stream of financial commerce…." (Id.). Here, the transactions were allegedly designed not to "launder" money, but rather to steal money that was already in a legitimate bank account.

these new-found materials show that Citibank makes efforts to identify and report suspicious activity, not that it is required to have knowledge of any fraud.[4] In fact, plaintiffs' reliance on these new facts only reinforces that this case is indistinguishable from Ryan and Renner. In both of those cases, plaintiffs alleged that the defendant banks had detected suspicious facts about the transactions at issue, and had nevertheless allowed the transactions to occur. In Ryan, the bank suspected that the fraudsters were running a scam, and had referred it for further review to the "fraud investigation unit," but did not stop the transaction activity. 2000 U.S. Dist. LEXIS 13750 at *25-26. In Renner, the plaintiffs alleged that the bank had actually rejected some of the proposed transactions because of suspicions of fraud, but allowed others to take place. 2000 U.S. Dist. LEXIS 8552 at *36. In both case, motions to dismiss aiding and abetting claims were granted on the ground that the banks lacked knowledge of the underlying fraud.

Plaintiffs' efforts to distinguish Ryan, Renner, and the other cases cited by Citibank are unavailing. Plaintiffs' allegations establish either that Citibank (1) should have suspected fraud, but nonetheless allowed the transactions to occur, or (2) failed to even employ the appropriate measures to detect suspicious activity. Neither allegation meets the actual knowledge standard, and therefore, as in Ryan and Renner, the aiding and abetting claims should be dismissed.

---

[4] A reading of the materials submitted by the plaintiffs demonstrates that these policies and guidelines could not have stopped the transactions alleged by plaintiffs. Those documents indicate that money laundering controls depend on monitoring unusual and suspicious activities and, *after* the transaction is completed, making appropriate reports and taking appropriate action. (Exh. B at § 4; Exh. C at § 4.3). Stopping fraudulent transactions in real time is *not* one of the goals of the documents, as such a process would impose enormous burdens on financial institutions and delays on users. Thus, Exhibit C expressly states that "real-time screening" should be limited to "enforcing embargoes and sanctions," where monitoring requires only "a true or false answer to matches with the applicable lists…." (Vine Decl. Exh. C at § 4.1). Likewise, plaintiffs admit that SARs are not filed until *after* a transaction is completed. (Pl. Mem. at 17). Here, plaintiffs allege that the transactions they claim give rise to Citibank's liability were "unprecedented." (Pl. Mem. at 14). Even if Citibank's monitoring systems detected the transactions, it would have been too late to stop them.

### B. Plaintiffs Have Not Alleged That Citibank Lent "Substantial Assistance."

Plaintiffs' attempts to show that they have pled the requisite "substantial assistance" fare no better. Here, plaintiffs have alleged that Citibank's *inaction* – failing to stop the 2004 wire transfers – aided and abetted the underlying wrongdoing, by "permitt[ing] defendant Israel to withdraw personally and transfer" funds from the Bayou Depositors' account. (Pl. Mem. at 8-9). Under New York law, though, "[w]here defendant does not owe a fiduciary duty directly to the plaintiffs, … 'inaction' by the defendant cannot constitute 'actionable participation.'" McDaniel v. Bear Stearns & Co., 196 F. Supp. 2d 343, 352 (S.D.N.Y. 2002). Because it is uncontested that Citibank owed no fiduciary duty to the plaintiffs, such inaction cannot give rise to a claim for aiding and abetting. See In re Sharp Int'l Corp. (Sharp Int'l Corp. v. State Street Bank & Trust Co.), 403 F.3d 43, 49-53 (2d Cir. 2005).

Even if the Complaint is construed to claim action, as opposed to inaction, by Citibank, the claim still fails. Processing ordinary banking transactions does not constitute substantial assistance, as a matter of law. (Citibank Mem. at 13). Plaintiffs claim, relying on Primavera Familienstiftung, that an ordinary course transaction can satisfy the substantial assistance prong if "there is an extraordinary economic motivation to aid in the fraud." (Pl. Mem. at 19), quoting 130 F. Supp. 2d at 511-12. But no such "extraordinary economic motivation" has been alleged, nor could it. Plaintiffs have not alleged that Citibank gained anything from the Israel/Marino fraud or breach of fiduciary duty.

### IV. PLAINTIFFS OFFER NO BASIS FOR THE UNJUST ENRICHMENT CLAIM (COUNT XV).

In support of their unjust enrichment claims, plaintiffs merely repeat the allegations of the Complaint and refer to cases reciting the legal standard for such a claim. (Pl. Mem. at 22). They make no effort to distinguish the case cited by Citibank, Alden Auto Parts Warehouse, Inc. v.

-7-

Dolphin Equipment Leasing Corp., 682 F.2d 330, 333 (2d Cir. 1982), which held that a third party (*i.e.*, Citibank) cannot be liable for unjust enrichment when it simply received fees in the ordinary course, for its banking services. The fact that those customers defrauded the plaintiffs does not affect Citibank's right to be paid for its services. For this reason, Allied Irish Banks, P.L.C. v. Bank of America, N.A., No. 03 Civ. 3748 (DAB), 2006 U.S. Dist. LEXIS 4270, *39-43 (S.D.N.Y. Jan. 31, 2006) (see Pl. Mem. at 22), is inapplicable. Allied Irish involved a claim that the defendants were unjustly enriched by directly participating in a fraud against the plaintiffs, not by simply receiving fees from the ultimate fraudster for services provided in the ordinary course. See id. at *5 (describing alleged misconduct of defendants).

