UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                    :

IN RE BAYOU HEDGE FUNDS INVESTMENT  :        No. 06 MDL 1755 (CM)
LITIGATION                              :
                                    :

------------------------------------------------------------ X
THIS DOCUMENT RELATES TO:        :
------------------------------------------------------------ X
                                    :

BROAD-BUSSEL FAMILY LIMITED         :        No. 06 Civ. 3026 (CM)
PARTNERSHIP, MARIE-LOUISE          :
MICHELSOHN, MICHELLE MICHELSOHN, an  :
HERBERT BLAINE LAWSON, JR., Individually  :
and on Behalf of All Other Persons and Entities  :
Similarly Situated,                      :
                                    :
                  Plaintiffs,      :
                                    :

       - against -              :
                                    :        **ORAL ARGUMENT REQUESTED**

BAYOU GROUP LLC, et al.,           :
                                    :

                 Defendants.     :        ELECTRONICALLY FILED
                                    :
------------------------------------------------------------ X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CITIBANK, N.A.'S MOTION FOR ENTRY OF A FINAL JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)

BERGER & MONTAGUE, P.C.           KOSKOFF, KOSKOFF & BIEDER, P.C.
Merrill G. Davidoff, Esq.               William M. Bloss, Esq.
Lawrence J. Lederer, Esq.             Neal A. DeYoung, Esq.
Lane L. Vines, Esq.                   350 Fairfield Avenue
1622 Locust Street                     Bridgeport, CT 06604
Philadelphia, PA 19103-6305        Telephone: (203) 336-4421
Telephone: (215) 875-3000          Fax: (203) 368-3244
Fax: (215) 875-4604

*Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RELEVANT PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF PERTINENT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.    Plaintiffs Invest in the Bayou Hedge Funds Through Citibank . . . . . . . . . . . . . . 5

     B.    The Bayou Hedge Fund Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     C.    Citibank's Participation in the Bayou Hedge Fund Fraud . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     I.    Rule 54(b) Certification Is Inappropriate as a Matter of Law . . . . . . . . . . . . . . 11

     II.    Denial of Rule 54(b) Certification Is Also Consistent with
            the Court's September 7 Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

*Federal Cases*

In re Blech Sec. Litig.,
No. 94-CIV-7696 (RWS), 1997 U.S. Dist. LEXIS 404
(S.D.N.Y. Jan. 16, 1997) ............................................ 12-13

Brunswick Corp. v. Sheridan,
582 F.2d 175 (2d Cir. 1978) ............................................ 11

Campbell v. Westmoreland Farm, Inc.,
403 F.2d 939 (2d Cir. 1968) ............................................ 14

Citizens Accord, Inc. v. Town of Rochester,
235 F.3d 126 (2d Cir. 2000) ............................................ 10

Cortec v. Sum Holding,
949 F.2d 42 (2d Cir. 1991) ............................................. 15

Cullen v. Margiotta,
811 F.2d 698 (2d Cir. 1987) ............................................ 10

Curtiss-Wright Corp. v. General Electric Co.,
446 U.S. 1, 100 S. Ct. 1460, 64 L. Ed. 2d 1 (1980) ............................ 10

Department of Economic Dev. v. Arthur Andersen & Co.,
739 F. Supp. 804 (S.D.N.Y. 1990) ......................................... 14

Hogan v. Conrail,
961 F.2d 1021 (2d Cir. 1992) ......................................... 10, 11

Lerner v. Fleet Bank, N.A.,
No. 05-CV-5106, 2006 WL 2260822 (2d Cir. Aug. 8, 2006) ................... 2-3

Morin v. Trupin,
809 F. Supp. 1081 (S.D.N.Y. 1993) ....................................... 16

RIJ Pharm. Corp. v. Ivax Pharms., Inc.,
322 F. Supp. 2d 406 (S.D.N.Y. 2004) ..................................... 14

Sears, Roebuck & Co.,
351 U.S. 427, 76 S. Ct. 895, 100 L. Ed. 1297 (1956) ......................... 11

