# EXHIBIT E

59tiisrp ag                          PLEA

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

2

------------------------------x

3

UNITED STATES OF AMERICA,

4

              v.                          05 Cr. 1039 SCR GAY

5

SAMUEL ISRAEL, III,

6

              Defendant.

7

------------------------------x

8
                                          September 29, 2005
                                          12:30 p.m.
9                                         White Plains, N.Y.

10   Before:

11                        HON. GEORGE A. YANTHIS,

12                                        Magistrate Judge

13                        APPEARANCES

14   MICHAEL J. GARCIA
          United States Attorney for the
15        Southern District of New York
     MARGERY B. FEINZIG
16   PERRY CARBONE
          Assistant United States Attorneys
17

     MORVILLO, ABRAMOWITZ, GRAND, IASON & SILBERBERG
18        Attorney for Defendant
     LAWRENCE BADER
19   BARBARA L. BALTER
     BARRY BOHRER
20

21

22                              PLEA

23                                    ORIGINAL

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

59tiisrp ag                    PLEA

1          THE COURTROOM DEPUTY:  United States v. Samuel Israel,

2   III.

3          MS FEINZIG:  Margery Feinzig and Perry Carbone for the

4   government.

5          MR. BADER:  Lawrence Bader of Morvillo, Abramowitz,

6   Grand, Iason and Silberberg for Mr. Israel.  With me is Barbara

7   Balter and Barry Bohrer.

8          THE COURT:  We're here for the waiver of indictment,

9   the filing of an information, and the entry of a plea.

10  Ms Hilbert, please swear the defendant.

11         (Defendant sworn)

12  BY THE COURT:

13  Q.  Mr. Israel, you are now under oath and are sworn to tell

14  the truth.  If you knowingly made a false statement, you could

15  be charged with perjury or making a false statement, do you

16  understand that?

17  A.  Yes.

18  Q.  What is your name, please?

19  A.  Samuel Israel III.

20  Q.  How old are you?

21  A.  46 years old.

22  Q.  How far did you go in school?

23  A.  Three and half years of college.

24  Q.  Do you speak, understand, read and write the English

25  language?

59tiisrp ag                    PLEA

1    A.  Yes, your Honor.

2    Q.  Are you presently under the care of any doctor or

3    psychiatrist?

4    A.  Yes, your Honor.

5    Q.  Which one?

6    A.  Sorry, psychiatrist.

7    Q.  Are you able to understand the proceedings here today okay?

8    A.  Yes, your Honor.

9    Q.  Have you ever been hospitalized or treated for alcoholism

10   or narcotics addiction?

11   A.  Yes, your Honor.

12   Q.  Does that affect your ability to understand what's going on

13   here today?

14   A.  No, your Honor.

15   Q.  Are you currently under the influence of any drugs,

16   alcohol, medicine or pills?

17   A.  I wear a fentanyl patch, your Honor, for chronic pain.  I

18   had eleven spinal surgeries.

19   Q.  That does not affect your ability to understand?

20   A.  No.

21   Q.  Do you suffer from any other physical or mental problem

22   which prevents you from understanding the proceedings?

23   A.  No, your Honor.

24   Q.  You do have the absolute right to be represented by an

25   attorney at this and at every stage of the proceedings against

59tiisrp ag                     PLEA

1   you.  If you could not afford an attorney, the Court would

2   appoint you one.  And the right to an attorney goes to every

3   stage of the criminal proceedings including trial and appeal,

4   do you understand that?

5   A.  Yes, your Honor.

6   Q.  Now, you have retained Mr. Bader to represent you in the

7   case?

8   A.  Yes, your Honor.

9   Q.  Are you satisfied with the services that he has provided to

10  you so far?

11  A.  Very much so, your Honor.

12          THE COURT:  Ms Hilbert, if you would verify the

13  defendant's signature on the waiver, please.

14  BY THE COURTROOM DEPUTY:

15  Q.  You are Samuel Israel III?

16  A.  Yes.

17  Q.  Is that your original signature signed today, September 29,

18  2005?

19  A.  Yes.

20  Q.  Before signing this waiver, have you discussed it with your

21  attorney?

