# EXHIBIT F

59timarp ag

PLE[A]

RECEIVED
OCT 0 5 2005
CHAMBERS OF
GEORGE A. YANTHIS
U.S.M.J.

U.S. DISTRICT COURT
FILED
OCT 1 1 2005
W.P.
S.D. OF N.Y.

1.

1    UNITED STATES DISTRICT COURT
2    SOUTHERN DISTRICT OF NEW YORK
     - - - - - - - - - - - - - - - - - - - - - -x
3    UNITED STATES OF AMERICA,
4                   v.                              05 Cr. 1036 CM GAY
5    DANIEL E. MARINO,
6                   Defendant.
7    - - - - - - - - - - - - - - - - - - - - - -x
8                                              September 29, 2005
                                               11:00 a.m.
9                                              White Plains, N.Y.
10   Before:
11                      HON. GEORGE A. YANTHIS,
12                                        Magistrate Judge
13                      APPEARANCES
14   MICHAEL J. GARCIA
          United States Attorney for the
15        Southern District of New York
     MARGERY B. FEINZIG
16   PERRY CARBONE
          Assistant United States Attorneys
17
     ANDREW B. BOWMAN
18        Attorney for Defendant
19
20                      PLEA
21
22
23                                    ORIGINAL
24
25

59timarp ag            PLEA                                    2

1          THE COURTROOM DEPUTY:  United States v. Daniel Marino.

2          MS FEINZIG:  Margery Feinzig for the United States.

3     With me is Perry Carbone.

4          MR. BOWMAN:  Andrew Bowman for Mr. Marino.

5          THE COURT:  Good morning.  We're here for the waiver

6     of indictment, the filing of an information, and the entry of a

7     plea.  Ms Hilbert, please swear the defendant.

8          (Defendant sworn)

9          THE COURT:  Mr. Marino.

10    BY THE COURT:

11    Q.  Mr. Marino, you are now under oath and you are sworn to

12    tell the truth.  If you knowingly make a false statement, you

13    could be charged with perjury or making a false statement.  Do

14    you understand that?

15    A.  Yes.

16    Q.  What is your full name, please?

17    A.  Daniel E. Marino.

18    Q.  How old are you?

19    A.  46.

20    Q.  How far did you go in school?

21    A.  I have a BA in accounting from college.

22    Q.  Do you read, write, speak and understand the English

23    language?

24    A.  Yes.

25    Q.  Are you presently under the care of any doctor or

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  psychiatrist?

2  A.  Yes.

3  Q.  Are you able to understand the proceedings here today all

4  right?

5  A.  Yes.

6  Q.  Is it a doctor or psychiatrist?

7  A.  I'm sorry.

8  Q.  Whose care are you under, doctor or psychiatrist?

9  A.  Both.

10      MR. BOWMAN:  It's both a psychiatrist and MD

11  physician.

12  Q.  Have you ever been hospitalized or treated for alcoholism

13  or narcotics addiction?

14  A.  No.

15  Q.  Are you currently under the influence of any drugs,

16  alcohol, medicine or pills?

17  A.  No.

18  Q.  Do you suffer from any other physical or mental problem

19  which prevents you from understanding the proceeding?

20  A.  No.

21  Q.  You do have the absolute right to be represented by an

22  attorney at this and every stage of the proceeding against you.

23  If you cannot afford an attorney, the Court would appoint you

24  one.  And the right to an attorney goes to every stage of the

25  criminal proceeding, including trial and appeal.  Do you

```
59timarp ag                    PLEA
```

1  understand that?

2  A.  Yes.

3  Q.  You have retained Mr. Bowman to represent you in the case?

4  A.  Yes.

5  Q.  Are you satisfied with the services that he has provided to

6  you so far in the case?

7  A.  Yes.

8          THE COURT:  There's a waiver of indictment form?

9          THE COURTROOM DEPUTY:  Yes, Judge.

10          THE COURT:  Please verify the signature of the

11  defendant.

12  BY THE COURTROOM DEPUTY:

13  Q.  You are Daniel Marino?

14  A.  Yes.

15  Q.  This is your original signature, signed today, September

16  29, 2005?

17  A.  Yes.

18  Q.  Before signing this waiver, have you discussed it with your

19  attorney?

20  A.  I'm sorry, can you repeat that.

21  Q.  Before signing this waiver of indictment, have you

22  discussed it with your attorney?

23  A.  Yes.

24  Q.  Have you signed it voluntarily?

25  A.  Yes.

59timarp ag                    PLEA                                    5

1    Q.  Has he explained this waiver of indictment to you?

2    A.  Yes.

3    Q.  Do you also understand that you are under no obligation to

4    waive indictment?

5    A.  Yes.

6    Q.  Do you understand if you don't waive indictment and if the

7    government wants to prosecute you, they would have to present

8    your case to a grand jury which may or may not indict you?

