UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────x

IN RE BAYOU HEDGE FUND LITIGATION                  06-MDL-1755 (CM)
───────────────────────────────────────x

THIS DOCUMENT RELATES TO:
───────────────────────────────────────x

BROAD-BUSSEL FAMILY L.P., et al.,                  06-CV-3026 (CM)

       Plaintiffs,

   -against-

BAYOU GROUP L.L.C., et al.,

       Defendants.
───────────────────────────────────────x

**DECISION AND ORDER
DENYING DEFENDANT'S MOTION FOR
ENTRY OF A FINAL JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)**

McMahon, J.:

Class action plaintiff investors brought this action against Defendant Citibank, N.A. ("Citibank") and other defendants for damages arising out of the massive fraud perpetrated by Bayou Group L.L.C. ("Bayou") and its principals. By Order dated September 6, 2006 ("September Order"), this court dismissed all six causes of action against Citibank. Citibank now moves this court to certify the September Order as a final judgment pursuant to Fed. R. Civ. P. 54(b). For the reasons stated below, the motion is denied.

**I. Background**

The court assumes familiarity with the September Order, as well as other prior decisions in this case. The facts relevant to the instant motion are summarized below.

*A. The Complaint*

Plaintiffs filed their original Complaint in the District of Connecticut on November 17, 2005. (See Broad-Bussel Family L.P. v. Bayou Group L.L.C., No. 05-CV-1762 (D. Conn.) ("Conn. Docket"), Docket Entry ("D.E.") 1.) They filed their Amended Complaint in the same court on March 6, 2006. (Id., D.E. 72.) After the case was transferred to this court, I granted plaintiffs an additional thirty days to further amend their Complaint, but they chose not to do so.

The Complaint contained six causes of action against Citibank.

The first cause of action for negligence was pleaded against all twenty-eight named defendants. (Compl. ¶¶ 155-64.) The claim against Citibank alleged that Citibank breached its duty "to not transfer to defendant [and Bayou principal Samuel] Israel personally millions of dollars in proceeds which it knew or ignored were fiduciary investment funds beneficially owned by Class member investors." (Id. ¶ 157.)

The second cause of action for commercial bad faith was pleaded only against Citibank. (Id. ¶¶ 165-70.) However, the claim is premised on the allegation that Citibank "wrongfully participated in the Bayou Defendants' misconduct by . . . allowing defendant Israel to deplete five Bayou bank accounts . . . and by permitting defendant Israel to withdraw and convert some $161 million of Bayou's then remaining funds directly to Israel's own personal accounts in foreign and other banks."[1] (Id. ¶¶ 167.)

The third, fourth, and fifth causes of action for aiding and abetting fraud (id. ¶¶ 200-04), aiding and abetting breach of fiduciary duty (id. ¶¶ 205-09), and aiding and abetting negligence (id. ¶¶ 210-14), respectively, are pleaded against a group of defendants referred to as the

---

[1] The term "Bayou Defendants" refers collectively to the thirteen Bayou entities, Daniel Marino, Samuel Israel, IM Partner and IMG, LLC. (Compl. ¶¶ 17-30.)

"Aider/Abettor Defendants."[2]  For all three counts, the Complaint alleges that "Citibank aided and abetted the Bayou Defendants' misconduct by . . . allowing defendant Israel to wrongfully deplete five Bayou bank accounts . . . permitting defendant Israel to withdraw and convert at least $161 million of Bayou's then remaining funds; and actually transferring those funds to Israel's *personal accounts* in foreign and other banks." (Id. ¶¶ 203c, 208c, 213c) (emphasis in original.)

The sixth cause of action for unjust enrichment is pleaded against all twenty-eight defendants.  (Id. ¶¶ 215-18.)  According to the Complaint, Citibank "received fees and other benefits in connection with its banking services to the Bayou Hedge Funds and defendant Israel." (Id. ¶ 218.)

## B. Citibank's Motion to Dismiss

On May 31, 2006, Citibank moved to dismiss the Complaint.  Plaintiffs opposed the motion on June 30, 2006, and their opposition brief requested that, "If for any reason the Court were inclined to grant the defendant Citibank's motion, plaintiffs request an opportunity to amend." (Pls.' Br. in Opp. to Citibank's Mot. to Dismiss at 25 n.9.)

On September 6, 2006, this court granted Citibank's motion and dismissed all six claims against Citibank.  The September Order explicitly denied plaintiffs' request for leave to amend its claims for aiding and abetting fraud and commercial bad faith.  (September Order at 7.)  The Order, however, was silent regarding leave to amend the remaining four claims.