## V.     UCC ARTICLE 4A PREEMPTS ALL OF PLAINTIFFS' CLAIMS.

In its opening brief, Citibank showed that plaintiffs' common law claims are preempted by Article 4A of the UCC because those claims seek to impose obligations inconsistent with section 202 of Article 4A. (Citibank Mem. at 15-22). As Citibank explained, section 202 contains specific rules for determining whether wire transfer were authorized or effective, and through their common law claims, plaintiffs essentially argue that the wire transfers were unauthorized *even if* they met the requirements of section 202. (Citibank Mem. at 19-20).

Plaintiffs do not even address this argument. Instead, plaintiffs claim that Article 4A does not apply to "persons and entities which were outside" the wire transfers. (Pl. Mem. at 23). There is no support for this statement. On the contrary, courts have applied Article 4A's displacement rules – in circumstances closely paralleling those here – to bar claims brought by persons not involved with wire transfers but who sought to recover funds that were alleged to be wrongfully transferred without authority. See Estate of Freitag v. Frontier Bank, 118 Wash. App. 222, 225, 75 P.3d 596, 598 (2003) (Article 4A foreclosed common law remedies where estate sought to recover funds misappropriated by fiduciary); Schlegel v. Bank of America, N.A.,

271 Va. 542, 628 S.E.2d 362, 365 (2006) (Article 4A overruled common law claims by co-owner of business for funds transfer authorized by other owner). It makes no sense that Article 4A would limit a bank's liability to its own customers but allow unlimited liability to third parties.

Plaintiffs also rely on Regions Bank v. Wieder & Mastroianni, P.C., 423 F. Supp. 2d 265 (S.D.N.Y. 2006). However, Regions Bank stands for the unsurprising proposition that a claim for conversion or breach of fiduciary duty is not necessarily displaced by Article 4A simply because a funds transfer is involved. Id. at 268-69. In that case, unlike here, the defendants had not been able to show any inconsistency between the common law claims and the Article 4A rules. Id.; see also Regions Bank v. Wieder & Mastroianni, P.C., 170 F. Supp. 2d 436, 437-39 (S.D.N.Y. 2001) (reciting factual history). Here, plaintiffs seek to use common law theories to override the specific Article 4A rules (contained in section 202) that determine whether a wire transfer is authorized, and those sort of common law claims are simply not permitted. Thus, for this additional reason, plaintiffs' claims should be dismissed.

## VI.    LEAVE TO AMEND SHOULD BE DENIED.

In a final footnote, plaintiffs request leave to amend if Citibank's motion is granted. (Pl. Mem. at 25 n.9). That request should be denied for two reasons. First, plaintiffs have had ample time and opportunity to plead and re-plead their claims. They first filed their Complaint on November 17, 2005, in the District of Connecticut. After an initial status conference, Judge Arterton granted plaintiffs sixty days to file an amended complaint, which they filed on March 6, 2006. When this case was transferred here, this Court granted them an additional thirty days to further amend their Amended Complaint, but they chose not to do so. Having had ample opportunity to set forth their claims and the basis for those claims (and having already filled their response with numerous additional facts that they believed were helpful), no further pleading should be allowed. Second, plaintiffs have also identified no amendments they could make in

good faith that would allow them to state any claim, and thus leave to amend should be denied as futile. However, if the Court permits leave to amend, the stay on discovery as to Citibank should be extended until any motion to dismiss such a complaint is decided.

## CONCLUSION

For all of these reasons, and the reasons stated in its opening memorandum, the claims asserted against defendant Citibank, N.A. – in Counts VII, VIII, XII, XIII, XIV, and XV of the Amended Complaint – should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: July 17, 2006

Respectfully submitted,

SIDLEY AUSTIN LLP

By:   s/ John K. Van De Weert
     Benjamin R. Nagin (BN 0539)
     Catherine B. Winter (CW 3053)
     787 Seventh Avenue
     New York, New York 10019
     (212) 839-5300
     (212) 839-5599 (fax)

     Mark B. Blocker
     (admitted *pro hac vice*)
     Sidley Austin LLP
     One South Dearborn Street
     Chicago, Illinois 60603
     (312) 853-7000
     (312) 853-7036 (fax)

     John K. Van De Weert
     (admitted *pro hac vice*)
     Sidley Austin LLP
     1501 K Street, N.W.
     Washington, D.C. 20005
     (202) 736-8000
     (202) 736-8711 (fax)

     *Counsel for Defendant Citibank, N.A.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 17, 2006, a copy of Citibank, N.A.'s Reply Memorandum of Law in Further Support of its Rule 12(b)(6) Motion to Dismiss was filed electronically and served by U.S. mail, first class postage prepaid, on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                        s/ John K. Van De Weert
                                                          John K. Van De Weert