Siegel v. Converters Transportation, Inc.,
    714 F.2d 213 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Slayton v. American Express Co.,
    460 F.3d 215 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Travelers Indem. Co. v. Losco Group, Inc.,
    150 F. Supp. 2d 556 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

T.S.I. 27, Inc. v. Berman Enterprises, Inc.,
    115 F.R.D. 252 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

UniCredito Italiano SpA v. JPMorgan Chase Bank,
    288 F. Supp. 2d 485 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## *Federal Rules*

Fed R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

Fed R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed R. Civ. P. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## *Other Authorities*

6 C. Wright & A. Miller, Federal Practice and Procedure, § 1471 (1971) . . . . . . . . . . . . . . . . *15*

Plaintiffs Broad-Bussel Family Limited Partnership ("Broad-Bussel Family"), Marie-Louise Michelsohn, Michelle Michelsohn and Herbert Blaine Lawson, Jr. (collectively, the "plaintiffs"), individually and on behalf of all other persons and entities similarly situated, respectfully submit this memorandum of law in opposition to the Motion for Entry of a Final Judgment Pursuant to Fed. R. Civ. P. 54(b) filed by defendant Citibank, N.A. ("Citibank").

## INTRODUCTION

The instant motion seeks extraordinary relief in the form of a final judgment of dismissal under Fed. R. Civ. P. 54(b) as to Citibank, while the litigation would continue against the other defendants for their alleged roles in the massive -- and admitted -- fraud that is at issue in this case. Neither the Second Circuit nor this Court, the plaintiffs or other parties should be subject to such piecemeal litigation. Moreover, contrary to Citibank's position, this Court's prior ruling did not dismiss plaintiffs' claims against Citibank with prejudice and thereby foreclose for plaintiffs to replead sufficiently those claims. In sum, there is an absence of an immediate harm to justify entry of a final judgment as to Citibank alone, and the claims against Citibank are so interrelated to the remaining claims that the requested Rule 54(b) certification must be denied.

## RELEVANT PROCEDURAL BACKGROUND

The operative Amended Class Action Complaint (the "Amended Complaint") alleges the following claims against Citibank: Negligence (Seventh Claim for Relief); Commercial Bad Faith (Eighth Claim for Relief); Aiding and Abetting Fraud (Twelfth Claim for Relief); Aiding and Abetting Breach of Fiduciary Duty (Thirteenth Claim for Relief); Aiding and Abetting

1

Negligence (Fourteenth Claim for Relief); and Unjust Enrichment (Fifteenth Claim for Relief).[1]

On May 31, 2006, Citibank moved to dismiss the Amended Complaint pursuant to Fed. R. Civ.

P. 12(b)(6) (Document no. 21 in Case no. 06-cv-3026).

On September 7, 2006, the Court entered a Memorandum Decision and Order granting

Citibank's motion to dismiss (Document no. 61 in Case no. 06-cv-3026) (the "September 7

Order"). However, the Court granted that motion not on the merits. Instead, the Court held that

plaintiffs' claims did not contain sufficiently particularized allegations, as described more fully

below.

First, the Court found that the claims for Commercial Bad Faith and Aiding and Abetting

Fraud were deficient because the Amended Complaint "does not contain particularized

allegations from which one could infer that Citibank was aware that Bayou was anything other

than a legitimate hedge fund" or that "Citibank was aware that the fund was a fraudulent

enterprise, or that [defendant] Israel was looting it." September 7 Order at p.6. In rejecting those

claims, the Court stated that it "decline[s] plaintiffs' suggestion [to grant] leave to amend their

complaint" as to both of those claims. Id. at p.7.

Second, the Court found that plaintiffs' claims for commercial bad faith and aiding and

abetting breach of fiduciary duty raised an "interesting question", especially in light of the claims

"that the Second Circuit found viably pleaded in [Lerner v. Fleet Bank, N.A., No. 05-CV-5106,

2006 WL 2260822 (2d Cir. Aug. 8, 2006) ('Lerner II')]." September 7 Order at p.6. In

---

[1]    By Order of the Judicial Panel on Multidistrict Litigation entered April 18, 2006, this class action litigation and other Bayou-related actions were transferred to this Court for pretrial proceedings. Prior to that transfer, this litigation was pending in the District of Connecticut, where the Amended Complaint was filed on March 6, 2006 (Document no. 72 in Broad-Bussel Family L.P. v. Bayou Group LLC, No. 3:05-cv-1762 JBA (D. Conn.)).

considering plaintiffs' claims here, the Court held that (id.):

> [Lerner II] did note that a bank could be held liable to non-customers, either in negligence or for aiding and abetting a breach of fiduciary duty, if the bank received a direct benefit from the wrongdoing or had notice of the underlying wrongful conduct.