22  A.  Yes.

23  Q.  He has explained this waiver to you?

24  A.  Yes, ma'am.

25  Q.  Have you signed it voluntarily?

59tiisrp ag                    PLEA

1    A.  Yes, ma'am.

2    Q.  Do you understand you are under no obligation to waive

3    indictment?

4    A.  Yes, ma'am.

5    Q.  Do you also understand if you don't waive indictment and if

6    the government wants to prosecute you, they would have to

7    present your case to a grand jury which may or may not indict

8    you?

9    A.  Yes, ma'am.

10   Q.  Do you understand what a grand jury is?

11   A.  Yes, ma'am.

12   Q.  Have you seen a copy of this felony information?

13   A.  Yes, ma'am.

14   BY THE COURT:

15   Q.  Mr. Israel, unless you waive indictment, you could not be

16   charged with a felony unless a grand jury finds probable cause

17   to believe that a crime has been committed and that you

18   committed it, do you understand that?

19   A.  Yes.

20   Q.  A grand jury is composed of at least 16 and not more than

21   23 persons.  At least 12 grand jurors must find probable cause

22   to believe that a crime has been committed before you could be

23   indicted.  Do you understand that?

24   A.  Yes, your Honor.

25   Q.  If you waive indictment, this case will proceed on the

59tiisrp ag                    PLEA

1   charges in the United States Attorney's information just as

2   though you had been indicted.  Do you understand that?

3   A.  Yes, your Honor.

4   Q.  Have you discussed waiving your right to indictment by the

5   grand jury with your attorney?

6   A.  I have, your Honor.

7   Q.  Have any threats or promises been made to induce you to

8   waive indictment?

9   A.  No, your Honor.

10  Q.  Do you wish to waive your right to indictment by the grand

11  jury?

12  A.  I do, your Honor.

13          THE COURT:  The Court finds that the defendant has

14  knowingly and voluntarily waived his right to indictment by the

15  grand jury.  The information will be accepted for filing.  The

16  Court will enter a not guilty plea at this time and direct the

17  clerk to draw out the name of the assigned district court

18  judge.

19          THE COURTROOM DEPUTY:  This is a Wheel A case, Judge.

20          THE COURT:  The case has been assigned to Judge

21  Robinson.

22  Q.  I do advise you, Mr. Israel, that you have the absolute

23  right to have this guilty plea proceeding conducted before

24  Judge Robinson who is the district court judge that would be

25  imposing sentence in your case.  Do you understand that?

59tiisrp ag                    PLEA

1   A.   Yes, your Honor.

2   Q.   However, if you consent and agree, I will conduct the

3   guilty plea proceeding here today.  I will then report and

4   recommend to Judge Robinson as to whether or not your guilty

5   plea should be accepted.  I will make that recommendation based

6   on everything that is brought out during the proceeding here

7   today.  It is important for you to understand that the Court

8   need not accept your plea of guilty unless it's satisfied that

9   you are guilty and that you understand all your rights.  Do you

10  understand that?

11  A.   I do, your Honor.

12  Q.   Is it your wish that I conduct the guilty plea proceeding

13  here today, do you want me to do it?

14  A.   It is, your Honor.

15           THE COURT:  There's a consent form.

16  BY THE COURTROOM DEPUTY:

17  Q.   Once again, that is your original signature signed today,

18  September 29, 2005?

19  A.   Yes, ma'am.

20  BY THE COURT:

21  Q.   Did anyone threaten you or coerce you or promise you

22  anything to get you to consent to proceed before me here today?

23  A.   No, your Honor.

24  Q.   Did you sign this consent form freely and voluntarily?

25  A.   Yes.

8

59tiisrp ag                 PLEA

1         THE COURT:  The Court finds that the defendant has

2    knowingly and voluntarily consented to proceed before a United

3    States magistrate judge on this felony plea allocution.

4         It's my understanding that there is no plea agreement

5    in the case but a *Pimentel* letter?

6         MR. BADER:  That's correct, your Honor.

7    Q.  I just want to advise you, Mr. Israel, that the

8    government's estimate of your sentencing guideline range in

9    this September 29, 2005 letter from the United States Attorney

10   to your attorney is just that, it's an estimate, it's not

11   binding on the district court judge who will be imposing

12   sentence.  Do you understand that?