9    A.  Yes.

10   Q.  Do you understand what a grand jury is?

11   A.  Yes.

12   Q.  Have you seen a copy of this felony information?

13   A.  Yes.

14   BY THE COURT:

15   Q.  Mr. Marino, unless you waive indictment, you could not be

16   charged with a felony unless a grand jury finds probable cause

17   to believe that a crime has been committed and that you

18   committed it.  Do you understand that?

19   A.  Yes.

20   Q.  A grand jury is composed of at least 16 and not more than

21   23 persons.  At least 12 grand jurors must find probable cause

22   to believe that a crime has been committed before you could be

23   indicted.  Do you understand that?

24   A.  Yes.

25   Q.  If you waive indictment, this case will proceed on the

59timarp ag                    PLEA                                6

1    charges in the United States Attorney's information just as

2    though you had been indicted.  Do you understand that?

3    A.  Yes.

4    Q.  Have you discussed waiving your right to indictment by the

5    grand jury with your attorney?

6    A.  Yes.

7    Q.  Have any threats or promises been made to get you to waive

8    indictment?

9    A.  No.

10   Q.  Do you wish to waive your right to indictment by the grand

11   jury?

12   A.  Yes.

13          THE COURT:  The Court finds that the defendant has

14   knowingly and voluntarily waived his right to indictment by the

15   grand jury.  The information will be accepted for filing.  The

16   Court will enter a not guilty plea at this time and direct the

17   clerk to draw out the name of the assigned district court

18   judge.

19          THE COURTROOM DEPUTY:  This is a Wheel A matter,

20   Judge.

21          THE COURT:  The case has been assigned to Judge

22   McMahon.

23   Q.  I do advise you, Mr. Marino, that you have the absolute

24   right to have this guilty plea proceeding conducted before

25   Judge McMahon who is the district court judge that would be

1    imposing sentence in your case.  Do you understand that?

2    A.  Yes.

3    Q.  However, if you consent and agree, I will conduct the

4    guilty plea proceeding here today.  I will then report and

5    recommend to Judge McMahon as to whether or not the guilty plea

6    should be accepted.  I will make that recommendation based on

7    everything that is brought out during the proceeding here

8    today.  It is important for you to understand that the Court

9    need not accept your plea of guilty unless it's satisfied that

10   you are guilty and that you understand all your rights.  Do you

11   understand that?

12   A.  Yes.

13   Q.  Is it your wish that I conduct the guilty plea proceeding

14   here today, do you want me to do it?

15   A.  Yes.

16          THE COURT:  There is a consent form.  Ms Hilbert,

17   please verify the signature of the defendant.

18   BY THE COURTROOM DEPUTY:

19   Q.  Once again, sir, that is your original signature signed

20   today, September 29, 2005?

21   A.  Yes.

22   BY THE COURT:

23   Q.  Did anyone threaten you or coerce you or promise you

24   anything to get you to consent to proceed before me?

25   A.  No.

59timarp ag                    PLEA

1  Q.  Did you sign this consent form freely and voluntarily?

2  A.  Yes.

3       THE COURT:  The Court finds that the defendant has

4  knowingly and voluntarily consented to proceed before a United

5  States magistrate on this felony plea allocution.

6       There is a plea agreement.  Ms Hilbert, please verify

7  the signature of the defendant on the last page.

8       THE COURTROOM DEPUTY:  Yes, Judge.

9  BY THE COURTROOM DEPUTY:

10  Q.  Mr. Marino, that is your original signature signed today,

11  September 29, 2005?

12  A.  Yes.

13       THE COURT:  The plea agreement will be marked as

14  Court's Exhibit 1.  It will remain in the custody of the United

15  States Attorney.

16  BY THE COURT:

17  Q.  Now, Mr. Marino, have you read this plea agreement?

18  A.  Yes.

19  Q.  Have you gone over it with your attorney?

20  A.  Yes.

21  Q.  Have you had adequate time to discuss it with your

22  attorney?

23  A.  Yes.

24  Q.  Do you understand everything that is set forth in the plea

25  agreement?

59timarp ag                    PLEA

1   A. Yes.

2   Q. Did you read the plea agreement before you signed it?

3   A. Yes.

4   Q. Does the plea agreement contain the entire understanding

5   between you and the government in connection with your case?

6   A. Yes.

7   Q. Did you sign this plea agreement freely and voluntarily?

8   A. Yes.

9   Q. Did anyone force you or coerce you or threaten you or

10   promise you anything to get you to sign the plea agreement

11   other than what is set forth in the plea agreement?

12   A. No.

13   Q. Do you understand the charges that are pending against you?

14   A. I'm sorry, can you repeat that.

15   Q. Yes. Do you understand the charges that are pending

16   against you?