---

[2] The term "Aider/Abettor Defendants" refers collectively to Citibank, James Marquez, Richmond-Fairfield Associates, C.P.A., P.L.L.C., Jeffrey Fotta, Eqyty Research and Management L.L.C., Eqyty Research and Management L.T.D., Faust Rabbach & Oppenheim L.L.P., and Steven D. Oppenheim.  (Id. ¶ 31-38.)

To date, only three other defendants have been dismissed from the lawsuit: Faust Rabbach & Oppenheim L.L.P. and Steven D. Oppenheim (see Jan. 18, 2007 Order, D.E. 71), and Hennessee Group L.L.C. (See Jan. 19, 2007 Order, D.E. 72.)

### C. *Plaintiffs' Subsequent Discovery Requests*

On February 15, 2007, this court held a status conference in all Bayou-related cases, during which I ordered all class certification discovery to be completed by May 31, 2007. (See Declaration of John K. Van De Weert ("Van De Weert Decl."), Ex. 6.)

Shortly after this conference, on March 2, 2007, plaintiffs served a document subpoena on Citibank. (Id., Ex. 2.) The subpoena requested "all documents that relate to Bayou . . . [and] Hennessee [Group]," including Bayou Account documents, Bayou contracts, documents related to the "April 2004 Transfer" and "2005 Liquidation,"[3] and documents related to all regulatory investigations regarding Bayou. (Id., Ex. 2 at 8-11.) According to Citibank's moving papers, it responded to the subpoena in early April 2007 by producing certain documents, but objecting generally to the request as "an obvious attempt to fish for information to try to bring Citibank back into the case." (Def.'s Br. at 3.)

On March 27, 2007, plaintiffs also filed an application in In re Bayou Group, L.L.C., No.

---

[3] The subpoena defines "April 2004 Transfer" as "the transfer of some $150 million from one or more of the Bayou Accounts to an account at Barclay's Bank in London in or about April 2004, and the subsequent transfer of such monies back [to] the Bayou Accounts." (Van De Weert Decl., Ex. 2 at 2.)

"2005 Liquidation" is defined as "the transfer and/or withdrawal of a total of some $161 million from one or more of the Bayou Accounts in or about April through July 2005, including but not limited to a transfer of some $120 million from one or more of the Bayou Accounts to an account at Deutsche Postbank in Hamburg, Germany and a transfer of some $32 million to somewhere within the United States." (Id.)

06-22306 (Bankr. S.D.N.Y.), the related bankruptcy proceeding, seeking permission to take discovery from the debtors pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Application"). (Van De Weert Decl., Ex. 1.) In the Application, plaintiffs sought from debtors, *inter alia*, all documents and communications that passed between Citibank and any Bayou entities, as well as any documents related to the "April 2004 Transfer and the 2005 Liquidation." (Id., Ex. 1 ¶ 1(n)-(q).) In support of this request, plaintiffs argued that the debtors

> presently retain documents that may provide material information concerning the conduct and operation of the Bayou Hedge Funds, as it related to the claims asserted by the Class Plaintiffs in the Class Action, which could, in part, support class certification and further substantiate claims against certain third party defendants (including those third party defendants who have been dismissed from the Class Action).

(Id., Ex. 1 ¶ 13; see also id., Ex. 8 ¶ 8.) Plaintiffs' Application further contended that Rule 2004 discovery "can even 'legitimately be in the nature of a fishing expedition.'" (Id., Ex. 1 ¶ 16) (quoting In re M4 Enterprises, Inc., 190 B.R. 471, 474 (Bankr. N.D. Ga. 1995).) Several parties objected to the Application (although not Citibank, who was not served with the Application). (See id., Ex. 7, In re Bayou Group, L.L.C., No. 06-22306 (Bankr. S.D.N.Y.) D.E. 360, 364, 371, 372.) Ultimately, the Bankruptcy Court denied the Application, in part, because that court concluded that this court should supervise all class action-related discovery. (See id., Ex. 9, Apr. 23, 2007 Hr'g Tr. at 70-71, 74, in In re Bayou Group, L.L.C., No. 06-22306 (Bankr. S.D.N.Y.).)

Although plaintiffs' opposition brief describes both the subpoena and the Application as "formal discovery in support of Class certification" (Pls.' Opp. Br. at 4), plaintiffs also readily admit that they "have and will continue to zealously seek additional facts through discovery regarding the culpability of Citibank's conduct in this massive financial fraud." (Id. at 15.)