In distinguishing Lerner II from this case, however, the Court found that there is "no allegation in the instant complaint that Citibank received any of the proceeds of [defendants] Israel and Marino's criminal activity", and that there is "none of the facts that gave the Lerner II banks notice of [the Lerner II defendant's] wrongful activity". Id. Notably, the Court also stated that the Bayou Defendants' alleged liquidation of more than $120 million from the Bayou Hedge Funds, and wire transfer of those funds "to a German bank account in the name of [defendant and Bayou principal] Samuel Israel .... *could and perhaps should raise some sort of red flag.*"[2] Id. at p.8 (emphasis added). In dismissing these claims, however, the Court made no ruling as to whether these claims could be repleaded under any circumstances. In fact, the opposite is the case, as the Court's dismissal was premised on the factual detail in the Amended Complaint.

Finally, the Court's September 7 Order did not address at all plaintiffs' claims for unjust enrichment or aiding and abetting negligence. Hence, the Court most certainly did not state that plaintiffs would be precluded from repleading those claims, to the extent that such claims were pleaded deficiently in the first place.

At bottom, contrary to Citibank's repeated refrain that plaintiffs' claims were dismissed

---

[2] In carrying out their blatant fraud, defendants Israel and Marino created and used various Bayou entities, including Bayou Group LLC, Bayou Management LLC, Bayou Securities LLC, Bayou Securities, LTD, Bayou Partners LLC, Bayou Affiliates, LLC, Bayou Equities, LLC, IM Partners and IMG, LLC, and possibly others which are currently unknown to plaintiffs (collectively, with the Bayou Hedge Funds, "Bayou" or the "Bayou Defendants").

forever, the September 7 Order did *not* so hold nor did it preclude any opportunity to replead. Instead, while plaintiffs respectfully disagree that any of their claims should have been dismissed at all, plaintiffs should at a minimum be entitled under that Order to replead their claims if and as warranted following discovery.

Since the entry of the September 7 Order, the Court held a pretrial status conference on February 15, 2007. On February 21, 2007, the Court filed a Minute Order providing for deadlines as to Class discovery and a briefing schedule for Class certification proceedings. Although plaintiffs have therefore been unable to pursue formal merits discovery, plaintiffs have pursued and received formal discovery in support of Class certification, as well as discovery in the related Bayou bankruptcy proceedings pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Among other things, plaintiffs have subpoenaed and received certain documents from Citibank. However, Citibank's production was extremely limited (amounting to less than one banker's box).

## SUMMARY OF PERTINENT FACTS[3]

This class action is brought by plaintiffs and other similarly situated investors who invested in one or more the investment hedge funds known as the Bayou family of hedge funds (the "Bayou Hedge Funds"), against Citibank and other defendants for their respective roles in facilitating one of the biggest and most audacious hedge fund frauds in history.[4] Almost since

---

[3]      The facts are taken from plaintiffs' Amended Complaint, citations to which are referenced as " ¶ ___ ".

[4]      The Class includes those who, during the period December 31, 1996 through August 25, 2005 (the "Class Period"), invested funds or maintained investments in the Bayou Hedge Funds, and suffered damages thereby. During the Class Period, plaintiffs and members of the Class are alleged to have invested more than $450 million in the Bayou Hedge Funds.

their inception in 1996, the Bayou Hedge Funds operated essentially as a financial sham and

Ponzi scheme that was orchestrated principally by Bayou's principals Samuel Israel, III and

Daniel Marino. However, it was simply not possible for the fraud here to have been

accomplished without the active and substantial participation of Bayou's lawyers, advisors and

bankers -- including specifically, defendant Citibank.