13   A.  Yes.

14   Q.  The district court judge could come up with a guideline

15   range that is higher or lower than what is set forth here, do

16   you understand that?

17   A.  Yes, your Honor.

18   Q.  Now, have you reviewed the charges that are pending against

19   you?

20   A.  I have, your Honor.

21   Q.  Do you understand those charges?

22   A.  I do, your Honor.

23   Q.  Have you discussed them with your attorney?

24   A.  Yes, your Honor.

25   Q.  Do you understand that anything which is not disclosed to

9

59tiisrp ag                    PLEA

1   me during the course of this proceeding will not be binding on

2   the outcome your case, everything has to be disclosed?  Do you

3   understand that?

4   A.  I do, your Honor.

5            THE COURT:  Ms Feinzig, could you advise the defendant

6   of the maximum possibility penalties that he faces on his pleas

7   of guilty.

8            MS FEINZIG:  Yes, your Honor.

9            On the first count, which is conspiracy to commit

10  investment adviser fraud and mail fraud, the defendant faces a

11  maximum sentence of five years imprisonment, $250,000 -- the

12  greater of $250,000 or twice the gross gain or twice the gross

13  loss, three years supervised release, a maximum amount of

14  restitution of $300,000,000, forfeiture and a hundred dollar

15  special assessment.

16           On Count 2, which is investment adviser fraud, the

17  maximum sentence is five years imprisonment, three years

18  supervised release, a fine of the greater of $250,000 or twice

19  the gross gain or twice the gross loss, a maximum restitution

20  amount of $300,000,000, forfeiture and a hundred dollar special

21  assessment.

22           And on Count 3, the mail fraud count, the maximum

23  sentence is 20 years imprisonment, three years supervised

24  release, a fine of the greater of $250,000 or twice the gross

25  gain or twice the gross loss, a maximum restitution amount of

59tiisrp ag                    PLEA

1    $300,000,000, forfeiture, and a hundred dollar special

2    assessment.

3    Q.   Mr. Israel, did you hear what the assistant United States

4    attorney just said?

5    A.   I did, your Honor.

6    Q.   Do you understand that those are the maximum possible

7    penalties that you face on your pleas of guilty?

8    A.   I understand, your Honor.

9    Q.   Do you understand that if you are sentenced to a term of

10   imprisonment, even if it was the maximum term, and to a term of

11   supervised release, and if you violate the terms of supervised

12   release you could be sentenced to an additional term of

13   imprisonment for violating conditions of supervised release?

14   Do you understand that?

15   A.   I understand, your Honor.

16   Q.   Do you understand that if that were to occur, you would not

17   receive credit against any additional sentence for the jail

18   time had you already served, nor for the time you had served on

19   supervised release?  Do you understand that?

20   A.   I understand, your Honor.

21   Q.   You are pleading guilty to a felony offense.  Such

22   adjudication may deprive you of valuable civil rights such as

23   the right to vote, the right to hold public office, the right

24   to serve on a jury, the right to possess any type of firearm,

25   and you could forfeit the right to possess certain professional

59tiisrp ag                    PLEA

1    licenses; these are just examples.  Do you understand that?

2    A.  I understand, your Honor.

3    Q.  Are you a United States citizen?

4    A.  I am, your Honor.

5    Q.  Do you understand, Mr. Israel, that what I've gone over are

6    the possible consequences of a plea of guilty, these are the

7    things that could happen to you?

8    A.  I understand, your Honor.

9    Q.  Have you and your attorney talked about how the Sentencing

10   Guidelines may apply to your case?

11   A.  We have spoken about it, your Honor.

12   Q.  Do you understand that the Sentencing Guidelines are not

13   mandatory but they must be considered by the district court

14   judge when imposing sentence in your case?

15   A.  I understand that, your Honor.

16   Q.  Do you understand that the Court will not be able to

17   determine the guideline range for your case until after a

18   presentence report has been completed, you and the government

19   will have an opportunity to review that report?  You could

20   challenge any facts in that report, and you could challenge the

21   report's computation of your sentencing guideline range.  Do

22   you understand that?

23   A.  I understand, your Honor.

24   Q.  Do you understand that under certain circumstances, both

25   you and the government have the right to appeal any sentence

59tiisrp ag                    PLEA

1    that the Court would impose subject to the terms of anything

2    set forth on the record here today?  Do you understand that?