17   A. Yes.

18   Q. Have you discussed those charges with your attorney?

19   A. Yes.

20   Q. Do you understand that anything which is not disclosed to

21   me at this time or which is not set forth in the plea agreement

22   will not be binding on the outcome of your case? Everything

23   has to be disclosed, do you understand that?

24   A. Yes.

25        THE COURT: Ms Feinzig, could you advise the defendant

59timarp ag                    PLEA

1   of the maximum possible penalties that he faces on his plea of

2   guilty.

3       MS FEINZIG: Yes. In connection with Count 1,

4   conspiracy to commit investment adviser fraud, mail fraud and

5   wire fraud, the maximum sentence is five years imprisonment, a

6   fine of two hundred and fifty thousand dollars or twice the

7   gross gain or twice the gross loss, three years of supervised

8   release, a maximum restitution of three hundred million

9   dollars, forfeiture, and a hundred dollar special assessment.

10      In connection with Count 2, investment adviser fraud,

11  the maximum sentence is five years imprisonment, three years

12  supervised release, a fine of $250,000 or twice the gross gain

13  or twice the gross loss, maximum restitution in the amount of

14  three hundred million dollars, forfeiture, and a hundred dollar

15  special assessment.

16      In connection with Count 3, mail fraud, the maximum

17  sentence is 20 years imprisonment, three years supervised

18  release, a fine of $250,000 or twice the gross gain or twice

19  the gross loss, maximum restitution in the amount of three

20  hundred million dollars, forfeiture, and a hundred dollar

21  special assessment.

22      And the same penalties apply in connection with the

23  fourth count, which is wire fraud.

24  Q. Mr. Marino, did you hear what the assistant United States

25  attorney just said?

59timarp ag                    PLEA

1    A.  Yes.

2    Q.  Do you understand that those are the maximum possible

3    penalties that you face on your pleas of guilty here today?

4    A.  Yes.

5    Q.  Do you understand that if you are sentenced to a term of

6    imprisonment, even if it's the maximum term, and to a term of

7    supervised release, and if you violate the terms of supervised

8    release, you could be sentenced to an additional term of

9    imprisonment for violating conditions of supervised release?

10   Do you understand that?

11   A.  Yes.

12   Q.  Do you understand that if that were to occur, you would not

13   receive credit against the additional sentence for the jail

14   time you already served nor for the time you had served on

15   supervised release?  Do you understand that?

16   A.  Yes.

17   Q.  You are pleading guilty to felony offenses.  Such

18   adjudication may deprive you of valuable civil rights, such as

19   the right to vote, the right to hold public office, the right

20   to serve on a jury, the right to possess any type of firearm,

21   the right to possess certain professional licenses, and those

22   are just examples, do you understand that?

23   A.  Yes.

24   Q.  Are you a United States citizen?

25   A.  I'm sorry.

59timarp ag                    PLEA                                    12

1   Q.  Are you a United States citizen?

2   A.  Yes.

3   Q.  Do you understand, Mr. Marino, that what I've gone over are

4   the possible consequences of a plea of guilty, these are the

5   things that could happen to you?

6   A.  Yes.

7   Q.  Now, have you and your attorney talked about how the

8   sentencing guidelines may apply to your case?

9   A.  Yes.

10  Q.  Do you understand that the Sentencing Guidelines are not

11  mandatory, but they must be considered by the district court

12  judges when imposing sentence in your case?  Do you understand?

13  A.  Yes.

14          THE COURT:  Now, there is also a so-called *Pimentel*

15  letter?

16          MR. BOWMAN:  Yes.  We just received it.

17          THE COURT:  All right.

18  Q.  I just want to advise you, Mr. Marino, that the

19  government's estimation of the Sentencing Guidelines are just

20  that, they're estimates in this September 29, 2005 letter,

21  they're not binding on the district court judge.  You

22  understand that?

23  A.  Yes.

24  Q.  Do you understand that the Court will not be able to

25  determine the guideline range for your case until after a

59timarp ag                    PLEA

1    presentence report has been completed, you and the government

2    will have an opportunity to review that report, you could

3    challenge any facts in that report, and you could challenge the

4    report's computation of your sentencing guideline range?  Do

5    you understand that?

6    A.   Yes.

7    Q.   Do you understand that under certain circumstances, both

8    you and the government have the right to appeal any sentence

9    that the Court would impose subject to the terms of the plea

10   agreement?  Do you understand that?

11   A.   Yes.

12          THE COURT:  Ms Feinzig, are there any appeal waiver

13   provisions?

14          MS FEINZIG:  No, your Honor.

15   Q.   Do you understand that parole has been abolished?  If you

16   are sentenced to a term of imprisonment, you will not be

17   eligible for an early release on parole, do you understand?