## II. Discussion

On May 29, 2007, Citibank filed the instant motion, requesting this court to certify its September Order as a final judgment pursuant to Fed. R. Civ. P. 54(b). Citibank argues that certification is appropriate here because the September Order presents unique legal issues and claims that are not implicated by the remaining claims before this court. Citibank further contends that entering a final judgment will spare the court the risk of duplicative trial proceedings (in the event the Second Circuit reverses the September Order after the remaining claims are disposed of at trial), and will prevent plaintiffs from circumventing the September Order through their repeated attempts to seek Citibank-related discovery.

None of these arguments is persuasive.

Rule 54(b) provides:

> When more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Thus, Rule 54(b) permits certification of a final judgment where "(1) there are multiple claims or parties, (2) at least one of the claims or the rights and liabilities of at least one party has been finally determined, and (3) 'there is no just reason for delay.'" Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 164-65 (2d Cir. 2005) (quoting Fed. R. Civ. P. 54(b)); see also Info. Res., Inc. v. Dun & Bradstreet Corp., 294 F.3d 447, 451 (2d Cir. 2002). Respect for the historic federal policy against piecemeal appeals "requires that a Rule 54(b) certification not be granted routinely. The power should be used only in the infrequent harsh case where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." Grand River Enters.., 425 F.3d at 165; see also Advanced Magnetics, Inc. v.

Bayfront Partners, Inc., 106 F.3d 11, 16 (2d Cir. 1997) ("the court's power under Rule 54(b) to enter a final judgment before an entire case is concluded should be exercised sparingly") (internal quotation marks and citations omitted).

### A. *The Claims Against Citibank Are Inseparable from Claims Still Pending Before This Court*

Although issuance of the September Order satisfies the second prong of the 54(b) inquiry, the first and third elements are absent. Courts have generally construed 54(b)'s first element as requiring "multiple, *separate* claims." Grand River Enters. Six Nations, Ltd. v. Pryor, No. 02-CV-5068, 2004 WL 2480433, at *1 (S.D.N.Y. Nov. 3, 2004) (emphasis added). That is, "In the multiple party situation where the complaint is dismissed as to one defendant but not others, the court should not, as a general matter, direct the entry of a final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undismissed defendants . . . . In a case involving multiple claims, the court should not enter final judgment dismissing a given claim unless that claim is separable from the claims that survive." U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras, No. 98-CV-3099, 2001 WL 585541, at *1 (S.D.N.Y. May 31, 2001) (internal quotation marks and citations omitted); see also RIJ Pharm. Corp. v. Ivax Pharms., Inc., 322 F. Supp. 2d 406, 417 (S.D.N.Y. 2004) ("A Rule 54(b) certification of final judgment on any claim would be inappropriate . . . if such claim is inherently inseparable or inextricably interrelated to remaining claims.")

Claims are generally deemed to be inseparable "either because the remaining proceedings in the district court may illuminate appellate review of the dismissed claims or because those proceedings may suggest that the dismissal should be modified as is expressly permitted by Rule 54(b)." Hogan v. Consol. Rail Corp., 961 F.2d 1021, 1026 (2d Cir. 1992); see also In re Blech

7

Secs. Litig., No. 94-CV-7696, 1997 WL 20833, at *2 (S.D.N.Y. Jan. 21, 1997) ("where the resolution of the remaining claims could conceivably affect an appellate court's decision of the claims on appeal, a district court should be reluctant to grant a Rule 54(b) motion") (internal quotation marks and citations omitted); Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1095 (2d Cir. 1992) (noting claims are interrelated where "district court's disposition of one or more of the remaining claims could render [Circuit's] opinion advisory or moot.").

Citibank argues that "the issues decided in the September Order . . . do not bear substantially on the remaining claims in the case." (Def.'s Br. at 7-8.) However, the claims addressed by that Order flow directly from – and are consequently inseparable from – the gravamen of plaintiffs' Complaint, namely, that Bayou and its principals perpetrated a fraud on plaintiffs and similarly situated investors. For example, four of plaintiffs' claims against Citibank – aiding and abetting fraud, aiding and abetting breach of fiduciary duty, aiding and abetting negligence, and commercial bad faith – require plaintiffs to prove Bayou's primary misconduct as an element of the claim. See Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc., No. 99-CV-9623, 2007 WL 1040809, at *21 (S.D.N.Y. Apr. 4, 2007) (noting elements of aiding and abetting breach of fiduciary duty claim include underlying breach); UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003) (noting underlying fraud is element of aiding and abetting fraud); Ryan v. Hunton & Williams, No. 99-CV-5938, 2000 WL 1375265, at *10 (E.D.N.Y. Sept. 20, 2000) ("knowledge of the underlying wrong is a required element of commercial bad faith under New York law") (internal quotation marks and citations omitted). Indeed, the Complaint explicitly states that each of these claims is premised on Bayou's primary misconduct. (See Compl. ¶¶ 167-68, 202, 207-08, 212.) Thus, if this court