In particular, throughout the Class Period, Citibank served as Bayou's lead banker. In

that capacity, Citibank allegedly received millions of investment dollars from Class members --

including directly by wire transfers from plaintiffs and numerous other Class member investors --

it knew or disregarded were fiduciary proceeds beneficially owned by the Class. In addition,

Citibank processed millions of dollars in securities transactions for Bayou at the direction of

Marino and Israel. Despite knowing or ignoring the fiduciary nature of those funds, Citibank is

alleged to have directly aided and abetted defendant Israel's misappropriation of Class member

investor funds by distributing in July 2004 some $161 million in cash from five Bayou bank

accounts maintained at Citibank in New York, directly to *one or more offshore private bank

accounts solely in defendant Israel's name* at Deutsche Postbank in Hamburg, Germany.

Plaintiffs contend that the unprecedented amount and magnitude of the wire transfers to Israel's

personal account violated Citibank's obligations in the circumstances here.

### A.    Plaintiffs Invest in the Bayou Hedge Funds Through Citibank

During the Class Period December 31, 1996 and August 25, 2005, defendants Israel and

Marino solicited, sold and operated the Bayou Hedge Funds -- a family of hedge funds based in

Stamford, Connecticut.[5] ¶ 2. Also, during the Class Period, Bayou Management and the Bayou Hedge Funds maintained primary bank accounts at defendant Citibank. ¶¶ 19, 35, 45, 57.

Bayou used its Citibank accounts to receive directly from investors, including plaintiff Broad-Bussel Family and other members of the Class, fiduciary funds into the accounts for the Bayou Hedge Funds. For example, plaintiff Broad-Bussel Family entered into a Subscription Agreement with Bayou on December 21, 2003. ¶ 57. Broad-Bussel Family's Subscription Agreement provided for, among other things, Broad-Bussel Family's initial investment of $1,000,000 in the Bayou Super Fund. Id. In accordance with its obligations, on January 5, 2004, Broad-Bussel Family made a $500,000 wire transfer to Citibank, credited as Broad-Bussel Family's initial investment in the Bayou Super Fund. Id. On January 8, 2004, Broad-Bussel Family made a second $500,000 wire transfer to Citibank; that transfer was also credited as Broad-Bussel Family's investment in the Bayou Super Fund. Id. After Citibank received monies from plaintiff Broad-Bussel Family and other Class members as investments in the Bayou Hedge Funds, defendant Bayou Management sent such investors a certificate that acknowledged the Class members' investment in the respective Bayou Hedge Fund. Id. Thus, Citibank knew but ignored that the funds in the Bayou's Citibank accounts were fiduciary funds.

### B.    The Bayou Hedge Fund Fraud

The Bayou Hedge Funds were touted and sold as legitimate investment vehicles, but were actually being operated as a fraud. ¶¶ 2, 73, 124. Specifically, Israel and Marino fraudulently

---

[5]    Among other functions, defendant Israel was a founder and served as the Chief Executive Officer and Chief Investment Officer for the Bayou entities. ¶ 26. Defendant Marino is a Certified Public Accountant and served as the Chief Financial Officer and Chief Operating Officer of Bayou. ¶ 27.

lured investors to invest and maintain hundreds of millions of dollars in the Bayou Hedge Funds during the Class Period, through a scheme of improper acts and continuing misrepresentations and omissions regarding the business practices, financial results, operations and condition of Bayou. ¶¶ 86-88.

Throughout the Class Period, the Bayou Defendants and third party investment advisors, such as the Hennessee Defendants, communicated wholly false financial and other information about Bayou and the Bayou Hedge Funds to the Class via weekly newsletters, monthly reports, quarterly reports, annual reports and investor conference calls, all of which also omitted material adverse information about Bayou and the Bayou Hedge Funds in order to mislead Class member investors into believing the Bayou Hedge Funds were being operated properly and in accordance with the law. ¶ 60. The Bayou Defendants then used their phoney outside accounting firm, Richmond-Fairfield, in order to fraudulently certify the false financial data. ¶¶ 32, 62-63, 67, 72, 107.