3    A.  I understand, your Honor.

4              THE COURT:  And there are no appeal waivers in this

5    plea.

6              MS FEINZIG:  That's correct, your Honor.

7    Q.  Do you understand that parole has been abolished?  If you

8    are sentenced to a term of imprisonment, you will not be

9    eligible for an early release on parole?  There's no parole in

10   the federal system.

11   A.  I understand, your Honor.

12   Q.  Do you understand that if you disagree with the sentencing

13   guideline determination which is made by the Court, that will

14   not constitute a basis for you to withdraw your plea of guilty?

15   A.  I understand, your Honor.

16   Q.  Do you understand that you do not have to plead guilty in

17   this matter?  You have the absolute right to have this matter

18   tried.  If you chose to plead not guilty, you are entitled to a

19   speedy and public trial and your case could be decided by a

20   jury.  Do you understand?

21   A.  I understand that, your Honor.

22   Q.  Also, if both you and the government agree, your case could

23   be decided by a judge alone without a jury.  Do you understand?

24   A.  I do understand, your Honor.

25   Q.  If there was a trial, the presumption of innocence would

59tiisrp ag                    PLEA

1   remain in your favor throughout the entire trial.  The

2   government would have the burden at any trial of proving your

3   guilt beyond a reasonable doubt as to each and every element of

4   the crimes charged.  And if tried by a jury, the government

5   would have to prove your case to the unanimous satisfaction of

6   each and every member of the jury before you could be found

7   guilty.  Do you understand that?

8   A.  I understand, your Honor.

9   Q.  If there was a trial, you would have the right, with the

10  assistance of your attorney, to cross-examine and confront the

11  witnesses against you; you would have the right to call

12  witnesses to testify on your behalf; and you would have the

13  right to have subpoenas issued to compel witnesses to give

14  testimony on your behalf.  You would also have the right at any

15  trial to testify on your own behalf, but only if you wish, you

16  could not be compelled to testify, and if you chose not to

17  testify, no unfavorable inference would be drawn against you

18  because of that.  Do you understand?

19  A.  I understand, your Honor.

20  Q.  If there was a trial, you would be entitled to the

21  assistance of your attorney and to have an attorney assigned to

22  represent you without cost if you could not afford an attorney.

23  Do you understand?

24  A.  I understand, your Honor.

25  Q.  Do you understand, Mr. Israel, that by pleading guilty to

59tiisrp ag                    PLEA

1   the charges here today, you are giving up your right to a

2   trial, there will not be a trial in this matter?

3   A.  I understand that, your Honor.

4       THE COURT:  Ms Feinzig, what would the government be

5   prepared to prove if this matter did proceed to trial.

6       MS FEINZIG:  Your Honor, the elements of the first

7   count, the conspiracy count, are the following:

8       First, that two or more persons entered into the

9   unlawful agreement charged in the information;

10      Second, that the defendant knowingly and willfully

11  became a member of the conspiracy;

12      Third, that one of the members of the conspiracy

13  knowingly committed at least one of the overt acts charged in

14  the information;

15      And fourth, that the overt acts which are found to

16  have been committed were committed to further some objective of

17  the conspiracy.

18      In connection with Count 2, the investment adviser

19  fraud count, the government would have to prove that the

20  defendant was an investment adviser, and that the defendant had

21  utilized the mails or any instruments of interstate commerce to

22  do one or more of the following:  Employ a device, scheme or

23  artifice to defraud investors, engage in actions, practices and

24  courses of business which operated as a fraud and deceit upon

25  clients and prospective clients, or engage in acts, practices

59tiisrp ag                    PLEA

1    and courses of business that were fraudulent, deceptive and

2    manipulative.  And finally, that the defendant acted knowingly

3    and willfully.

4         In connection with the mail fraud count, the

5    government would have to prove first that there was a scheme or

6    artifice to defraud or to obtain money or property by

7    materially false and fraudulent pretenses, representations or

8    promises, as alleged in the information.  Second, that the

9    defendant knowingly and willfully participated in the scheme or

10   artifice to defraud with knowledge of its fraudulent nature and

11   with a specific intent to defraud.  And third, that in

12   execution of that scheme, the defendant used or caused the use

13   of the mails as specified in the information.