18   A.   Yes.

19   Q.   Do you understand that if you disagree with the sentencing

20   guideline determination which is made by the Court, that will

21   not constitute a basis for you to withdraw your plea of guilty?

22   Do you understand that?

23   A.   Yes.

24   Q.   Do you understand that you do not have to plead guilty in

25   this matter?  You have the absolute right to have this matter

59timarp ag                    PLEA

1    tried.  If you choose to plead not guilty, you are entitled to

2    a speedy and public trial and your case could be decided by a

3    jury.  Do you understand that?

4    A.  Yes.

5    Q.  Also, if both you and the government agree, your case could

6    be decided by a judge alone without a jury, do you understand?

7    A.  Yes.

8    Q.  If there was a trial, the presumption of innocence would

9    remain in your favor throughout the entire trial.  The

10   government would have the burden at any trial of proving your

11   guilt beyond a reasonable doubt as to each and every element of

12   the crimes charged.  And if tried by a jury, the government

13   would have to prove your case to the unanimous satisfaction of

14   each and every member of the jury before you could be found

15   guilty.  Do you understand that?

16   A.  Yes.

17   Q.  If there was a trial, you would have the right, with the

18   assistance of your attorney, to cross-examine and confront the

19   witnesses against you.  You would have the right to call

20   witnesses to testify on your behalf.  And you would have the

21   right to have subpoenas issued to compel witnesses to give

22   testimony on your behalf.  You would also have the right at any

23   trial to testify on your own behalf, but only if you wish; you

24   could not be compelled to testify.  And if you chose not to

25   testify, no unfavorable inference would be drawn against you

59timarp ag                    PLEA

1   because of that.  Do you understand?

2   A.  Yes.

3   Q.  If there was a trial, you would be entitled to the

4   assistance of your attorney, and to have an attorney assigned

5   to represent you without cost if you could not afford an

6   attorney.  Do you understand that?

7   A.  Yes.

8   Q.  Do you understand, Mr. Marino, that by pleading guilty to

9   the charges here today, you are giving up your right to a

10  trial, there will not be a trial in this matter?

11  A.  Yes.

12          THE COURT:  Ms Feinzig, what would the government be

13  prepared to prove if this matter did proceed to trial?

14          MS FEINZIG:  Your Honor, the elements of the first

15  charge, conspiracy, are first that two or more persons entered

16  the unlawful agreement charged in the information.  Second,

17  that the defendant knowingly and willfully became a member of

18  the conspiracy.  Third, that one of the members of the

19  conspiracy knowingly committed at least one of the overt acts

20  charged in the information.  And fourth, that the overt acts

21  which you find to have been committed were committed to further

22  some objective of the conspiracy.

23          In connection with the second count, investment

24  adviser fraud, the government would have to establish that the

25  defendant or someone that the defendant aided and abetted was

59timarp ag                    PLEA

1    an investment adviser.  Second, that defendant or the person

2    who was aided and abetted had utilized the mails or any

3    instruments of interstate commerce to do one or more of the

4    following things:  To employ a device, scheme or artifice to

5    defraud investors; to engage in transactions, practices and

6    courses of business which operated as a fraud and deceit upon

7    clients and prospective clients; and three, engaged in acts,

8    practices and courses of business that were fraudulent,

9    deceptive and manipulative, and that the defendant acted

10   knowingly and willfully.

11          In connection with Counts 3 and 4, mail and wire

12   fraud, the government would have to establish:  First, that

13   there was a scheme or artifice to defraud or to obtain money or

14   property by materially false and fraudulent pretenses,

15   representations or promises as alleged in the information;

16   second, that the defendant knowingly and willfully participated

17   in a scheme or artifice to defraud with knowledge of its

18   fraudulent nature and with specific intent to defraud; and

19   third, that in execution of that scheme, the defendant used or

20   caused the use of the mail.

21          MR. BOWMAN:  My client has a very bad back problem.

22   Is it all right if he sits during the factual basis?

23          THE COURT:  Yes.

24          MR. BOWMAN:  In all other respects he's fine.  He just

25   injured his back.

59timarp ag                    PLEA

1        THE COURT:  That's fine.

2        MS FEINZIG:  In connection with the mail fraud count,

3    the third element is that in the execution of the scheme the

4    defendant used or caused the use of the mails as specified in

5    the information.  And in connection with the wire fraud scheme,

6    which is charged in Count 4, the third element is that in

7    execution of the scheme, the defendant used or caused the use

8    of the wires as specified in the information.

9        At a trial, in order to establish the elements of all

10   of these crimes, the government would prove based on

11   documentary evidence and testimony of various witnesses, that

12   during the time period set forth in the information, Daniel

13   Marino and his co-conspirators perpetrated a fraud on investors

14   and potential investors of the Bayou Hedge Funds by

15   misrepresenting the value of the Hedge Funds assets and causing

16   these misrepresentations to be disseminated to current and

17   prospective investors in the Southern District of New York and

18   elsewhere.  These false and misleading statements and

19   representations, the government would establish, induced new

20   investors to invest in Bayou and lulled existing investors into

21   retaining their investment in Bayou.