8

eventually finds Bayou not liable for the underlying fraud, breach and/or negligence, then any appellate review of this court's dismissal of these four claims against Citibank will be rendered either advisory or moot. Ginett, 962 F.2d at 1095. As such, these three claims are "inextricably interrelated" to the claims that remain pending before this court. See Bank of China v. NBM L.L.C., No. 01-CV-0815, 2004 WL 1907308, at *2 (S.D.N.Y. Aug. 26, 2004) (denying 54(b) motion seeking certification of dismissed aiding and abetting breach of fiduciary duty claim because claim regarding underlying breach was still pending).

Plaintiffs' claim against Citibank for negligence – which is pleaded against all twenty-eight defendants – is similarly inseparable from the claims still pending before this court. Plaintiffs' allege that Citibank breached its "duty to not transfer to defendant Israel personally millions of dollars in proceeds which it knew or ignored were fiduciary investment funds beneficially owned by Class member investors." (Compl. ¶ 157.) In support of this claim, plaintiffs reiterate that Citibank "aided and abetted the Bayou defendants' misconduct" by allowing Israel to transfer the funds from Bayou's bank accounts to Israel's personal accounts. (Id. ¶ 159b.) Thus, according to the Complaint, plaintiffs' negligence claim against Citibank is once again premised on Bayou's misconduct. As discussed above, such a claim is inseparable from the claims still pending against the Bayou defendants. The fact that plaintiffs plead negligence against all twenty-eight defendants only buttresses the conclusion that the claim is inseparable from the other twenty-seven negligence claims that arise from the Bayou fraud. See In re Blech Secs. Litig., 1997 WL 20833, at *2 (denying 54(b) motion, in part, because fraud claims dismissed against certain defendants "are still being litigated against the remaining defendants," and "claims against all . . . defendants arise out of allegations of a common

fraudulent scheme to inflate the prices of . . . securities.")

Plaintiffs' unjust enrichment claim – again, pleaded against all twenty-eight defendants – is also inextricably intertwined with the remaining claims. Plaintiffs allege that they "conferred compensation" on Citibank, including "fees and other benefits in connection with its banking services to the Bayou Hedge Funds and . . . Israel." (Compl. ¶ 218.) Because of Citibank's "inequitable conduct, [Citibank] obtained fees . . . which [it] did not properly earn . . . and [Citibank has] thus been unjustly enriched." (Id.) But one of the elements of unjust enrichment is that "equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004). Thus, plaintiffs can only succeed on their claim if a fact-finder determines that permitting Citibank to retain its banking fees is inequitable because Citibank assisted the underlying Bayou fraud. Therefore, the unjust enrichment claim, too, is deeply connected to claims still pending against Bayou. Chamarac Props., Inc. v. Pike, No. 86-CV-7919, 1994 WL 410902, at *1 (S.D.N.Y. Aug. 3, 1994) ("Where . . . dismissed and surviving claims are interlocking, only unusual and compelling circumstances . . . [can] dictate[ ] entry of an early, separate judgment on the dismissed part of the case.") (internal quotation marks and citations omitted). Again, the fact that plaintiffs plead this cause of action against all twenty-eight defendants only supports this court's conclusion that the claim against Citibank is inseparable from similar claims against the remaining defendants. See In re Blech Secs. Litig., 1997 WL 20833, at *2.

### B. Citibank Will Not Suffer Any Hardship Through the Delay of its Appeal

Citibank's motion also fails the third prong of a Rule 54(b) analysis. The third element

of Rule 54(b) – "danger of hardship or injustice through delay" – typically occurs either where a plaintiff might be prejudiced by a delay in recovering a monetary award, see, e.g., Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 11-12 (1980); Ginett, 962 F.2d at 1097, or "where an expensive and duplicative trial could be avoided if, without delaying prosecution of the surviving claims, a dismissed claim were reversed in time to be tried with the other claims." Advanced Magnetics, Inc., 106 F.3d at 16.