On August 25, 2005, the financial press began to reveal that Bayou had long been operated as a fraud, with its principals having misappropriated literally millions of investor dollars. ¶ 1. That day, *The New York Times* shocked Class members and other investors by reporting that "[s]tate and federal officials in Connecticut are investigating the possible collapse of the Bayou Group, a hedge fund and brokerage firm in Stamford that managed an estimated $400 million for its investors." ¶¶ 7, 69. On August 27, 2005, *The New York Post* reported that federal agents had seized boxes of records and other material from Bayou's offices in Stamford, Connecticut, amid fears that up to $500 million of its investors' money has "disappeared." ¶ 70.

7

**C.    Citibank's Participation in the Bayou Hedge Fund Fraud**

On August 29, 2005, following the initial public disclosures of Bayou's collapse, *The Wall Street Journal* reported that a "suicide note and confession" had been found at offices of defendant Bayou Management. ¶¶ 7, 71, 72. That suicide note/confession was supposedly written by defendant Marino, directly implicated defendants Marino, Israel and others, and consisted of a six-page account of some of the details of financial fraud that had been conducted by the Bayou Defendants since in or about 1996. Id. Among other things, it was disclosed that defendants Israel and Marino had created entities that were used to unlawfully receive Class members funds, and thereafter either converted those funds personally to their own use or invested those funds in other investments exclusively for their personal interests. ¶¶ 24, 25, 74.

Over time, the Bayou Defendants' scheme began to unravel as new investments were outpaced by investment withdrawals, expenses, losses and unlawful conversions. ¶ 75. In or about April 2004, the Bayou Defendants made a last-ditch effort to keep their scheme afloat. Id. The Bayou Defendants then secretly stopped all securities trading and liquidated the Bayou Hedge Funds. Id. Specifically, Citibank, which had previously received directly and deposited millions of investment dollars from Class members, is alleged to have directly assisted defendants Israel and Marino in misappropriating Clas member investor funds. ¶¶ 3, 7, 19, 35, 75, 76-82, 124.

Following the Bayou Defendants' liquidation of the Bayou Hedge Funds, defendants Israel and Marino instructed Citibank to transfer $150 million from the Bayou bank accounts held at the Citibank branch in Bronxville, NY. ¶ 77. Israel and Marino wired those funds to a trading account at Barclay's Bank in London. Thereafter, Israel and Marino reportedly

8

transferred the $150 million back to Bayou's Citibank accounts in Bronxville. Id.

Beginning in or about July 2004, Citibank actually distributed a total of some $161 million in cash from five Bayou bank accounts maintained at Citibank in New York, directly to one or more private bank accounts solely in defendant Israel's name at Deutsche Postbank in Hamburg, Germany, despite knowing or ignoring that such proceeds were fiduciary funds beneficially owned by Class members. Id. According to a September 1, 2005 article in *The Wall Street Journal*, the Bayou Defendants reportedly emptied five Bayou accounts held by Citibank over the course of six days, withdrawing some $161 million. Four of those accounts held money for -- and, very significantly, ***explicitly and directly in the name of*** -- four specific Bayou Hedge Funds (Bayou Super Fund, Bayou No Leverage Fund, Bayou Affiliates Fund and Bayou Accredited Fund), and the fifth account held money directly in the name of Bayou Management. ¶ 78. Despite the fact that Citibank knew or disregarded that those monies were Bayou Class member investor funds, Citibank nevertheless permitted defendant Israel to withdraw personally and transfer those funds to accounts he himself alone owned and controlled. Specifically, on or about July 8, 2004, Citibank directly wired $120 million, of the total $161 million, from Bayou's Citibank accounts in New York to one or more offshore bank accounts in defendant Israel's name personally at Deutsche Postbank in Hamburg, Germany. Other transfers of Class member investor funds from the Citibank accounts, including an additional $32 million wire transfer reportedly somewhere within the United States, are unaccounted for. ¶ 79.