14        In order to establish the elements of these crimes,

15   the government would prove at trial, based on documentary

16   evidence and testimony of witnesses, that during the time

17   period set forth in the information, Samuel Israel and his

18   co-conspirators perpetrated a fraud on investors and

19   prospective investors of the Bayou Hedge Funds by

20   misrepresenting the value of the Hedge Funds' assets, and

21   including these misrepresentations to be mailed to current and

22   prospective investors in the Southern District of New York and

23   elsewhere.  These false and misleading statements and

24   representations induced new investors to invest in Bayou and

25   lulled existing investors into retaining their investments in

59tiisrp ag                    PLEA

1   the Bayou Hedge Funds.

2           The evidence would establish that Mr. Israel, who was

3   a founder and the chief executive officer of Bayou Management,

4   was responsible for executing securities trading on behalf of

5   all the Bayou Hedge Funds.  He and his co-conspirators caused

6   to be mailed quarterly reports to investors that contained

7   fictitious rates of return on trading in the funds and annual

8   financial statements that contained fictitious rates of return

9   on trading and inflated net assets values.  Mr. Israel and his

10  co-conspirators also had faxed and mailed weekly newsletters

11  that also misrepresented the performance of the funds at

12  various times during the time period set forth in the

13  information.  All these communications to investors made it

14  appear that Bayou was earning profits on trading when in fact

15  it was not.

16          In furtherance of the scheme and because Bayou could

17  not use an actual certified public accounting firm to audit the

18  funds and certify the annual financial statements, Mr. Israel

19  had his co-conspirator and chief financial officer in early

20  1999 form a phony accounting firm name Richmond Fairfield

21  Associates.  And year after year between 1999 and 2004, the

22  co-conspirators had Bayou's false financial statements sent out

23  with a fictitious certification by Richmond Fairfield

24  Associates that the funds had been audited and the financial

25  statements were accurate.

17

59tiisrp ag                    PLEA

1          The evidence would further establish that in 2004,

2     Mr. Israel stopped trading and attempted to conduct private

3     placements transactions in Europe and in the United States.

4     This use of Bayou funds was not disclosed to investors.

5     Indeed, communications to investors during that time period

6     falsely indicated that trading was still going on.

7          According to the evidence the government would

8     present, the effect of these false statements was to induce

9     investors to invest in excess of $450,000,000 in the Bayou

10    Hedge Funds.

11    BY THE COURT:

12    Q.   Did you hear what the assistant United States attorney just

13    said?

14    A.   I did, your Honor.

15    Q.   Do you agree with that?

16    A.   I do, your Honor.

17    Q.   Have you clearly and fully understood everything that has

18    happened here today so far?

19    A.   Absolutely, your Honor.

20    Q.   Do you have any questions of your attorney or the Court

21    before I continue?

22    A.   I do not, your Honor.

23    Q.   I am going to summarize the counts in the felony

24    information and take your plea.   Count 1, the United States

25    Attorney charges:

59tiisrp ag                    PLEA

1       During the relevant time period, Bayou sustained

2   trading losses in order to induce investors to invest in Bayou

3   and to lull existing investors into retaining their investments

4   in Bayou.  The defendant and co-conspirators not named herein

5   perpetrated a scheme to defraud investors by disseminating

6   reports and financial statements among other things that

7   contained materially false statements and by failing to invest

8   investors' funds as promised.

9       Among the means and methods by which Israel and

10  co-conspirators not named herein would and did carry out the

11  conspiracy were the following:

12      Israel and a co-conspirator reported fictitious rates

13  of return by the Bayou Hedge Funds in quarterly reports and had

14  those reports mailed to investors.

15      Israel and a co-conspirator reported fictitious rates

16  of return of the Bayou Hedge Funds in weekly newsletters and

17  had those newsletters emailed or faxed to investors.

18      Israel and a co-conspirator reported individual

19  investor's inflated accumulated profits in monthly reports and

20  had those reports mailed to investors.