22       The evidence would establish that Mr. Marino, who

23   became the chief financial officer of Bayou, and his

24   co-conspirators, caused to be mailed quarterly reports to

25   investors that contained fictitious rates of return on trading

59timarp ag                    PLEA

1   in the funds, and annual financial statements that contained

2   fictitious rates of return on trading and inflated net asset

3   values.  Mr. Marino and his co-conspirators also had faxed and

4   emailed weekly newsletters that also misrepresented the

5   performance of the funds at various times during the time

6   period set forth in the information.  All of these

7   communications to investors, according to the government's

8   evidence, made it appear that Bayou was earnings profits on

9   trading when in fact it was not.

10          In furtherance of the scheme and because Bayou could

11  not use an actual certified public accounting firm to audit the

12  funds and certify the annual financial statements, Mr. Marino

13  agreed with his co-conspirators to and in early 1999 did form a

14  phony accounting firm, named it Richmond Fairfield Associates,

15  and maintained official space for this fictitious accounting

16  firm in Manhattan.  Year after year between 1999 and 2004 the

17  co-conspirators had the false annual financial statements sent

18  out with a fictitious certification by Richmond Fairfield

19  Associates that the fund had been audited and the financial

20  statements were accurate when in fact they were not.

21          The evidence would further establish that in 2004,

22  trading eventually stopped while Mr. Marino's co-conspirators,

23  the chief investment officer and chief executive officer of

24  Bayou, attempted to conduct private placement transactions in

25  Europe and the United States.  This use of Bayou funds was not

59timarp ag                    PLEA

1   disclosed to investors.  Indeed the communications to

2   investors, the documentary evidence would establish, falsely

3   indicated that trading was still going on.

4          According to the evidence the government would

5   present, the effect of these false statements was to induce

6   investors to invest in excess of 450 million dollars in the

7   Bayou funds during the relevant time period.

8   Q.  All right.  Mr. Marino, did you hear what the assistant

9   United States attorney just said?

10  A.  Yes.

11  Q.  Do you agree with that?

12  A.  Yes.

13  Q.  Have you clearly and fully understood everything that has

14  happened here today so far?

15  A.  Yes.

16  Q.  Do you have any questions of your attorney or the Court

17  before I continue?

18  A.  I have none.  I'm not sure about Mr. Bowman.

19          MR. BOWMAN:  I'm ready to proceed, your Honor.

20  Q.  I'm going to summarize the felony information and take your

21  plea.  Count 1.  The United States Attorney charges, and I'm

22  going to start -- if you want to remain seated, Mr. Bowman --

23  A.  It would be easier for me, if it's not too much of a

24  imposition.

25  Q.  No.  Under the circumstances you can remain seated.

59timarp ag                    PLEA

1    A.  Thank you.

2    Q.  On page 2, paragraph 4.  During the relevant time period,

3    Bayou sustained trading losses.  In order to induce investors

4    to invest in Bayou and to lull existing investors into

5    retaining their investment in Bayou, the defendant perpetrated

6    a scheme to defraud investors by disseminating reports and

7    financial statements, among other things, that contained

8    materially false statements, and by failing to invest the

9    investor's funds as promised.

10           Among the means and methods by which Marino and

11   co-conspirators not named herein would and did carry out the

12   conspiracy were the following:

13           A.  Marino and a co-conspirator reported fictitious

14   rates of return of the Bayou Hedge Funds and quarterly reports

15   and had those reports mailed to investors.

16           B.  Marino and a co-conspirator reported fictitious

17   rates of return of the Bayou Hedge Funds in weekly newsletters

18   and had those newsletters emailed or faxed to investors.

19           C.  Marino and a co-conspirator reported individual

20   investor's inflated accumulated profits in monthly reports and

21   had those reports mailed to investors.

22           D.  Marino and his co-conspirators had annual

23   financial statements mailed to investors that contained among

24   other misrepresentations inflated rates of return on trading,

25   inflated net asset value, and certifications that Bayou had

59timarp ag                    PLEA

1   been audited by a certified public accounting firm known as

2   Richmond Fairfield Associates.

3          E.   In or about early 1999, Marino created the phony

4   accounting firm, Richmond Fairfield Associates, and it

5   conducted no audits.

6          F.   Between in or about the fall of 2003 and in or

7   about August 2005, Marino and a co-conspirator entered and

8   attempted to enter into private financial transactions using

9   money from the Bayou Hedge Funds without disclosing the nature

10  of those transactions to its investors.