Citibank argues that the latter scenario applies to the instant motion because, without certification, plaintiffs could only appeal the September Order once all of the claims against all of the remaining parties were decided. "At that point, if the Second Circuit were to reverse the September Order, an entirely new trial would need to be conducted as to Citibank – necessarily relitigating and re-examining many of the same facts and potentially calling many of the same witnesses." (Def.'s Br. at 7.) Granting Citibank's motion, on the other hand, would permit plaintiffs to appeal the September Order immediately and – if the Second Circuit were to reverse the Order – this court could then try all of the claims together and avoid duplicative trials.

In support of this argument, Citibank relies on Grand River Enters. Six Nations, Ltd., 425 F.3d at 1165 and Advanced Magnetics, Inc., 106 F.3d at 17. But in these cases – and, indeed, in nearly every case in which a duplicative trial is cited as a potential hardship – the motion for certification was filed by plaintiff, not the dismissed defendant, because it is plaintiff who will bear the cost of duplicative trials. See, e.g., Niagara Mohawk Power Corp. v. Consol. Rail Corp., 306 F. Supp. 2d 282, 287 (N.D.N.Y. 2004); In re Donnkenny, Inc., No. 96-CV-8452, 1998 WL 299931, at *1 (S.D.N.Y. June 8, 1998); Chamarac Props., Inc., 1994 WL 410902, at *1. Here, if certification is denied, Citibank will sit "on the sidelines" while the remaining

11

claims are adjudicated, and will only bear the cost of a single trial if the September Order is eventually reversed. (Def.'s Br. at 7.) Meanwhile, plaintiffs' opposition to the instant motion demonstrates that they do not find the costs of duplicative trials to be unjust. Thus, this court cannot view the potential for duplicative trials as a hardship on either party.[4]

Moreover, the so-called hardship of duplicative trials "will arise in every multiple party suit in which one of the defendants is dismissed but must await the finality of its release until the liability of the remaining defendants has been determined and judgment has been entered. Unavoidably, the dismissed defendant will have to be prepared ultimately to defend [itself], and certainly a second trial involving duplicative evidence might be necessary if the dismissal is later found to have been improper. Such contingencies arise definitionally in cases of this sort." Kitto v. Thrash Oil & Gas Co., No. 88-CV-169E, 1989 WL 153770, at *3 (W.D.N.Y. Dec. 7, 1989) (denying Rule 54(b) motion) (internal quotation marks and citations omitted). The mere potential for duplicative trials should not by itself result in 54(b) certification, except "in the infrequent harsh case." Id.

Citibank contends that the hardship of duplicative trials has been compounded by plaintiffs' improper attempts to take Citibank-related discovery both in the instant action and in the related bankruptcy proceeding. Citibank argues that the subpoena issued to Citibank, as well as the Application issued to debtors, are inappropriate insofar as they seek to gain information regarding Citibank's alleged misconduct, because the September Order dismissed all six claims against Citibank without leave to amend. Citibank thus urges this court to enter a final judgment

---

[4] To the extent that duplicative trials may needlessly tax judicial resources, I note that certifying the September Order in order to avoid such inefficiency would result in an equally inefficient piecemeal appeals process.

in order "to prevent [plaintiffs'] circumvention of the . . . September Order." (Def.'s Br. at 2.)

This argument is flawed for two reasons. First, even if the September Order denied plaintiffs' request for leave to amend the Complaint, Rule 54(b) explicitly states that if a court does not certify an order as a final judgment, that order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Thus, the September Order is currently subject to modification, and plaintiffs may freely seek leave to amend the Complaint pursuant to Fed. R. Civ. P. 15(a).

Second, I do not view plaintiffs' attempts to glean additional facts regarding Citibank via the subpoena or the Application as a circumvention of the September Order. Contrary to Citibank's argument, any information plaintiffs obtain during the course of certification discovery may be used as grounds for leave to replead claims against Citibank. See In re Blech Secs. Litig., 1997 WL 20833, at *2 ("Additional evidence acquired in the course of discovery in the action against the remaining defendants could lead this court to modify its dismissal to permit repleading against the [dismissed] Defendants; such modification of an order is expressly permitted by Rule 54(b).").

### III. Conclusion

For the foregoing reasons, defendant Citibank's motion for entry of a final judgment

13

### III. Conclusion

For the foregoing reasons, defendant Citibank's motion for entry of a final judgment pursuant to Fed. R. Civ. P. 54(b) is denied.

This constitutes the decision and order of the court.

Dated: August 15, 2007

_____
U.S.D.J.

BY FAX TO ALL COUNSEL