Since Bayou's shocking collapse, numerous investigations have been commenced by state, federal and regulatory agencies, several lawsuits have been filed, and Bayou's two principals, defendants Israel and Marino, have pleaded guilty to multiple criminal counts, and

9

now face long prison sentences. ¶¶ 2, 8, 85. Although some $101 million in suspected Bayou investor funds have been seized by the Arizona Attorney General, millions of dollars in other Class member investment proceeds remain missing. ¶¶ 8, 84.

## ARGUMENT

Federal Rule of Civil Procedure 54(b) provides in pertinent part that where multiple claims or counterclaims are involved in an action and a court has finally resolved only some of the claims, "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

The Second Circuit has held that the "determination of whether to grant Rule 54(b) certification is committed to the discretion of the district court"; however, "[t]he district court's discretion ... is to be *exercised sparingly* in light of the 'historic federal policy against piecemeal appeals.'" Hogan v. Conrail, 961 F.2d 1021, 1025 (2d Cir. 1992) (emphasis added) (quoting Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 8, 100 S. Ct. 1460, 1465, 64 L. Ed. 2d 1, 11 (1980)). Indeed, that discretionary power "should be used only in the infrequent harsh case," where there exists "'some danger of hardship or injustice through delay which would be alleviated by immediate appeal'". Citizens Accord, Inc. v. Town of Rochester, 235 F.3d 126, 129 (2d Cir. 2000) (citations omitted).

In Cullen v. Margiotta, 811 F.2d 698, 711 (2d Cir. 1987), the Second Circuit articulated principles guiding consideration of Rule 54(b) certification. The Second Circuit concluded that while "there are few guidelines as to when entry of the partial judgment should be ordered . . . [there are] several clearcut strictures as to when it should be eschewed." Id. Those situations

10

when Rule 54(b) certification is inappropriate are (see id.):

> 1.      In a multiple party situation where the complaint is dismissed as to one defendant but not to others if the same or closely related issues remain to be litigated against the undismissed defendants;

> 2.      In a case involving multiple claims when the dismissed claims are not "separable" from the claims that survive; and

> 3.      Even when there is separability of claims, in a case where there is no danger of hardship or injustice through delay.

Here, all three of the above circumstances exist. Hence, the balance tips overwhelmingly here against the requested Rule 54(b) certification.

## I.      RULE 54(b) CERTIFICATION IS INAPPROPRIATE AS A MATTER OF LAW

Citibank argues that the circumstances of this case warrant an extraordinary grant of certification under Rule 54(b). Citibank is wrong.

The Second Circuit has repeatedly stressed that absent special circumstances that indicate that a *"unusual hardship"* would be brought about by adherence to the preferred practice of postponing appeal until after a final judgment as to all claims and parties, the district court will not have a proper basis in which to enter a partial final judgement pursuant to Rule 54(b). Hogan v. Conrail, 961 F.2d 1021, 1025 (emphasis added) (finding abuse of discretion, and a lack of appellate jurisdiction, where district court entered Rule 54(b) judgment to have pretrial appellate review of its assessment of the sufficiency of the evidence to support a given claim). Accord Brunswick Corp. v. Sheridan, 582 F.2d 175, 183 (2d Cir. 1978). The Supreme Court has also long held that this "preserves the historic federal policy against piecemeal appeals," without resulting in undue prejudice to plaintiffs' trial on the remaining causes of action. Sears, Roebuck & Co., 351 U.S. 427, 438, 76 S. Ct. 895, 901, 100 L. Ed. 1297, 1307 (1956).

Here, Citibank has not, and cannot, show any immediate harm if Rule 54(b) certification were to be denied. Instead, Citibank argues for an immediate certification in order to avoid "duplicative trials" that could supposedly result -- at some unknown time in the future -- if certification as to Citibank's dismissal were delayed until "*after* the final disposition of the remaining claims". Citibank Br. at p.7 (emphasis in original). First, if the claims against Citibank were ever to be tried separate from and after the claims against other of the defendants, such a separate trial would not be duplicative but would actually be streamlined and benefit directly from an earlier trial. The crux of the allegations against Citibank are claims for aiding and abetting the wrongdoing of certain of the Bayou defendants. By definition, such aiding and abetting liability is premised on a finding of primary liability on the part of such other defendants. UniCredito Italiano SpA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003). As a result, *res judicata* and judicial notice from the outcome of a prior trial could streamline a later trial that was limited to only Citibank, if such a hypothetical circumstance were ever to occur.