21      Israel and his co-conspirators had annual financial

22  statements mailed to investors that contained among other

23  misrepresentations, inflated rates of return on trading,

24  inflated net asset values, and certifications that Bayou had

25  been audited by a certified public accounting firm known as

59tiisrp ag                    PLEA

1   Richmond Fairfield Associates.

2       In or about early 1999, a co-conspirator created the

3   phony accounting firm Richmond Fairfield Associates and it

4   conducted no audits.  Between in or about the fall of 2003 and

5   in or about August 2005, Israel and a co-conspirator entered

6   and attempted to enter into private financial transactions

7   using money from the Bayou Hedge Funds without disclosing the

8   nature of those transactions to investors.

9       From in or about July 1996 through in or about August

10  2005, Israel and his co-conspirators induced investors to

11  contribute in excess of $450,000,000 to the Bayou Hedge Funds.

12      From in or about July 1996 to in or about August 2005

13  in the Southern District of New York and elsewhere, Samuel

14  Israel, the defendant, and co-conspirators not named herein

15  unlawfully, willfully and knowingly did combine, conspire,

16  confederate and agree together and with each other to commit

17  offenses against the United States, to wit, investment adviser

18  fraud in violation of Title 15 United States Code Sections

19  80b-6 and 80b-17, and mail fraud in violation of Title 18

20  United States Code Section 1341.

21      It was part and object of the conspiracy that Samuel

22  Israel, the defendant, and co-conspirators not named herein,

23  acting as investments advisers with respect to one and more

24  clients and prospective clients in the Bayou Hedge Funds,

25  unlawfully willfully and knowingly, by the use of the mails and

59tiisrp ag                    PLEA

1    means and instrumentalities of interstate commerce, directly

2    and indirectly, did employ, devices, schemes and artifices to

3    defraud clients and prospective clients; engage in

4    transactions, practices and courses of business which operated

5    as a fraud and deceit upon clients and prospective clients; and

6    engage in acts, practices and courses of business that were

7    fraudulent, deceptive and manipulative in violation of Title

8    15, United States Code Sections 80b-6 and 80b-17.

9            It was further a part and object of the conspiracy

10   that Samuel Israel, the defendant, and co-conspirators not

11   named herein, unlawfully, willfully and knowingly, having

12   devised and intending to devise a scheme or artifice to

13   defraud, and through obtaining money and property by means of

14   false and fraudulent represences, representations and promises,

15   did place and cause to be placed in a post office and

16   authorized depository for mail matter, matters and things to be

17   sent and delivered by the Postal Service and private and

18   commercial interstate carriers, and did take and receive

19   therefrom such matters and things in violation of Title 18

20   United States Code Section 1341.

21           In furtherance of said conspiracy and to effect the

22   illegal objects thereof, the following overt acts among others

23   were committed in the Southern District of New York and

24   elsewhere.  And I'm going to read overt acts A and I.

25           A.  At various times from in or about July 1996

59tiisrp ag              PLEA

1   through in or about August 2005, Israel traded securities on

2   behalf of Bayou through computers located in Westchester

3   County, New York, and at Bayou's offices in Stamford,

4   Connecticut.

5         I.  At various times between in or about May 2003 and

6   in or about August 2005, a co-conspirator invested money

7   contributed to the Bayou Hedge Funds in private placement

8   transactions, all in violation of Title 18 United States Code

9   Section 371.

10        To Count 1, how do you plead, guilty or not guilty?

11  A.  I plead guilty, your Honor.

12  Q.  Count 2.  The United States Attorney further charges from

13  in or about July 1996 to in or about August 2005 in the

14  Southern District of New York and elsewhere, Samuel Israel, the

15  defendant, and co-conspirators not named herein, acting as

16  investment advisers with respect to clients and prospective

17  clients in the Bayou Hedge Funds, unlawfully, willfully and

18  knowingly, by the use of the mails and means and

19  instrumentalities of interstate commerce, directly and

20  indirectly did:

21        A.  Employ devices, schemes and artifices to defraud

22  clients and prospective clients.

23        B.  Engage in transactions, practices and courses of

24  business which operated as a fraud and deceit upon clients and

25  prospective clients;

59tiisrp ag                    PLEA

1          and C.   Engaged in acts, practices and courses of

2    business that were fraudulent, deceptive and manipulative, in

3    violation of Title 15 United States Code Sections 80b-6 and

4    80b-17 and Title 18 United States Code Section 2.