11         G.   From in or about July 1996 through August 2005,

12  Marino and his co-conspirators induced investors to contribute

13  in excess of $450,000,000 to the Bayou Hedge Funds.

14         From in or about July 1996 to in or about August 2005

15  in the Southern District of New York and elsewhere, Daniel

16  Marino, the defendant, and co-conspirators not named herein,

17  unlawfully, willfully and knowingly did combine, conspire,

18  confederate and agree together and with each other to commit

19  offenses against the United States.

20         To wit:  A.   Investment adviser fraud in violation of

21  Title 15 United States Code Sections 80b-6 and 80b-17.

22         B.   Mail fraud in violation of Title 18 United States

23  Code Section 1341.

24         And C.   Wire fraud, in violation of Title 18, United

25  States Code Section 1343.

59timarp ag                    PLEA

1          It was part and object of the conspiracy that Daniel

2     Marino, the defendant, and co-conspirators not named herein,

3     acting as investment advisers with respect to one or more

4     clients and prospective clients in the Bayou Hedge Funds

5     unlawfully, willfully and knowingly, by the use of the mails

6     and the means and instrumentalities of interstate commerce

7     directly and indirectly did:

8          A.   Employ devices, schemes and artifices to defraud

9     clients and prospective clients;

10         B.   Engage in transactions, practices and courses of

11    business which operated as a fraud and deceit upon clients and

12    prospective clients;

13         and C, engaged in acts, practices and courses of

14    business that were fraudulent, deceptive and manipulative in

15    violation of Title 15 United States Code Sections 80b-6 and

16    80b-17.

17         It was further a part and object of the conspiracy

18    that Daniel Marino, the defendant, and co-conspirators not

19    named herein, unlawfully, willfully and knowingly, having

20    devised and intending to devise a scheme and artifice to

21    defraud, and through obtaining money and property by means of

22    false and fraudulent pretenses, representations and promises,

23    did place and cause to be placed in a post office and

24    authorized depository for mail matter, matters and things to be

25    sent and delivered by the Postal Service and private and

59timarp ag          PLEA

1  commercial interstate carriers, and did take and receive

2  therefrom such matters and things in violation of Title 18

3  United States Code Section 1341.

4        It was part and object of the conspiracy that Daniel

5  Marino, the defendant, and co-conspirators not named herein,

6  unlawfully, willfully and knowingly, having devised and

7  intending to devise a scheme and artifice to defraud and

8  through obtaining money and property by means of false and

9  fraudulent pretenses, representations and promises, would and

10  did transmit and cause to be transmitted by means of wire and

11  radio communication in interstate and foreign commerce,

12  writings, signs, signals, pictures and sounds for the purpose

13  of executing such scheme and artifice in violation of Title 18

14  United States Code Section 1343.

15        In furtherance of said conspiracy and to effect the

16  illegal object thereof, the following overt acts among others

17  were committed in the Southern District of New York and

18  elsewhere.  And I'm going to read the first and last of the

19  overt acts:

20        A.  At various times from in or about July 1996

21  through in or about August 2005, a co-conspirator not named

22  herein traded securities on behalf of Bayou through computers

23  located in Westchester County, New York and at Bayou's offices

24  in Stamford, Connecticut.

25        And I.  At various times, between in or about May 2003

59timarp ag              PLEA

1    and in or about August 2005, Marino invested money contributed

2    to the Bayou Hedge Funds in private placements transactions,

3    all in violation of Title 18 United States Code Section 371.

4            To Count 1, how do you plead, guilty or not guilty?

5    A.  Guilty.

6    Q.  Count 2, the United States Attorney further charges from in

7    or about July 1996 to in or about August 2005 in the Southern

8    District of New York and elsewhere, Daniel Marino, the

9    defendant, and co-conspirators not named herein, acting as

10   investment advisers with respect to clients and prospective

11   clients in the Bayou Hedge Funds, unlawfully, willfully and

12   knowingly, by the use of the mails and the means and

13   instrumentalities of interstate commerce, directly and

14   indirectly did:

15           A.  Employ devices, schemes and artifices to defraud

16   clients and prospective clients;

17           B.  Engage in transactions, practices and courses of

18   business which operated as a fraud and deceit upon clients and

19   prospective clients;

20           and C, engage in acts, practices and courses of

21   business that were fraudulent, deceptive and manipulative in

22   violation of Title 15 United States Code Sections 80b-6, 80b-17

23   and Title 18 United States Code Section 2.