Moreover, and at the very least, the Court should await until some point following the conclusion of merits discovery in this litigation before granting any Rule 54(b) certification as to Citibank. Deferring the issue of certification would then allow for the facts of this case to be fairly discovered by all parties such that leave to amend could be sought in the event that such discovery brings forth new evidence that could cure the pleading deficiencies that were identified in the Court's September 7 Order. At bottom, in the absence of any unusual hardship or injustice, the circumstances here clearly warrant denying Citibank's request for Rule 54(b) certification. Accord In re Blech Sec. Litig., No. 94-CIV-7696 (RWS), 1997 U.S. Dist. LEXIS

12

404 (S.D.N.Y. Jan. 16, 1997) (denying Rule 54(b) certification because defendants "failed to

show that a delay in certification of a partial final judgment is causing the sort of immediate

hardship (such as pending default on loan agreements) that would warrant departure from the rule

against piecemeal appeals"). Cf. T.S.I. 27, Inc. v. Berman Enterprises, Inc., 115 F.R.D. 252

(S.D.N.Y. 1987) (Rule 54(b) certification granted where plaintiff submitted letter from bank

showing delinquencies on loans and stating that survival of corporation would be in danger if

final judgment were delayed).

 Here, plaintiffs' allegations and Citibank's conduct are plainly "inextricably interrelated"

to the claims that have been sustained against other defendants -- indeed, one of the dismissed

claims subject to possible repleading is for aiding and abetting the breach of fiduciary duties by

other of the defendants. Specifically, Citibank is alleged to have received and processed Class

member fiduciary funds; processed securities transactions for Class member investors at the

direction of the Bayou Defendants; knew or ignored defendant Israel's and Marino's breaches of

fiduciary duty and fraudulent conduct; and knew or ignored that Citibank's private banking

representatives circumvented Citibank's anti-money laundering protocols, as well as related

federal regulations, by distributing to foreign accounts huge amounts of Class member fiduciary

funds to Israel personally. Indeed, immediately prior to their complete liquidation of these

accounts, the Bayou Defendants had engaged in a classic money-laundering ploy in these very

same accounts, such that those wire transactions would have also triggered Citibank's

anti-money laundering protocols. Nevertheless, Citibank's private banking representatives for

defendants Israel and Marino circumvented these protocols and effected the money laundering

scheme at issue in this action. Whether plaintiffs will be able to ultimately replead and prove

13

such allegations against Citibank is not now at issue. What is abundantly clear is that Citibank's alleged role in this admitted fraud arises out of, and is intertwined with, the same underlying set of facts upon which all of the sustained claims are proceeding.

This Court has recently cautioned that a Rule 54(b) certification of final judgment on any claim would be inappropriate "if such claim is 'inherently inseparable' or 'inextricably interrelated' to remaining claims." RIJ Pharm. Corp. v. Ivax Pharms., Inc., 322 F. Supp. 2d 406 (S.D.N.Y. 2004) (McMahon, J.) (denying certification where the continuing and dismissed claims are "inextricably interrelated", as those claims "arise out of the same underlying set of facts, and require an interpretation of the duties and obligations of the parties"). Indeed, Citibank itself affirmatively acknowledges that continued litigation of plaintiffs' claims against Citibank and the other defendants would "necessarily ... involve many of the same facts and potentially calling many of the same witnesses." Citibank Br. at p.7. Accord Department of Economic Dev. v. Arthur Andersen & Co., 739 F. Supp. 804, 810 (S.D.N.Y. 1990) ("[S]ince these dismissed third-party claims revolve around the same basic factual allegations as the surviving ones, immediate appeal of the second and fifth causes of action would not 'eliminate much unnecessary evidence, confine the issues, shorten the trial, save much expense to the litigants in connection with the preparation for trial and contribute considerably to expediting the work of the [trial] court.'") (quoting Campbell v. Westmoreland Farm, Inc., 403 F.2d 939, 942 (2d Cir. 1968)).