5          How do you plead, guilty or not guilty?

6    A.   I plead guilty, your Honor.

7    Q.   The United States Attorney further charges from in or about

8    July 1996 through in or about August 2005 in the Southern

9    District of New York and elsewhere, Samuel Israel, the

10   defendant, and co-conspirators not named herein, having devised

11   and intending to devise a scheme and artifice to defraud and to

12   obtain money and property by means of false and fraudulent

13   pretenses, representations and promises, namely the scheme set

14   forth above for the purpose of executing such scheme and

15   artifice and attempting to do so, did place and cause to be

16   placed in a post office and authorized depository for mail

17   matter, matters and things to be sent and delivered by the

18   Postal Service and private and commercial interstate carriers,

19   and did take and receive therefrom such matters and things,

20   namely quarterly reports, monthly reports and annual financial

21   statements, in violation of Title 18 United States Code

22   Sections 1341 and 2.

23         To Count 3, how do you plead, guilty or not guilty?

24   A.   I plead guilty, your Honor.

25   Q.   There's also a forfeiture allegation where the defendant

23

59tiisrp ag              PLEA

1   Samuel Israel is agreeing to the forfeiture of a sum of money

2   equal to $450,000,000 representing the amounts of proceeds

3   obtained as a result of the mail fraud and conspiracy offenses

4   alleged in Counts 1 and 3.

5           MS FEINZIG:  Your Honor, in connection with the

6   forfeiture allegation, the defendant is not required to

7   allocute to that.  It's really in the information as a notice

8   provision.

9           THE COURT:  All right.

10  Q.  Do you agree with that, Mr. Israel?

11  A.  Yes, your Honor.

12  Q.  You have notice and you agree to the forfeiture?

13          MR. BADER:  We are agreeing that we have notice of the

14  forfeiture provision.

15          THE COURT:  Is that all that the government is

16  requiring?

17          MS FEINZIG:  Yes, your Honor.

18          THE COURT:  All right.

19  Q.  Mr. Israel, has anyone made any promises to you other than

20  what has been set forth on the record here today in order to

21  induce you to plead guilty to those charges?

22  A.  No, your Honor.

23  Q.  Has anyone threatened you or coerced you to get you to

24  plead guilty?

25  A.  No, your Honor.

59tiisrp ag            PLEA

1   Q.  Has anyone put any pressure on you or done anything
2   improper to you to get you to plead guilty?
3   A.  No, your Honor.
4   Q.  Has anyone made any specific promises to you about what
5   your sentence will be in this matter?
6   A.  No, your Honor.
7   Q.  Mr. Israel, in your own words you are now going to have to
8   tell me what you did in connection with these charges that
9   you're pleading guilty to.
10  A.  Yes, your Honor.  During the relevant time period, I was
11  chief executive officer of Bayou Management and chief
12  investment officer of the Bayou Fund.  I was one of the people
13  responsible for trading securities on behalf of all the funds.
14  I, along with others, caused Bayou to send various kinds of
15  documents containing false financial information about Bayou's
16  performance to current and prospective clients of Bayou which
17  made it appear that Bayou was performing better than it truly
18  was.  My purpose was to induce these people to invest in Bayou
19  or continue to keep their money in Bayou.  These false material
20  statements were disseminated through the mails and by email to
21  people in places that included the Southern District of New
22  York.  At the time that Bayou sent out these false materials, I
23  knew that the terms were false and I knew what I was doing was
24  wrong and fraudulent.
25  Q.  Did you do the acts that you just talked about knowingly

59tiisrp ag                    PLEA

1   and willfully, you knew what you were doing?

2   A.   I did, your Honor.

3   Q.   Are you pleading guilty to these charges because you are in

4   fact guilty of the crimes charged?

5   A.   Yes, your Honor.  I am guilty.

6   Q.   Did anyone force you or coerce you or threaten you or

7   pressure you to do those acts?

8   A.   No, your Honor.

9            THE COURT:  Does the government have any further

10  inquiry?

11           MS FEINZIG:  No thank you, your Honor.

12           THE COURT:  All right.

13           Mr. Bader, are you satisfied with the state of the

14  record?