24           To Count 2, how do you plead, guilty or not guilty?

25   A.  Guilty.

59timarp ag                    PLEA

1    Q.  Count 3, the United States Attorney further charges from in

2    or about July 1996 through in or about August 2005 in the

3    Southern District of New York and elsewhere, Daniel Marino, the

4    defendant, and co-conspirators not named herein, having devised

5    and intending to devise a scheme or artifice to defraud, and to

6    obtain money and property by means of false and fraudulent

7    pretenses, representations and promises, namely the scheme that

8    has been set forth in this information, for the purpose of

9    executing such scheme and artifice and attempting to do so, did

10   place and cause to be placed in a post office and authorized

11   depository for mail matter, matters and things to be sent and

12   delivered by the Postal Service and private and commercial

13   interstate carriers, and did take and receive therefrom such

14   matters and things, namely quarterly reports, monthly reports,

15   and annual financial statements in violation of Title 18,

16   United States Code Sections 1341 and 2.

17           To Count 3, how do you plead, guilty or not guilty?

18   A.  Guilty.

19   Q.  Count 4.  The United States Attorney further charges from

20   in or about July 1996 through in or about August 2005 in the

21   Southern District of New York and elsewhere, Daniel Marino, the

22   defendant, and co-conspirators not named herein, having devised

23   and intending to devise a scheme and artifice to defraud and to

24   obtain money and property by means of false and fraudulent

25   pretenses, representations and promises, namely the scheme set

59timarp ag                    PLEA

1    forth above, would and did transmit and cause to be transmitted

2    by means of wire and radio communication in interstate and

3    foreign commerce writings, signs, signals, pictures and sounds

4    for the purpose of executing such scheme and artifice, namely

5    weekly newsletters, in violation of Title 18 United States Code

6    Sections 1343 and 2.

7            To Count 4, how to you plead, guilty or not guilty?

8    A.   Guilty.

9    Q.   And there are some forfeiture allegations that are alleged.

10   It is alleged that the defendant, Daniel Marino, is forfeiting

11   all property traceable to:

12           A.   Approximately $100,010,673.68 on deposit at Bank

13   of America in the name of the Arizona State Treasurer.

14           B.   All that lot or parcel of land together with its

15   buildings, appurtenances, improvements, fixtures, attachments

16   and easements located at 261 Bayberry Lane in Westport,

17   Connecticut.

18           C.   All rights, title and interest of the defendant in

19   any entities or partnerships including but not limited to IM

20   Partners and IMG, LLC.  And any and all assets including bank

21   accounts held for the benefit of such entities or partnerships.

22           D.   Any and all interest in any bank accounts and/or

23   brokerage accounts held in and for the benefit of the

24   defendant.  And there are some substitute asset provisions.

25           Mr. Marino, you acknowledge and agree to that

27

59timarp ag                    PLEA

1   forfeiture?

2   A.  Yes.

3   Q.  Has anyone made any promises to you other than what has

4   been set forth in the plea agreement in order to induce you to

5   plead guilty?

6   A.  No.

7   Q.  Has anyone threatened you or coerced you to get you to

8   plead guilty?

9   A.  No.

10  Q.  Has anyone put any pressure on you or done anything

11  improper to you to get you to plea guilty?

12  A.  No.

13  Q.  Has anyone made any specific promises to you about what

14  your sentence will be in this matter?

15  A.  No.

16  Q.  Mr. Marino, in your own words, you are now going to have to

17  tell me what you did in connection with these charges that

18  you're pleading guilty to.

19  A.  Thank you for letting me sit down.  As set forth in the

20  information, I did participate as chief financial officer of

21  Bayou in a conspiracy and a course of conduct along with other

22  individuals to mislead investors in the Bayou Hedge Fund by

23  sending them false information regarding the true status of

24  their investment.  The communication to investors was sent by

25  mail and by wire, intended to mislead investors.  I did not act

59timarp ag                    PLEA

1   alone when I committed these offenses.  At the end of 1998, we

2   all agreed to set up an accounting firm that would give the

3   appearance of an independent auditor to further the conspiracy

4   to deceive Bayou investors.  I did form Richmond Fairfield

5   Associates which certified a false financial statement of Bayou

6   as true.  The other individuals with whom I conspired and acted

7   in concert with included an individual who was the chief

8   investment officer throughout the entire period responsible for

9   actual trading of securities for Bayou investors, the other

10  individual was responsible for which security to trade on

11  behalf of the Bayou investors.  I also provided certain

12  documentation to a lending institution which I knew to be false

13  when I did so.

14          I deeply regret my action and I am very sorry in more

15  words than I can say in every respect.  And I one hundred

16  percent accept my responsibility for these actions.

17  Q.  Did you do the acts that you just talked about, that were

18  mentioned here, did you do those acts knowingly and willfully,

19  you knew what you were doing?

20  A.  Yes.

21  Q.  Are you pleading guilty to these charges because you are in

22  fact guilty of the crimes charged?

23  A.  Yes.

24  Q.  Did anyone force you or coerce you or threaten you to do

25  those acts?

59timarp ag                    PLEA

1    A.  No.

2                 THE COURT:  Are counsel satisfied with the state of

3    the record?