In sum, certification of the Citibank dismissal at this time would not only frustrate directly the purposes of Fed. R. Civ. P. 54(b) in avoiding piecemeal appeals but would contravene the well established law of this Circuit and the Supreme Court.

14

## II.    DENIAL OF RULE 54(b) CERTIFICATION IS ALSO CONSISTENT WITH THE COURT'S SEPTEMBER 7 ORDER

Contrary to Citibank's repeated and erroneous assertions, the September 7 Order did ***not*** dismiss all of plaintiffs' claims with prejudice. Accordingly, plaintiffs have and will continue to zealously seek additional facts through discovery regarding the culpability of Citibank's conduct in this massive financial fraud. Citibank's motion and supporting declaration actually document some of plaintiffs' continuing due diligence efforts to obtain such discovery -- notwithstanding that merits discovery in this litigation has not even begun. See, e.g., Citibank Br. at pp.3-4, 9.

If and as such newly-discovered facts may warrant a repleading, plaintiffs intend to pursue leave under Fed. R. Civ. P. 15, under which leave is to be "freely given when justice so requires". Accord Cortec v. Sum Holding, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). "The federal courts consistently grant motions to amend where it appears that new facts and allegations were developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings." Travelers Indem. Co. v. Losco Group, Inc., 150 F. Supp. 2d 556, 560 (S.D.N.Y. 2001) (McMahon, J.) (citing cases allowing amendment even after three years).

Indeed, allowing for such a repleading aligns squarely with the Second Circuit's long-standing interpretation that Fed. R. Civ. P. 15 "'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" Slayton v. American Express Co., 460 F.3d 215 (2d Cir. 2006) (quoting Siegel v. Converters Transportation, Inc., 714 F.2d 213, 216 (2d Cir. 1983) and 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1471, at 359 (1971)). Accord Travelers Indem. Co. v. Losco Group, Inc., 150 F. Supp. 2d at 560

15

(holding that "amendment is favored where it would allow the merits of a claim to be fully adjudicated"). This is especially true in circumstances where, as here, plaintiffs' claims have been dismissed not on the merits but as a result of pleading deficiencies. <u>Accord</u> <u>Morin v. Trupin</u>, 809 F. Supp. 1081 (S.D.N.Y. 1993) (allowing plaintiffs to replead claims that were previously dismissed and subject to Rule 54(b) based on newly discovered evidence).

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendant Citibank, N.A.'s Motion for Entry of a Final Judgment Pursuant to Fed. R. Civ. P. 54(b).

Dated: June __15__, 2007  
New York, New York

Respectfully submitted,

BERGER & MONTAGUE, P.C.


/s/ Merrill G. Davidoff  
Merrill G. Davidoff, Esq.  
Lawrence J. Lederer, Esq.  
Lane L. Vines, Esq.  
1622 Locust Street  
Philadelphia, PA 19103  
Telephone: (215) 875-3000  
Fax: (215) 875-4604  

KOSKOFF, KOSKOFF & BIEDER, P.C.  
William M. Bloss, Esq.  
Neal A. DeYoung, Esq.  
350 Fairfield Avenue  
Bridgeport, CT 06604  
Telephone: (203) 336-4421  
Fax: (203) 368-3244  

*Counsel for plaintiffs Broad-Bussel Family Limited Partnership, Marie-Louise Michelsohn, Michelle Michelsohn, Herbert Blaine Lawson, Jr. and the Class*

16

## CERTIFICATE OF SERVICE

I, Lane L. Vines, hereby certify that I caused today the following to be electronically filed with the Clerk of Court by using the ECF System:  Plaintiffs' Memorandum of Law in Opposition to Defendant Citibank, N.A.'s Motion for Entry of a Final Judgment Pursuant to Fed. R. Civ. P. 54(b).  The foregoing filing will be served on counsel electronically through the Court's ECF System, and by U.S. First Class mail on any counsel that has not signed up for electronic service.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.


Dated:  June __15__, 2007                          /s/ Lane L. Vines
                                                                    Lane L. Vines