15           MR. BADER:  Yes, your Honor.

16           THE COURT:  Do you know of any reason why the Court

17  should not accept a plea of guilty?

18           MR. BADER:  No, your Honor.

19  Q.   Mr. Israel, have you clearly and fully understood

20  everything that has happened here today?

21  A.   I understand everything, your Honor.

22           THE COURT:  Upon this allocution, the Court finds that

23  the defendant is fully competent and capable of entering an

24  informed plea of guilty.  The plea is knowing and voluntary.

25  The plea is supported by an independent factual basis for each

59tiisrp ag                    PLEA

1    and every element of the crimes charged.

2            Accordingly, I report and recommend to Judge Robinson

3    that the plea be accepted and that the defendant be adjudged

4    guilty of the crimes charged.  I direct that a presentence

5    investigation be conducted by the United States Probation

6    Office.  I further direct the court reporter to provide a

7    transcript of these proceedings which sets forth my report and

8    recommendation to Judge Robinson.

9            The matter will be adjourned for sentencing until

10   January 9, 2006 at two p.m.  That's your sentencing date before

11   Judge Robinson.

12           This is the defendant's first appearance in court?

13           MS FEINZIG:  It is your Honor.  In connection with

14   bail, your Honor, I've spoken with Mr. Bader and we recommend

15   that the Court adopt the recommendation of the Pretrial

16   Services officer and have the amount of the bond be $500,000.

17           THE COURT:  Mr. Bader, any comment?

18           MR. BADER:  No.  We think that's a reasonable

19   unsecured PRB, your Honor.

20           THE COURT:  I have reviewed the Pretrial Services

21   report and I am going to accept the recommendation that has

22   been made.  The bond is set in the amount of a $500,000

23   personal recognizance bond to be co-signed by three financially

24   responsible persons.  Did you have a time period?

25           MS FEINZIG:  Yes, your Honor.  The government would

59tiisrp ag                    PLEA

1  consent to allowing Mr. Israel to have two weeks to bring

2  forward his financially responsible people.

3          THE COURT:  All right.  Two weeks to produce the

4  financially responsible people to the United States Attorney.

5          I am going to direct that there be pretrial

6  supervision with mental health counseling and substance abuse

7  counseling or treatment if necessary under the guidance of the

8  Pretrial Services Office.  Do you have a passport?

9          THE DEFENDANT:  My passport was revoked, sir.

10         MS FEINZIG:  The government is in possession of the

11 passport.

12         THE COURT:  I will direct that you not make

13 application for any other passport or travel documents while

14 you're on release.  Your travel will be restricted to the

15 Eastern District of New York and Southern District of New York.

16         And as far as your pretrial supervision, if the

17 pretrial supervision officer tells you to do something it's

18 just like the court telling to you do it and you have to do it.

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  The following conditions will also be

21 imposed.  You should not commit any offense in violation of

22 federal, state or local law while on release.  You shall

23 immediately advise the Court, defense counsel and the United

24 States Attorney in writing prior to any change of address or

25 telephone numbers.  You shall appear at all proceedings as

59tiisrp ag                  PLEA

```
 1    required.  You shall refrain from possessing a firearm,

 2    destructive device or other dangerous weapon.  You shall

 3    refrain from excessive use of alcohol.  You shall refrain from

 4    any use or unlawful possession of a narcotic drug or other

 5    controlled substance unless prescribed by a licensed medical

 6    practitioner.  If you violate any conditions of release, you

 7    could be brought back into court and your bail could be

 8    revoked.  Do you understand that?

 9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  In you do not show up in court as

11    required, you could face a separate charge of bail-jumping and

12    face additional penalties including imprisonment, fines or

13    both.  Do you understand that?

14              THE DEFENDANT:  I do, your Honor.

15              THE COURT:  Once the necessary papers are signed with

16    the clerk, you'll be released.  I am going to direct you take

17    the defendant, Mr. Bader, down to the probation officer after

18    the papers are signed to commence the presentence investigation

19    process, and I'll direct the defendant also go down to the

20    United States Marshal to be processed.

21              MR. BADER:  Yes, your Honor.

22              THE COURT:  All right.  Anything further?

23              MR. BADER:  No, thank you, your Honor.

24              THE COURT:  The matter is adjourned.

25              (Proceedings adjourned)
```