4                 MS FEINZIG:  Yes, your Honor.

5                 MR. BOWMAN:  Yes, your Honor.

6                 THE COURT:  All right.  Mr. Bowman, do to you know of

7    any reason why the Court should not accept the plea of guilty?

8                 MR. BOWMAN:  I do not, your Honor.

9    BY THE COURT:

10   Q.  Mr. Marino, have you clearly and fully understood

11   everything that has happened here today?

12   A.  Yes.

13                THE COURT:  On this allocution, the Court finds that

14   the defendant is fully competent and capable of entering an

15   informed plea of guilty.  The pleas are knowing and

16   voluntarily.  The pleas are supported by an independent factual

17   basis for each and every element of the crimes charged.

18   Accordingly, I report and recommend to Judge McMahon that the

19   pleas be accepted and that the defendant be adjudged guilty of

20   the crimes charged.  I'm going to direct that a presentence

21   investigation be conducted by the United States Probation

22   Office.  I further direct the court reporter to provide a

23   transcript of these proceedings which sets forth my report and

24   recommendation to Judge McMahon within 30 days.  The matter

25   will be adjourned for sentencing until January 9, 2006 at

59timarp ag                    PLEA

1    nine a.m.

2              This is the defendant's first appearance in court?

3         MS FEINZIG:  It is, your Honor.

4         THE COURT:  Okay.  We need to set bail.

5         MS FEINZIG:  Yes, your Honor.  I've spoken with

6    Mr. Bowman and we would recommend to the Court that Mr. Marino

7    be released on a $500,000 personal recognizance bond to be

8    co-signed by three financially responsible people; that he be

9    restricted to not traveling beyond the District of Connecticut

10   and the Southern and Eastern Districts of New York until travel

11   is preapproved by the United States Attorney's Office; that he

12   surrender his passport, which he already has; and that he abide

13   by the other standard conditions of release.  The government

14   would consent to his having two weeks to have his three

15   financially people sign the bond.

16        THE COURT:  Mr. Bowman, any problem?

17        MR. BOWMAN:  I have no objection to those terms, your

18   Honor.  If we do have an issue with respect to co-signers on

19   the bond, should we come back to your Honor?

20        THE COURT:  Yes.  Discuss it with the United States

21   Attorney first and if there's an issue, you both can come down

22   and see me.

23        MR. BOWMAN:  Thank your Honor.

24        THE COURT:  All right.  I have reviewed the report.  I

25   am going to accept the recommendation.  Bail will be set in the

59timarp ag          PLEA

1   amount of a five hundred thousand dollar personal recognizance

2   bond to be co-signed by three financially responsible persons.

3   The three financially responsible persons will have two weeks

4   from today to be approved by the United States Attorney.  I am

5   going to restrict the travel of the defendant to the Southern

6   District of New York, Eastern District of New York and the

7   District of Connecticut.  Anything beyond that will have to be

8   approved by the United States Attorney and the Court.

9           Do you have a passport?

10          THE DEFENDANT:  Yes.

11          MR. BOWMAN:  He surrendered it this morning.

12          MS FEINZIG:  Yes.

13          THE COURT:  I direct that you not make application for

14  any other passport or travel documents while you are released.

15  I am going to direct that you be subject to pretrial

16  supervision to include continued mental health counseling under

17  the guidance of the Pretrial Services Office.  What that means,

18  Mr. Marino, is that if the Pretrial Service officer tells you

19  to do something, it's just like the Court telling you to do

20  something and you have to do it.  Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  The following conditions are also imposed.

23  You shall not commit any offense in violation of federal, state

24  or local law while on release.  You shall immediately advise

25  the Court, defense counsel, and the United States Attorney in

```
59timarp ag              PLEA
```

1   writing prior to any change of address or telephone number.

2   You shall appear at all proceedings as required.  You shall

3   refrain from possessing a firearm, destructive device or other

4   dangerous weapon.  You shall refrain from excessive use of

5   alcohol.  You shall refrain from any use or unlawful possession

6   of a narcotic drug or other controlled substance unless

7   prescribed by a medical practitioner.  If you violate any

8   conditions of release, you could be brought back into court and

9   your bail could be revoked, do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  If you do not show up in court as

12   required, you could face a separate charge of bail-jumping and

13   face additional fines, imprisonment, or both, do you understand

14   that?

15          THE COURT:  Anything further?

16          MS FEINZIG:  Nothing from the government.

17          MR. BOWMAN:  No.

18          THE COURT:  Once the necessary papers are signed, the

19   defendant can be released.  I am going to direct that you take

20   your client down to the Probation Office after you sign the

21   papers to start the presentence investigation process.

22          THE CLERK:  All rise, this Court will be in recess.

23          (Proceedings adjourned)

24

25